SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
CARLTON F. GUNN (No. 112344)
Deputy Federal Public Defender
(E-mail: Carlton_Gunn@fd.org)
CHARLES C. BROWN (No. 179365)
Deputy Federal Public Defender
(E-mail: Charles_Brown@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-1700
Facsimile (213) 894-0081

Attorneys for Defendant
MICHAEL PEPE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     v.<br><br>MICHAEL PEPE,<br><br>           Defendant. | NO. CR 07-168-DSF<br><br>**REPLY TO GOVERNMENT'S CONSOLIDATED OPPOSITION TO MOTIONS TO SUPPRESS EVIDENCE** |

Defendant, Michael Pepe, through his counsel of record, Deputy Federal Public Defender Carlton F. Gunn and Deputy Federal Public Defender Charles Brown, hereby replies to the government's consolidated opposition to defendant's Motion to Suppress Evidence and Motion to Suppress Evidence Discovered as Result of Computer Media Search Warrant. This reply is based on the attached memorandum of points and authorities, all files and records in this case, and such additional

evidence and argument as may be presented at the hearing on the motions.

Respectfully submitted,

SEAN K. KENNEDY  
Federal Public Defender

DATED: August 31, 2007     By /s/ Carlton F. Gunn  
CARLTON F. GUNN  
Deputy Federal Public Defender

Respectfully submitted,

SEAN K. KENNEDY  
Federal Public Defender

DATED: August 31, 2007     By /s/ Charles C. Brown (by CFG)  
CHARLES C. BROWN  
Deputy Federal Public Defender

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### ARGUMENT

**A. EVEN IF THE SEARCH OF MR. PEPE'S HOME DID NOT VIOLATE THE FOURTH AMENDMENT, THE WARRANTLESS SEARCH OF COMPUTER MEDIA BY AMERICAN AGENTS ALONE IN SINGAPORE VIOLATED THE FOURTH AMENDMENT.**

The government makes only a passing attempt to justify the second – and arguably most invasive[1] – intrusion on Mr. Pepe's Fourth Amendment rights complained of in the defense Motion to Suppress Evidence – the search of the contents of Mr. Pepe's computer, the thumb drive, and the digital camera media card. All the government offers on this question is a suggestion in its statement of facts that the forensic examination of the computer media in Singapore was simply an "offer of assistance" to the Cambodian National Police. *See* Government's Opposition, at 6-7. But this does not save the government for two reasons.

---

[1] As recognized by the Supreme Court in *Andresen v. Maryland*, 427 U.S. 463 (1976) with respect to paper documents:
> [T]here are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's papers that are not necessarily present in executing a warrant to search for physical objects whose relevance is more easily ascertainable. In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.

*Id.* at 482 n.11. And as noted specifically with respect to computers in *United States v. Walser*, 275 F.3d 981 (10th Cir. 2001): "Because computers can hold so much information touching on many different areas of a person's life, there is a greater potential for the 'intermingling' of documents and a consequent invasion of privacy when police execute a search for evidence on a computer." *Id.* at 986.

1  First, the government offers no authority or argument as to why a search
2  conducted solely by American agents is not subject to the Fourth Amendment even if
3  it is conducted for the purpose of assisting foreign officials. The foreign search joint
4  venture cases suggest that whether foreign search law standards or American search
5  law standards apply turn not on who *requests* a search but on who *conducts* it. *Cf.*
6  *United States v. Peterson*, 812 F.2d 486, 490 (9th Cir. 1987) (looking to foreign
7  search law standards even where search is joint venture between United States and
8  foreign officials). The computer media search in Singapore was conducted solely by
9  American agents, and so it is subject to American search law standards, not Cambodia
10 search law standards.

12 Second, and in any event, the government's factual premise – that this was just
13 an "offer of assistance" – is not supported by the evidence. The request for the
14 computer media to be examined by American agents was made just one day after the
15 evidence was seized – in a letter from the Acting Regional Security Officer at the
16 United States Embassy in Phnom Penh. *See* Motion to Suppress Evidence, Exhibit G.
17 And that letter was not an "offer of assistance" in response to a request by the
18 Cambodian authorities. It was a request by American agents for "access to the
19 evidence, specifically, Mr. Pepe's computer, hard drive, memory stick, and USB
20 thumb drive so that they may be sent to the United States for computer forensic
21 testing." *Id.* Further, what the forensic examiner produced was a standard
22 Department of Homeland Security ICE "Report of Investigation" – with no reference
23 to any Cambodian investigation. *See* Motion to Suppress Evidence, Exhibit H.

