THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (SBN: 132610)
JOHN J. LULEJIAN (SBN: 186783)
Assistant United States Attorneys
Violent and Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0640/8603
    Facsimile: (213) 894-3713
    E-mail:    Patricia.Donahue@usdoj.gov
    E-mail:    John.Lulejian@usdoj.gov

Attorney for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>MICHAEL JOSEPH PEPE,<br><br>    Defendant. | Case No.  CR 07-168-DSF<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT; DECLARATION OF JOHN J. LULEJIAN<br><br>Date:    October 29, 2007<br>Time:    10:00 a.m.<br>Location:    Courtroom of the<br>               Honorable Dale S. Fischer |

       Plaintiff United States of America, by and through its counsel of record, hereby submits its opposition to the Motion to Dismiss Indictment (Docket No. 43), filed by defendant Michael Joseph Pepe.

\\

\\

\

1   This opposition is based on the attached memorandum of points and authorities and

2   declaration, the declaration of Eddy Wang filed concurrently herewith under seal, the files and

3   records of this case, and any additional arguments and evidence presented at the hearing.

4

5   DATED: October 18, 2007                     Respectfully submitted,

6                                               THOMAS P. O'BRIEN
                                                United States Attorney
7
                                                CHRISTINE C. EWELL
8                                               Assistant United States Attorney
                                                Chief, Criminal Division
9

10                                              /s Patricia A. Donahue
                                                PATRICIA A. DONAHUE
11                                              Assistant United States Attorney

12
                                                /s John J. Lulejian
13                                              JOHN J. LULEJIAN
                                                Assistant United States Attorney
14
                                                Attorney for Plaintiff
15                                              UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A.   SECTION 2423(c), AS APPLIED TO DEFENDANT, DOES NOT
        RUN AFOUL OF THE COMMERCE CLAUSE . . . . . . . . . . . . . . . . . . . . . . . 2

        1.   Background of 18 U.S.C. § 2423(c) . . . . . . . . . . . . . . . . . . . . . . . . 2

        2.   The Application of Section 2423(c) to Defendant Does Not
             Violate the Commerce Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

             a.   The Ninth Circuit Has Upheld Section 2423(c)
                  Against A Commerce Clause Challenge . . . . . . . . . . . . . . . . . . . . 4

             b.   The Lapse in Time Between Defendant's Travel to
                  Cambodia and His Illicit Sexual Conduct with Minor
                  Girls Does Not Preclude Prosecution Under Section 2423(c) . . . . . . . 5

             c.   Defendant's Illicit Sexual Conduct was Commercial . . . . . . . . . . . . 9

             d.   Defendant Cannot Rewrite Section 2423(c) To Avoid the
                  Fact That He Falls Within the Class of Persons Whose
                  Conduct Congress Intended to Criminalize by Enacting
                  the Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   B.   DEFENDANT'S PROSECUTION FOR VIOLATING SECTION 2423(C)
        DOES NOT VIOLATE INTERNATIONAL LAW . . . . . . . . . . . . . . . . . . . . . 15

        1.   Extraterritorial Jurisdiction Is Appropriate Under The National
             and The Universality Principles . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.   Extraterritorial Application of Section 2423(c) in this Case Is
             Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        3.   There is sufficient "nexus" between the defendant or the conduct
             condemned and the United States in order to satisfy Due Process. . . . . . 19

IV  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                      PAGE(S)

Blackmer v. United States,
    284 U.S. 421 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Chapman v. United States,
    500 U.S. 453 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hernandez-Guerro,
    147 F.2d 1075 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Huddleston v. United States,
    415 U.S. 814 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

INS v. Cardoza-Fonseca,
    480 U.S. 421, 432 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Bianchi,
    2007 WL 1521123 5 (E.D.Pa. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Bredimus,
    352 F.3d 200 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Bowman,
    260 U.S. 94 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Butler,
    74 F.3d 916, 924 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Clark,
    435 F.3d 1100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. Corey,
    232 F.3d 1166 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Crowell,
    9 F.3d 1452 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Cummings,
    281 F.3d 1046 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Curtiss-Wright Export Corp.,
    299 U.S. 304 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Davis,
    905 F.2d 245 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Devorkin,
    159 F.3d 465 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Frank,
    486 F. Supp. 2d 1353 (S.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TABLE OF AUTHORITIES (Cont'd)

FEDERAL CASES                                                    PAGE(s)

United States v. Hill,
    279 F.3d 731 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Jackson,
    480 F.3d 1014 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

United States v. Khan,
    35 F.3d 426 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. King,
    552 F.2d 833 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Klimavicius-Viloria,
    144 F.3d 1249 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Marcus,
    487 F.Supp.2d 289  (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Thomas,
    893 F.2d 1066 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Turkette,
    452 U.S. 576 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Vasquez-Velasco,
    15 F.3d 833 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

United States v. Walczek,
    783 F.2d 852 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

FEDERAL STATUTES

18 U. S.C. § 1204(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 1591(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2423 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. § 2423(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 2423(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 2423(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Restatement (Third) of Foreign Relations Law of the United States § 402(1)(c) (1987) . . . . . . . 5

Restatement (Third) of Foreign Relations Law of the United States § 403 (1987) . . . . . . . . . . 19

Restatement (Third) of Foreign Relations Law of the United States § 402 (1987) . . . . . . . . . . 14

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### INTRODUCTION

Defendant Michael Pepe is charged in a four-count indictment with traveling in foreign commerce, from the United States to Cambodia, and engaging in illicit sexual conduct with four minor girls, I.T., L.K. S.S. and S.R., between September 1, 2005 and June 12, 2006, in violation of 18 U.S.C. § 2423(c).  Defendant claims that the application of section 2423(c) to him violates the Commerce Clause and international law.  Defendant's arguments are without merit.  His Commerce Clause argument is foreclosed by United States v. Clark, 435 F.3d 1100 (9th Cir. 2006), cert. denied, 127 S.Ct. 2029 (2007), in which the Ninth Circuit held that section 2423(c) comports with the Commerce Clause and international law.  Defendant's attempts to distinguish Clark on its facts and to rewrite section 2423(c) to make it inapplicable to him also fail.  Accordingly, the government respectfully requests that the court deny defendant's motion.

