SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
CARLTON F. GUNN (No. 112344)
Deputy Federal Public Defender
(E-mail: Carlton_Gunn@fd.org)
CHARLES C. BROWN (No. 179365)
Deputy Federal Public Defender
(E-mail: Charles_Brown@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-1700
Facsimile (213) 894-0081

Attorneys for Defendant
MICHAEL PEPE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL PEPE,<br><br>    Defendant. | NO. CR 07-168-DSF<br><br>**NOTICE OF MOTION; MOTION TO SUPPRESS EVIDENCE FOUND IN ADDITIONAL WARRANTLESS COMPUTER SEARCHES CONDUCTED IN UNITED STATES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: March 31, 2008<br>Hearing Time: 10:00 a.m. |

TO: UNITED STATES ATTORNEY THOMAS O'BRIEN, AND ASSISTANT UNITED STATES ATTORNEYS PATRICIA DONAHUE AND JOHN LULEJIAN:

PLEASE TAKE NOTICE that on March 31, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Dale S. Fischer, United States District Judge, defendant, Michael Pepe, will bring on for

hearing the following motion:

## MOTION

Defendant, Michael Pepe, through his counsel of record, Deputy Federal Public Defender Carlton F. Gunn and Deputy Federal Public Defender Charles C. Brown, hereby moves this Honorable Court for an order suppressing all evidence found during warrantless searches of a computer and thumb drive belonging to defendant which were conducted in the United States after an initial search conducted in Singapore.  This motion is made pursuant to the Fourth Amendment to the United States Constitution and is based upon the attached memorandum of points and authorities, all files and records in this case, and such additional argument and evidence as may be presented at the hearing on the motion.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: March 7, 2008             By___/S/_____
                                 CARLTON F. GUNN
                                 Deputy Federal Public Defender

SEAN K. KENNEDY
Federal Public Defender

DATED: March 7, 2008             By___/S/_____
                                 CHARLES C. BROWN
                                 Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On June 26, 2007, the defense filed a motion to suppress evidence in which it sought to suppress, inter alia, evidence found during a search of a computer and thumb drive belonging to Mr. Pepe. On February 7, 2008, after a third hearing at which it considered supplemental briefing and supplemental testimony, the Court finally denied the motion in full. The Court's ruling was premised on three analytical steps: (1) that a computer search by an American Immigration and Customs Enforcement ("ICE") forensic computer examiner in Singapore was a "joint venture" because it was conducted at least in part to assist Cambodian authorities in a Cambodian investigation; (2) that this made the search not subject to the Fourth Amendment search warrant requirement normally applicable to American searches; and (3) that all the Fourth Amendment required in these circumstances was compliance with Cambodian law.

This reasoning requires independent consideration of later searches of the same computer and thumb drive – conducted by at least a case agent and one additional computer expert, in the United States, after Cambodian charges were dropped, and after Mr. Pepe was transported to the United States for an American prosecution.[1] These searches certainly cannot be characterized as a joint venture. They therefore were subject to the Fourth Amendment requirements normally applicable to American searches, and that means that *they* required a search warrant even if the search in

---

[1] It is not clear exactly how many searches by how many experts and/or agents were conducted here in the United States. This motion will focus on the most well documented searches – a review of the computer by the case agent and an examination documented in a report by a private forensic expert retained by the government. The defense intends the motion to apply to all additional searches of the computer and thumb drive conducted in the United States, however.

Singapore did not. That the search in Singapore had already been conducted does not mean the later searches did not require a search warrant, because at least the later expert searches appear to have been more intensive – and therefore more intrusive – than the Singapore search. The second expert's testimony about the searches he conducted without a search warrant[2] must therefore be excluded.

## II.
## STATEMENT OF FACTS

On June 17, 2006, Cambodian police arrested Mr. Pepe and searched his home. They conducted a second search two or three days later. During the searches, the police seized two computers, a thumb drive, and other computer media.

Soon after these materials were seized, child pornography was found on one of the computers and the thumb drive during an informal examination by at least the Cambodian police and possibly American agents and/or nongovernmental organization representatives.[3] This computer and the thumb drive were sent to an American ICE computer examiner based in Singapore, allegedly because the Cambodian authorities wished a more sophisticated forensic examination.[4] Without any American search warrant, this ICE examiner conducted his own forensic examination of the computer and thumb drive and generated a brief ICE report summarizing what he had found. *See* Exhibit A.

---

[2] Only the computer and thumb drive initially searched by the examiner in Singapore were searched in the United States without a warrant. The government did get a search warrant for other computer media which were seized from Mr. Pepe's house and not searched in Singapore.

[3] The other materials were examined only later in the United States, pursuant to a search warrant, at least as far as the defense knows.

[4] As argued in other motions and at the hearings the Court has conducted, the defense disputes this, but the Court found in favor of the government on this point.

