```
1   THOMAS P. O'BRIEN
    United States Attorney
2   CHRISTINE C. EWELL
    Assistant United States Attorney
3   Chief, Criminal Division
    PATRICIA A. DONAHUE (SBN: 132610)
4   JOHN J. LULEJIAN (SBN: 186783)
    Assistant United States Attorneys
5   Violent and Organized Crime Section
         1500 United States Courthouse
6        312 North Spring Street
         Los Angeles, California 90012
7        Telephone:  (213) 894-0640/8603
         Facsimile:  (213) 894-3713
8        E-mail:     Patricia.Donahue@usdoj.gov
         E-mail:     John.Lulejian@usdoj.gov
9
    Attorney for Plaintiff
10  UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR 07-168(A)-DSF |
| | ) |
| Plaintiff, | ) GOVERNMENT'S OPPOSITION TO |
| | ) DEFENDANT'S MOTIONS TO EXCLUDE |
| | ) TESTIMONY OF DR. WENDY FREED |
| v. | ) AND JAMES CLEMENTE; Memorandum |
| | ) of Points and Authorities |
| MICHAEL JOSEPH PEPE, | ) |
| | ) Trial:    May 7, 2008 |
| Defendant. | ) Time:     8:00 a.m. |
| | ) Location: Courtroom of the |
| | )   Honorable Dale S. Fischer |
| | ) |

Plaintiff United States of America hereby submits its opposition to defendant's motions to exclude the testimony of Supervisory Special Agent James Clemente and of Dr. Wendy Freed. This opposition is based on the attached memorandum of points and

//
//
//
//

authorities, the files and records of this case, and any additional arguments and evidence presented in court.

DATED: April 28, 2008          Respectfully submitted,

                               THOMAS P. O'BRIEN
                               United States Attorney

                               CHRISTINE C. EWELL
                               Assistant United States Attorney
                               Chief, Criminal Division


                               */s Patricia A. Donahue*

                               PATRICIA A. DONAHUE
                               Assistant United States Attorney


                               */s John J. Lulejian*

                               JOHN J. LULEJIAN
                               Assistant United States Attorney

                               Attorney for Plaintiff
                               UNITED STATES OF AMERICA

2

TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . 1

I     INTRODUCTION . . . . . . . . . . . . . . . . . . . 1

II    SUMMARY OF FACTS . . . . . . . . . . . . . . . . . 1

      A.   SSA James Clemente . . . . . . . . . . . . . . 1

      B.   Dr. Wendy Freed . . . . . . . . . . . . . . . 3

III   ARGUMENT . . . . . . . . . . . . . . . . . . . . . 4

      A.   The Standard for the Admissibility of
           Non-Scientific Expert Testimony is Flexible   . . . . 4

      B.   The proposed testimony of SSA Clemente and of
           Dr. Freed is both relevant and reliable . . . . . . . 6

           1.   SSA Clemente . . . . . . . . . . . . . . . 6

           2.   Dr. Freed . . . . . . . . . . . . . . . . 10

      C.   On direct examination, the government will not
           ask SSA Clemente or Dr. Freed to opine about
           this case . . . . . . . . . . . . . . . . . . . 15

      D.   Rule 403 Does Not Provide a Vehicle for
           Exclusion of SSA Clemente's and Dr. Freed's
           Testimony . . . . . . . . . . . . . . . . . . 17

      E.   A Pre-Trial Hearing is Not Required . . . . . . . . 18

IV    CONCLUSION . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES

FEDERAL CASES                                                PAGE(S)

Daubert v. Merrell Dow Pharm., Inc.,
