UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES - GENERAL

| | |
|---|---|
| Case No. | CR NO. 07-168 DSF |
| Date | April 30, 2008 |

Present: The Honorable  DALE S. FISCHER, United States District Judge

Interpreter  N/A

| Paul Pierson | Not Present | PATRICIA A. DONAHUE<br>JOHN J. LULEJIAN<br>(Not Present) |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| MICHAEL JOSEPH PEPE | NOT | | X | CARLTON F. GUNN and<br>CHARLES C. BROWN | NOT | | X |

| | |
|---|---|
| Proceedings: | (In Chambers)  (Tentative) Order GRANTING in Part and DENYING in Part Defendant's Motion in Limine To Exclude the Testimony of Government Cultural Expert Wendy Freed, M.D. and To Preclude Characterizing the Allegations in this Case as "Torture" and GRANTING in Part and DENYING in Part Defendant's Motion in Limine To Exclude the Testimony of Government "Grooming" Expert Special Agent James T. Clemente (Docket Nos. 162 and 171) |

Defendant Michael Joseph Pepe is charged with seven counts of "engaging in illicit sexual conduct in foreign places" in violation of 18 U.S.C. § 2423(c). The First Superseding Indictment alleges that, between September 2005 and June 2006, Defendant traveled to Cambodia and engaged in illicit sexual conduct with seven minors.

Before the Court is Defendant's Motion in Limine To Exclude the Testimony of Government Cultural Expert Wendy Freed, M.D. and To Preclude Characterizing the Allegations in this Case as "Torture" ("Freed Motion") and Motion in Limine To Exclude the Testimony of Government "Grooming" Expert Special Agent James T. Clemente ("Clemente Motion"). Freed is expected to testify about "the conduct of the Cambodian and Vietnamese girls subjected to repeated sexual abuse, the trauma they suffer, and the impact on their lives, both socially and culturally." (See Mot. Ex. A at 1.) The Government's expert disclosure letter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

states that Special Agent Clemente will testify as to grooming (i.e., methods of contacting and gaining the trust of child victims and their parents or guardians in order to gain access to the child for sexual or other inappropriate acts) as well as the subject matter in powerpoint slides enclosed with the letter. Defendant objects to the experts' testimony as improper expert testimony and as substantially more prejudicial than probative.

Having considered the parties' submissions, the Court GRANTS in part and DENIES in part the Freed Motion and GRANTS in part and DENIES in part the Clemente Motion.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party seeking admission of expert testimony bears the burden of establishing its admissibility. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 & n.10 (1993). "Preliminary questions concerning the qualification of a person to be a[n expert] witness . . . or the admissibility of evidence shall be determined by the court." Fed. R. Evid. 104(a). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999) (extending Daubert's gatekeeping obligation to all expert testimony). "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 n.14 (9th Cir. 2004). In addition, Federal Rule of Evidence 403 permits exclusion of expert testimony if its probative value is substantially outweighed by the danger of misleading the jury. See Fed. R. Evid. 403; Daubert, 509 U.S. at 595.

## II. DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**A.  Dr. Freed's Testimony**

Defendant first contends that Freed's testimony is not reliable because Freed will testify based on her general experience working with victims of sexual abuse and not based on any direct interview of Defendant or the victims.  "Without a specific in depth psychological evaluation of the alleged victims in this case," Defendant contends, "Dr. Freed's testimony and opinion would lack the requisite scientific basis and would be completely speculative."  (Mot. 6.)  Moreover, Freed's testimony is not reliable because her methods have not been subjected to publication and peer review.  The Court disagrees with both of these claims.

Initially, Rule 702 imposes no requirement that expert testimony have a "scientific basis." See Fed. R. Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto . . . ." (emphasis added).)  "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally."  United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000) (upholding admission of expert testimony based on experience of police officer without analysis under Daubert factors).  All that is required is that the testimony have "a reliable basis in the knowledge and experience of [the relevant] discipline."  Kumho Tire Co., 526 U.S. at 149 (quoting Daubert, 509 U.S. at 592).  While in some cases expert testimony relies on scientific foundations, "[i]n other cases, the relevant reliability concerns may focus upon personal knowledge or experience."  Id. at 150.  "[T]here are many different kinds of experts, and many different kinds of expertise."  Id.  Thus, "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Id. (alteration in original).

Freed's testimony is based on her personal experience working with victims of sexual abuse.  "The Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."  Hankey, 203 F.3d at 1169.  Here, Freed's experience in the field is sufficient to support the reliability of her testimony.  Her curriculum vitae demonstrates a depth of experience working with victims of abuse and with Cambodian victims in particular.  Since 1984, she has held a number of positions working with victims of sexual abuse and with southeast Asian refugees.  (See Mot. Ex. A at 4-5.)  She has lectured extensively on sexual abuse, human trafficking in Cambodia

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

and other parts of southeast Asia, and the medical and psychological needs of victims of trafficking. (Id. Ex. A at 6-7.) She has also published scholarship on sexual exploitation of women and children in Cambodia. (Id. Ex. A at 9.) This demonstrates sufficient experience to testify about the behavior of sexual abuse victims, as well as the social impact of abuse on Cambodian and Vietnamese girls in Cambodia.

