ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (Cal. Bar No. 132610)
Assistant United States Attorney
Public Corruption & Civil Rights Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0640
    Facsimile:  (213) 894-6436
    E-mail:     patricia.donahue@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL JOSEPH PEPE,<br><br>        Defendant. | No. CR 07-168(A)-DSF<br><br><u>GOVERNMENT'S OPPOSITION TO MOTION FOR NEW TRIAL BASED ON ALLEGED WITNESS RECANTATION</u><br><br>Hearing Date: February 3, 2014<br>Hearing Time: 8:30 a.m.<br>Location:     Courtroom of the<br>              Hon. Dale S.<br>              Fischer |

    Plaintiff United States of America, by and through its counsel of record, hereby files its opposition to the motion filed by defendant Michael Joseph Pepe for a new trial based on alleged witness recantation. (CR 451).

    This opposition is based upon the attached memorandum of points and authorities, the two declarations of Special Agent Eddy Wang filed concurrently herewith, one under seal, the trial transcripts

1 and files and records in this case, and such further evidence and
2 argument as the Court may permit.

3 Dated: January 14, 2014          Respectfully submitted,

4                                  ANDRÉ BIROTTE JR.
                                   United States Attorney

6                                  ROBERT E. DUGDALE
                                   Assistant United States Attorney
                                   Chief, Criminal Division

8                                         /s/
                                   PATRICIA A. DONAHUE
9                                  Assistant United States Attorney

10                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Michael Joseph Pepe seeks a new trial based on the alleged recantation of witness Cheong Thi Sang, aka Bassang.  The recantation is not credible.  As set forth below and in the declarations of Special Agent Eddy Wang filed concurrently herewith, one of which the government requests be sealed, defendant and Sander De Montero, defendant's brother-in-law and a defense witness at trial, bribed Bassang and her attorney to sign the declaration. The declaration is not credible new evidence that would support a new trial motion.  The government therefore respectfully requests that the Court deny defendant's motion for a new trial.

**II.   STATEMENT OF FACTS**

   **A.    BASSANG TRIAL TESTIMONY**

Cheong Thi Sang, aka Bassang, (herein "Bassang") was in custody in Cambodia serving a sentence imposed for pimping and trafficking minor girls to defendant.  As she was in custody in a foreign country and thus not available to testify at trial, the government moved for, and this Court ordered, that her deposition could be taken in Cambodia.  The deposition was video and audio recorded, and after this Court had ruled on the parties' objections, portions of the deposition were played at trial.

In her deposition, Bassang testified that she met defendant at a bar in Phnom Penh four to five years earlier, and that one of the services that she performed for him was to look for girls. 2/29/2008 Deposition Transcript, p. 22-23.  She also testified that she taught girls to perform oral sex on defendant.  Id. at 25-26. She testified that she brought girls to defendant's house on her

motorbike, discussed with defendant the price that he would pay for that girl's virginity, defendant gave her the fee, she brought the fee to the girl's mother and asked to have the girl stay with defendant. Bassang testified that the price was $600 per week for defendant to take a girl's virginity. Id. at 30. Bassang also testified that defendant liked to take pictures of the girls that she brought for him. Id. at 34. Bassang also testified that defendant used the strips of cloth that he kept in his closet to tie girls up when they would not allow him to have sex with them. Id. at 40. Bassang provided details about how L.K., S.S. S.R. came to live at defendant's house and about the sexual acts that Bassang showed them how to perform on defendant. Id. at 40 – 73. On cross examination, she testified that an attorney who had represented defendant in Cambodia told her to tell the Cambodia court that she had not brought children to sell to defendant. Id. at 132.

