ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (Cal. Bar No. 132610)
Assistant United States Attorney
Public Corruption & Civil Rights Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0640
    Facsimile: (213) 894-6436
    E-mail:    patricia.donahue@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 07-168(A)-DSF |
|---|---|
| Plaintiff, | DECLARATION OF SPECIAL AGENT EDDY WANG RE GOVERNMENT'S OPPOSITION TO MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE OF ALLEGED WITNESS RECANTATION |
| v. | |
| MICHAEL JOSEPH PEPE, | |
| Defendant. | Hearing Date: February 3, 2014<br>Hearing Time: 8:30 a.m.<br>Location: Courtroom of the Hon. Dale S. Fischer |

    Plaintiff United States of America, by and through its counsel of record, hereby the declaration of Special Agent Eddy Wang and exhibits in support of its opposition to the motion filed by defendant Michael Joseph Pepe for a new trial based on alleged witness recantation. (CR 451).

```
Dated: January 13, 2014          Respectfully submitted,

                                 ANDRÉ BIROTTE JR.
                                 United States Attorney

                                 ROBERT E. DUGDALE
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                       /s/
                                 PATRICIA A. DONAHUE
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA
```

2

# DECLARATION OF EDDY WANG

I, EDDY WANG, hereby declare:

1.  I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and have been so employed since March of 2003. I was previously employed with the Immigration and Naturalization Service ("INS") as both a Special Agent and Immigration Enforcement Agent since July of 1998. I am currently assigned to the National Security Division.

2.  I make this declaration in connection with the government's opposition to the motion filed by defendant Michael Joseph Pepe for a new trial based on the alleged recantation of witness Cheong Thi Sang, aka Bassang, in United States v. Michael Joseph Pepe, Case No. CR 07-168(A)-DSF.

3.  I was one of the case agents working on the investigation in this case, and I was present in the courtroom during the trial. In 2010, the Australian Federal Police (AFP) informed United States Homeland Security Investigations (HSI) that on October 19, 2010, the AFP executed a search warrant at the residence of Sander De Montero ("De Montero") in Victoria, Australia. During the search, the AFP seized a computer, written correspondence between Michael Joseph Pepe ("Pepe") and De Montero, and other materials related to this case.

4.     I reviewed material seized by the AFP during the execution of the warrant on October 19, 2010.  My reports summarizing the contents of those materials are attached hereto as Exhibits A through D. The following is a summary of some of those materials:

(1)  Undated, handwritten questions and notes from Pepe to De Montero regarding Bassang (Exhibit 0076854-12).  In those notes, Pepe informed De Montero that Pepe's attorneys in the United States had questions regarding Bassang, including whether Bassang believed she would be released from custody if she cooperated with U.S. authorities, whether Bassang was still in Prey Sar Prison in Cambodia, whether Bassang received anything for her cooperation with U.S. authorities, and whether Bassang was truthful when she was questioned by the judge in Cambodia.  Pepe advised De Montero that they should obtain a thumb-printed declaration from Bassang that should include the following details:  Bassang was tortured during questioning, Bassang did not have an attorney present during questioning, Special Agent Phillips dictated what Bassang was to say during her deposition, Bassang provided medication to Pepe, Bassang's husband took photographs of the girls when Pepe was not present, and Bassang's husband took pictures of Pepe with victim L.K. when Pepe was on medication.  Pepe also advised De Montero that "it would be a good idea to start helping her [Bassang] with food, medications and small money.  We might even hold out the hope for freedom (for real) if I ever get out of here."  Pepe also instructed De Montero that whoever establishes contact with Bassang should

2

never mention Pepe or De Montero's names.  Pepe wrote that establishing contact with Bassang "should cost us little and we may gain a lot."  Pepe also advised De Montero that it "would be very nice if she [Bassang] could become a witness for us.  If not, we should be able to prevent her from being a witness for them."

   (2) A July 7, 2008 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-13) in which Pepe advised De Montero, among other things, that if the victims were still in NGO care, then "…there is not much we can do about it.  However, if there is a new trial, it would be nice if we did not have to contend with them showing up and bringing all that misplace sympathy."  Pepe also wrote, "Well, I hope the girls go back to their families and they all move into the forest."

