UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07–168 DSF | | Date | 2/5/14 |
|---|---|---|---|---|

| Present: The Honorable | DALE S. FISCHER, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | Not Present |

| Debra Plato | Not Present | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Michael Pepe | NOT | | X | Charles C. Brown | NOT | | X |

**Proceedings:** (IN CHAMBERS) Order DENYING Defendant's Motion for New Trial (Docket No. 445)

On May 29, 2008, Defendant Michael Pepe was convicted of seven counts of engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c). Pepe moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on newly discovered evidence of interpreter bias.[1]

## I. BACKGROUND

The evidence at trial showed that, between September 2005 and June 2006, Pepe traveled to Cambodia and engaged in illicit sexual conduct with seven minors. This evidence included the testimony of six minor victims: two testified in Vietnamese (I.T. and N.T.D.), and four testified in Khmer (T.C., L.K., K.S., and S.R.). Pepe challenges the accuracy of the Vietnamese and Khmer interpreters' translations of these witnesses' testimony. Pepe contends that the Vietnamese interpreter was biased due to a sexual relationship with the Government's lead case agent and an inappropriate friendship with one of the AUSAs working on the case,[2] (Def.'s Mot. for New Trial 4-6), and that both the Vietnamese and Khmer interpreters materially mistranslated the minor victims' testimony. The Government argues that the interpreters'

---

[1] The supplemental motion - raising different grounds - was withdrawn.

[2] The Court rejects defense counsel's suggestion at the hearing that the Khmer interpreter was biased because she was contracted by the Vietnamese interpreter's office. There are no allegations of misconduct by the Khmer interpreter, nor is there any evidence that the Vietnamese interpreter attempted to influence the Khmer interpreter's translations in any way.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

translations contained only de minimis errors and did not affect the outcome of the trial.

The testimony of all six minor victims was recorded on videotape, as required by 18 U.S.C. § 3509(i) when an adult attendant accompanies a minor victim to the witness stand. Both the Government and Pepe have engaged Vietnamese and Khmer experts to examine and translate the testimony from the videotapes and compare them to the translations recorded in the official transcript. The Government's retained Vietnamese expert is Chau Stotelmyre, (Decl. of Chau Stotelmyre, Ex. B (Stotelmyre Report)), and Pepe's retained Vietnamese expert is Jimmy Tong Nguyen, (Def.'s Mot. for New Trial, Ex. A (Nguyen Report))[3]. The Government's retained Khmer expert is Rithy Lim, (Opp'n to Mot. for New Trial, Exs. B-E (Lim Report)), and Pepe's retained Khmer expert is Chetra A. Keo, (see Def.'s Reply, Ex. B.; Mot. for New Trial, Attachment to Ex. A (Keo Report).)

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A defendant is entitled to a new trial on the basis of newly discovered evidence if:

> (1) the evidence is newly discovered; (2) the failure to discover the evidence sooner was not the result of lack of diligence; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicates that a new trial would probably result in acquittal.

United States v. Sarno, 73 F.3d 1470, 1507 (9th Cir. 1995) (citation omitted).

## III.  DISCUSSION

The Government does not dispute that the case agent engaged in an improper relationship with the Vietnamese interpreter. (See Opp'n to New Trial re Interpreter Bias 1.) However, the parties dispute the materiality of the alleged inaccuracies in the translations and their effect, if any, on the jury's verdict.

As a preliminary matter, the Court rejects Pepe's contention that prejudice should be

---

[3] The Court has no reason to doubt Nguyen's language expertise, but he repeatedly opined on subjects as to which he has no demonstrated expertise, such as the alleged purpose of the interpreter's alleged mistranslations, and the prosecutor's mental state on hearing the translation. (See, e.g., Nguyen Report at ¶¶ 4, 5, 8, 9.) The Court considers only matters in the Report on which Nguyen appears qualified to opine.

