NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (Cal. Bar No. 132610)
STEPHANIE S. CHRISTENSEN (Cal. Bar No. 236653)
DAMARIS DIAZ (Cal. Bar No. 277524)
Assistant United States Attorneys
      1200/1300 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:    (213) 894-0640/3756/0302
      Facsimile:    (213) 894-3713
      E-mail:       patricia.donahue@usdoj.gov
                    stephanie.christensen.@usdoj.gov
                    damaris.diaz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-168(B)-DSF |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT BASED ON UNCONSTITUTIONAL STATUTES AND FAILURE TO STATE AN OFFENSE; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS |
| v. | |
| MICHAEL JOSEPH PEPE, | |
| Defendant. | |
| | Hearing Date:   December 16, 2019 |
| | Hearing Time:   8:30 a.m. |
| | Location:       Courtroom of the Hon. DALE S. FISCHER |

Plaintiff United States of America, by and through its counsel of record, hereby files its opposition to Defendant Michael Joseph Pepe's Motion to Dismiss the Second Superseding Indictment Based on Unconstitutional Statutes and Failure to State an Offense (CR 584).

This Opposition is based upon the attached memorandum of points and authorities and the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 25, 2019                 Respectfully submitted,

                                         NICOLA T. HANNA
                                         United States Attorney

                                         BRANDON D. FOX
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                          /s/
                                         DAMARIS DIAZ
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I.      INTRODUCTION ...............................................................................1

II.     STATEMENT OF FACTS ..................................................................1

III.    ARGUMENT.......................................................................................2

      A.   Congress Acted Within its Constitutional Powers under the Foreign Commerce Clause in Enacting 18 U.S.C. § 2423(b) ...................2

           1.   The Legal Framework For Foreign Commerce Clause Analysis .......3

           2.   Whether Under The *Clark* Rational-Basis Test, Or The *Lopez* Three-Prong Test, Section 2423(b) Does Not Violate The Foreign Commerce Clause Neither On Its Face Nor As Applied ..............5

      B.   Congress Acted Within its Commerce Clause Authority in Enacting 18 U.S.C. § 2241 ............8

      C.   Section 2241(c)  Applies to Defendant's Travel From the United States to Cambodia ............9

           1.   The Plain Language of the Statute Does Not Require a Crossing from One State to Another ............9

           2.   Legislative History Supports Applying Section 2241(c) to International Travel ............12

           3.   Section 2241(c) is Not Ambiguous or Vague ............13

           4.   Defendant's Motion is Moot Because He Crossed State Lines When Traveling Between New Mexico and California Before Traveling to Cambodia ............14

IV.     CONCLUSION....................................................................................15

i

# TABLE OF AUTHORITIES

FEDERAL CASES:                                                          PAGE

Ashcroft v. Free Speech Coal.,
    535 U.S. 234 (2002)..................................................................9

Batson v. United States,
    __ U.S. __; 137 S. Ct. 850 (2017) ........................................6

Bd. of Trustees of the Univ. of Ill. v. United States,
    289 U.S. 48 (1933)....................................................................3

Blackmer v. United States,
    284 U.S. 421 (1932)..................................................................3

Caminetti v. United States,
    242 U.S. 470 (1917)..................................................................5

Cherokee Nation v. Georgia,
    30 U.S. 1 (1835)........................................................................3

Dean v. United States,
    556 U.S. 568 (2009)................................................................13

Forbes v. Napolitano,
    236 F.3d 1009 (9th Cir.2000) ................................................14

Japan Line, Ltd. v. County of Los Angeles,
    441 U.S. 434 (1979)..................................................................3

Morrison v. National Australia Bank Ltd.,
    561 U.S. 247 (2010)................................................................11

Muscarello v. United States,
    524 U.S. 125 (1998)................................................................13

RJR Nabisco, Inc. v. European Cmty.,
    __ U.S. __; 136 S. Ct. 2090 (2016) ................................10, 11

Sealed Appellee v. Sealed Appellant,
    825 F.3d 247 (5th Cir. 2016) ................................................10

## TABLE OF AUTHORITIES (CONTINUED)

<u>FEDERAL CASES</u>                                                          PAGE

<u>Smith v. United States</u>,
        508 U.S. 223 (1993)..................................................................13

<u>United States v. Banks</u>,
        514 F.3d 959 (9th Cir. 2008) .............................................13, 14

<u>United States v. Bianchi</u>,
        386 Fed. Appx. 156 (3d Cir. 2010) ............................................7

<u>United States v. Bollinger</u>,
        798 F.3d 201 (4th Cir. 2015) ......................................................7