25 In sum, whatever the nature of the search of Mr. Pepe's home, the search of the
26 computer media was an American search subject to the standards which govern
27 American searches. That meant there should have been a warrant, and the absence of

4

a warrant made the search unlawful.

B.  THE SEARCH OF MR. PEPE'S HOME WAS A JOINT VENTURE, DID VIOLATE CAMBODIAN LAW, AND SO WAS UNREASONABLE UNDER THE FOURTH AMENDMENT.

    1.  The Search Was a Joint Venture.

The government seeks to avoid the "joint venture" rule for foreign searches by drawing a distinction between a "joint" investigation and a "parallel" investigation. *See* Government's Opposition, at 5. But this is semantics, not substance. What this Court should look at is substance. *Cf.* Government's Opposition, at 10 (acknowledging that question of whether investigation is joint venture requires a fact-specific inquiry).

What the substance shows here is a joint venture. On each day, Agent Phillips was there during the entire search. He also participated in the search – by looking for and at evidence, if not actually taking it at that time; by looking through documents and taking his own photographs (both of which actions are in and of themselves searches or seizures of sorts); and by giving at least occasional direction when there was something that needed to be done and had not been done by the Cambodian officers on their own. In addition, it was Agent Phillips – or other American agents – who actually took most, if not all, of the evidence into custody within a matter of a few days. *See* Motion to Suppress Evidence, Exhibit D. Under these facts,[2] Agent Phillips can and should be viewed as not just some outside observer but as part of the

---

[2] The defense believes evidence at the hearing on the motions will establish the facts set forth to the extent they are not already established or admitted in the government's opposition and declarations.

"team." That he was not completely in charge as the team leader does not mean there was no joint venture.

None of the search cases cited by the government suggest a contrary conclusion, moreover. In only one of those cases were American agents even present during the search, and in that case they (1) were there only because they had been invited by the foreign officials and (2) played only "a passive role." *See United States v. Benedict*, 647 F.2d 928, 930-31 (9th Cir. 1981). *Compare United States v. Maher*, 645 F.2d 780, 783 (9th Cir. 1981) ("There is no evidence American officials participated in the alleged wiretap, . . . ."); *United States v. Rose*, 570 F.2d 1358, 1362 (9th Cir. 1978) (noting that agents did not participate in and were not present at time of search); *United States v. Stonehill*, 405 F.2d 738, 741-42 (9th Cir. 1968) (noting that agents remained in office across street from foreign law enforcment office while "raids" were conducted).

The earliest of the cases – *Stonehill* – actually provides a good contrast to the present case. The court there pointed to six factors suggesting that there was no joint venture: (1) that no United States agent selected any evidence and that the sole purpose of the raids was to obtain evidence for Philippine proceedings; (2) that all activities of the American agents took place before the raids began or after they ended; (3) that the American agents were given permission to copy documents only after the raids were completed and the documents catalogued; (4) that there was no evidence of American agents attempting to short-circuit American citizens' Fourth Amendment rights; (5) that the American agents affirmatively objected to the searches; and (6) that the American agents were not requesting any action whatsoever, much less instigating an unlawful search. *Stonehill*, 405 F.2d at 746.

The circumstances in the present case were very different. First, Agent Phillips

did select at least some evidence and the raids appear to have been designed to obtain evidence for his purposes as well as proceedings in Cambodia. Second, Agent Phillips' activities were not limited to before the searches began and/or after they ended and he did not object to the searches; to the contrary, he was present during the search process and participated in the examination of evidence. Third, and finally, Agent Phillips was not only allowed to examine and/or copy evidence, but was actually allowed to take evidence when it was still sitting loosely in the bags that were used to remove it from the house.