### II

### STATEMENT OF FACTS[1]

In September 2005, defendant, a United States citizen, flew on a commercial airliner from Los Angeles, California, to Phnom Penh, Cambodia.  After his arrival in Cambodia, defendant procured unlimited access to the four minor victims identified in the Indictment as L.K., I.T., S.S. and S.R. through San Thi Chhoeurn (also known as "Basang"), a prostitute whom he used to frequent.  Defendant hired and paid Basang to serve as a translator and to provide girls, including minor girls, to him for sex.   Defendant paid Basang a brokerage fee for the girls she obtained for him. On some occasions she "bought" girls from poor families.  With promises of money, clothes, school, and even adoption, some of the families "sold" their daughters to defendant.

---

[1] The facts set forth in this Statement of Facts are from the Declaration of Eddy Wang, which is filed concurrently herewith under seal because it contains identifying information regarding minor victims, and the attached declaration of John J. Lulejian, as well as in the government's Consolidated Opposition to Defendant's Motions to Suppress (Docket No. 39).

The government notes that Pepe has not offered a declaration to support the facts set forth in his motion, as required by Local Rule 7-6.

1

However, the girls quickly learned that satisfying defendant's sexual appetite was the high price they had to pay for the clothes, food, school, and money that defendant gave them. One victim stated that shortly after she arrived at defendant's residence, Basang taught her how to perform oral sex and how to give defendant sexual massages. Once the girls were "trained," they were forced to sexually gratify defendant, through a number of means, including fondling, oral sex, and vaginal intercourse. Two of the girls were drugged or beaten, bound with rope, and raped.

In exchange for sexual gratification, defendant paid the girls small sums of money, which some gave to their families. For example, one victim stated that she received $1 from him each time she performed oral sex on him or when he raped her. In addition to the money, defendant gave the girls other things of value, such as clothes, stuffed animals, and gifts, and he arranged to send the girls to school and paid an "upfront fee" and a monthly stipend to each of their families

In June 2006, one of the defendant's victims came forward and told a non-governmental organization about the abuse. The Cambodian National Police executed a search warrant and arrested defendant for debauchery. After the complaint was filed in this case, Cambodia expelled defendant to the United States.

**III**

**ARGUMENT**

**A.     SECTION 2423(c), AS APPLIED TO DEFENDANT, DOES NOT RUN AFOUL OF THE COMMERCE CLAUSE**

    **1.     Background of 18 U.S.C. § 2423(c)**

Title 18, United States Code, Section 2423(c) was added to the United States Code as part of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, ("PROTECT Act"), 117 Stat. 650. This provision, entitled "Engaging in Illicit Sexual Conduct in Foreign Places," provides criminal penalties for "[a]ny United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person." The phrase "illicit sexual conduct" is defined in 18 U.S.C. § 2423(f) as "(1) a sexual act (as defined in section 2246) with a person under 18 years of

2

1  age that would be in violation of chapter 109A if the sexual act occurred in the special maritime

2  and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in

3  section 1591) with a person under 18 years of age."

4       This statutory provision, which became effective on April 30, 2003, was first proposed

5  one year earlier as one part of a broader set of amendments to 18 U.S.C. § 2423, in legislation

6  entitled the "Sex Tourism Prohibition Improvement Act of 2002." H.R. Rep. No. 525, 107th

7  Cong. 2nd Sess. 2002.  The House Report accompanying that bill stated that the purpose of the

8  entire bill was to "address a number of problems related to persons who travel to foreign

9  countries and engage in illicit sexual relations with minors."  H.R. No. 107-525, June 24, 2002.

10  The report further notes that

11      [c]urrent law requires the Government to prove that the defendant traveled to a
    foreign country with the intent to engage in sex with a minor.  H.R. 4477

12      eliminates the intent requirement where the defendant completes the travel and
    actually engages in the illicit sexual activity with a minor. . . .  This legislation

13      will close significant loopholes in the law that persons who travel to foreign
    countries seeking sex with children are currently using to their advantage in order

14      to avoid prosecution.

15  H.R. No. 107-525, June 24, 2002.

16       In addition, the House Report states that this statute would be unnecessary if foreign

17  countries had resources and effective law enforcement necessary to prosecute United States

18  citizens for sex crimes with children committed within their borders.  Id.  The Report states that

19  because such individuals often escape prosecution in these foreign countries, the United States

20  has a significant interest in pursuing charges against these crimes in the United States.  Id.  The

21  report specifically observes that "[b]y and large these countries reach out to the United States for

22  help and some even blame the United States for the problem, arguing that many of the sex

23  tourists are American."  See H.R. No. 107-525, June 24, 2002.  Finally, the report identifies that

24  the authority for this legislation is found in Article I, Section 8, of the United States Constitution.

25  See H.R. No. 107-525, June 24, 2002.

26       This proposed piece of legislation passed the House of Representatives but not the

27  Senate.  As a result, what is now Section 2423(c) was reintroduced in the 108th Congress and

28  was ultimately adopted as a part of the PROTECT Act.  The Conference Report for the

3

1   PROTECT Act states that the purpose for Section 2423(c) is to "address a number of problems

2   related to persons who travel to foreign countries and engage in illicit sexual relations with

3   minors." H.R. Conf. Rep. 108-66, 108th Cong. 1st Sess. 2003, reprinted in 2003 U.S.C.C.A.N.

4   683, 686.

5       2.   **The Application of Section 2423(c) to Defendant Does Not Violate the**
            **Commerce Clause**

6

7           a.   **The Ninth Circuit Has Upheld Section 2423(c) Against A Commerce**
                 **Clause Challenge**

8           In United States v. Clark, 435 F.3d 1100 (9th Cir. 2006), cert. denied, 127 S.Ct. 2029

9   (2007), the Ninth Circuit upheld section 2423(c) against a Commerce Clause challenge.