1       While this examination was being conducted, and for a number of months
2 thereafter, Mr. Pepe was held in Cambodian custody on Cambodian charges, and the
3 computer evidence apparently remained with the ICE examiner in Singapore. More
4 than seven months after Mr. Pepe's arrest – in February, 2007 – the Cambodian
5 charges against Mr. Pepe were dropped, American charges were filed, and Mr. Pepe
6 was transported to the United States to face trial on the American charges. At the
7 same time – or perhaps soon thereafter – the computer and thumb drive were sent to
8 the United States.
9
10       The computer and thumb drive – or forensic mirror images thereof – were then
11 subjected to additional warrantless examination – by the case agent, who reviewed
12 the images most easily viewable by a layperson; possibly by another ICE computer
13 expert; and, finally, by an outside forensic computer examiner retained by the
14 government. This latter expert conducted an intensive examination, which is detailed
15 in a ten-page report with sixteen pages of attachments. *See* Exhibit B. A comparison
16 of that report with the brief report by the ICE examiner in Singapore suggests that the
17 search by the private, retained expert may have been significantly more intensive.
18 *Compare* Exhibit B *with* Exhibit A.
19
20 <center>III.</center>
21 <center>ARGUMENT</center>
22
23       The Court's reasoning for upholding the initial search of the computer and
24 thumb drive in Singapore distinguishes that search in critical respects from the later
25 searches of those items in the United States. Under the Court's reasoning, the initial
26 search was constitutional only because it was, according to the Court's findings,
27 conducted at the Cambodian authorities' request and therefore a mere "joint venture."
28 This meant the usual Fourth Amendment requirements – including in particular, the

<center>5</center>

requirement of an American search warrant – did not apply. The Fourth Amendment standard under the "joint venture" cases on which this Court relied requires compliance with only foreign law.

The joint venture cases assume at least *some* foreign involvement in the investigation, however,[5] and there was no foreign involvement whatsoever at the time of the later searches in the United States. Not only were those searches conducted in the United States itself, but the Cambodian investigation and prosecution had been completely dropped, American prosecution had been initiated, and there was nothing other than that American prosecution and investigation left. That means that at least these searches were subject to ordinary Fourth Amendment standards. And that means an American search warrant, which was not obtained for the additional searches of the computer and thumb drive which had been searched in Singapore.[6]

The only thing that can save the government in these circumstances is some argument that there is no expectation of privacy in an item which has already been partially searched. That is an argument which has been considered in cases involving government searches that follow private searches, but it has been accepted to only a limited extent.

Private searches are like foreign searches in that they are not subject to usual Fourth Amendment standards; indeed, they are not subject to the Fourth Amendment at all. *See United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984) (citing *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). The question of

---

[5] It is the defense position that much more is required than could have been conceivably found in the Singapore computer search here, but the Court disagreed with that position.

[6] As noted supra p. 4 n.3, the government did obtain a warrant for searches of the other media, and those searches are not being challenged in this particular motion.

6

what happens when the government search follows and basically duplicates a private search was the central issue considered in the *Jacobsen* case. There, government agents looked inside a package which had been opened and been found to contain cocaine by private shipping company employees, who were of course not subject to the Fourth Amendment. *See id*. at 111. The Supreme Court held that the subsequent examination of the package's contents by a law enforcement agent did not violate the Fourth Amendment. But it so held only because nothing was revealed beyond what the private searchers had already seen and told the agent about.

> [T]here was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell [the agent] anything more than he already had been told. Respondents do not dispute that the Government could utilize the Federal Express employees' testimony concerning the contents of the package. If that is the case, it hardly infringed respondents' privacy for the agents to reexamine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube. The advantage the Government gained thereby was merely avoiding the risk of a flaw in the employees' recollection, rather than in further infringing respondents' privacy. Protecting the risk of misdescription hardly enhances any legitimate privacy interests, and is not protected by the Fourth Amendment. (Footnote omitted.) Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. The agent's viewing of what a private party had freely made available for his inspection did not violate the

|    |    |
|----|----|
| 1  | Fourth Amendment.  (Citations omitted.) |
| 2  | Similarly, the removal of the plastic bags from the tube and |
| 3  | the agent's visual inspection of their contents enabled the agent to |
| 4  | learn nothing that had not previously been learned during the |
| 5  | private search. |

*Id*. at 119-20.[7]

One court has applied *Jacobsen* to the search of computer evidence and drawn a line between more searching examination of the same computer media and examination of additional computer media.  *See United States v. Runyan*, 275 F.3d 449, 461-65 (5th Cir. 2001).  *Runyan* involved the search of a number of computer CDs and held that searching CDs which the private party had not examined at all required a search warrant but opening additional files on CDs which the private party had partially examined did not require a search warrant.  *See id.* at 463-64.  The court reasoned that "an individual's expectation of privacy im the contents of a container has already been compromised if that container was opened and examined by private searchers."  *Id.* at 465.  The court also noted that, first, it was not clear from the record that the agent had actually opened files that the private party had not opened, and, second, that it was perhaps two or three such files if he had opened additional