     509 U.S. 579 (1993) . . . . . . . . . . . . . . 1, 5, 14

Jinro America Inc. V. Secure Investments, Inc.,
     266 F.3d 993 (9th Cir. 2001) . . . . . . . . . . . . 13

Kumho Tire Co. Ltd. v. Carmichael,
     526 U.S. 137 (1999) . . . . . . . . . . . . . . . 1, 5, 6

Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996) 6

United States v. Alatorre,
     222 F.3d 1098 (9th Cir. 2000) . . . . . . . . . . . . 18

United States v. Antone,
     981 F.2d 1059(9th Cir. 1992) . . . . . . . . . . . . 14

United States v. Barnard,
     490 F.2d 907 (9th Cir. 1973) . . . . . . . . . . . . 16

United States v. Bighead,
     128 F.3d 1329 (9th Cir. 1997) . . . . . . . . . . 14, 15

United States v. Binder,
     769 F.2d 595 (9th Cir. 1985) . . . . . . . . . . . . 16

United States v. Cordoba,
     104 F.3d 225 (9th Cir. 1997) . . . . . . . . . . . . 8

United States v. Cross,
     928 F.2d 1030 (11th Cir. 1991) . . . . . . . . . . . 8

United States v. Espinosa,
     827 F.2d 604 (9th Cir.1987) . . . . . . . . . . . . . 9

United States v. Fagan,
     996 F.2d 1009 (9th Cir. 1993) . . . . . . . . . . . 17

United States v. Hadley,
     918 F.2d 848 (9th Cir. 1990) . . . . . . . . . . . . 14

United States v. Hankey,
     203 F.3d 1160 (9th Cir. 2000) . . . . . . . . . . 8, 17

United States v. Hardy,
     289 F.3d 608 (9th Cir. 2002) . . . . . . . . . . . . 17

United States v. Hayward,
     359 F.3d 631 (3rd Cir. 2004) . . . . . . . . . . . . 7

TABLE OF AUTHORITIES (Cont'd)

FEDERAL CASES                                                    PAGE(S)

United States v. Hitt,
        473 F.3d 146 (5th Cir. 2006) . . . . . . . . . . . . . 7

United States v. Long,
        328 F.3d 655 (D.C. Cir. 2003) . . . . . . . . . . . . 7

United States v. Maher,
        645 F.2d 780 (9th Cir.1981) . . . . . . . . . . . . . 9

United States v. McInnis,
        976 F.2d 1226 (9th Cir. 1992) . . . . . . . . . . . . 17

United States v. Patterson,
        819 F.2d 1495 (9th Cir.1987) . . . . . . . . . . . . 9

United States v. Romero,
        189 F.3d 576 (7th Cir. 1999) . . . . . . . . . . 7, 8, 10

United States v. Valencia-Amezcua,
        278 F.3d 901 (9th Cir. 2002) . . . . . . . . . . . . 8

Vang v. Xiong,
        944 F.2d 476 (9th Cir. 1999) . . . . . . . . . . . . 12

Windham v. Merkle,
        163 F.3d 1092 (9th Cir. 1998) . . . . . . . . . . . . 9


FEDERAL RULES

Federal Rules of Evidence 401 . . . . . . . . . . . . . . . 1, 4

Federal Rules of Evidence 402 . . . . . . . . . . . . . . . 4

Federal Rules of Evidence 403 . . . . . . . . . . . . . . . 17

Federal Rules of Evidence 702 . . . . . . . . . . . 5, 6, 15, 16

Federal Rules of Evidence 704(b) . . . . . . . . . . . . . 16

Federal Rules of Criminal Procedure 16(a)(1)(G) . . . . . . . . 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

The government has given expert witness notice pursuant to Fed.R.Crim.P. 16(a)(1)(G) that it will seek to call FBI Supervisory Special Agent (SSA) James Clemente and Dr. Wendy Freed as expert witnesses in its case in chief. SSA Clemente and Dr. Freed both are qualified to testify about matters that will assist the jury in understanding the evidence offered in this case. Their proposed testimony satisfies the relevance and reliability requirements of Federal Rules of Evidence 401 and 702, as well as <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), and is not unduly prejudicial. In addition, a pre-trial hearing is not required to determine the appropriateness of this expert testimony, although the Court has discretions to conduct such a hearing.