Although described as a challenge to the reliability of Freed's testimony, Defendant's demand for an "in depth psychological evaluation" cannot be a challenge to the reliability of Freed's opinions about the effect of sexual abuse and loss of virginity on Cambodian and Vietnamese girls in general. Rather, Defendant apparently suggests that such testimony is irrelevant, because any conclusion that the victims are suffering from the effects of sexual abuse is speculative. However, Freed need not opine about this ultimate conclusion in order for her testimony to be relevant. See Fed. R. Evid. 702 advisory committee notes ("Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.") Freed's testimony is helpful to the jury because it demonstrates that victim conduct that might ordinarily be understood as inconsistent with her having been sexually abused is, in Freed's experience, actually consistent with sexual abuse. See, e.g., Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 480-82 (9th Cir. 1991) (holding that expert testimony regarding Hmong culture was relevant to explain victim behavior otherwise inconsistent with charges of rape); United States v. Hadley, 918 F.2d 848, 852-53 (9th Cir. 1990) (affirming admission of "testi[mony] about general behavior characteristics that may be exhibited in children who have been sexually abused . . . .").[1] Freed need not tell the jury how to interpret the victims' behavior. In fact, it would be improper for Freed to testify that the victims are telling the truth about having been sexually abused, as this would usurp the jury's role in determining credibility of witnesses. United States v. Binder, 769 F.2d 595, 602 (9th Cir. 1985) (overruled on other grounds).

Defendant further challenges Freed's testimony regarding the effects of abuse as not relevant to any issue in the case and prejudicial to Defendant. This objection is not well

---

[1] Defendant notes that, in Vang, the district court had not allowed the expert to testify as to why the victims had not told others they were raped. However, the Ninth Circuit did not rely on this limitation in upholding the admissibility of the expert testimony. It is unlikely that the reviewing court would have found such testimony improper, as it held that the expert's testimony was admissible to explain other "confusing" behavior of the victims, such as maintaining contact with the perpetrator after the rape. Vang, 944 F.2d at 481-82.

| | | |
|---|---|---|
| CR-11 | **CRIMINAL MINUTES - GENERAL** | |
| | | **Initials of Deputy Clerk:** _PdP_ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

founded with regard to Freed's testimony regarding how sexual abuse victims' psychological response to sexual abuse, as well as shame, loss of social value, and familial associations may prevent a victim from disclosing sexual abuse. This is clearly relevant, as it sheds light on the probative value of the victims' behavior.[2] Any prejudice from a description of the impact of abuse on the victims does not substantially outweigh the probative value of the testimony. However, Freed's testimony about how sexual trauma disrupts the normal development of girls would be irrelevant, as it would not explain the victims' behavior. Merely describing the impact of abuse on victims invites decision on an improper basis – sympathy for the victims and a sense that someone must pay for their abuse. The prejudice from such testimony would substantially outweigh its at best minimal probative value.

The Freed Motion is thus GRANTED in part and DENIED in part. Freed may not testify regarding how abuse interrupts the normal development of girls unless the Government demonstrates a proper purpose for such testimony. The Motion is otherwise DENIED.

Defendant also requests, without authority, that the Court preclude characterization of Defendant's alleged abuse of the victims as "torture." This appears to be the expert's description. Without hearing trial testimony, the Court is not prepared to find the term inappropriate. In any event, the Court is not inclined to tailor the testimony of the expert. The Court DENIES this request.

### B. Special Agent Clemente's Testimony

Special Agent Clemente is a member of the Behavioral Analysis Unit ("BAU") of the Federal Bureau of Investigation's ("FBI") National Center for the Analysis of Violent Crime. (Mot. Ex. A at 6497.) The BAU provides case analysis, research, and training related to violent and sexual crimes. (Id.) Clemente headed the Child Sex Crimes Prosecution Team for the New York City Law Department and has served with the joint FBI/New York Police Department Sexual Exploitation of Children Task Force. (Id.) Since joining the BAU, he has been qualified

---

[2] Defendant relies on Jinro Am. Inc. v. Secure Invs., Inc., 266 F.3d 993, 1008 (9th Cir. 2001) in support of his claim that Freed's testimony will be more prejudicial than probative. In Jinro, the court held that testimony that Korean businesses were generally corrupt, based on anecdotal evidence observed by an American private investigator in Korea, was unreliable and unfairly prejudicial. Id. at 1001, 1004-09. Jinro is inapposite; Freed has significant experience with victims of sexual abuse and Cambodian victims in particular. Moreover, she is offering an "academic, non-inflammatory explanation of . . . culture," not "the kind of guilt-by-ethnic-association testimony condemned" by Jinro. Id. at 1009. As recognized by Jinro, such testimony is admissible. Id. at 1008-09 (discussing Vang).