### B. DE MONTERO TRIAL TESTIMONY

Sander De Montero testified in the defense case at trial. De Montero was born in Cambodian and resides in Australia. (5/22/2008 R.T. 57, l. 14-18). De Montero testified that he and defendant distributed school supplies to poor children in Cambodia. (5/22/2008 R.T. 57, l. 14-18). On cross examination, De Montero testified that his wife and defendant's wife are sisters. (5/22/2008 R.T. 66, l. 1-4). He also testified that in his telephone calls with defendant, they discussed taking the victims out of the shelter and reuniting the victims with their families. (5/22/2008 R.T. 80, l. 12-16). De Montero denied that defendant had pushed him very hard to get the victims out of the shelters. (5/22/2008 R.T. 83, 12-15).

2

### C. DEFENDANT AND DE MONTERO'S PROCUREMENT OF BASSANG DECLARATION

Defendant's new trial motion, filed May 5, 2011, is based on a declaration of Bassang dated July 6, 2010. It is witnessed by Attorney Dun Vibol. Defendant and De Montero wrote the declaration and paid Dun Vibol to have it signed. As set forth in the declarations of Special Agent Eddy Wang submitted concurrently with this opposition, in 2010, the Australian Federal Police (AFP) informed United States Homeland Security Investigations (HSI) that on October 19, 2010, the AFP executed a search warrant at De Montero's residence in Victoria, Australia. During the search, the AFP seized letters written by defendant to De Montero setting forth their scheme to bribe Bassang to recant her trial testimony.

Special Agent Wang's declaration sets forth summaries of defendant's letters seized from De Montero's residence that discuss their plot regarding Bassang, whom defendant refers to as "Sang." In September 2009, defendant wrote that there were "5 major things we need to look at and get something from," including having a judge in Cambodia question the minor victims in this case to see if they were told what to say and "teaching Sang how to behave and what to say and getting a Declaration from her. If we can get either or both of these things, we may be able to destroy the governments [sic] case." Defendant stated that that he had included outlines for their operation with the correspondence and that he was trying to get his attorney to send pictures and videos to De Montero. (Wang Decl. ¶ 4(10)). In a September 28, 2009 letter, defendant stated that Bassang is "a two-edged sword," and that Bassang needed to be cultivated, nurtured, and to realize "who is going to save her ass and who butters her bread." Defendant also told De Montero to

3

notify Bassang's attorney to visit her as soon as possible and provide her with some money, and that "Sang can be a very good thing for us, as long as she is trained well." (Wang Decl. ¶ 4(11)).

On January 25, 2010, defendant wrote a letter thanking De Montero for sending him a "letter" from Bassang. Defendant stated that Bassang's "letter" was mostly correct and that when it was time to obtain an official declaration, " . . . we can make any adjustments and refinements made. I think no problem." Defendant also instructed De Montero to provide Bassang with money and food, as long as there were some "go-betweens, between me and her . . . ." Pepe asked De Montero if additional funds needed to be sent, and he wrote, "I'm glad to hear that Sang understands that we are loyal to her and the other side is not." (Wang Decl. ¶ 4(18)). In a February 11, 2010 letter, defendant wrote that Bassang probably would not be released on her first appeal, but perhaps on her second appeal ". . .if I can get there with some money." (Wang Decl. ¶ 4(19)). In an April 24, 2010 letter, defendant stated that he would instruct his sister to send $2000 to De Montero for expenses incurred, and advised De Montero to obtain a status update on Bassang and her possible release from prison, and Pepe stated that they would soon need "a correct Declaration from her." (Wang Decl. ¶ 4 (21)).

In the correspondence, defendant displayed his guilty knowledge regarding the Bassang declaration project. In a May 4, 2010 letter, defendant stated that they needed to be careful regarding the mention of Bassang's name and her declaration. Defendant stated that they needed "as much separation (sic) between me and Sang." He instructed De Montero that information and instructions should flow

4

from defendant to De Montero to Pepe's Cambodian attorney to Bassang's Cambodian attorney to Bassang.  Defendant also wrote, "In reality, it would be OK with me if you wrote and signed everything.  But if we do something like that, will get caught someway.  Sang needs to speak (several times) all the stuff I will write."  (Wang Decl. ¶ 4(22)).