   (3) A July 23, 2008 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-12) in which Pepe advised De Montero, among other things, to use the money that Pepe will send for past, present, and future expenses, and Pepe directed De Montero to have "our guy in Cambodia" locate the victims and their families and to, "If this all comes up again, he should be ready to help move them out to the provinces.  That would be the most important issue.  If we can help them that way it would be best."

   (4) A July 24, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076854-11), in which Pepe stated, among other things, that they needed to establish a relationship with Bassang because they may need her in the future.  In the

letter, Pepe also advised De Monteto that an attorney from a human rights organization, rather than Pepe's attorney, should establish contact with Bassang.

     (5)  A July 25, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-35) in which Pepe stated, among other things, that he would be sending more requests and information to De Montero, that they just needed some witness declarations, that he understood that they have hired an attorney to conduct an investigation which would be provided to a Supreme Court Justice in Cambodia, who would provide a ruling in favor of Pepe, and that they needed to provide "cheap" attorneys to represent Bassang and other witnesses.

     (6)  An August 4, 2009 letter from from Pepe to De Montero (identified by the AFP as Exhibit 0076853-9), in which Pepe wrote, "Remember, we should not manufacture or engineer or make up anything.  We damn sure can't let Charles or Carl think we are doing that.  They would be concerned about getting into some ethical trouble here.  But we do need to dig out what we can to support our contentions."

     (7)  An August 15, 2009 letter from to De Montero (identified by the AFP as Exhibit 0076853-10) in which Pepe advised De Montero label the correspondence that he was sending to Pepe as "Legal Mail."

(8) An undated letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-5), in which Pepe stated, among other things, that "someone" had been providing food and medication for Bassang inside Prey Sar prison, which Pepe wondered if Bassang knew to appreciate. [NOTE: Based upon this investigation, PEPE has admitted to providing the funds to provide BASSANG with money and medication].

(9) A letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-18), in which Pepe informed De Montero, among other things, that that he enclosed the first half of Bassang's deposition, he advised De Montero to make note of Bassang's torture claims, and Pepe wrote, "I think I have already covered what we need to do with this and Sang."

(10) A September 8, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-44) in which Pepe stated, among other things, that there were "5 major things we need to look at and get something from." Among them was having a judge question the minor victims to see if they were told what to say and "teaching Sang how to behave and what to say and getting a Declaration from her. If we can get either or both of these things, we may be able to destroy the governments [sic] case." Pepe stated that he had included outlines for their operation with the correspondence and that he was trying to get his attorney to send pictures and videos to De Montero.

(11) A September 23, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-20) in which Pepe stated, among other things, that Bassang is "a two edged sword" that could help them, but could also create problems. Pepe advised De Montero

5

that Bassang needed to be cultivated, nurtured, and to realize "who is going to save her ass and who butters her bread." Pepe also told De Montero to notify Bassang's attorney to visit her as soon as possible and provide her with some money. Pepe told De Montero, "Sang can be a very good thing for us, as long as she is trained well."

(12) A September 27, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076851-5) in which Pepe told De Montero, among other things, that he should not have mentioned Bassang in their previous telephone conversation because they need Bassang's assistance and that he will be happy when Bassang is released. Pepe asked De Montero what other people were doing to help out Bassang and what they could " . . . do to influence the situation to help her and help us." Pepe asked De Montero if they could get Bassang's attorney to cooperate and, if she did not have adequate legal representation, could they provide her with legal representation. Pepe also stated that that obtaining a corrected and improved declaration is also second in importance. Pepe stated that the most important thing is to make BASSANG believe that they have a [Cambodian] judge assist with her case. Pepe instructed De Montero that they need to be "very care full [sic]" with their telephone discussions because their discussions are being recorded. Pepe instructed De Montero to closely monitor the situation with Bassang because they "…do not want her to turn on me again." Pepe instructed De Montero to, "Do your magic!"