presumed based on the evidence of the Vietnamese interpreter's bias. In support of this proposition, Pepe cites to cases concerning jury tampering. (See Def.'s Mot. for New Trial 12-13.) Pepe has not provided the Court with, nor is the Court aware of, any authority applying this body of law in the context of interpreter bias. Pepe also asserts that the mistranslations violated the Confrontation Clause of the Sixth Amendment, and that therefore it is unnecessary to establish prejudice. But even assuming the Confrontation Clause analysis applies,[4] a showing of prejudice would still be required. Pepe cites to United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006), but that case dealt with the deprivation of the right to choose counsel under the Sixth Amendment. Id. (refusing to apply harmless error standard because "[i]t is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings"). Indeed, the Ninth Circuit has held that a "[v]iolation of the Confrontation Clause is trial error subject to harmless-error analysis . . . because its effect can be quantitatively assessed in the context of other evidence presented to the jury." Winzer v. Hall, 494 F.3d 1192, 1201 (9th Cir. 2007) (citation and quotation marks omitted). Pepe would therefore be required to show actual prejudice under either the Sixth Amendment standard or the standard for a motion for a new trial.

"[W]hile the general standard for interpreters requires continuous word-for-word translation, occasional lapses in the standard will not necessarily contravene a defendant's constitutional rights." See United States v. Long, 301 F.3d 1095, 1105 (9th Cir. 2002). With this principle in mind, the Court has examined the translations and opinions of both parties' expert interpreters. The Court will not address every alleged inaccuracy in this Order, but only those highlighted in the parties' papers.[5] Several of these mistranslations are undisputed, although the parties argue about context and about materiality of the mistranslations. Two of the alleged mistranslations are disputed.

    A.    **Undisputed Mistranslations**

**1. "Cultural Coding."** Pepe points to several examples of "cultural coding" through the in-court interpreters' improper use of pronouns. On several occasions, the Khmer interpreter used the term "child" in place of the word "you" in translating questions to the witnesses. (Keo Report 1-2.) For a few questions, the Khmer interpreter also used the third-

---

[4] This is a motion for new trial based on newly discovered evidence, so presumably that standard should apply.

[5] With respect to those not specifically mentioned here, the Court finds that – even assuming the defense interpreters' translations are correct – the correct translations would not probably have resulted in an acquittal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

person "he" to refer to the defense attorney during cross-examination. (Id. 5-6, 9.)[6] The Vietnamese interpreter similarly translated "you" as "child" or "my child." (Nguyen Report ¶ 2.) In addition, the Vietnamese interpreter referred to the AUSA as "the judge" on several occasions when translating his questions on direct examination. (Id. ¶ 1.) The Government does not appear to dispute these references, but rather characterizes them as de minimis errors. (See Opp'n to Mot. for New Trial 21-22.) The Court agrees. Although these references are not best practice, they did not alter the nature of the witnesses' testimony such that the verdict might have been different. Indeed, Pepe's Khmer expert described the use of "he" to refer to the defense attorney as "such a minor discrepancy," (Keo Report 5), and said the use of "child" was "not completely incorrect," (Keo Report 1, 8).

**2. I.T.'s Presence at Court Preparation Sessions.** Pepe points to a mistranslation recognized in the report by Stotelmyre, the Government's Vietnamese expert. Pepe asserts that during the cross-examination of N.T.D., defense counsel asked "was [I.T.] at Mr. Pepe's house?" and that the interpreter mistranslated N.T.D.'s response – "[I.T.] was not there" – to "Can you ask me again?" (Def.'s Mot. for New Trial 4.) Pepe contends that this was a "critical response that contradicted the government's version of the events and benefitted the defense."[7] (Id. at 8.) But Pepe has (inexplicably) misstated the question. As shown by the actual transcript, and Stotelmyre's Report, defense counsel asked: "Was [I.T.] at the practice court when you were practicing? Was [I.T.] there?" (Stotelmyre Report 4.) According to Stotelmyre, the interpreter mistranslated N.T.D.'s response of "[I.T.] was not there" to "Can you ask me again?" (Id.) Although the mistranslation of the response is still an error, the transcript makes clear that this mistranslation was not prejudicial. The defense attorney was asking N.T.D. whether I.T. was present at court preparation sessions N.T.D. attended, (see Docket No. 412, Reporter's Transcript, May 14, 2008, 122:1-123:15), presumably a much less critical topic. In any event, later in the cross-examination, N.T.D. made clear that I.T. was not present at those sessions – thus negating any confusion or detriment caused by the earlier mistranslation. (See id. 123:24-124:1.)