<u>United States v. Bredimus</u>,
        352 F.3d 200 (5th Cir. 2003) ..................................................3, 6

<u>United States v. Clark</u>,
        435 F.3d 1100 (9th Cir. 2006) ...............................3, 4, 5, 6, 7, 8

<u>United States v. Cummings</u>,
        281 F.3d 1046 (9th Cir. 2002) ................................................4, 5

<u>United States v. Curtiss-Wright Export Corp.</u>,
        299 U.S. 304 (1936)....................................................................3

<u>United States v. Durham</u>,
        902 F.3d 1180 (10th Cir. 2018) ............................................7, 8

<u>United States v. Han</u>,
        230 F.3d 560 (2d Cir. 2000) .......................................................6

<u>United States v. Irving</u>,
        554 F.3d 64 (2d Cir. 2009) .......................................................10

<u>United States v. JDT</u>,
        762 F.3d 984 (9th Cir. 2014) ....................................................14

<u>United States v. Lee</u>,
        183 F.3d 1029 (9th Cir. 1999) ..................................................14

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>FEDERAL CASES</u>                                                                    PAGE

<u>United States v. Lindsay</u>,
     931 F.3d 852 (9th Cir. 2019) .................................................................. 4, 7

<u>United States v. Lopez</u>,
     514 U.S. 549 (1995) ...................................................................... 3, 4, 5, 6, 7

<u>United States v. Morrison</u>,
     529 U.S. 598 (2000) .................................................................................. 3

<u>United States v. Nader</u>,
     542 F.3d 713 (9th Cir. 2008) .................................................................. 13

<u>United States v. Pendleton</u>,
     658 F.3d 299 (3d Cir.2011) ....................................................................... 4

<u>United States v. Schumaker</u>,
     479 F. App'x 878 (11th Cir. 2012) ................................................... 10, 14

<u>United States v. Stokes</u>,
     726 F.3d 880 (7th Cir. 2013) ..................................................................... 6

<u>United States v. Thomas</u>,
     893 F.2d 1066 (9th Cir. 1990) ................................................................... 9

<u>United States v. Tom</u>,
     565 F.3d 497 (8th Cir. 2009) ..................................................................... 8

<u>United States v. Tykarsky</u>,
     446 F.3d 458 (3d Cir. 2006) ...................................................................... 6

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>FEDERAL STATUTES</u>:                                                    PAGE

18 U.S.C. § 2241 ................................................................................*passim*

18 U.S.C. § 2251(a) ....................................................................................9

18 U.S.C. § 2423 ................................................................................*passim*

<u>OTHER</u>:

142 Cong. Rec. S8636-03 (1996)...……................................................12

1996 CONG US HR 3180.…….....................................................................12

1996 CONG US HR 4331.…….....................................................................12

H.R. Rep. 105-557 (1998).…….....................................................................13

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

Defendant Michael Joseph Pepe is charged in a second superseding indictment ("SSI") with two counts of traveling in foreign commerce—from the United States to Cambodia—with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), as well as two counts of knowingly crossing a state line with the intent to engage in a sexual act with a child under 12 years of age, in violation of 18 U.S.C. § 2241(c).  Defendant asks the Court to dismiss all of these charges.

Defendant claims that Sections 2423(b), on its face, and 2241(c), as applied, exceed Congress's powers under the Foreign Commerce Clause.  They do not.  He cites no case so holding because none ever has.  As to Section 2423(b), his claim is contrary to Ninth Circuit precedent, and as to Section 2241(c), his claim is contrary to several district court rulings, and at odds with circuit court reasoning in analogous cases.  Congress's power to regulate under the Foreign Commerce Clause is expansive and no Supreme Court case has ever struck down a statute as violating the Foreign Commerce Clause.  This Court should not break new ground.

Defendant also claims that the SSI fails to allege a violation of Section 2241(c), because Defendant crossed an international border, and not a "State line."  Defendant's interpretation goes against the plain language of the statute and Congress's intent— which was to expand federal prosecution of sexual offenses against children.  There is no authority limiting the application of Section 2241(c) to domestic border crossings, and several courts have upheld convictions involving international travel.  Regardless, Defendant did cross domestic state lines—from New Mexico to California—on his way back to Cambodia, and his motion is therefore moot.

The Court should deny his motion.

## II.   STATEMENT OF FACTS

In May 2005 and again in September 2005, Defendant, a United States citizen, flew on a commercial airliner from Los Angeles, California, to Phnom Penh, Cambodia.