### 2. There Was a Violation of Cambodian Search Law.

The government's fallback argument that there was no violation of Cambodian search law also fails. First, the claim that the authorities obtained a search warrant prior to the search, as opposed to after the fact, is suspect. As noted in the defense's moving papers, the warrant, while dated June 17, 2006, appears to have been actually issued on some later date, because it is based on a report that is dated June 19, 2006 and refers to information obtained on June 18, 2006. *See* Motion to Suppress Evidence, at 5, 8.

Second, there was no apparent effort to satisfy the preference that there be neighbors present as witnesses. The exhibit which the government characterizes as showing that there were ten "witnesses" present, *see* Government's Opposition, at 14, refers not to "witnesses" but to "participants" and, with the exception of the owner of the house, lists only government officials and non-governmental organization investigators. *See* Government's Opposition, Exhibit A to Declaration of Gary J. Phillips. To characterize these sorts of individuals as the "witnesses" which Cambodian search law requires ignores the obvious purpose of the witness provision, which is to have *neutral* observers present.

C. THE SEARCH WARRANT FOR THE SECOND SET OF COMPUTER MEDIA WAS A FRUIT OF THE UNLAWFUL SEARCH OF THE FIRST SET OF COMPUTER MEDIA.

The Court should also reject the government's argument that the search warrant for the second set of computer media was not a fruit of the unlawful search of the first set of computer media. All that is left in the warrant affidavit once the information from the first unlawful search is excised is (1) an admission about two photographs of naked children, which may or may not have been child pornography[3] and which subsequently had been erased, and (2) suggestive labels on perhaps two of the CDs.[4] This does not establish probable cause to search *every single item* of Mr. Pepe's computer media.[5]

D. THE SEARCH WARRANT AFFIDAVIT DID NOT ESTABLISH PROBABLE CAUSE FOR ALL OF THE CDS LISTED IN THE SEARCH WARRANT.

The government's response to the argument that the search warrant affidavit

---

[3] A photograph of a naked child is not necessarily child pornography. It is child pornography only if the child is engaged in some specified sex act and/or there is "lascivious exhibition" of the genitals or pubic area. *See* 18 U.S.C. § 2256(2)(A), (8). And not every exhibition of the genitals or pubic area is necessarily "lascivious." *See United States v. Hill*, 459 F.3d 966, 968-69, 970-72 (9th Cir. 2006) (noting that "not all images of nude children are pornographic," listing factors to be considered in deciding whether exhibition of genitals or pubic area is "lascivious," and finding probable cause based on detailed description of images).

[4] The government notes in its opposition that titles on the CDs included "15 years old little girls with crazy sex event," "Tender Baby," "14 Years Old Unsensor," and several others which the defense does not read as particularly suggestive. *See* Government's Opposition, at 19 n.8.

[5] Perhaps, based on the labels, there would be probable cause to search the suspiciously labeled CDs. The Court need not address that question unless there was evidence found on those CDs.

did not establish probable cause for all of the CDs listed in the search warrant is an assertion that the case of *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) resolved that issue. The government reads *Hill* too broadly, however. The issue in *Hill* was not whether there was probable cause, but whether officers could remove computer media and search them off-site without explaining in the affidavit why that was necessary. *See Hill*, 459 F.3d at 973. And the court held this was not permissible, stating:

> We do not approve of issuing warrants authorizing blanket removal of all computer storage media for later examination when there is no affidavit giving a reasonable explanation, . . . . Without such individualized justification being presented to the magistrate, we cannot be sure that the judge was aware of the officers' intent and the technological limitations meriting the indiscriminate seizure – and thus was intelligently able to exercise the court's oversight function. An explanatory statement in the affidavit also assures us that the officers could not reasonably describe the objects of their search with more specificity. Accordingly, we hold that the warrant here was overbroad in authorizing a blanket seizure in the absence of an explanatory supporting affidavit, which would have documented the informed endorsement of the neutral magistrate.

*Hill*, 459 F.3d at 976-77 (citations and footnotes omitted).