10  Specifically, the court stated that "[i]n light of Congress's sweeping powers over foreign

11  commerce, . . . Congress acted within its constitutional bounds in criminalizing commercial sex

12  acts committed by U.S. citizens who travel abroad in foreign commerce." Id. at 1109.   The

13  Ninth Circuit concluded that "§ 2423(c)'s combination of requiring travel in foreign commerce,

14  coupled with engagement in a commercial transaction while abroad, implicates foreign

15  commerce to a constitutionally adequate degree." Id. at 1114.  In addition, "the phrase 'travels in

16  foreign commerce' unequivocally establishes that Congress specifically invoked the Foreign

17  Commerce Clause." Id.   The Ninth Circuit also explained that although the conduct being

18  regulated must fall within one of the three enumerated categories in order to sustain a regulation

19  under the Interstate Commerce Clause, it had never suggested that those categories applied to the

20  Foreign Commerce Clause. Id. at 1116.  "[N]onetheless," the court contended, "there is a good

21  argument that . . . § 2423(c) can also be viewed as a valid regulation of the 'channels of

22  commerce.'" Id. The court also explained that "Congress legitimately exercises its authority to

23  regulate the channels of commerce where a crime committed on foreign soil is necessarily tied to

24  travel in foreign commerce, even where the actual use of the channels has ceased." Id. The court

25  concluded that Congress did not exceed its power to regulate commerce with foreign nations

26  when it enacted section 2423(c). Id. at 1100-17.  This is a settled issue.  To the extent that

27

28

4

1  Defendant is asking the court to adopt the view expressed in the dissenting opinion Clark (Def.

2  Motion at 10), the government respectfully submits that the majority opinion in Clark is binding.[2]

### b. The Lapse in Time Between Defendant's Travel to Cambodia and His Illicit Sexual Conduct with Minor Girls Does Not Preclude Prosecution Under Section 2423(c)

5        Defendant seeks to distinguish Clark on two grounds.  First, defendant claims that his

6  connection to foreign commerce is more attenuated than that in Clark, because the time gap

7  between his September 1, 2005 travel from the United States to Cambodia and his illicit sexual

8  conduct there with minor girls is longer than the time between the travel and the illicit sexual

9  conduct in Clark.  (Def. Motion at 11-12).  Defendant's argument is without merit factually and

10  legally.

11        In Clark, the Ninth Circuit rejected the claim that Section 2423(c) requires the illicit

12  sexual conduct to occur while the defendant is traveling in foreign commerce.  See Clark, 435

13  F.3d at 1107.  The court stated that the lapse in time between the travel and the arrest in

14  Cambodia was less than two months, and "[w]e see no plausible reading of the statute that would

---

[2]  Congress also has authority to enact Section 2423(c) under the Necessary and Proper Clause and its general foreign affairs power.

    By enacting Section 2423(c), Congress adopted the Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography ("Optional Protocol"), S. Treaty Doc. No. 106-37, which as been ratified by both the Senate and Cambodia..  See United States v. Frank, 486 F. Supp. 2d 1353, 1356-57 (S.D. Fla. 2004); 148 Cong. Rec. S5717-01.  The Optional Protocol provides an explicit framework for extraterritorial jurisdiction over United States citizens who engage in the sexual exploitation of children overseas.  See Frank, 486 F. Supp. 2d at 1357.  Because Section 2423(c) reasonably implements the Optional Protocol, Congress had the authority under the Necessary and Proper Clause to enact the statute.

    Further, as the Supreme Court has noted "[t]he broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true only in respect to our internal affairs."  United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 315-316 (1936).  This general foreign affairs power of Congress provides another possible basis for Congressional authority to regulate in this area.  It is this plenary power that gives Congress the power to legislate with regard to immigration.  See, e.g., United States v. Hernandez-Guerro, 147 F.2d 1075, 1076 (9th Cir. 1998); see also United States v. Bowman, 260 U.S. 94 (1922).  Accordingly, independent of its powers under the Foreign Commerce or Necessary and Proper Clauses, Congress had the authority to enact Section 2423(c) pursuant to its general foreign affairs power.

1    exclude its application to Clark's conduct because of this limited gap." Id. at 1107.  Thus,

2    Section 2423(c) applies when, as in this case, the illicit sexual acts occur after the travel.  See

3    also United States v. Jackson, 480 F.3d 1014, 1024 (9th Cir. 2006) (under Clark, "a lapse in time

4    between a defendant's travels and his sex act will ordinarily not preclude prosecution under the

5    statute").

6         In Clark, the Ninth Circuit noted, "[w]hether a longer gap between the travel and

7    commercial sex act could trigger constitutional or other concerns is an issue we leave for another

8    day." Id. at 1107 n.11.  Based on that footnote, defendant claims that Section 2423(c) does not

9    apply to him because he traveled on September 1, 2005, and the sex acts "are alleged to have

10   occurred sometime in April or May 2006," (Def. Motion at 6),  approximately eight months later.

11   Defendant engaged in a pattern of purchasing little girls, bringing them into his residence, and

12   sexually abusing them over a period of time.  Not surprisingly, these children did not maintain

13   calendars that recorded precisely when their sexual abuse began.  However, based on defendant's

14   photographs and on the girls' statements, it appears that defendant had begun abusing L.K., S.S.

15   and S.R. by December 2005.  Photographs of victims S.R , S.S., and L.K. standing in defendant's

16   Cambodian premises were found on a compact disk seized from defendant's premises and

17   searched pursuant to the search warrant issued in May 2007.  The compact disk had a

18   handwritten label that identified the contents of the disk.  That handwritten label indicates that

19   five of the folders on the disk are "Girls 121005," "Christmas 2005," "Christmas 1,"  "2006-01,"

20   and "Valentine Girls."  Declaration of Eddy Wang ("Wang Decl.") ¶ 4.

21         Those photographs were stored in various file folders bearing names and dates that show

22   that these victims were at defendant's premises as early as December 2005.  See Declaration of

23   Eddy Wang ("Wang Decl."), ¶ 4.  The folder labeled  "Girls 121005" contains photographs of

24   L.K., S.S., and S.R.  Also on the CD were two folders entitled, "Christmas 1" and "Christmas

25   2005," that contain photographs of L.K., S.S., and S.R. standing in front of a Christmas tree and

26   opening presents.  Photographs of L.K., S.S., and S.R. that appear to have been taken in January

27   and February 2006, also were discovered on the CD in folders entitled, "Girls 012206," "2006-01

28   (Jan)-22," and "Valentine Girls."  (Wang Decl. ¶ 4).