---

[7] The Court also considered whether a subsequent "field test" of the white powder in the tube which revealed that it was cocaine violated the Fourth Amendment and concluded it did not.  *See id*. at 122-23.  But this was only because "[t]he field test at issue could disclose only one fact previously unknown to the agent – whether or not a suspicious white powder was cocaine," *id.* at 122, and "[a] chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy," *id.* at 123.  The Ninth Circuit has emphasized the narrow scope of this extension of the search in *Jacobsen* by strictly limiting it.  *See, e.g., United States v. Lingenfelter*, 997 F.2d 632, 638 (9th Cir. 1993) (stating test established by *Jacobsen* as "[n]o legitimate expectation of privacy is impinged by governmental conduct that can 'reveal nothing about non-contraband items.'" (Quoting *United States v. Colyer*, 878 F.2d 469, 475 (D.C. Cir. 1989) and *Jacobsen*, 466 U.S. at 124 n.24.))  *Compare United States v. Mulder*, 808 F.2d 1346, 1348 (9th Cir. 1987) (holding *Jacobsen* inapplicable to test that "was not a field test which could merely disclose whether or not the substance was a particular substance, but was a series of tests designed to reveal the molecular structure of a substance and indicate precisely what it is").

files. *See id.* at 464.

*Runyan* acknowledged that its holding was inconsistent with *United States v. Rouse*, 148 F.3d 1040 (8th Cir. 1998), however. *See Runyan*, 275 d.3d at 465. The test applied in *Rouse* was whether "the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Rouse*, 148 F.3d at 1041 (quoting *Jacobsen*, 466 U.S. at 117). This mirrors the test adopted by the Ninth Circuit, which is of course what governs this Court. *See United States v. Bowman*, 215 F.3d 951, 963 (9th Cir. 2000) (stating that "the agent's search is permissible, and constitutional, to the extent that it mimicked the private search conducted by the manager of Federal Van & Storage" and noting government concession that viewing of film exceeded private search).

The test as articulated in *Rouse* and by the Ninth Circuit is the better view simply on the merits, moreover, especially when dealing with something like a computer with a 40-gigabyte hard drive, *see* Exhibit A, at 1; Exhibit B, at 1, that can store virtually a person's whole life. As explained by Professor LaFave in his treatise on search and seizure:

> The court in *Runyan* . . . held that the police in that case did not exceed the scope of the private search when they examined more files on each of the disks than did the private searchers. It is certainly open to question whether the *Runyan* court was correct on this branch of the case. The court claimed that it had "adopted the logic" of *United States v. Simpson*[, 904 F.2d 607 (11th Cir. 1990)], said to be "that the police do not exceed the scope of a prior private search when they examine the same materials that were examined by the police private searchers [sic], but they examine these materials more thoroughly than did the private

9

|   |   |
|---|---|
| 1 | parties." The facts of *Simpson* are that FedEx investigators |
| 2 | opened a box, determined that the magazines therein contained |
| 3 | child pornography, and then played four of the tapes therein and |
| 4 | determined that they appeared also to involve child pornography, |
| 5 | after which an FBI agent and assistant U.S. attorney viewed *the* |
| 6 | *very same* magazines and videotapes, and the court's holding in |
| 7 | that case was that the latter viewing "did not exceed the scope of |
| 8 | the prior private searches for Fourth Amendment purposes simply |
| 9 | because they took more time and were more thorough than the |
| 10 | Federal Express agent." But the police in *Runyan* opened up files |
| 11 | on privately-examined discs that the private searcher had not even |
| 12 | opened, which seems quite unlike the situation in *Simpson* and |
| 13 | more analogous to *United States v. Rouse*. |

1 Wayne R. LaFave, *Search and Seizure* 277-78 (4th ed. 2004) (footnotes omitted) (emphasis in original). To say that looking at some part of such an extensive storage device eliminates the expectation of privacy as to all other parts is like saying that looking at some documents in a warehouse eliminates the expectation of privacy as to all other documents in the warehouse.

    Under this test, the only constitutionally admissible testimony about the later searches of the computer and thumb drive that were searched without a warrant is testimony about what was already found by the first expert. Since testimony by a second expert about that would be duplicative and cumulative, and it would take a great deal of time to try to clearly identify the permissible detail, the Court can and should simply exclude the second expert, *cf*. Fed. R. Evid. 403 (permitting exclusion of testimony where probative value outweighed by considerations including "considerations of undue delay, waste of time, or needless presentation of cumulative evidence"), at least as to any testimony about the computer's and thumb drive's

1 contents.

## IV.

## CONCLUSION

The warrantless searches of the computer and thumb drive in the United States violated the Fourth Amendment even if the initial search in Singapore did not. The Court should exclude all testimony about what was found in the later searches in the United States.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: March 7, 2008        By____/S/_____
                             CARLTON F. GUNN
                             Deputy Federal Public Defender


SEAN K. KENNEDY
Federal Public Defender

DATED: March 7, 2008        By____/S/_____
                             CHARLES C. BROWN
                             Deputy Federal Public Defender