**II**

**SUMMARY OF FACTS**

**A.   SSA James Clemente**

SSA Clemente has been employed as an FBI agent for 21 years, and since 1998 he has been assigned to the National Center for the Analysis of Violent Crime in the unit that addresses crimes against children. Since then, he has been qualified as an expert witness in the areas of child sex offender behavior, child sexual victimization, and child pornography in a number of courts, including in this district. The government gave notice that SSA Clemente would testify about child sex offender behavior and

1

child sexual victimization, specifically "grooming," which is the process by which an adult contacts and gains the trust of a child victim and, at times, the child's parent(s) and/or guardian(s), in order to gain access to the child for the purpose of engaging in, or attempting to engage in, sexual or other inappropriate acts with the child.  Due primarily to his training and experience, SSA Clemente is well-versed in the behavior of those who victimize children as well as the behaviors of compliant child victims.  If called, SSA Clemente will educate the jury on how individuals who victimize children typically achieve compliance from, or "groom," minor victims.  SSA Clemente will testify, for example, that one of the first steps in achieving compliance is to identify the needs of the child, while a subsequent step involves fulfilling those needs.  Allowing SSA Clemente to provide this testimony will help put into context evidence presented by other witnesses at trial and it will help the jury understand the behavior of child victims that is often incomprehensible and counter-intuitive to lay persons unfamiliar with such cases.

The government produced SSA Clemente's curriculum vitae, a transcript of his testimony last year at the jury trial in United States v. James Sanders, No. ED CR 04-42-VAP, and slides from his powerpoint presentation on child sex offenders and child sexual victimization.  The government told defense counsel that SSA Clemente will not offer any opinion regarding the defendant or the victims in this case and that, as in the Sanders case, he would educate the jury about grooming and about the subject

matter in the powerpoint slides.  ((Defense Motion to Exclude
Clemente Testimony, Ex. A).

**B.   Dr. Wendy Freed**

Dr. Freed is a Consulting Psychiatrist at Miller Children's
Abuse and Violence Intervention Center and an Associate Clinical
Professor at the University of Southern California Department of
Psychiatry.  Dr. Freed has conducted extensive research, and
given numerous lectures and presentations, on the sexual
exploitation of women and children in Cambodia.  (Her curriculum
vitae is in Exhibit A to the defense motion to preclude her
testimony).  In addition to the letter attached to the defense
motion to preclude her testimony, the government has produced the
slides from the following four powerpoint presentations given by
Dr. Freed: "Mental Health of Cambodian Women in Prostitution:
Critical Issues," dated December 2005, "Hidden in the Shadows:
Sex Trafficking and Women's Health, dated March 2007, "Sexual
Exploitation: Trauma and Women's Health," dated February 2006,
and "Medical & Psychological Needs of Trafficked Persons," dated
March 2005, and her articles "From Duty to Despair: Brothel
Prostitution in Cambodia," published in 2003, and "Commercial
Sexual Exploitation of Women and Children in Cambodia: Personal
Narratives: A Psychological Perspective, Report prepared fo
Physicians for Human Rights" published in 1997.[1]  Dr. Freed has
spent considerable time in Cambodia and in providing mental

---

[1] The government has filed concurrently herewith copies of
its disclosure letters with the four powerpoint presentations and
the article about brothel prostitution in Cambodia (Ex A, tabs 1
through 5) and the article Dr. Freed researched and wrote for
Physicians for Human Rights (Ex B.)

health treatment in the United States to refugees from Southeast Asia.

Dr. Freed will testify about societal attitudes in Cambodia towards Cambodian and Vietnamese women and girls, the cultural role of being a good daughter fulfilling her duty and obligation to her family, and the cultural belief in acceptance of predestined fate, as those subjects relate to the sale of girls for sex. Dr. Freed will explain that the girls who are sold for sex and subjected to repeated sexual trauma experience self-blame, shame, grief and depression, fear, and disruption of trust. In addition, she will explain that girls and women in this situation may employ strategies to enhance their survival, such as submitting to or finding ways to please the perpetrators. find the best way to survive. Like SSA Clemente, Dr. Freed will not offer an opinion about defendant or about the victims in this case. She will educate the jury about the relevant cultural issues set forth above.