CR-11   **CRIMINAL MINUTES - GENERAL**

**Initials of Deputy Clerk:** *PdP*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

– by an unspecified body – as an Expert Witness in the areas of child sex offender behavior, child sexual victimization, and child pornography. (Id.) The Government's expert disclosure letter states that Special Agent Clemente will testify as to grooming (i.e., methods of contacting and gaining the trust of child victims and their parents or guardians in order to gain access to the child for sexual or other inappropriate acts) as well as the subject matter in powerpoint slides enclosed with the letter. (Id. Ex. A at 1.)

Defendant initially objects to the reliability of Clemente's testimony because it is not based on experience with Defendant and the victims and cannot survive analysis under the so-called Daubert factors. As discussed above, testimony based on the experience of an expert often is not amenable to analysis under the Daubert factors of peer review and general acceptance within the relevant community. It appears that Clemente's testimony is based on his own observations and not any scientific or technical technique. Thus, it is fruitless to inquire whether his methods have gained widespread acceptance in the community. Clemente's experience with sexual abuse of minors is sufficient to support his testimony regarding techniques abusers have used to gain the trust of child victims and their parents.

Again, because Clemente apparently will testify as to grooming practices in general, Defendant's objection that Clemente's testimony will not be based directly on experience with the parties in this case is not an attack on reliability, but on relevance. Clemente need not opine that Defendant or the victims have acted in a manner consistent with his observation of sexual abusers and their victims in order for his testimony to be relevant. Description of the techniques used by abusers to gain access to their victims will assist the jury, because it explains why apparently innocent activity, such as offering to assist children with their education, can in fact be a subterfuge for gaining access to children for unlawful purposes. Such evidence tends to rebut a defense that Defendant's intent in interacting with the victims and their parents was altruistic, and is probative of Defendant's guilt.

Clemente's powerpoint presentation also includes slides describing the range of child compliance in sex abuse. This testimony would be relevant to explain how sexual activity that appears consensual is in fact forced. Defendant's motion with regard to these two forms of testimony is DENIED.

Other aspects of Clemente's powerpoint presentation are more problematic. In the presentation, there are slides describing the psychological profile of a sexual abuser, and depicting a "child sex victimization continuum" that ranges from less intrusive modes of child exploitation to more serious molestation. The psychological profile would be improper insofar as it implies Defendant's guilt based on his conformance with that profile. See Fed. R. Evid. 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."). It is unclear what

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

other purpose the Government intends such testimony to serve. The probative value of descriptions of conduct that is exploitative or abusive but may not fall within the statute with which Defendant is charged is substantially outweighed by the prejudice that arises from the danger that a jury would punish Defendant for uncharged behavior.

The Government's authority from other circuits admitting testimony regarding grooming is not to the contrary, as the evidence in those cases was admitted to show an abuser's modus operandi, not the traits of an abuser or a continuum of conduct that is abusive but does not meet the elements of the charged offense. Although United States v. Romero, 189 F.3d 576, 587-88 (7th Cir. 1999), affirmed the admission of testimony regarding general traits of pedophiles, the court expressed concern that the evidence was impermissible character evidence and allowed the testimony only because it was limited and was used only "to elaborate on [the expert's] behavior-driven analysis of [sex offenders'] modus operandi." It is not clear that Clemente's testimony would fit this description or that, if offered for such a purpose, it would be admissible.

Defendant's Motion is GRANTED with regard to these forms of testimony. This determination is without prejudice to reconsideration on the Government's demonstration of a proper purpose for this testimony. The Motion is otherwise DENIED.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion in Limine To Exclude the Testimony of Government Cultural Expert Wendy Freed, M.D. and To Preclude Characterizing the Allegations in this Case as "Torture" is GRANTED in part and DENIED in part. Freed may not testify regarding how abuse interrupts the normal development of girls. The Motion is otherwise DENIED.

Defendant's Motion in Limine to Exclude the Testimony of Government "Grooming" Expert Special Agent James T. Clemente is GRANTED in part and DENIED in part. Clemente may not testify as to any psychological profile of child sexual abusers or as to a "child sex victimization continuum" that describes abusive conduct other than that with which Defendant has been charged. The Motion is otherwise DENIED.

As with all motions in limine, these determinations are subject to reconsideration on a further showing by the party seeking to admit the evidence that the evidence will serve a proper purpose.[3]

---

[3] **[There is no requirement that a district court conduct a pretrial Daubert hearing. United States v. Alatorre, 222 F.3d 1098, 1105 (9th Cir. 2000). Here, there are questions about the**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

IT IS SO ORDERED.

---

relevance of some of the proffered testimony, but Defendant does not challenge the credentials of the experts or the sufficiency of their experience as a basis for their testimony.  Thus, an evidentiary hearing would likely not be useful.  If Defendant raises concerns about the basis for the experts' knowledge, some form of inquiry, whether a Daubert hearing or voir dire during trial, may be strongly counseled.  See id. at 1104.  Inquiry at the hearing on the motion into how the Government thinks the testimony of Clemente regarding the "victimization spectrum" and psychological profiles of sex abusers will be relevant would likely resolve any outstanding questions regarding admissibility.]