Subsequent letters discuss defendant and De Montero's writing the declaration.  In a May 10, 2010, defendant stated that his objective was to seek a mistrial or a dismissal of his case, and that that obtaining a declaration from Bassang may help him achieve his objective.  Defendant stated that he had included a sample narrative for Bassang's declaration, but requested that De Montero re-write the declaration so that it appeared that Bassang was speaking through her attorney and interpreter, and did not appear like defendant had written it.  Defendant also directed De Montero to have Bassang's declaration thumb-printed and interpreted. Defendant included with the letter a template of Bassang's declaration, detailing where the date, narrative, and thumbprints should be placed.  In addition, PEPE provided De Montero with the mailing address for his attorney in Los Angeles.  (Wang Decl. ¶ 4(23)).  The template contains the same information as in the declaration dated submitted with defendant's motion.  (Wang Decl ¶ 4(23)(a)).

In a May 28, 2010 letter, defendant instructed De Montero that the format for Bassang's declaration should follow De Montero's declaration format, but should include "…all the details I sent a couple of letters ago."  Defendant told De Montero that either another Cambodian or De Montero should write the declaration because

5

De Montero is a good writer.  Defendant also stated that the declaration should be thumb-printed and notarized in Phnom Penh. (Wang Decl. ¶ 4(24)).

The declaration purports to be signed on July 6, 2010.  As of late July, defendant apparently had not received it.  In a July 24, 2010 recorded call, defendant stated that he was in a "big hurry" to receive that "thing from Phnom Penh," and De Montero replied that the "thing" was completed and De Montero was waiting for it to be sent.  Defendnat asked the amount of the "legal fees" and said he would direct his sister to send money to Camboida.  (Want Decl. ¶ 5(6)).

Defendant wrote a letter dated uly 27, 2010, inquiring about the reasons for the delay.  In the letter, defendant stated that he thought the declaration ". . . would be easy, just take a little money."  Defendant asked De Montero if Bassang was "being taken care of" and he hoped "…we have been giving her some money for food and medication."  (Wang Decl. ¶ 4(25)).  On August 4, 2010, defendant wrote to De Montero thanking him for the declaration, as it "seems to be just what I needed." Defendant also wrote that he had instructed that money be sent to De Montero, and he asked if he should have more money sent now or later.  Defendant wrote that he wanted ". . . to be sure that the lawyer is well satisfied, but not overpaid."  He also told De Montero to ". . . make sure that we take good care of Sang.  I want to make sure she is well taken care of and that she has no doubt who is take [sic] care of her and who she should support."  He also informed De Montero that Bassang should not speak to anyone without her lawyer present, and he wrote, "(Sangs lawyer is paid for by her other friends), but that is not

6

their business."  (Wang Decl. ¶ 4(26)).  Defendant followed up with a letter dated August 9, 2010 in which he stated that he hoped Bassang's declaration would lead to a legal motion and that much may depend on any future deposition of Bassang.  He wrote, "She has to know that when I get out, she gets out."  He also stated that Bassang cannot be directly told that defendant is involved in her case.  He stated that they needed to make Bassang feel like they cared about her at times other than when her assistance is needed, and that Bassang should get food and money periodically.  Defendant also instructed De Montero to pass his best wishes to Bassang's attorney without using his [defendant's] name.  Pepe told De Montero that Dun Vibol was a lawyer for another inmate at the MDC.

On August 19, 2010, defendant wrote in a letter to De Montero that they need to keep Bassang "satisfied so she does not betray us."  (Wang Decl. ¶ 4(28)).

The scheme to bribe Bassang and her attorney for the declaration that is laid out in the correspondence was further corroborated, as set forth in the sealed declaration of Special Agent Want.