(13) An October 11, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076851-8) in which Pepe stated, among other things, that he screwed up while they were discussing

6

Bassang during a phone conversation a few weeks prior, that they need ". . . to do some damage control because everything was/is recorded" and Pepe provided De Montero a script for a future telephone conversation, where they will distance themselves from efforts to assist in Bassang's situation. Immediately after providing the script, PEPE wrote "Of course we will continue our efforts".

(14) A November 1, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-36) in which Pepe advised De Montero, among other things, of the need for "grease" of Pepe's hope that they had enough "grease." Pepe also told De Montero to nofify him what they needed and to use his judgment on disbursement. Pepe told De Montero that they needed to obtain declarations from Chanry Bith [Pepe's wife in Cambodia] and her sisters stating that they were frightened of U.S. authorities and U.S. authorities attempted to forcibly interrogate them at the U.S. embassy. Pepe stated that these declarations would be used to discredit Special Agent Phillips. Pepe also wrote to De Montero that when De Montero is in Cambodia, they needed to be "extra careful" during their phone conversations and that they could not directly talk about their plans.

(15) A November 15, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-6), in which, among other things, Pepe instructed De Montero to contact Bassang's initial attorney in Cambodia and obtain a declaration stating that he was Bassang's attorney, that he was not Pepe's attorney, and that the American government prevented Bassang from legal representation. In

the letter, Pepe also informed De Montero that Bassang's initial attorney was Pepe's attorney.

(16) A November 16, 2009 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-14), in which Pepe instructed De Montero, among other things to get written and video statements from Bassang's initial attorney stating that he represented Bassang, that he was "provided by the Human Rights Commission (if that was it) and he did not work for me."

(17) A January 9, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-30) in which Pepe stated that he had not located the disk containing Bassang's deposition and that he would send DE MONTERO a "go by" declaration to use as a guide. Pepe also wrote, "Thank you very much for all you have been doing. I won't forget it."

(18) A January 25, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-28) in which among other things, Pepe thanked De Montero for sending him a "letter" from Bassang. Pepe stated that Bassang's "letter" was mostly correct and that when it was time to obtain an official declaration, "…we can make any adjustments and refinements made. I think no problem." Pepe also told De Montero that he cared for Bassang and hoped that they could secure her release. Pepe instructed De Montero to provide Bassang with money and food, as long as there were some "go-betweens, between me and her . . . . " Pepe asked De Montero if additional funds needed to be sent. Pepe also wrote, "I'm glad to hear that Sang understands that we are loyal to her and the other side is not."

(19) A February 11, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-37) in which Pepe told De Montero that he could send a thumbprint statement on Bassang's behalf for her appeal. Pepe wrote that Bassang probably would not be released on her first appeal, but perhaps on her second appeal "…if I can get there with some money." Pepe wrote that he was interested in any documents regarding Bassang and Pepe in her appeal as it would affect his prosecution in the U.S., and he stated that Bassang's declaration needed to mention "…all the stuff I said." Pepe also stated that Bassang's declaration needed to mention that Bassang was jealous of Chanry Bith [Pepe's wife in Cambodia] and made derogatory statements and repeated what the U.S. authorities told her because she was angry.

(20) An April 9, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-25) in which, among other things, Pepe asked De Montero if they needed to send Bassang's attorney more money for her defense. If more money was needed, Pepe advised De Montero that he would instruct Elaine Pepe-Williams to send the money to De Montero. Pepe also advised De Montero that a new statement, declaration or deposition from Bassang may be needed to include information that Pepe and De Montero had previously discussed.

(21) An April 24, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-22) in which Pepe stated, among other things, that he was going to instruct his sister Elaine Pepe-Williams to send $2,000 to De Montero for expenses incurred.

9

Pepe also advised De Montero to obtain a status update on Bassang and her possible release from prison, and Pepe stated that they would soon need "a correct Declaration from her."