---

[6] The Court disagrees with the defense position that this use of third person pronouns for defense counsel created the appearance of bias. (See Def.'s Mot. for New Trial 9.) That the interpreter translated, for example, "I have to ask you a few questions. Is that Okay?" as "He would like to ask you some questions. Is that Okay?" would have not have affected the witnesses' testimony. (See Keo Report 5.) Moreover, the interpreter also referred to Government counsel by use of the third-person pronoun. (See, e.g., Lim Report, Ex. B, at 3, 9; Keo Report 17.)

[7] Pepe's expert apparently did not identify this "critical" alleged mistranslation. (See Nguyen Report.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**3. Purpose for Going to Pepe's Home.** Pepe points to another mistranslation identified in the Stotelmyre Report,[8] which occurred during the direct examination of I.T. The AUSA asked I.T. why she thought she was going to Pepe's house and, according to Stotelmyre, I.T. responded, "I heard him telling me that if I went over to his house, then he would let me eat a lot." (Stotelmyre Report 10.) The in-court interpreter translated this as "I heard that when I went to his house, I would be sending to school." (Id.) Pepe argues that this was prejudicial because the incorrect translation was consistent with the Government's theory that "going to school" was a cover-up for Pepe's illicit sexual activity with his victims. But this translation is equally consistent with the defense theory of the case – that Pepe was legitimately sending the girls to school without engaging in any illicit activity. Pepe called several witnesses to attest to his dedication to increasing educational opportunities to both children and adults in Cambodia. Indeed, at closing argument, defense counsel argued: "The problem is – and this really is the fatal problem with the Government's theory – the Government can't really explain the positive aspects of Mr. – of Mr. Pepe. They can't explain the fact that he has got a legitimate interest in education and it's not just children. They can't explain that he is sending these girls to school and they can't explain why they look happy in the photos." (Docket No. 419, Reporter's Transcript, May 28, 2008, 91:1-7.)

**4. Demonstration re Tying Hands**. Pepe points to an instance in which the Khmer interpreter purportedly "carried a dialogue with the witness" instead of directly translating what was being said. (See Keo Report 2-3.) The exchange occurred during the Government's direct examination of T.C., in which the AUSA asked T.C. to demonstrate how Pepe tied her up. Although Pepe's and the Government's Khmer experts translate the exchange slightly differently, the translations are substantially similar. (Id.; Lim Report, Ex. B. 10-11.) There was some confusion during this exchange, and the Khmer interpreter briefly attempted to explain to T.C. what the AUSA was asking her to do rather than translating each word verbatim. Pepe asserts that it was Keo who "discovered" that during the examination of T.C., the interpreter "carried on a dialogue" with the witness. (Def.'s Reply 4.) But that is not accurate. What was happening was obvious. In fact, the interpreter turned to the Court and appeared to begin to ask how to handle the situation. But the Court had already recognized the issue and interrupted, stating: "Translate what she's saying." (See Keo Report 2.) Again, the interpreter's actions were not best practice, but Pepe does not even attempt to suggest how they could have affected the outcome of the trial.

**B. Disputed Mistranslations**

---

[8] Again, Pepe's expert apparently did not identify this alleged mistranslation. (See Nguyen Report.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

    **1. Injury to Thigh.** Pepe highlights a portion of the cross-examination of S.R. during which S.R. purportedly conceded that she did not describe an injury to her inner thigh until it was suggested to her by the case agent. (See Keo Report 20-21.) According to Pepe's expert, the defense attorney asked S.R. whether she pointed to her thigh only after the case agent prompted her to, and S.R. responded "True." (Id. at 21.) The in-court interpreter, however, said: "What do you mean?" (Id.) The Government's expert translated S.R.'s response differently – as "Not true" instead of "True." (Lim Report, Ex. E. 20.) But regardless of S.R.'s response, it is clear from the context of the exchange that the defense attorney was questioning S.R. about identifying a mole on Pepe's leg, not an injury to S.R's thigh.[9] (See Docket No. 414, Reporter's Transcript, May 16, 2008, 15:25-16:2; 21:8-22:19.) The entire line of questioning was somewhat confusing, because defense counsel was showing S.R. a photograph, and then began asking questions about how she first identified a mole on Pepe's body during a previous videotaped interview. Defense counsel then stepped out from the lectern and began asking questions while pointing at places on his own body – describing what he was doing, as had been required by the Court.