(*See* Exhibit A.)[1]  On each occasion, Defendant had been in the United States, specifically New Mexico, for his son's graduation in May 2005 and his daughter's wedding in August 2005.  (*See* Exhibits B, C; *see also* CR 400, RT 5/16/08 at 100:14-101:17.)[2]  Defendant then returned Cambodia from New Mexico by way of California.  (Ex. A.)  After his arrival in Cambodia, Defendant procured unlimited access to several victims, including the four minor girls under age twelve who are identified by their initials in the SSI.[3]  As the evidence established at the first trial, Defendant engaged in illicit sexual conduct with seven minor girls, including the four noted above.

## III.  ARGUMENT

### A.    Congress Acted Within its Constitutional Powers under the Foreign Commerce Clause in Enacting 18 U.S.C. § 2423(b)

Defendant asserts that Section 2423(b) is an unconstitutional exercise of Congress's powers under the Foreign Commerce Clause.  (*See* Mot. at 2–7.)[4]  He cites no case so holding because none exists.  Instead he cobbles together this argument from the dissents in two cases, cases that do not even challenge Section 2423(b).  *Id.* (relying on dissenting opinion of Judge Ferguson in *United States v. Clark*, a case challenging Section 2423(c), and Justice Thomas's dissent from denial of *certiorari* in *Batson v. United States*, discussing question whether restitution is proper against a foreign national for foreign-based conduct related to a U.S.-based crime).  Stated differently, Defendant is making an argument that has never been articulated by any judge or justice even in

---

[1] Attached hereto as Exhibit A is a true and correct copy of Report of Investigation ("ROI") 4, dated August 14, 2006, and produced in discovery as Bates Number 06220-22.

[2] Attached hereto as Exhibit B is a true and correct copy of ROI 25, dated January 25, 2008, and produced in discovery as Bates Number 06297-99.  Attached hereto as Exhibit C is a true and correct copy of ROI 35, dated April 14, 2008, and produced in discovery as Bates Number 07134-37.

[3] Pursuant to a protective order issued by the Court, the government produced to defendant the identities of the minor victims.

[4] In 2007, defendant made the same arguments with respect to 18 U.S.C. § 2423(c), with which he was charged in the original indictment, in a motion filed on October 4, 2007.  (CR 43.)  This Court denied that motion on December 3, 2007.  (CR 57.)

dissent.  He invites this Court to be the first to so hold.  The court should decline the invitation.

### 1.   The Legal Framework For Foreign Commerce Clause Analysis

To understand Defendant's arguments it is helpful to review the framework for examining challenges to Congress' power under the Foreign Commerce Clause.  The Constitution expressly authorizes Congress to "regulate Commerce" in three distinct areas: "with Foreign Nations, and among the several states, and with Indian tribes."  U.S. Const. Art. I § 8 cl. 3; *Cherokee Nation v. Georgia*, 30 U.S. 1, 18 (1835) (recognizing three "entirely distinct" classes of regulation—foreign nations, states, and Indian tribes).

The power to regulate commerce with foreign nations—the Foreign Commerce Clause—is greater than the power to regulate commerce among the states—the Interstate or Domestic Commerce Clause.  *See United States v. Bredimus*, 352 F.3d 200, 208 (5th Cir. 2003) (citing *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448 n.12 (1979)).  "In fact, the Supreme Court has never struck down an act of Congress as exceeding its powers to regulate foreign commerce."  *United States v. Clark*, 435 F.3d 1100, 1113 (9th Cir. 2006).[5]

The Supreme Court has, however, struck down statutes as exceeding the congressional authority under Interstate Commerce Clause.  In *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), the Supreme Court articulated the outer limits of Congress' power to regulate commerce "among the several states" often referred to as the Interstate or Domestic Commerce Clause power.  *See United States v. Clark*, 435 F.3d 1100, at 1111.  In *Lopez*, the high court articulated three permissible categories of interstate commerce regulation: (1) the use of the

---

[5] Few, if any, limitations exist.  *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 315–16 (1936) ("The broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true only in respect to our internal affairs."); *Bd. of Trustees of the Univ. of Ill. v. United States*, 289 U.S. 48, 56 (1933); *Blackmer v. United States*, 284 U.S. 421, 436–37 (1932).

channels of interstate commerce, (2) the instrumentalities of interstate commerce, and (3) activities that substantially affect interstate commerce.  514 U.S. at 558–59.  Courts have applied the *Lopez* framework to the Foreign Commerce Clause, even while recognizing Congress's more expansive authority under it.  *See, e.g., United States v. Cummings*, 281 F.3d 1046, 1049 n.1 (9th Cir. 2002) ("Although *Lopez* dealt with interstate commerce, we apply its analytical framework in the foreign commerce area as well, where Congress has broader power."); *United States v. Pendleton*, 658 F.3d 299, 308 (3d Cir.2011) (applying *Lopez* to uphold § 2423(c) as a valid exercise of Congress' power under the Foreign Commerce Clause "because the jurisdictional element in § 2423(c) has an 'express connection' to the channels of foreign commerce").