The court did go on to hold that it would not apply the exclusionary rule, but it so held only because "the officers were 'motivated by considerations of practicality rather than by a desire to engage in indiscriminate "fishing."'" *Hill*, 459 F.3d at 977. But here, in contrast to *Hill*, there was "indiscriminate fishing." The officers did not limit themselves to just CDs with arguably suspicious labels such as "15 years old

9

little girls with crazy sex event," "Tender Baby," and "14 Years Old Unsensor," Government's Opposition, at 19 n.8, or even just unlabeled CDs, but included every CD Mr. Pepe had, including CDs with labels such as "the essential SIMON & GARFUNKEL"; "A Midsummer Night's Dream"; and "MASTERS OF CLASSICAL MUSIC," "BACH," "BRANDENBURG CONCERTO NO. 1," "VIOLIN CONCERTO IN E MAJOR," "Norton," "Windowsxp," and "SAMSUNG CD-RW." *See* Motion to Suppress Evidence Discovered as Result of Computer Media Search Warrant, Exhibit A (warrant), at 4.

In these circumstances, the Court should not extend *Hill*'s holding that the exclusionary rule should not be applied. Evidence found on the CDs in the present case should be suppressed.

E.  THE GOVERNMENT DOES HAVE TO SHOW THAT THE SEARCH OF THE COMPUTER MEDIA UNDER THE SEARCH WARRANT WAS PROPERLY LIMITED TO THOSE FILES WHICH MIGHT REASONABLY BE EXPECTED TO CONTAIN THE ITEMS WHICH THE SEARCH WARRANT ALLOWED AGENTS TO SEARCH FOR.

The government's suggestion that its expert's search of the computer media under the search warrant could be unlimited simply because "the search was limited to computer media," Government's Opposition, at 21, sweeps too broadly. *Hill* does not permit an officer conducting a computer search to conduct a general exploratory search of any and all computer files with no limitation at all; it simply held that the search warrant itself need not set forth limitations. The opinion explained:

> [W]e look favorably upon the inclusion of a search protocol; but its absence is not fatal. . . . [E]ven though a warrant authorizing a computer search might not contain a search protocol restricting the

10

search to certain programs or file names, the officer is always "limited by the long-standing principle that a duly issued warrant, even one with a thorough affidavit, may not be used to engage in a general, exploratory search." The reasonableness of the officer's acts both in executing the warrant and in performing a subsequent search of seized materials remains subject to judicial review.

*Hill*, 459 F.3d at 978 (citations omitted).

How the government's agents focused their searches within the computer media is therefore subject to judicial review. The government does have to show that the search was properly focused.[6]

## II.

## CONCLUSION

First, the evidence found in the warrantless search of the computer media in Singapore must be suppressed, because that search was conducted solely by American agents, without the warrant the Fourth Amendment generally requires for American searches. Second, even the evidence found in the earlier search of Mr. Pepe's home in Cambodia must be suppressed, because there was sufficient American agent participation to trigger the foreign search joint venture exception that makes the

---

[6] The other potential issue raised by the defense Motion to Suppress Evidence Discovered as Result of Computer Media Search Warrant – regarding searches more than sixty days after issuance of the warrant – appears to be moot. The defense argument is only that "any evidence found on media *on which the Government did not find evidence* within the scope of the search warrant within the sixty-day search period authorized by the search warrant must be suppressed." Motion to Suppress Evidence Discovered as Result of Computer Media Search Warrant, at 9 (emphasis added). The defense does not contend that there can be no additional search of the media on which evidence *was* found within the sixty-day period. More specifically, the defense is not claiming additional searches conducted after the sixty-day search period are unlawful if they were conducted only on the eleven CDs on which evidence had already been found.

1  Fourth Amendment's reasonableness requirement applicable; that reasonableness
2  requirement requires compliance with at least the foreign country's law; and there
3  was not compliance with the foreign country's law here.  Third, the evidence found
4  on the second set of computer media under authority of the search warrant must be
5  suppressed because (1) that search warrant was a fruit of the prior unlawful searches
6  and (2) that search warrant did not establish probable cause for searches of the CDs in
7  any event.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: August 31, 2007        By /s/ Carlton F. Gunn
                                  CARLTON F. GUNN
                                  Deputy Federal Public Defender


Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: August 31, 2007        By /s/ Charles C. Brown (by CFG)
                                  CHARLES C. BROWN
                                  Deputy Federal Public Defender