1    In addition to the photographs, defendant had receipts from a school in Cambodia for

2  payment of tuition for L.K., S.R., and S.S. that were dated December 30, 2005. (Wang Decl.

3  ¶ 5).  L.K. told investigators that she was tied up and raped on at least three occasions within the

4  first month of her living in defendant's house. (Wang Decl., Ex 5, bates 239).  S.R. told

5  investigators that the night that she and her sister S.S. arrived at defendant's house, Basang

6  showed them how to perform oral sex on defendant.  (Wang Decl., Ex 6., bates 252).

7  Accordingly, it appears that defendant's sexual abuse of these victims had begun by December

8  2005 (if not earlier), within four months of his arrival in Cambodia from the United States.  The

9  fourth victim, I.T., was brought to defendant's residence in May 2006, and he brutally sexually

10  abused her shortly thereafter.  (Wang Decl. Ex. 4, bates 225).

11    In Clark, the Ninth Circuit did not adopt a bright-line rule that the sex acts must occur

12  within two months of the travel in order to comply with the Commerce Clause.  The Clark court

13  stated that no "plausible" reading of the statute could exclude its application to a gap of less than

14  two months.  Similarly, no plausible reading of the statute could prohibit its application to a three

15  to four month period between September 1, 2005 and Christmas 2005, or to the eight-month

16  period between defendant's arrival in Cambodia and his abuse of I.T.  Neither section 2423(c),

17  the Commerce Clause, nor Clark impose a deadline beyond which defendant could sexually

18  abuse children in the country he was visiting

19    Defendant also claims that Section 2423(c) cannot apply to his sexual acts with children

20  because he had permanently moved to Cambodia and thus was not a traveler. (Def. Motion

21  at 11).  Again, Defendant's assertion is belied by the facts.  In July 2006, Defendant wrote a letter

22  to the United States ambassador in Cambodia seeking registration of his marriage to a

23  Cambodian citizen.  In that letter, Defendant stated in pertinent part, "I love Bith Chanry [his

24  wife] very much and we intend to live our lives together in the United States.  Chanry has met

25  and spent time with members of my family from the United States.  My family in the USA will

26  be helping me make the move and cultural transition." (Wang Decl. Ex. 13).  Defendant also

27  wrote letters to his family, which his sister provided to ICE in September 2006.  One of the

28  letters stated, "I have had plans to move back to the USA within a year.  Have been trying to get

7

1  Nary ready to live in our culture." (Wang Decl. Ex. 12).    Another stated, "One thing I had in

2  mind is that when I get back to the USA I am going to need someone to take care of me."  (Wang

3  Decl. Ex. 12).

4       Defendant traveled to Cambodia in September 2005 with a valid United States Passport

5  that was issued in 1999 and bore a listed address in Oxnard, California.  Throughout 2005,

6  Defendant had social security and veteran's benefits deposited into his credit union account in

7  Oxnard, California.  Defendant has maintained his California Driver's License.  He renewed it on

8  his birthday in September 2002 and again in September 2007, both times listing his residence in

9  Oxnard, California.  Defendant also maintained a storage space at a Public Storage facility in

10  Colorado.  On January 13, 2003, he wrote a letter to that facility providing a change of address to

11  Oxnard, California, and stating, "Also, I may be traveling in and out of the country, so my sister

12  will be paying the monthly bill."  (Wang Decl. Ex 16).

13       In United States v. Jackson, 480 F.3d 1014, 1023 (9th Cir. 2007), the Ninth Circuit

14  discussed two alternative meanings of travel as it is used in section 2423(c): "Travel could end

15  when the citizen arrives in a foreign country, or travel could end only once the citizen resettles in

16  or takes up residency in a foreign country."  The court explained that it did not have to choose

17  between these definitions because the defendant had arrived in Cambodia and resettled there,

18  given up his residence in the United States, had a Cambodian home purchased for him, began to

19  fulfill Cambodia's residency requirement, and intended to apply for Cambodian citizenship, all

20  before section 2423(c) was passed, and thus the statute could not apply to him.  Id. at 1024.  As

21  of April 30, 2003, when section 2423(c) was passed, it had been eighteen months since the

22  defendant's last airplane flight from the United States, and sixteen months since he had begun

23  residing in the Cambodian home purchased for him.  Id.

24       In this case, defendant traveled at the beginning of September, and by Christmas was

25  victimizing at least three minor girls.  Unlike the defendant in Jackson, who had purchased a

26  Cambodian residence, defendant was renting the house where he kept the victims.  Contrary to

27  his unsubstantiated claim, defendant intended to return to the United States, and so stated to the

28  United States embassy.  He had not permanently resettled in Cambodia.  See Jackson, 480 F.3d

at 1023 ("an understanding that travel ends only upon a permanent resettlement in a foreign country is supported by the courts' regular use of a distinction between individuals who are physically present without intending to stay in a locale and those who are present with an intent to remain").

In short, under either definition of travel, defendant's conduct falls under the statute. If his travel ended when he arrived in Cambodia on September 3, 2005, then his subsequent illicit sexual acts are sufficiently proximate in time to fall under <u>Clark</u>'s holding that a lapse in time ordinarily will not preclude a section 2423(c) prosecution. If his travel extended throughout his visit to Cambodia, during which he engaged in the sex acts, then his conduct falls under the statute. In passing section 2423(c), Congress intended to sweep broadly to address precisely what occurred here – illicit sex by an Americans in a foreign country. <u>See</u> H.R. Rep. No. 108-66, at 51 (2003) (Conf. Rep.), as reprinted in 2003 U.S.C.C.A.N. 683, 686. The fact that defendant engaged in more long-term, continuous abuse of his victims, rather than visiting a brothel during a short vacation to Cambodia, does not take his conduct outside the statute.