### III

### ARGUMENT

**A.    The Standard for the Admissibility of Non-Scientific Expert Testimony is Flexible**

The admissibility standard for relevance is set by Rules 401 and 402 of the Federal Rules of Evidence. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Pursuant to Rule 402, "All relevant evidence is admissible." Fed. R. Evid. 402.

4

The admissibility of expert witness testimony is further governed by Federal Rule of Evidence 702 and common law doctrines, including <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993) and its progeny.  Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case.

Fed.R.Evid. 702.

Under <u>Daubert</u>, trial judges are charged with the responsibility of acting as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Daubert</u>, 509 U.S. at 589.  The <u>Daubert</u> factors for reliability include: (1) whether a theory or technique can be (and has been) tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.  <u>Daubert</u>, 509 U.S. at 149-50.

The Court applied its <u>Daubert</u> analysis to nonscientific evidence in <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137, 147 (1999).  In <u>Kumho Tire</u>, the Court stated that the test for reliability for non-scientific experts is "flexible," and that "<u>Daubert</u>'s list of specific factors neither necessarily nor

exclusively applies to all experts or in every case." <u>Id.</u> at
150.  The Court held that the district court has "the same broad
latitude when it decides how to determine reliability as it
enjoys in respect to its ultimate reliability determination."
<u>Id.</u>  In applying <u>Daubert</u>, "the rejection of expert testimony is
the exception rather than the rule.  <u>Daubert</u> did not work a
'seachange over federal evidence law,' and 'the trial court's
role as gatekeeper is not intended to serve as a replacement for
the adversary system.'"  Fed.R.Evid. 702, Advisory Committee
Notes, 2000 Amendments (quoting <u>United States v. 14.38 Acres of</u>
<u>Land Situated in Leflore County, Mississippi</u>, 80 F.3d 1074, 1078
(5th Cir. 1996)).

**B.  The proposed testimony of SSA Clemente and of Dr. Freed is
both relevant and reliable**

**1.  SSA Clemente**

SSA Clemente's proposed testimony is both relevant and
reliable.  Defendant is charged with seven counts of traveling to
Cambodia and engaging in illicit sexual conduct with minor girls
between September 2005 and June 2006.  The evidence adduced at
trial will establish that three of the victims lived with
defendant in his Phnom Penh residence for at least six months,
during which period the illicit sexual conduct was ongoing, and
the other girls lived with defendant for varying lengths of time.
The defense will contend that defendant did not engage in this
behavior, and that the seven minor girls, each of whom has
identified defendant as having engaged in illicit sexual conduct
with her, are mistaken and/or lying.  Whether defendant engaged
in grooming behavior to seduce the minor girls is evidence that

has a tendency to make the existence of a fact that is of consequence to the determination of the action – i.e., whether defendant engaged in illicit sexual conduct with those girls -- more probable than it would be without the evidence.  As the court explained in United States v. Romero, 189 F.3d 576 (7th Cir. 1999) in affirming the admission of testimony very similar to SSA Clemente's proposed testimony in this case, "The testimony was critical in dispelling from the jurors' minds the widely held stereotype of a child molester as 'a dirty old man in a wrinkled raincoat' who snatches children off the street as they wait for the school bus.  Many real-life child molesters use modern technology and sophisticated psychological techniques to 'seduce' their victims."  Romero, 189 F.3d at 584.