**III. ARGUMENT**

    **A.  THE PURPORTED BASSANG RECANTATION ORCHESTRATED AND PURCHASED BY DEFENDANT HAS NO RELIABILITY AND DOES NOT ENTITLE DEFENDANT TO A NEW TRIAL**

Defendant seeks a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  To obtain a new trial, defendant must show (1) the evidence is newly discovered; (2) the failure to discover the evidence sooner was not the result of lack of diligence; (3) the evidence is material to the issue at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the

7

evidence indicates that a new trial would probably result in acquittal. See United States v. Sarno, 73 F.3d 1470, 1509 (9th Cir. 1995). A district court's denial of a motion for a new trial based on newly discovered evidence is reviewed for abuse of discretion. Id. On appeal, a defendant carries a significant burden to show that the district court abused its discretion in denying a new trial based on newly discovered evidence. United States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989) (citations omitted).

Most significantly here, new trial motions based on recanted testimony are viewed with suspicion. See Allen v. Woodford, 395 F.3d 979, 994 (9th Cir.), cert. denied, 546 U.S. 858 (2005) ("Recantation testimony is properly viewed with great suspicion") (quoting Dobbert v. Wainwright, 468 U.S. 1231, 1233 (1984) (Brennan, J. dissenting from denial of certiorari)); Carriger v. Stewart, 132 F.3d 463, 483 n.1 (9th Cir. 1997) (Kozinski, J. dissenting) ("There is no form of proof so unreliable as recanting testimony"). Defendant and De Montero drafted the declaration of Bassang on which defendant's motion is entirely based, paid Bassang and her attorney to sign it, and continue to pay Bassang in order to maintain her loyalty. The declaration has no credibility. See United States v. George, 960 F.2d 97, 100 (9th Cir. 1992) (no abuse of discretion in denial of new trial motion on the ground that the recantation was not credible where victim who recanted trial testimony was "subject to influence and manipulation by others").

In addition, unlike Bassang's deposition testimony, the declaration is devoid of details. Bassang's detailed deposition testimony was consistent with the testimony of the victims, consistent with the physical evidence (cloth to tie the victims and

drugs used on the victims) seized from defendant's residence, and consisent with the images found on defendant's computer media (images of a naked bound on defendant's bed and images of L.K. and another girl nude with defendant, also nude).  See <u>Allen</u>, 546 F.3d at 994, (recantation testimony was "even more unreliable" because the witness's trial testimony was "consistent with the other evidence, while his recantation is not").

     Finally, even if the declaration was credible, defendant cannot show that had the jury been presented with the information in the declaration, it would have altered its verdict.  Ample evidence, other than Bassang's testimony, supported the verdict.  The testimony of the victims, who corroborated one another, the medical exams of L.K., S.R., and I.T., the items seized from defendant's residence, including the rope in his bedroom closet, the sedatives in his bedroom and office, the images of him naked in his bedroom with L.K., the homemade child pornography on his computer, the numerous photographs taken by defendant of the victims at his Phnom Penh residence, the incriminating letters that defendant wrote to his sister and brother-in-law, the incriminating e-mails stored on his computer that he exchanged with his friend Mack, and the consciousness of guilt evidenced by the recorded telephone calls introduced in the government's rebuttal case in which defendant and De Montero discussed their plan to reunite the victims with their families, so that the nongovernmental organizations could not bring them to the United States to testify at trial, all established defendants' guilt. See <u>United States v. Jackson</u>, 209 F.3d 1103, 1106-7 (9th Cir. 2000) (rejecting new trial claim based on recantation where jury had before it ample circumstantial evidence

9

that would lead to a conviction despite witness's denial of taking bribes to which he had pleaded guilty). The jury had ample evidence to convict. In addition, had Bassang testified consistently with the declaration, she would have been impeached by her conviction in Cambodia for her procurement of children for defendant for sex and vigorously questioned about the detailed information provided by the victims implicating her as the person who brought them to defendant. In short, this declaration, even if credible, would not probably produce an acquittal.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion for a new trial.