(22) A May 4, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-23) in which Pepe states, among other things, that his attorney was aiming for a mistrial and retrial in PEPE's prosecution based upon mistakes in the translations, that they needed to be careful during their phone conversations because the phone calls were being recorded, and in particular that they needed to be careful regarding the mention of Bassang's name and her declaration. Pepe also stated that they needed "as much separation (sic) between me and Sang." Pepe instructed De Montero that information and instructions should flow from Pepe to De Montero to Pepe's Cambodian attorney to Bassang's Cambodian attorney to Bassang. Pepe also wrote, "In reality, it would be OK with me if you wrote and signed everything. But if we do something like that, will get caught someway. Sang needs to speak (several times) all the stuff I will write." Pepe also asked De Montero about the status of "our friend" in Prey Sar Prison in Cambodia, whom Pepe hoped was not incarcerated because of Pepe. In addition, Pepe informed De Montero that he would compensate him because "Our friend has been a big help."

(23) A May 10, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-45) in which Pepe stated, among other things, that his objective was to seek a mistrial or a dismissal of his case, and that that obtaining a declaration from Bassang may help him achieve his objective. Pepe also advised De Montero that he had included a sample narrative for Bassang's

10

declaration, but requested that De Montero re-write the declaration so that it appeared that Bassang was speaking through her attorney and interpreter, and did not appear like Pepe wrote it. Pepe also directed De Montero to have Bassang's declaration thumb-printed and interpreted. Pepe included a template of BASSANG's declaration, detailing where the date, narrative, and thumbprints should be placed. In addition, PEPE provided De Montero with the mailing address for his attorney in the Los Angeles, California area.

    (a) The declaration that Pepe prepared for Bassang stated that she was tortured by the CNP, that her answers were coerced by the CNP, that she did not sell any children to Pepe, that Pepe did not provide an attorney to her, that I.T. was sold by her mother to another foreigner, that she brought other Caucasian males to Pepse's residence, that she drugged Pepe when he was photographed with L.K., and that U.S. authorities tricked her into making statements against Pepe.

    (24) A May 28, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-39) in which, among other things, Pepe thanked De Montero for helping Pepe not face trial in Cambodia. Pepe instructed De Montero that the format for Bassang's declaration should follow De Montero's declaration format, but should include "…all the details I sent a couple of letters ago." Pepe told De Montero that either another Cambodian or De Montero should write the declaration because De Montero is a good writer. Further, PEPE advised De Montero to make sure that an attorney and translator are involved and to send English and Cambodian copies of the declaration to them. Pepe also stated that the declaration should be thumb-printed and notarized in Phnom Penh, Cambodia.

(25) A July 27, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076847-1) in which Pepe, among other things, asked De Montero for an update regarding Bassang's declaration and the reasons for delay.  Pepe also stated that sufficient time was needed for the declaration in case there were mistakes in the declaration.  Pepe stated that he thought the declaration "…would be easy, just take a little money."  Pepe asked De Montero if Bassang was "being taken care of" and he hoped "…we have been giving her some money for food and medication."  A typed, unsigned declaration, dated July 6, 2010, created for Bassang (identified by the AFP as Exhibit 0076847-2) stated that Bassang was abused and tortured in CNP custody after her arrest, did not sell any children to Pepe and helped Pepe when he was sick, I.T. was not sold to Pepe and Pepe did not hurt her, and I.T. was sold by I.T's mother to an Englishman named "David," two other Caucasian men, "David" and "Mac" took pictures of themselves and their respective girlfriends at Pepe's residence and used Pepe's computers, Bassang provided Pepe with Vietnamese medicine and, afterwards, Bassang's husband took a picture of Pepe with two girls, Bassang did not use or see PEPE's attorney, and American promised Bassang her freedom if she cooperated and stated that Pepe bought children.  Dun Vibol, a Cambodian attorney, was listed as the witness for this unsigned declaration.