    Defense counsel suggested that S.R. had been prompted by the agent to say Pepe had a mole, but she denied that in an undisputed portion of the transcript. (See id. 21:8-10 ("Q: Someone had told you it was important to say Michael had a mole, hadn't they?  A: No.")) Defense counsel then asked a series of questions regarding where S.R. initially pointed when asked where the mole was. S.R. responded that she pointed "[n]ot exactly where that mole is" but "[o]n that side, the legs." (Id. 21:18-23.) Defense counsel then asked whether S.R. pointed to the inner thigh when the case agent suggested this as a possibility. It was at this point that S.R. responded with the disputed answer – either "True" or "Not true." (Id. 22:17-19.) But immediately after the interpreter (presumably) mistranslated "What do you mean?" defense counsel stated, "you pointed to the inside of the thigh after [the case agent] pointed to that as a possibility on the video; right?" It is undisputed that S.R. responded unequivocally, "He did not show me." (Id. 22:20-23.) Therefore, on two occasions – both before and after the disputed translation – S.R.'s response was consistent with the Government expert's translation of "Not true." In any event, the jury was shown the videotaped interview at issue showing the exchange between S.R. and the case agent. (See id. 19:5-20:11.) Even if Pepe's expert's translation is correct, whether S.R. had assistance in identifying a mole on Pepe's body is at most only minimally relevant to S.R.'s credibility when considering all the evidence. The Court finds, however, that the Government's interpreter more likely provided the correct translation, as that translation is consistent with S.R.'s other answers. In that case, there is no possible prejudice from the mistranslation.

---

    [9] Pepe's expert does not state that the exchange concerned an injury to S.R.'s thigh. Defense counsel merely asserts this in his papers. At the hearing, defense counsel admitted that this was an error.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

      **2. Question re Beating.** During the direct examination of T.C., the AUSA asked her "What were you doing when Michael hit you on the back?"[10] It is undisputed that T.C. responded, "I wouldn't sleep with him." (Keo Report 4.) The AUSA then asked: "When you say, 'I wouldn't sleep with him,' what do you mean?" Pepe's Khmer expert asserts that T.C. responded "I didn't sleep because I was afraid of him." (Id.) The in-court interpreter translated T.C.'s response as "I meant that I wouldn't let him insert his penis in my vagina." (Id.) According to the Government's expert, however, most of T.C.'s response is inaudible: "I wouldn't let him [inaudible]." (Lim Report, Ex. B. 17.) Obviously, the portion the Government's expert could hear is consistent with the in-court translation. The Court also agrees with the Government that, in context, Pepe's expert's translation does not make sense. The transcript makes clear that T.C. was not testifying that she could not fall asleep, but rather that she refused to have sex with Pepe. But even assuming Pepe's expert is correct, the alleged mistranslation would have been cumulative. See United States v. Hinkson, 611 F.3d 1098, 1114 (9th Cir. 2010) ("[N]ewly discovered evidence is material when the result of the newly discovered evidence is that a new trial would probably result in acquittal, a condition that is not usually met when the newly discovered evidence is cumulative or merely impeaching.") (citations, alterations, and quotation marks omitted). Indeed, at the point of this purported mistranslation, S.R. had testified that Pepe had sexual intercourse with her multiple times. (Lim Report, Ex. B 16.) And testimony that T.C. wouldn't sleep with Pepe (or didn't sleep) because she was afraid of him – while not as harmful to the defense – certainly would not have helped Pepe's case.

## IV.  CONCLUSION

      The Court in no way condones what appears to be egregious misconduct by the case agent and Vietnamese interpreter. Nonetheless, the above errors likely reflect the inherent imprecision of translation, which is only heightened in the context of translating for minors. Regardless of their cause, any mistranslations did not have a material effect on the trial such that "a new trial would probably result in acquittal" – especially given the voluminous evidence of Pepe's guilt. See Sarno, 73 F.3d at 1507; see also Long, 301 F.3d at 1103 ("We generally view interpreter problems within the context of an entire trial, . . . and the government had other evidence and witnesses . . . to support its case against Long."). For the reasons stated above and the reasons stated in the Opposition, Pepe's motion for a new trial is DENIED.

---

      [10] The Court notes that the Keo Report does not accurately transcribe this question – which, of course, was asked in English. (See Docket No. 393, Reporter's Transcript, May 13, 2008, 17:17; Keo Report at 4.)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

IT IS SO ORDERED.