In *Clark*, the Ninth Circuit held that the *Lopez* three-prong test designed for Interstate/Domestic Commerce Clause, need not be applied in the Foreign Commerce Clause context.  435 F.3d 1100, at 1103.  The defendant in *Clark* was an American citizen who traveled to Cambodia and paid to have sex with several young boys.  *Id.* at 1103–04. He was convicted in the U.S. of violations of Section 2423(c).

In upholding his convictions over his Foreign Commerce Clause challenge, the Ninth Circuit chose not to apply the *Lopez* framework to determine whether 18 U.S.C. § 2423(c) was a valid exercise of Congress' foreign commerce clause power.  The court explained that the federalism concerns underlying the Interstate Commerce Clause and giving rise to the *Lopez* three-prong test, do not exist in the Foreign Commerce Clause. *Id.* at 1110–14.  Instead of the three-prong test, the Ninth Circuit held that the question "is whether the statute bears a rational relationship to Congress's authority under the Foreign Commerce Clause." *Id.* at 1114; *see also United States v. Lindsay*, 931 F.3d 852, 861 (9th Cir. 2019).  Applying this test, the court held that a defendant who "travels in foreign commerce to a foreign country and offers to pay a child to engage in sex acts…falls under the broad umbrella of foreign commerce and consequently within congressional authority under the Foreign Commerce Clause." *Clark*, 435 F.3d at 1103.

4

But *Clark* went even further.  Shoving what it saw as a square peg in around hole, *Clark* nevertheless applied the *Lopez* framework and found that under it, Section 2423(c) "can also be viewed as a 'valid regulation of the 'channels of commerce.'"  435 F.3d at 1116 (quoting *Lopez*).  The court explained: "Our previous decisions have recognized that Congress legitimately exercises its authority to regulate the channels of commerce where a crime committed on foreign soil is necessarily tied to travel in foreign commerce, even where the actual use of the channels has ceased."  *Id.*

        2.    <u>Whether Under The *Clark* Rational-Basis Test, Or The *Lopez* Three-Prong Test, Section 2423(b) Does Not Violate The Foreign Commerce Clause Neither On Its Face Nor As Applied</u>

Perhaps recognizing that the Ninth Circuit strayed from another holding in *Clark* to overturn the convictions from his first trial, Defendant dedicates the majority of this argument to criticizing *Clark's* rational-basis test, arguing that instead *Lopez's* three-prong test should apply and that Section 2423(b) exceeds Congress's powers under that test.  Mot. at 2–5.  This Court should hold that regardless of the test, Section 2423(b) does not violate the Foreign Commerce Clause.  To hold otherwise would violate Ninth Circuit precedent, put the Court at odds with rulings from several other circuits, and go where no Supreme Court case has gone before.

        a.    Section 2423(b) is constitutional under the *Lopez* test

In *United States v. Simonson*, the Ninth Circuit explicitly upheld Section 2423(b) against a Foreign Commerce Clause challenge, albeit in an unpublished decision.  *See* 244 Fed. Appx. 823, 825–26 (9th Cir. 2007) (unpublished).  Relying on *Clark's* alternative holding under the *Lopez* test, in *Simonson* the Ninth Circuit held that "Congress has the power to regulate foreign commerce and to act to prevent the channels of commerce from being used for immoral or injurious purposes. . . .  Hence, 18 U.S.C. § 2423(b) falls within Congress' power to regulate channels of foreign commerce."  *Id.* (citing *Clark*, 435 F.3d at 1116; *Cummings*, 281 F.3d at 1049–51; and  *Caminetti v. United States*, 242 U.S. 470, at 491 (1917)).

///

5

Other circuits have upheld Section 2423(b) on these same grounds.  *See United States v. Stokes*, 726 F.3d 880, 894–95 (7th Cir. 2013) (upholding Section 2423(b) against a Foreign Commerce Clause challenge under *Lopez's* "channels of commerce" prong); *United States v. Bredimus*, 352 F.3d 200, 202, 206 (5th Cir. 2003) (same);  *cf. United States v. Tykarsky*, 446 F.3d 458, 462, 470 (3d Cir. 2006) (affirming denial of Commerce Clause challenge where a defendant traveled in *interstate* commerce in violation of Section 2423(b) by applying Lopez "channels of interstate commerce" prong); *United States v. Han*, 230 F.3d 560, 562-63 (2d Cir. 2000) (upholding interstate-travel prong of Section 2423(b) against a Commerce Clause challenge and holding the statute did not punish mere thought as applied to the defendant but regulated channels of interstate commerce under *Lopez*).