### c.    Defendant's Illicit Sexual Conduct was Commercial

"Illicit sexual conduct" is defined as follows:

(1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or
(2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

18 U.S.C. § 2423(f). "Commercial sex act" is broadly defined to mean "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(c)(1). <u>See</u> <u>United States v. Marcus</u>, 487 F.Supp.2d 289, 306 (E.D.N.Y. 2007) ("The statutory language [of section 1591(c)(1)] provides no basis for limiting the sex acts at issue to those in which payment was made for the acts themselves; rather, the use of the phrase 'on account of which' suggests that there merely needs to be a causal relationship between the sex and an exchange of an item of value. If Congress had intended to limit the commercial acts reached by the statute to prostitution, it could have easily drafted the statute accordingly").

1    Because the defendant in <u>Clark</u> offered to pay young boys for sexual services, the <u>Clark</u>

2    majority based its holding on the commercial component of illicit sexual conduct under Section

3    2423(c). <u>Clark</u>, 435 F.3d at 110 n.16.  However, the Ninth Circuit noted that "[t]his decision to

4    limit our holding to commercial sex acts is an expression of judicial restraint, not an attempt to

5    atomize a cohesive statutory scheme." <u>Id</u>.  In other words, although the court focused its ruling

6    on the facts, it decision to do so cannot be viewed as breaking down Section 2423(c), as

7    Defendant suggests.  (Def. Motion, p.12).

8    In the instant case, there is no question that defendant's conduct was commercial in

9    nature.  Defendant hired Basang, a prostitute from a Phnom Penh bar, to serve has his translator

10   and to procure young girls for him for sex.[3] .  According to Basang, she was responsible for

11   selling and brokering the sale of children to Defendant.  In exchange for her services, Defendant

12   paid Basang approximately $190 per month.  Basang said that at least one of these children was

13   sold into sexual servitude by her parents.  (Wang Decl. Ex. 3, bates 233-35)..

14   Twelve-year old I.T. was sold to Defendant for $200, and  Basang received a $5

15   commission for brokering the sale of I.T. to defendant.  Shortly after I.T. arrived at defendant's

16   dwelling, defendant instructed Basang to drug the girl.  Defendant then forced I.T. to give him a

17   massage and perform oral sex on him.  (Wang Decl. Ex.4, bates 233-35).  On another occasion,

18   I.T. was drugged, blindfolded, gagged, bound, and rape by Defendant.  (Wang Decl. Ex. 4, bates

19   270).

20   Another girl whom Basang procured for Defendant was L.K., an 11-year old.  (Wang

21   Decl. Ex. 3, bates 235).  Defendant paid Basang a brokerage commission of $10, and $300 to

22   L.K.'s mother.  According to L.K., after she arrived at defendant's house, under the ruse that she

23   would be paid to work as a maid, defendant raped her on an average of every two to three days,

24   and at a minimum, once a week.  She also told law enforcement that each time defendant raped

25   her, he gave her $1.  During a three month period, defendant raped L.K. approximately 20 times.

26

27   [3]    Basang currently is incarcerated in Cambodia for her role in Defendant's activities.
     She was charged with Pimping and Trafficking, and sentenced to an 11-year term of
28   incarceration for pimping and a 16-year term for trafficking.

(Wang Decl. Ex. 5, bates 240-41).   At one point, Basang taught her how to perform oral sex on defendant. (Wang Decl. Ex. 3, bates 270). L.K. also said that during the time she was at defendant's house, she received $1 for having sex with defendant. She also received about $50, as well as food, clothes, and toys from him. (Wang Decl. Ex. 5, bates 242).

Basang also told law enforcement that she procured two sisters for defendant: 9-year old S.R. and 10-year old S.S. (Wang Decl. Ex. 3, bates 235, 269-70). Basang stated that although defendant professed that he wanted to adopt the girls as "Cambodian daughters" and played with them and sent them to school, it was a ruse. (Wang Decl. Ex. 3, bates 269-70). The sisters' mother said that initially defendant gave her a case of noodles, 20 kilograms of rice, and $5 for the girls. (Wang Decl. Ex. 8, bates 278). She estimates that in total, she received between $200 and $250 from Defendant and Basang. (Wang Decl. Ex. 8, bates  280).

Shortly after the sisters arrived at defendant's house, Basang taught them to give a sexual massage to Defendant and how to perform oral sex. Wang Decl. Exh 3, 6, bates 251-52, 270. According to S.R., she and her sister, as well as L.K. and another girl, gave defendant massages and took turns providing him with oral sex. S.R. estimated that she "massaged" Defendant more than 30 times. (Wang Decl. Ex. 6, bates 251-52). In exchange, Defendant gave her $1 for massages and oral sex, and a monthly salary of $30. (Wang Decl. Ex. 6, bates 251-52). S.R. gave some of this money to her mother. (Wang Decl. Ex. 6, bates 250).

Basang told law enforcement that in addition to paying money for the individual girls, Defendant also made arrangements with the respective families to pay $30 per month for each girl that stayed with him. In exchange for having unlimited access to the girls for sexual gratification, defendant arranged to send the girls to school and paid an "upfront fee" and a monthly stipend to each of the families. (Wang Decl. Ex. 3, bates 235).

Defendant claims that the illicit sexual conduct was "primarily non-commercial in nature and are based more on allegations of physical force and intimidation." (Def.'s Mem. at 12). Defendant thus acknowledges a commercial aspect to his sexual acts. The government does not dispute that defendant exerted considerable physical force and intimidation over his victims in order to sexually gratify himself. Defendant did not find his child victims in a brothel and pay a

1   fee for a single sexual encounter.  Instead, he purchased continuous, unlimited access to them by

2   paying Basang and the children's impoverished parents to have the girls reside in the house that

3   he was renting.  After he abused the girls, he gave them small amounts of money.  Defendant's

4   conduct falls squarely under the definition, "any sex act, on account of which anything of value is

5   given to or received by any person."  See  18 U.S.C. § 1591(c)(1).  Defendant's attempt to

6   distinguish Clark is without merit.[4]

7              **d.**        **Defendant Cannot Rewrite Section 2423(c) To Avoid the Fact That He Falls Within the Class of Persons Whose**

8                       **Conduct Congress Intended to Criminalize by Enacting the Statute**

9          The PROTECT ACT added Section 2423(c), which states, "Any United States citizen or

10  alien admitted for permanent residence who travels in foreign commerce, and engages in any

11  illicit sexual conduct with another person shall be fined under this title or imprisoned not more

12  than 30 years, or both."  Unlike Section 2423(b), which predates the PROTECT ACT, Section

13  2423(c) does not require that the travel be "for the purpose of engaging in any illicit sexual

14  conduct."  See 18 U.S.C. § 2423(b).  The House Report accompanying the initial bill stated that

15  

16         ───────────────────

17         [4] Even if defendant's illicit sexual conduct was not commercial, it would fall under the Commerce Clause.  The Ninth Circuit has upheld the application of the Commerce Clause in a

18  non-economic arena.  See United States v. Cummings, 281 F.3d 1046, 1048-49 (9th Cir. 2002), (holding that provision of the International Parental Kidnaping Crime Act ("IPKCA"), 18 U. S. C.