Although the Ninth Circuit has not addressed this issue, several other circuits have affirmed the admission of precisely this type of testimony against challenges under Rules 403, 404, 702 and 704(b) of the Federal Rules of Evidence.  See United States v. Hitt, 473 F.3d 146, 158-59 (5th Cir. 2006) (affirming admission of expert testimony regarding both typical grooming behavior of child sex offenders and sexual abuse victims returning to their abusers in case involving interstate transportation of a minor for illicit sexual activity); United States v. Hayward, 359 F.3d 631, 636-37 (3rd Cir. 2004) (affirming admission of behavioral expert's testimony that "elucidated the motives and practices of an acquaintance molester" as to defendant charged with transporting a minor in interstate and foreign commerce); United States v. Long, 328 F.3d 655, 665-66 (D.C. Cir. 2003) (expert properly allowed to testify

about "sexual exploitation of children, including the typology, identification, characteristics and strategies of a sexual offender, particularly preferential sex offenders, and the characteristics and behavior of child victims of sexual abuse," in case involving interstate transportation of a minor for criminal sexual activity and possession of child pornography, as the expert testimony "was designed to aid the jury in understanding the modus operandi of preferential sex offenders"); Romero, 189 F.3d at 583-85 (extensive expert testimony as to characteristics and methods of preferential child molesters admissible in case involving kidnapping and transporting a minor for sex); United States v. Cross, 928 F.2d 1030, 1050 (11th Cir. 1991) (affirming admission of behavioral scientist's testimony that pedophiles often derive sexual satisfaction from and collect seemingly innocent material, such as photographs of nude children).

In addition, in other contexts the Ninth Circuit has approved expert testimony that explains a criminal methodology that may not be readily apparent to the jury. See United States v. Cordoba, 104 F.3d 225, 229-30 (9th Cir. 1997) (affirming the admission of expert testimony regarding the modus operandi of sophisticated narcotics traffickers as unwilling to entrust large quantities of illegal narcotics to unknowing couriers); United States v. Valencia-Amezcua, 278 F.3d 901, 908 (9th Cir. 2002) ("[I]t is commonplace that expert testimony regarding the structure of criminal enterprises is admissible to help the jury assess a defendant's involvement in that enterprise"); United States v. Hankey, 203 F.3d 1160, 1169-70 (9th Cir. 2000)

8

(affirming admission of expert testimony regarding gang
membership of two defendants and the "code of silence" and
retaliation that prevented members of affiliated gangs from
testifying against one another); <u>Windham v. Merkle</u>, 163 F.3d
1092, 1103-04 (9th Cir. 1998) (on habeas review allowing
testimony from street gang expert regarding factions of Crips and
Bloods street gang, and co-defendant's membership in Crips gang,
even though defendant was not gang member, because information
was relevant to "prove identity of perpetrator and establish
motive" for assaults at issue); <u>United States v. Espinosa</u>, 827
F.2d 604, 611-12 (9th Cir.1987) (allowing expert testimony
regarding the use of apartments as "stash pads" for drugs and
money); <u>United States v. Patterson</u>, 819 F.2d 1495, 1507 (9th
Cir.1987) (allowing expert testimony on how criminal narcotics
conspiracies operate); <u>United States v. Maher</u>, 645 F.2d 780, 783
(9th Cir.1981) (permitting expert testimony that defendant's
actions were consistent with the modus operandi of persons
transporting drugs and engaging in countersurveillance).

In the same way, SSA Clemente's specialized knowledge will
assist the jury in understanding how child sex offenders operate
to accomplish child sex victimization – a subject with which most
jurors will have no experience.  This testimony will be highly
relevant.  Defendant provided the victims – girls from
impoverished families -- with a nice place to live, pretty
clothes, the opportunity to go to school, stuffed animals, and
Christmas and birthday gifts.  He identified their needs and
interests and attempted to fulfill them.  SSA Clemente's

testimony will shed light on the meaning and significance of this evidence.  See Romero, 189 F.3d at 586.

**2.  Dr. Freed**

Dr. Freed's proposed testimony is also relevant and reliable.  The victims in this case are Cambodian and Vietnamese girls who live in Cambodia.  Few, if any, jurors will have spent any time in Cambodia or have any familiarity with the culture there.  Their availability to defendant, and their apparent acceptance of some of his behaviors, will be difficult for the jury to comprehend without some understanding the aspects of Cambodia culture that Dr. Freed will address.