(26) An August 4, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076850) in which, among other things, Pepe thanked De Montero for the declaration and wrote, "It (the declaration) seems to be just what I needed."  Pepe stated that he had instructed that money be sent to De Montero, and he

asked if he should have more money sent now or later.  Pepe wrote that he wanted ". . . to be sure that the lawyer is well satisfied, but not overpaid."  Pepe also told De Montero to ". . . make sure that we take good care of Sang).  I want to make sure she is well taken care of and that she has no doubt who is take care of her and who she should support." Pepe also informed De Montero that Bassang should not speak to anyone without her lawyer present, and he wrote, "(Sangs lawyer is paid for by her other friends), but that is not their business."

   (27) An August 9, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076848-5) in which Pepe stated, among other things that he hoped Bassang's declaration would lead to a legal motion and that much may depend on any future deposition of Bassang.  Pepe wrote, "She has to know that when I get out, she gets out."  Pepe also wrote that Bassang cannot be directly told that Pepe is involved in her case.  Pepe informed De Montero that they needed to make Bassang feel like they cared about her at times other than when her assistance is needed.  In addition, Pepe stated that Bassang should get food and money periodically.  Pepe instructed De Montero to pass his best wishes to Bassang's attorney without using his name.  Pepe told De Montero that Dun Vibol was a lawyer for another inmate at the Bureau of Prisons, Metropolitan Detention Center in Los Angeles, California (MDC), who stated that Dun Vibol was a good attorney.

   (28) An August 19, 2010 letter from Pepe to De Montero (identified by the AFP as Exhibit 0076848-7) that contains responses to questions sent from De Montero to Pepe in a letter that was not seized or reviewed.  Among other things, Pepe stated that they

need to keep Bassang "satisfied so she does not betray us." Further, Pepe instructed De Montero to provide Bassang with some food and money.

(29) An undated handwritten list of "Declaration Points" prepared for witnesses by PEPE (identified by the AFP as Exhibit 0076853-29) included handwritten "Declaration from Sang" prepared by Pepe. The following is a summary of the "Declaration":

(1) Bassang has known Pepe since 2003;

(2) Bassang did not sell any _____ to Pepe. (Pepe's handwritten notes left the blank space.)

(3) Bassang sold I.T. to an individual named "David" because her mother and grandmother did not want I.T.

(4) During her hearing before a Cambodian judge, Bassang was represented by her attorney and was not advised or represented by Pepe's attorney.

(5) Bassang was afraid of U.S. authorities and Special Agent Phillips promised to release Bassang from custody in exchange for her cooperation – "…all she had to do was do what he said."

(6) When Bassang spoke with U.S. authorities and when Bassang provided testimony at the deposition, she was not permitted to have an attorney present.

(7) Bassang provided Pepe with medication that she obtained from a Vietnamese doctor.

Pepe's notes told De Montero to add to the declaration anything that Pepe had previously mentioned and any thoughts De Monteor had. Pepe's notes also advised De Montero that Bassang's attorney needed to state that they have a Vietnamese interpreter and that he is

14

representing Bassnag, and that Bassang and her attorney needed to thumb-print her declaration.

(30) An undated handwritten list of "Declaration Subjects" prepared by Pepe included the following summary of information for a declaration of Bassang's attorney:

(1) Bassang attorney was present and advised her when Bassang appeared before a Cambodian judge.

(2) Bassang's attorney was not permitted to be present when U.S. authorities questioned Bassang or at her deposition.

(3) Bassang was afraid of SA Phillips.

(4) Bassang was originally a witness for Pepe, but Special Agent Phillips obtained Bassang's cooperation by promising that she would not be charged. In the notes, Pepe told De Montero to use something similar to a declaration in Australian and Cambodian law for guidance and that the declaration(s) "should not look too American." Pepe also instructed De Montero to use the notes he provided with any De Montero additions and that copies should be made in "native language" and English.

(31) An undated letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-40) in which Pepe asked De Montero if the friend who assisted De Montero at the CNP station was the same friend assisting them with Bassang. Pepe stated that if it was the samefriend, then they would "need to figure something out because we should not have the same name on two documents." Pepe instructed De Montero to have the declarations signed, thumb-printed, and to provide English and Cambodian copies of the declaration. Pepe also told De Montero to send one copy to Pepe, one copy to Pepe's

attorneys in the United States, and to keep a copy for himself. Pepe provided De Montero with his attorney's name and address.