Even Judge Ferguson in dissent in *Clark* (upon which Defendant bases his entire motion) opined that Section 2423(b) "contains a defensible link to the channels of foreign commerce" because it covers United States citizens who travel with "illegitimate ends"—the specific intent to engage in illicit sexual conduct.  *Clark*, 535 F.3d at 1119. "The person indicted under § 2423(b) has a plane ticket in hand, has paid a travel agent to set up the trip, or has otherwise committed an act that is both wrongful (because of the criminal intent) and tangibly related to the channels of commerce."  *Id.*

      b.    Section 2423(b) is also constitutional under the *Clark's* rational-basis test

Further, *Clark's* rational-basis test holding extends easily from Section 2423(c) to Section 2423(b).  Both require travel in foreign commerce and prohibit illicit sexual conduct, the only difference being that (b) prohibits traveling "for the purpose of engaging in" and (c) prohibits actually "engag[ing] in" illicit sexual conduct.  *Compare* 18 U.S.C. § 2423(b) (2003) *with* 18 U.S.C. § 2423(c) (2003).

Devoid of any actual case standing contrary to *Clark's* rational-basis test, Defendant cites Justice Thomas's dissent from denial of *certiorari* in *Batson v. United States*, __ U.S. __; 137 S. Ct. 850, 850–51 (2017), and claims that the Justice would

disagree with the "tenable-nexus analysis used by the *Clark* majority" as impermissibly regulating "conduct occurring entirely within the jurisdiction of a foreign sovereign." Mot. at 6. Even setting aside the weak nature of his claimed authority, the reasoning of his argument fails. Unlike subsection (c) at issue in *Clark*, a violation of subsection (b) can occur without ever laying hands on a child abroad. Thus it can hardly be said that it regulates conduct occurring entirely abroad.

Defendant also uses Justice Thomas's dissent from denial of *certiorari*, to argue that where Subsection 2423(b) is used to prohibit travel in foreign commerce with the intent to engage in non-commercial sex acts with a minor abroad, it violates the Foreign Commerce clause because non-commercial sex acts are not commerce and are properly regulated by the foreign sovereign. *See* Mot. at 6–7. As an initial matter, the evidence at Defendant's first trial showed that he frequently paid to abuse the victims and thus as applied to him, this argument is irrelevant. Regardless, Defendant's argument was recently rejected by the Ninth Circuit in *United States v. Lindsay*, 931 F.3d 852, 862 (2019).

In *Lindsay*, the Ninth Circuit applied *Clark's* rational-basis test and held that "non-commercial sex with a minor abroad fairly relates to foreign commerce, and that Congress accordingly acted within its constitutional bounds when it enacted the non-commercial part of section 2423(c)." *Lindsay*, 931 F.3d at 862. Because "illicit sexual conduct" is defined the same under both Section 2423(b) and (c), *Lindsay* also controls in the Section 2423(b) context at issue here. *See* 18 U.S.C. § 2423(f) (defining "illicit sexual conduct" in 2423).

Moreover, even before *Lindsay*, other circuits have reached the same result. *See United States v. Bollinger*, 798 F.3d 201, 215–16 (4th Cir. 2015) (applying *Lopez* framework and upholding the constitutionality of non-commercial sex acts under Section 2423(c) given Congress's "more expansive" Foreign Commerce Clause powers); *United States v. Bianchi*, 386 Fed. Appx. 156, 161–62 (3d Cir. 2010) (unpublished) (extending the Ninth Circuit's reasoning in *Clark* to non-commercial illicit sexual conduct); *cf.*

1
2

*United States v. Durham*, 902 F.3d 1180, 1216 (10th Cir. 2018) (upholding Section 2423(c) under a modified *Lopez* approach).

3
4

In sum, whether under *Clark's* rational-basis test, or under *Lopez's* "channels of commerce" prong, Section 2423(b) does not violate the Foreign Commerce Clause.