19  § 1204(a), prohibiting the retention of a child outside the United States was within the authority of Congress to regulate the channels of foreign commerce, and noting that congressional

20  authority under the Commerce Clause includes the regulation of non-economic activities that "affect, impede, or utilize the channels of commerce").  See also United States v. Bredimus, 352

21  F.3d 200, 206 (5th Cir. 2003), (upholding 18 U.S.C. § 2423(b) against a Commerce Clause challenge and stating that Congress had the authority to regulate non-economic activity to keep

22  the "channels of interstate commerce free from immoral and injurious uses") (citations omitted); United States v. Bianchi, 2007 WL 1521123 *5 (E.D.Pa. 2007) (upholding section 2423(c)

23  against a Commerce Clause challenge on the ground that the defendant had failed to make "a plain showing that Congress has exceeded its constitutional bounds" in enacting the statute, and

24  noting that the Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography, S. Treaty Doc. No. 106-37, 39 L.L.M.

25  1285, 2000 WL 333666017, which has been ratified by the United States, "requires that the sexual exploitation of children by fully covered by a signatory's national criminal law, "whether such offenses are committed domestically or transnationally") (quoting the Protocol).

26  

27  

28  

                                            12

1 the purpose of the bill was to "address a number of problems related to persons who travel to

2 foreign countries and engage in illicit sexual relations with minors."  House Report No. 107-525,

3 June 24, 2002.  The report stated that

4       [c]urrent law requires the Government to prove that the defendant traveled to a
      foreign country with the intent to engage in sex with a minor.  H.R. 4477

5       eliminates the intent requirement where the defendant completes the travel and
      actually engages in the illicit sexual activity with a minor. . . .  This legislation

6       will close significant loopholes in the law that persons who travel to foreign
      countries seeking sex with children are currently using to their advantage in order

7       to avoid prosecution.

8 H.R. No. 107-525, June 24, 2002.

9       Defendant asks the court to interpret Section 2423(c) to exclude his travel to Cambodia

10 and engaging in illicit sexual activity with minor girls.  Specifically, defendant cites a dictionary

11 definition of "and" as "then," cites the dictionary definition of "then" as "immediately soon

12 afterward" or "next in order of time," and concludes that an eight-month gap between the travel

13 and the sex fails to meet his definition.  (Def. Motion p. 13).  As set forth above, defendant's

14 sexual abuse of his victims began within three to four months (if not earlier) of his September

15 2005 arrival in Cambodia.  In any event, as the Ninth Circuit stated in Clark, 435 F.3d at 1107

16 "[t]he statute is plain on its face" and "unambiguous."   The plain language of the statute clearly

17 covers defendant's conduct.

18       Defendant's reading of Section 2423(c) also ignores the purpose of the statute and

19 Congress's intent in enacting it.   The conference report explained that Congress eliminated the

20 intent requirement so that "the government would only have to prove that the defendant engaged

21 in illicit sexual conduct with a minor while in a foreign country."  H.R. No. 108-66 at 51; Clark,

22 435 F.3d at 1108.  It does not make sense that Congress would severely limit the reach of the

23 statute to those instances in which the sexual abuse was "immediately soon" after the travel.

24 Likewise, it does not make sense that Congress would limit the reach of the statute to the sexual

25 abusers who were on a "sex tour," and exclude those who travel on their own to a foreign place

26 and thereafter engage in the sexual exploitation of minors.

27       Defendant urges this court to apply the rule of lenity to narrow Section 2423(c) .  The rule

28 of lenity "can only be invoked after consulting traditional canons of statutory construction.  In

1   fact, the Supreme Court has found the rule to be inapplicable unless there is a grievous ambiguity

2   or uncertainty in the language and structure of the Act, such that even after a court has seize[d]

3   every thing from which aid can be derived, it is still left with an ambiguous statute." United

4   States v. Devorkin, 159 F.3d 465, 469 (9th Cir. 1998) (citations and quotations omitted); see

5   Chapman v. United States, 500 U.S. 453, 463 (1991); United States v. Butler, 74 F.3d 916, 924

6   (9th Cir. 1996).  Further, "[t]he rule of lenity comes into operation at the end of the process of

7   construing what Congress has expressed, not at the beginning as an overriding consideration of

8   being lenient to wrongdoers." United States v. Crowell, 9 F.3d 1452, 1455 (9th Cir. 1993)

9   (quoting Chapman, 500 U.S. at 463)).  Thus, courts will not "blindly incant the rule of lenity to

10  destroy the spirit and force of the law which the legislature intended to and did enact."

11  Huddleston v. United States, 415 U.S. 814, 832 (1974) (citations and quotation omitted).  "'A

12  statute is not ambiguous simply because it is possible to construe [it] narrowly. . . .'" Butler, 74

13  F.3d at 924 (quoting United States v. LeCoe, 936 F.2d 398, 402 (9th Cir. 1991)).  In short, the

14  rule of lenity cannot override common sense, statutory purpose, or the fair meaning (the

15  narrowest meaning) of statutory language.  See United States v. Turkette, 452 U.S. 576, 588 n.

16  10 (1981).

17          As set forth above, Section 2423(c) is clear and unambiguous.  There is no grievous

18  ambiguity or uncertainty in the language and structure of the statute.  The plain meaning of the

19  statute identifies the class of persons to whom Congress intended the statute to apply:  United

20  States citizens, like defendant, who engage in illicit sexual conduct, and travel in foreign

21  commerce.  Thus, because there is no ambiguity in Section 2423(c), the rule of lenity does not

22  apply.