The testimony is particularly probative in light of the deposition testimony of the two mothers who had their daughters live with defendant for more than six months.  The defense took their depositions in Cambodia.  L.K.'s mother that she and her two children, including L.K. (age 14), moved in with defendant in November 2005, and that defendant offered to pay for L.K.'s schooling, that defendant kicked her out of the house after she had been there three months, but that L.K. stayed to live with defendant so that L.K. could continue to go to school.  The school was located around the corner from defendant's house.  L.K's mother testified that she could not afford to send her daughter to school.  L.K.'s mother also testified that defendant gave the children money, and that he gave L.K.'s mother money, which she used to buy clothes for L.K.  L.K's mother also testified that defendant had a birthday party at his house for L.K. at which both L.K. and her mother were smiling, that defendant gave L.K. a bracelet for her birthday.  She also

testified that defendant gave L.K. a Christmas present.  When she did not live with defendant, L.K.'s mother lived in house with no running water, no toilet, one bed, located outside under a mosquito net, that the entire family shared.  L.K. mother testified, "You know, I – I used to be poor.  I used to be poor, very very poor, and stricken, and my kids and I were very happy to – to live at his place.  There was – He gave us birthday parties and other holidays, and we were very happy."  (Ly Kim Eng Deposition, p. 61).  She also testified that she admired defendant for giving her family a better life.  Id. at 62.

Koung Lang, the mother of S.S. and S.R. testified that she was very poor, that her house had burned down, that both she and her husband had health problems, that she could not afford to send her daughters (ages 10 and 11) to school, and defendant offered to pay for the girls live with him and go to school. Koung Lang also testified that defendant gave money to her daughter.  She testified that defendant "was kind and compassionate" to help her children, and that she was "just a peasant" who did not feel "good enough to go into his house." (Koung Lang Deposition, pp. 30-31).  She testified that she and her husband were invited to defendant's house at Christmas, and to a beauty pageant at school.  She also testified that defendant paid her $30 per month, from January until May 2006 (she stated that she did not receive the June payment) for each of her daughters, and that the $30 would help her pay for electricity, rent and a new motorcycle.  She also testified that her daughters told her "not to worry," that they would go to school study hard,

and "grow up to be someone and help support their mother."

(Koung Lang Deposition, p. 52).

Dr. Freed will provide the jury with a cultural context for the events in this case.  The Ninth Circuit has approved this type of testimony.  In <u>Vang v. Xiong</u>, 944 F.2d 476 (9th Cir. 1999), several Hmong women claimed they were raped by a state employee.  The trial court permitted plaintiffs' expert to testify "generally as to the Hmong culture, but [precluded him from testifying] as to his own opinion regarding the specifics of the case, such as whether there was a rape or why these particular plaintiffs did not report the rape."  <u>Id.</u> at 481. Specifically, the expert testified "to a general explanation of Hmong culture and the role of women in that culture," including that Hmong women are generally submissive and are raised to respect and obey men.  <u>Id.</u> at 481.  The Ninth Circuit stated:

> The testimony was relevant to assist the trier of fact to understand certain behavior of the parties here that might otherwise be confusing, and to explain the cause, effect and nature of long time Hmong reliance on government agencies for support.  The testimony was prejudicial to [defendant] because it supported plaintiffs' assertion that he raped them.  It was not, however, <u>unduly prejudicial</u> because of its limited scope and direct relevance to the issues in the case.

<u>Id.</u> at 481-82 (emphasis in original)

In particular, the court in <u>Vang</u> noted that the expert testimony regarding the place of Hmong women in that culture was helpful to the jury in understanding the victims' continued contact with the victim after he raped them.  <u>Id.</u> at 481 n. 3. Similarly, in this case Dr. Freed's testimony will be helpful to the jury in understanding the victims' continued contact with defendant after the illicit sexual conduct.

Defendant's reliance on Jinro America Inc. V. Secure Investments, Inc., 266 F.3d 993 (9th Cir. 2001) to raise the specter of "inappropriate injection of race or ethnicity" that could "improperly appeal to bias or racial or ethnic stereotypes," (Defense Motion to Preclude Dr. Freed's Testimony, p. 6), is unfounded. Jinro arose from a business deal for the international trade of frozen chickens.  When the deal unraveled, the South Korean corporation sued the defendant corporations, who responded that the deal was a sham designed to cover up a high-risk investment program that circumvented Korea's currency regulations.  Id. at 995.  At trial, the defendants called the general manager of Pinkerton Detective Agency's office in Korea, who testified that most Korean business are corrupt, are not to be trusted, and will engage in complicated business transactions to evade Korean currency law.  Id. at 1007.  The Ninth Circuit stated that this testimony was "tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fit the stereotype."  Id.