(32) A letter from Pepe to De Montero (identified by the AFP as Exhibit 0076853-45) in which Pepe tells De Montero, among other things, that he has a "mission" to obtain a "strong and clear statement)" from Bassang clearing Pepe of any wrongdoing. To complete this "mission," Pepe directed De Montero to provide Bassang with an attorney, have Bassang's attorney provide money to Bassang, inform Bassang that when Pepe is released, she will also be released; and that Bassang must be "thoroughly indoctrinated" to never speak with anyone without her attorney present.

(33) A letter from Pepe to De Montero (identified by the AFP as Exhibit 0076855-2) in which Pepe stated, among other things, that his attorneys in the United States were reluctant to have De Montero play a more active role, but Pepe instructed De Montero to continue with their plans. Pepe informed De Montero that Bassang needed to state that she acted as an interpreter and nurse for Pepe and that the money provided by Pepe was her salary.

(34) A letter from Pepe to De Montero (identified by the AFP as Exhibit 0076848-3) in which Pepe wrote, among other things, "I'm glad to hear that our friend is being taken care of. It is important to keep her strongly on our side. But perhaps she should not be allowed to get carried away." Pepe also informed De Montero there was money en route to cover the expense that he knew of and that they needed "to be careful of expenses." Pepe asked how a "friend" ended up in Prey Sar and if they owed him "loyalty" for past assistance. Pepe also informed De Montero that the

declarations will be included in the motions filed by his attorneys in the United States.

(35) A letter from Pepe to De Montero (identified by the AFP as Exhibit 0076848-8) in which Pepe stated, among other things, that he was pleased that his "friend in Prey Sar" was "being taken care of," that Bassang should develop a good relationship with her attorney, that he approved of their "monthly budget" and was pleased with De Montero's decision to travel to Phnom Penh on multiple occasions if necessary, that a trip to Phnom Penh may be necessary to convince "the woman" to complete a declaration similar to the one provided by BASSANG and that this needed to be done immediately, and that two witnesses whose declarations he wanted need to be reminded that Bassang is at fault and that "we/I did get them out," and if they assisted now, then Pepe and De Montero would provide them with an attorney, "a very good financial incentive", and well-paid employment in the future.

5.  I also reviewed non-privileged calls made by Pepe and recorded at the Metropolitan Detention Center.  My reports summarizing those calls is attached hereto as Exhibit E. Those calls included the following calls placed by Pepe to De Montero:

(1)  May 26, 2010:  Pepe stated that the declaration "was absolutely perfect.  It's exactly what I need" and it "covered everything we needed to cover."  De Montero stated that the declaration was completed at a police station in Cambodia.

(2) May 27, 2010: Pepe told De Montero that "the thing you did is perfect.  It's exactly what I needed; the way you wrote it and the way it was put together.  It's exactly perfect."

   (3) June 28, 2010: Pepe told De Montero that "our project at Prey Sar," to which De Montero replied that they were in the process of completing it.

   (4) July 12, 2010: Pepe told De Montero that the project at Prey Sar needed to be quickly completed so that Pepe's attorney could put it in motion.

   (5) July 18, 2010: DeMontero stated that they had "everything now" and that De Montero was waiting for them to deliver it. Pepe instructed De Montero to federal express a copy to his attorney, and De Montero stated that he was waiting for his friend to deliver a copy directly from Cambodia because it was "better."

   (6) July 24 2010: De Montero asked if Pepe was in a rush to receive that "thing from Phnom Penh", and Pepe replied that he was in a "big hurry." De Montero stated that the "thing" was completed and signed with the lawyer as a witness, and De Montero was waiting for it to be sent. Pepe asked how much for the "legal fees," and told De Montero that he would direct his sister to send the money to Cambodia.

   (7) July 28, 2010: De Montero told Pepe that the declaration had been sent and that his sister was going to send De Montero $1000 to cover legal fees and expenses.

  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

  Executed this 17th day of January, 2014, at Los Angeles, California.

_____
EDDY WANG

18