5
6

**B.    Congress Acted Within its Commerce Clause Authority in Enacting 18 U.S.C. § 2241**

7
8
9
10
11
12

Defendant also moves to dismiss the two 18 U.S.C. § 2241(c) counts.  Mot. at 8–9.  In his view, these counts "are essentially the same as the Section 2423(b) counts" and thus, like those counts they violate the Foreign Commerce Clause, as applied to him. [6] *Id.*  He offers no new cases or analysis but simply refers to his Section 2423(b) arguments.  *Id.*  This motion should be denied for many of the same reasons discussed above.

13
14
15
16
17
18
19
20
21
22
23

No circuit court has expressly decided the issue of Congress' authority to enact Section 2241(c) under the Commerce Clause (whether Foreign, Interstate, or Indian). However, the two district courts to address this issue have upheld the constitutionality of the statute under the Interstate Commerce Clause.  *See United States v. Harvey*, No. 3:07-CR-00103-RRB-DMS, 2007 WL 9697888, at *4 (D. Alaska Dec. 21, 2007) (unpublished) ("18 U.S.C. § 2241(c) validly regulates the use of the channels of interstate commerce and is within Congress's Commerce Clause power under the first prong in *Lopez*."); *Farley v. United States*, No. 1:07-CR-0196-WBH-RGV, 2012 WL 6589121, at *5 (N.D. Ga. Aug. 6, 2012) (unpublished) ("It cannot credibly be disputed that Congress had constitutional authority to enact § 2241(c) under the Commerce Clause.").  There is no authority to the contrary.

24
25
26

Moreover, several courts, including the Ninth Circuit, have ruled similarly in analogous contexts.  *See United States v. Tom*, 565 F.3d 497, 506 (8th Cir. 2009) (in a civil commitment case, noting that the defendant "does not dispute that he was convicted

27
28

[6] As defendant concedes (Mot. at 8-9, n.3), his multiplicity arguments are not ripe for consideration at this time.

and incarcerated pursuant to a federal sex crime statute, § 2241(c)…which Congress had constitutional authority to enact under the Commerce Clause."); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) ("Congress may pass valid laws to protect children from abuse, and it has.  E.g., 18 U.S.C. §§ 2241, 2251."); *United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir. 1990) (upholding the enactment and extra-territorial application of 18 U.S.C. § 2251(a) under the commerce clause and finding that Congress enacted § 2241(c) and related statutes as part of "a comprehensive statutory scheme to eradicate sexual exploitation of children.").

Section 2241(c) is a valid exercise of Congress' authority under the Foreign Commerce Clause.  The Court should deny Defendant's motion.

**C.    Section 2241(c)  Applies to Defendant's Travel From the United States to Cambodia**

Defendant also challenges Section 2241(c) as applied to him, arguing that the statute's  "crosses a State line" requirement is limited to the domestic borders between U.S. states and does not include the border between California and the Pacific Ocean." Mot. at 10.  Defendant asks the Court to construe the statute narrowly to exclude his conduct.  The statutory language, legislative history, and caselaw do not support his argument.

1.    The Plain Language of the Statute Does Not Require a Crossing from One State to Another

Section 2241(c) makes it a crime to cross a state line with the intent to engage in a sexual act with a minor under age twelve and to engage in a sex act with a specified minor.  The statutory language is "crosses a state line," not "crosses a state line into another state."  Defendant cites several dictionary definitions of "state line" as a border between two states.  Mot. at 10.  Merriam-Webster, which he does not cite, defines "line" as "a boundary of an area // the state line."  *See* https://merriam-webster.com/dictionary/line.  It defines "boundary" as "something that indicates or fixes a limit or extent." https://merriam-webster.com/dictionary/boundary.  The Oxford

9

dictionary defines "state line" as "[t]he border of a state." *See*
lexico.com/en/definition/state_line." Defendant crossed the state line, the border, of
California when he flew from Los Angeles to southeast Asia. The ordinary meaning of
"crosses a state line" is to cross the border of a state. The statute then covers travel to or
from every state, including to or from Hawaii and a Pacific Coast state, and travel to or
from Alaska. Under Defendant's interpretation, the statute requires crossing a border
between two states, which would insulate from prosecution defendants going to or from
the states that do not have a border with another state., since no domestic "state line" was
crossed. A resident of Alaska who traveled through Canada to engage in sexual acts
with a child in Washington State would not violate Section 2241(c), because there is no
land border between Alaska and any other U.S. state.