23  **B.      DEFENDANT'S PROSECUTION FOR VIOLATING SECTION 2423(C) DOES
            NOT VIOLATE INTERNATIONAL LAW**

24          Defendant correctly notes that his challenges to Section 2423(c) based on alleged

25  violations of international law are foreclosed by Clark. (Def. Motion, p. 16, n. 3).  In Clark,

26  the Ninth Circuit explained that extraterritorial application of Section 2423(c) is proper based on the

27  nationality principle, and that the exercise of extraterritorial jurisdiction is reasonable.  435 F.3d

28

14

1  at 1106-7.  The government respectfully requests that the court follow Clark and reject

2  Defendant's arguments.

3      1.    **Extraterritorial Jurisdiction Is Appropriate Under The National and The**

4          **Universality Principles**

5      As the Ninth Circuit explained in Clark, "The legal presumption that Congress ordinarily

6  intends federal statutes to have only domestic application is easily over in [defendant's] case

7  because the text of § 2423(c) is explicit as to its application outside of the United States.  By its

8  terms, the provision is exclusively targeted at extraterritorial conduct."  435 F.3d at 1106

9  (citations omitted).

10      Likewise, the extraterritorial application of Section 2423(c) does not violate any

11  international law principles.[5]  Two principles of international law permitting extraterritorial

12  jurisdiction are relevant in this case:  the nationality principle and the universality principle.

13  Restatement (Third) of Foreign Relations Law of the United States § 402(1)(c) (1987).

14  International law allows for the exercise of extraterritorial jurisdiction under the nationality

15  principle where jurisdiction is based on the nationality or national character of the offender.  The

16  universality principle permits extraterritorial jurisdiction for crimes so heinous as to be

17  universally condemned.  In Clark, 435 F.3d at 1107, the Ninth Circuit found that extraterritorial

18  jurisdiction was proper under the nationality principle.  The court declined to address whether the

19  universality principle applied "because extraterritorial jurisdiction of a criminal law need be

20  justified by only one of the five principles of extraterritorial authority."  Id. at 1107, n. 8.

21  _____

22      [5] International law recognizes several principles whereby the exercise of extraterritorial
jurisdiction may be appropriate:  (1) objective territorial principle, under which jurisdiction is

23  asserted over acts performed outside the United States that produce detrimental effects within the
United States; (2) the protective principle, under which jurisdiction is asserted over foreigners for

24  an act committed outside the United States that may impinge on the territorial integrity, security,
or political independence of the United States; (3) territorial, under which jurisdiction is based on

25  the place where the offense is committed; (4) national, under which jurisdiction is based on the
nationality or national character of the offender (nationality principle); (5) universal, under which

26  jurisdiction is appropriate for crimes so heinous that any nation wit control over the Supreme
Court may assert jurisdiction (universality principle); and (6) passive personality, under which

27  jurisdiction is based on the nationality of the victim.  See, e.g., Clark, 435 F.3d 1106 n.8;
United States v. King, 552 F.2d 833, 851-52 (9th Cir. 1976); Restatement (Third) of Foreign

28  Relations Law of the United States § 402 (1987).

First, it is undisputed that Defendant is a United States citizen who maintained ties to the United States. Among other things, he traveled on a United States passport using commercial flights purchased with U.S. funds to fly from the United States to Asia. He maintained bank accounts in the United States to which his pension is deposited. He used American financing to live in Cambodia and lease a dwelling. The fact that he purportedly resided in Cambodia much of the year does not undermine the significance of his ties to the United States. As the Ninth Circuit has noted, "[t]he nationality principle permits a country to apply its statutes to extraterritorial acts of its own nationals. Jurisdiction based solely on the defendant's status as a U.S. citizen is firmly established by our precedent." Clark, 435 F.3d at 1106 (quotation and citation omitted); see United States v. Thomas, 893 F.2d 1066 (9th Cir. 1990) ("International law permits a country to apply its statutes to extraterritorial acts of its nationals."). Indeed, it has long been a universally accepted principle of International law that a country has jurisdiction to exercise its authority both over its territory and its nationals abroad. See United States v. Vasquez-Velasco, 15 F.3d 833, 840, n.5 (9th Cir. 1994); United States v. Walczek, 783 F.2d 852, 854-55 (9th Cir. 1986); see also Frank, 486 F. Supp. 2d at 1359 ("International law, moreover, generally allows a country to exert extra-territorial jurisdiction over its own citizens, as long as the exercise of such jurisdiction is not unreasonable"). Defendant has not renounced his citizenship despite purportedly permanently relocating in Cambodia. Thus, the principle of nationality applies here. See Clark, 435 F.3d at 1107 ("[E]xtraterritorial application of § 2423(c) to [defendant's] conduct is proper based on the nationality principle.") (internal footnote omitted).

Moreover, the extraterritorial jurisdiction in this case also is grounded on the universality principle, because sexual abuse of children has been universally condemned. The Restatement (Third) of Foreign Relations Law § 404 (1987) describes this principle as follows:

> A state has jurisdiction to define and prescribe punishment for certain offenses recognized by the community of nations as of universal concern, such as piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism, even where none of the bases of jurisdiction indicated in § 402 is present.

16

As so defined, the reach of this principle is not limited to those types of offenses named.  Based upon the world-wide concern about the sexual abuse of children,[6] there can be no doubt that this international law principle applies here.  In <u>Clark</u>, although the Ninth Circuit did not find it necessary to rule on whether the extra\territorial application of Section 2423(c) was proper under the universality principle, <u>see</u> 435 F.3d at 1107 n.10, it did note the world-wide "concern about U.S. citizens traveling abroad who engage in sex acts with children."  <u>Id.</u> at 1101.