In Jinro, the Ninth Circuit distinguished Vang on several grounds.  The court explained that the expert in Vang "provided an academic, non-inflammatory explanation of the Hmong culture in order to explain the seeming inexplicable behavior of the two women plaintiffs in repeatedly submitting to rape by a government official," whereas in Jinro the expert offered "the kind of guilt-by-ethnic association testimony condemned by this and other courts."  Id. at 1008.  In this case, the government seeks to offer expert testimony similar to that in Vang, not Jinro.

13

In addition, the Ninth Circuit has approved the introduction of expert testimony about the general characteristics of sexually abused children.  See United States v. Hadley, 918 F.2d 848, 852-53 (9th Cir. 1990) (upholding admissibility of expert testimony about the general behavior characteristics that may be exhibited in children who have been sexually abused, and distinguishing such testimony from improper testimony about the credibility of the abused children witnesses in the case); United States v. Antone, 981 F.2d 1059, 1062 (9th Cir. 1992) (general expert testimony about behavioral characteristics that child sexual abuse victims may exhibit did not improperly bolster the particular testimony of the child victim in the case, assisted the jury in understanding the evidence, and was admissible); United States v. Bighead, 128 F.3d 1329, 1330 (9th Cir. 1997) (expert's rebuttal testimony about her observations of typical characteristics that she has observed among child abuse victims was properly admitted).

In Bighead, the child victim was cross-examined about the reasons she delayed reporting the abuse and about inconsistencies in her testimony.  128 F.3d at 1331.  The government called an expert to testify about "delayed disclosure" and "script memory," which were typical characteristics the expert had observed among the child abuse victims she had interviewed.  Id. at 1330-31.  The Ninth Circuit rejected the defense claim that the testimony was inadmissible under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579 (1993), and held that it was admissible under Hadley and Antone, as it pertained to "a

14

class of victims generally" and not the particular testimony of the child victim in that case.  <u>Id.</u> at 1331.

In addition, Defendant's claim that SSA Clemente's and Dr. Freed's testimony is not reliable because it is based in large measure on their substantial experience, knowledge, training, skill and education, is also without merit.  As the Rule 702 Advisory Committee Notes explain, "Nothing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony.  To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.  In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  Fed.R.Evid. 702 Advisory Committee Notes, 2000 Amendments.  <u>See</u> <u>Kumho Tire</u>, 119 S.Ct. At 1178 CITE ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

**C.   On direct examination, the government will not ask SSA Clemente or Dr. Freed to opine about this case**

Contrary to defendant's argument, the fact that SSA Clemente and Dr. Freed will not be asked to opine on the this case does not make render their testimony irrelevant.  As the Advisory Committee Notes to Rule 702 state:

> [I]t might also be important in some cases for an
> expert to educate the factfinder about general
> principles, without ever attempting to apply these
> principles to the specific facts of the case.  For
> example, experts might instruct the factfinder on the
> principles of thermodynamics, or bloodclotting, or on
> how financial markets respond to corporate reports,
> without ever knowing about or trying to tie their

testimony into the facts of the case.  The amendment
[to Fed.R.Evid. 702] does not alter the venerable
practice of using expert testimony to educate the
factfinder on general principles.  For this kind of
generalized testimony, Rule 702 simply requires that:
(1) the expert be qualified; (2) the testimony address
a subject matter on which the factfinder can be
assisted by an expert; (3) the testimony be reliable;
and (4) the testimony 'fit' the facts of the case.

Fed. R. Evid.702 Advisory Committee Notes, 2000 Amendments.[2]

In fact, the government cannot elicit testimony from SSA

Clemente or Dr. Freed regarding the credibility of the child

witnesses in this case.  See United States v. Binder, 769 F.2d

595, 602 (9th Cir. 1985) ("Expert testimony should not be

permitted if it concerns a subject improper for expert testimony,

for example, one that invades the province of the jury.