Interpreting "crosses a state line" to mean crosses the border of a state is also
consistent with the caselaw. *See United States v. Schumaker*, 479 F. App'x 878, 882
(11th Cir. 2012) (affirming Section 2241(c) conviction where the defendant traveled
from Canada to Georgia to have sex with a child); *United States v. Irving*, 554 F.3d 64,
72 (2d Cir. 2009) (affirming Section 2241(c) conviction where the defendant traveled to
Honduras to have sex with children). In *Sealed Appellee v. Sealed Appellant*, 825 F.3d
247, 255 (5th Cir. 2016), the Court found that the defendant crossed a state line when he
went from Texas to Mexico to have sex with children). No court has adopted
Defendant's interpretation of the statute. To the contrary, as noted above,
Section 2241(c) has been charged in cases across the country involving travel from the
U.S. to a foreign country.

Defendant's argument that Section 2241(c) does not apply extraterritorially (Mot.
at 11) is also unavailing. The Supreme Court has established a two-step framework for
analyzing extraterritoriality issues. At the first step, the court must determine "whether
the statute gives a clear, affirmative indication that is applies extraterritorially." *RJR
Nabisco, Inc. v. European Cmty.*, __ U.S. __ 136 S. Ct. 2090, 2101 (2016). If so, the
scope of extraterritorial application turns on any limits Congress has imposed on the

statute's foreign application.  *Id.*  If the statute is not extraterritorial, "then at the second step [the court] determine[s] whether the case involves a domestic application of the statute, and we do this by looking to the statute's 'focus.'"  *Id.*  "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory."  *Id.*

*RJR Nabisco*'s two-step framework derives from an earlier Supreme Court case, *Morrison v. National Australia Bank Ltd.,* 561 U.S. 247 (2010), in which the Court considered whether Section 10(b) of the Securities Exchange Act of 1934 applied to domestic misrepresentations made in connection with foreigners' purchases of securities traded on foreign exchanges.  After concluding that Section 10(b) did not give any clear indication of extraterritorial effect, *id.* at 262-65, *Morrison* considered whether the case involved a permissible domestic application of the statute.  The Court concluded that Section  10(b)'s "focus" was "not upon the place where the deception originated, but upon the purchases and sale of securities in the United States," and the statute therefore did not apply to purchases outside the United States of securities not listed on a domestic exchange.  *Id.* at 266-74.

Section 2241(c) criminalizes crossing a state line with the requisite intent.  As discussed above, a state line may be a border with the ocean or a foreign county.  The statute affirmatively indicates that it applies extraterritorially.  Additionally, the conduct relevant to the statute's focus is the intent of the defendant, which is formed before the crossing.  Section 2241(c) does not criminalize conduct that occurred exclusively outside of the United States, and there is no reason why it should not apply to Defendant because he crossed the Pacific Ocean to travel to Cambodia instead of Hawaii.

2. <u>Legislative History Supports Applying Section 2241(c) to International Travel</u>

Prior to 1996, Section 2241(c) only applied to defendants who sexually abused children in a federal prison, or in federal maritime or territorial jurisdiction.  18 U.S.C. § 2241(c) (1994).  In 1996, bills were introduced in the House and Senate that would ultimately be called the "Amber Hagerman Child Protection Act,"  proposed for the purposes of "increas[ing] penalties for sex offenses against children," providing a "Federal response to those who molest children," and creating a sex offender registry.  *See* 142 Cong. Rec. S8636-03 at *S8637-38; 1996 CONG US HR 3180.  Section  2241(c) was amended to expand federal jurisdiction to anyone who "crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years."  18 U.S.C. § 2241(c) (1996).  One of the Senators who co-sponsored the bill containing this amendment stated that one purpose of the bill was to "establish new Federal jurisdiction over sexual offenses against children when a person commits a crime after crossing State lines with the intent of committing a sex offense."  142 Cong. Rec. S8636-03 at *S8639 (1996) .  This amendment was a response to numerous incidents involving the sexual abuse and murder of children, prompting Congress to federally criminalize sexual crimes against children, which had previously been exclusively subject to State prosecution.[7]

Congress has never said that § 2241(c) applies only to domestic conduct.  Indeed, even when directly comparing a different clause of § 2241(c) to § 2423(b), Congress

---

[7]  When the bill was first introduced in both the House and the Senate, it explicitly contained two new paths for federal jurisdiction: "crosses a State line" and "in interstate or foreign commerce."  1996 CONG US HR 3180.  The final version of the statute was enacted as part of the "Child Pornography Prevention Act of 1996," and only contains the "crosses a State line" clause.  *See* 1996 CONG US HR 4331.  Although the reasons for excluding "in interstate or foreign commerce" are not explained in the Congressional record, it is reasonable to conclude that the "crosses a State line" clause was sufficient to meet Congress' stated goal: to criminalize conduct that was outside of the exclusive jurisdiction of a state government.  The additional "in interstate or foreign commerce" is redundant, since anyone who travels in either interstate or foreign commerce necessarily crosses a State line.

found the distinguishing features to be the penalty provided by the statutes, not any difference in their jurisdictional application:

> [B]y requiring that the sexual act actually occurred, [§ 2241(c)]'s harsher penalty of any term of years or life would appropriately fit the crime. Section 2423(b) and its maximum penalty of ten years would still be available if no sexual activity actually occurred.