### 2.    Extraterritorial Application of Section 2423(c) in this Case Is Reasonable

International principles require that in addition to grounding in one of the bases for asserting extraterritorial jurisdiction, such assertion of jurisdiction must also be reasonable.  <u>United States v. Vasquez-Velasco</u>, 15 F.3d 833, 840 (9th Cir. 1994); <u>Restatement (Third) of Foreign Relations Law of the United States</u> § 403 (1987).  The Restatement contains a non-exhaustive list of factors by which such reasonableness is to be determined.[7]

---

[6]    The sexual exploitation of children is a form of slavery, which is universally condemned.  <u>See, e.g.</u>, Eric Thomas Berkman, Note, <u>Responses to the International Child Sex Tourism Trade</u>, 19 B.C. Int'l & Comp. L. Rev. 397, 421 (1996) ("Sexual exploitation of children is not classified among these crimes of a 'universal concern,' but perhaps it might be considered a form of slave trade, which is covered by the universality principle.  After all, most accounts liken the conditions faced by juvenile victims of the child sex tourism trade to slavery.")

[7]    Section 403(2) of the <u>Restatement (Third) of Foreign Relations Law of the United States</u> provides in relevant part, as follows:

(2) Whether exercise of jurisdiction over a person or activity is unreasonable is determined by evaluating all relevant factors, including, where appropriate:
(a) the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory;
(b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect;
(c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted;
(d) the existence of justified expectations that might be protected or hurt by the regulation;
(e) the importance of the regulation to the international political, legal, or economic system;
(f) the extent to which the regulation is consistent with the traditions of the international system;

17

Here, Section 2423(c) meets this standard.  The statute applies only to the United States citizens or resident aliens of the United States thus limiting its scope to those with obvious ties to this country.  The statute contains a prohibition against engaging in sexual acts with children, a prohibition that has international support.  Because of its limited reach and subject matter, there is little likelihood that it conflicts with the laws of other countries.  See id.  Therefore, this statute is reasonable as that term is understood in international law.  See Clark, 435 F.3d at 1107.

In addition, the legislative history of the PROTECT Act, supports the extraterritorial application of Section 2423(c).  See INS v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987) ("[W]e look to the legislative history to determine only whether there is a clearly expressed legislative intention contrary to [the plain] language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses.").  The House Conference Report for the PROTECT Act discusses the reasons for enacting Section 2423(c):

> This section [Section 2423(c)] addresses a number of problems related to persons who travel to foreign countries and engage in illicit sexual relations with minors.  Current law [Section 2423(b)] requires the government to prove that the defendant traveled with the intent to engage in the illegal activity.  Under this section [Section 2423(c)], the government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country.

H.R. Conf. Rep. 108-66, 108th Cong., 1st Sess. 2003, reprinted in 2003 U.S.C.C.A.N. 683, 686 (emphasis added).  This stated intent further establishes that Congress wanted  Section 2423(c) to apply extraterritorially.  Moreover, it is widely recognized that a nation may apply its laws to the extraterritorial acts of its nationals.  See, e.g., Blackmer v. United States, 284 U.S. 421, 437 (1932); United States v. Hill, 279 F.3d 731, 740 (9th Cir. 2002).

### 3. There is sufficient "nexus" between the defendant or the conduct condemned and the United States in order to satisfy Due Process.

Where a statute is found to have extraterritorial application, a court must also find that the application of the statute to a defendant is consistent with due process, that is, that there is sufficient nexus between the defendant or the conduct such that the application of the statute is

_____

(g) the extent to which another state may have an interest in regulating the activity; and
(h) the likelihood of conflict with regulation by another state.

18

1   not arbitrary and unfair.  See United States v. Davis, 905 F.2d 245, 249 (9th Cir. 1990); United

2   States v. Khan, 35 F.3d 426, 429 (9th Cir. 1994).  It has been described as ensuring that a United

3   States court will assert jurisdiction only over a defendant who "should reasonably anticipate

4   being haled into court" in this country.  United States v. Klimavicius-Viloria, 144 F.3d 1249 (9th

5   Cir. 1998).

6          Here, Section 2423(c) applies only to United States citizens or resident aliens of the

7   United States.  This alone satisfies the nexus requirement.  See Clark, 435 F.3d at 1108-1109

8   ("[Defendant] is a U.S. citizen, a bond that 'implies a duty of allegiance on the part of the

9   member of society.  These are reciprocal obligations, one being a compensation for the other.'

10  Predicated on this imputed allegiance, application of § 2423(c) to [defendant's] extraterritorial

11  conduct does not violate the Due Process Clause") (citations omitted); cf United States v. Corey,

12  232 F.3d 1166, 1179 n.9 (9th Cir. 2000) (There is no doubt that the United States may exercise

13  jurisdiction over American nationals living abroad, regardless of where the crime is committed")

14  (citations omitted)..

15         In addition to being a citizen of the United States, as set forth in detail above, defendant

16  continues to maintain ties to the United States.  Defendant traveled to Cambodia on an

17  commercial airlines holding a United States passport.  He retained a California state driver's

18  license.  A source of income in Cambodia was from sources derived in the United States,

19  including his pension.  Further, he maintained ties to the United States by storing his possessions

20  in a storage unit in Colorado.  He also maintained a bank account in Oxnard, California.  It

21  appears that the income that defendant used to pay his child victims and their families, and lease

22  the dwelling used for his sexual misconduct, was derived from an account in the United States.

23  Further, contrary to what he claims in his motion, defendant did intend to return to the United

24  States with his Cambodian wife.  Although defendant's citizenship alone is sufficient to satisfy

25  Due Process concerns, these facts also underscore his multiple and continuing ties with the

26  United States. Accordingly, his Due Process claim is without merit.

27

28

# IV

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's Motion to Dismiss the Indictment.

## DECLARATION OF JOHN J. LULEJIAN

I, JOHN J. LULEJIAN, hereby declare:

1.     I am an Assistant United States Attorney and have been assigned to prosecute United States v. Michael Joseph Pepe, Case No. CR07-168-DSF.  I make this declaration in support of the government's Opposition to Defendant's Motion to Dismiss Indictment in the above-captioned case.

2.     A true and correct copy of the Message of the President of the United States which transmitted the Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography ("Optional Protocol"),  S. Treaty Doc. No. 106-37, to Congress is attached hereto as Exhibit A.

3.     A true and correct copy of Appendix III to the Laws and Trafficking in Person in Cambodia by Sok Sam Oeun, Esq. is attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of October, 2007, at Los Angeles, California.

JOHN J. LULEJIAN

21