Credibility is a matter to be decided by the jury.") (citations

omitted); United States v. Barnard 490 F.2d 907, 912-13 (9th Cir.

1973) (trial court properly excluded psychiatric and

psychological testimony as to credibility of a government

witness).  The government also cannot elicit testimony from

either expert witness regarding defendant's intent in this case.

Rule 704(b) of the Federal Rules of Evidence precludes an expert

witness from opining as to the criminal mental state of a

defendant.  See Fed. R. Evid. 704(b).

The questions asked of SSA Clemente and Dr. Freed by the

government will be tailored so as to elicit information that is

relevant and applicable to this case.  Any hypothetical questions

posed by the government will be likewise tailored to the evidence

---

[2] Rule 702 was amended in 2000 in response to Daubert.  The
Advisory Committee Notes to the 2000 Amendments discusses
extensively the amendments and the admissibility of various types
of expert testimony.

presented in this trial, but will not seek an opinion about the mental state of defendant or the credibility of the victims.

**D.   Rule 403 Does Not Provide a Vehicle for Exclusion of SSA Clemente's and Dr. Freed's Testimony**

Rule 403 requires consideration of whether the danger of unfair prejudice substantially outweighs the probative value of otherwise relevant evidence. <u>See</u> Fed. R. Evid. 403. "Unfair prejudice" exists only when the evidence has "an undue tendency to suggest decision on an improper basis." <u>United States v. McInnis</u>, 976 F.2d 1226, 1231 (9th Cir. 1992); <u>accord</u> <u>United States v. Hardy</u>, 289 F.3d 608, 613 (9th Cir. 2002). Rule 403 "favors admissibility" and is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." <u>United States v. Hankey</u>, 203 F.3d at 1172 (quoting <u>United States v. Mills</u>, 704 F.2d 1553, 1559 (11th Cir. 1983)).

Here, SSA Clemente's and Dr. Freed's proposed testimony is potentially prejudicial only in the sense that, when combined with the other evidence to be presented at trial, it tends to establish defendants' guilt. That is not undue prejudice. <u>See, e.g.</u>, <u>United States v. Fagan</u>, 996 F.2d 1009, 1015 (9th Cir. 1993) ("All evidence which tends to establish the guilt of a defendant is, in one sense, prejudicial to that defendant, but that does not mean that such evidence should be excluded.") (quoting <u>United States v. Bailleaux</u>, 685 F.2d 1105, 1111 (9th Cir. 1982)). The testimony of both experts will be limited in scope and directly relevant to the issues in the case.

17

**E.   A Pre-Trial Hearing is Not Required**

Defendant suggests that to the Court must hold a pre-trail hearing to inquire of the government's experts.  While such a pre-trial hearing would not be improper, it is not required.  United States v. Alatorre, 222 F.3d 1098 (9th Cir. 2000).  Nothing in Supreme Court or Ninth Circuit precedent "compels trial courts to conduct separate, pretrial hearings to discharge their gatekeeping duties" under Rule 702.  Id. at 1105.  Instead, the inquiry required by Daubert and its progeny is a "flexible" one that grants district courts "broad latitude" to determine not only the timing, but also the form of the gatekeeping inquiry.  Id. at 1101.  Hence, "an evidentiary determination during trial" can be just as appropriate as a pretrial determination. Id. at 1099.

In Alatorre, the district court declined the defendant's pretrial request to hold a separate Daubert hearing outside the presence of the jury, "but indicated that Alatorre could conduct voir dire of the proffered expert at trial, in the presence of the jury." Id.  After the government's expert testified at trial about his training and qualifications, the defendant, "inquired at length into the basis" for the expert's opinions.  Id. at 1100.  Such a "practical procedure," the Ninth Circuit held, was "well within [the district court's] discretion."  Id. at 1104.

**IV**

**CONCLUSION**

For the reasons set forth above, the government respectfully requests that SSA Clemente and Dr. Freed be permitted to testify

18

as expert witnesses and that defendant's motions to preclude them

be denied.