H.R. Rep. 105-557, at *29 (1998). The same sentiment applies to the versions of the statutes in effect at the time of Defendant's crimes: if the government proves that Defendant's conduct meets the relevant criteria of § 2241(c) (here, that the victims were under 12 years old), then Defendant is subject to the mandatory minimum of 30 years imprisonment; if the government does not prove § 2241(c) but does prove § 2423(b), then the lesser penalty of 30 years or less will apply.

The legislative history does not support Defendant's narrow interpretation of Section 2241(c).

### 3.     Section 2241(c) is Not Ambiguous or Vague

Defendant argues that, at best, Section 2241(c) is ambiguous as to its covered conduct, and therefore the Court should apply the rule of lenity and interpret the statute in his favor. Mot. at 11. The rule of lenity states that ambiguity in a criminal statute should be resolved in favor of the criminal defendant subjected to it. *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008). But the rule does not automatically apply based on a defendant's assertion of ambiguity. Because most statutes are ambiguous to some degree, the Supreme Court has stated that "[t]he simple existence of some statutory ambiguity, ... is not sufficient to warrant application of [the rule of lenity]." *Dean v. United States*, 556 U.S. 568, 577 (2009) (quoting *Muscarello v. United States*, 524 U.S. 125, 138 (1998)). "The mere possibility of articulating a narrower construction, ... does not by itself make the rule of lenity applicable." *Smith v. United States*, 508 U.S. 223, 239 (1993). Instead, "the rule of lenity applies only when the statutory language contains grievous ambiguity or uncertainty and when, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what Congress

13

intended." *United States v. Banks*, 514 F.3d 959, 968 (9th Cir. 2008) (internal quotations and citations omitted). The rule does not apply here. As demonstrated by the cases applying § 2241(c) above, Congress intended § 2241(c) to apply to travel across all U.S. state lines, including those state lines that also form international borders.

Defendant also argues that Section 2241(c) is so vague that it does not give fair notice to individuals who, upon reading the statute, know that they cannot cross domestic state lines to have sex with children, but who may think that it is legal to cross an international state line to do so. Mot. at 12. This argument also lacks merit. "A criminal statute is not vague if a reasonable person of ordinary intelligence would understand what conduct the statute prohibits. When reviewing a statute for vagueness, a challenged statute enjoys a presumption of constitutionality." *United States v. JDT*, 762 F.3d 984, 999 (9th Cir. 2014) (citing *United States v. Lee*, 183 F.3d 1029, 1032 (9th Cir.1999), and *Forbes v. Napolitano*, 236 F.3d 1009, 1012 (9th Cir.2000)) (rejecting vagueness challenge to a separate clause in § 2241(c)); *see also United States v. Schumaker*, 479 F. App'x 878, 885 (11th Cir. 2012) (holding that § 2241(c) is "neither constitutionally overbroad nor vague"). For all the reasons discussed above, Section 2241(c) is not vague –- it clearly applies to a person who travels into or out of a state in the United States with the intent to sexually abuse children.

4.   Defendant's Motion is Moot Because He Crossed State Lines When Traveling Between New Mexico and California Before Traveling to Cambodia

Defendant's state line argument fails for the additional reason that it is moot. In May 2005, Defendant returned from Cambodia to attend his son's high school graduation in New Mexico. (Exs. B, C; *see also* CR 400, RT 5/16/08 at 100:14-101:17.) In August 2005, Defendant returned from Cambodia to attend his daughter's wedding in New Mexico. (Exs. B, C.) Both times, he traveled back to Cambodia by way of California (Ex. A), motivated by his desire and intent to rape children. His travel back to Cambodia from New Mexico each time required the crossing of state lines. The government acknowledges that it did not include these facts in its response to

14

Defendant's motion for a bill of particulars;  however, the discovery containing these facts was produced to Defendant before the 2008 trial and re-produced in March 2019. As the reports produced in discovery established, both in May and in August 2005, Defendant traveled from Cambodia to California to New Mexico and back, necessarily crossing state lines.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's Motion to Dismiss the Second Superseding Indictment Based on Unconstitutional Statutes and Failure to State an Offense.