NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (Cal. Bar No. 132610)
STEPHANIE S. CHRISTENSEN (Cal. Bar No. 236653)
DAMARIS DIAZ (Cal. Bar No. 277524)
Assistant United States Attorneys
    1200/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-0640/3756/0302
    Facsimile:   (213) 894-3713
    E-mail:     patricia.donahue@usdoj.gov
               stephanie.christensen.@usdoj.gov
               damaris.diaz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 07-168(C)-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE #3 TO ADMIT EXPERT TESTIMONY RE: DERMATOLOGICAL BIOMETRICS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS |
| v. | |
| MICHAEL JOSEPH PEPE, | |
| Defendant. | Hearing Date:  March 2, 2020<br>Hearing Time:  10:00 am<br>Location:     Courtroom of the Hon.<br>              Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Patricia A. Donahue, Stephanie S. Christensen, and Damaris Diaz hereby respectfully files this motion in limine to admit the testimony of the government's dermatological biometrics expert.

///

///

///

1

This motion <u>in limine</u> is based upon the attached memorandum of points and authorities and exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 3, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

DAMARIS DIAZ
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **<u>TABLE OF CONTENTS</u>**

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

I.       INTRODUCTION ........................................................................... 1

II.      SUMMARY OF FACTS ................................................................. 1

         A.    Discovery of Defendant's Identifying Skin Markings ................................. 2

         B.    2008 "Mole Litigation" and Testimony ....................................... 3

         C.    2020 Expert Disclosures............................................................ 6

III.     ARGUMENT ................................................................................. 7

         A.    Dr. Craft's Testimony is Admissible under FRE 702 and Daubert ............. 7

               1.    Dr. Craft's Specialized Knowledge Will Assist a Trier of Fact
                     to Understand the Evidence and to Determine a Fact in Issue .......... 8

               2.    Dr. Craft's Testimony is Based on Sufficient Facts and Data.......... 9

               3.    Dr. Craft's Testimony Methodology is Reliable ............................ 10

               4.    Dr. Craft Applied the Principles and Methods Reliably to the
                     Facts of the Case ...................................................................... 14

         B.    Federal Rule of Evidence 403 Does Not Preclude the Introduction of
               Dr. Craft's Expert Testimony..................................................... 14

         C.    The Government's Renewed Expert Notice is Timely ................................ 15

IV.      CONCLUSION................................................................................ 16

# **TABLE OF AUTHORITIES**

FEDERAL CASES:

Daubert v. Merrell Dow Pharm., Inc.,

 509 U.S. 579 (1993) ...................................................................4, 8, 10

Fireman's Fund Ins. Co. v. Alaskan Pride P'ship,

 106 F.3d 1465 (9th Cir.1997) ..............................................................14

Hemmings v. Tidyman's Inc.,

 285 F.3d 1174 (9th Cir. 2002) ..............................................................14

Kumho Tire Co. v. Carmichael,

 526 U.S. 137 (1999) .......................................................................10, 11

United States v. Alatorre,

 222 F.3d 1098 (9th Cir. 2000) ........................................................10, 11

United States v. Bailleaux,

 685 F.2d 1105 (9th Cir. 1982) ..............................................................15

United States v. Joetzki,

 952 F.2d 1090 (9th Cir. 1991) ..............................................................15

United States v. Prime,

 431 F.3d 1147 (9th Cir. 2005) .....................................................11, 12, 13

United States v. Sherwood,

 98 F.3d 402 (9th Cir. 1996) ..................................................................13

United States v. Torres-Gonzalez,

 625 F. App'x 331 (9th Cir. 2015) ..........................................................14

FEDERAL RULES:

Federal Rule of Criminal Procedure 16(a)(1)(G) .................................................6

Federal Rules of Evidence 702 ......................................................... 7

## I.     INTRODUCTION

The government moves <u>in limine</u> for a ruling on the admissibility of the expert testimony of Dr. Noah Craft, M.D., Ph.D., a dermatologist and expert in biometric identification using "mole patterns."  Following a <u>Daubert</u> hearing, this Court permitted Dr. Craft to testify in the first trial as to (1) the identification of skin markings as permanent or temporary, (2) the average number and distribution of moles in a person of a given age, and (3) the likelihood of skin markings changing over time.  However, due to delayed Rule 16 disclosure, the Court limited Dr. Craft's testimony in the first trial, specifically disallowing his statistical conclusion that the mole pattern evidence established that Defendant was the man depicted in photos showing child sexual abuse. (CR 228.)

The government has timely met its Rule 16 obligations for this retrial. Specifically, the government gave notice of its intent to call Dr. Craft to testify to all matters in his prior reports on November 18, 2019.  On January 15, 2020, the government produced an updated curriculum vitae for Dr. Craft, and January 27, 2020, produced Dr. Craft's updated expert report and draft PowerPoint slides.[1]  The updated report confirms all of Dr. Craft's 2008 opinions and sets forth the updated methodology and statistical analysis that supports his conclusion that there is a <u>one in 300 million chance that Defendant is not the man in the child pornography images seized from Defendant's media and examined by Dr. Craft.</u>  His statistical conclusions should be admitted.

## II.    SUMMARY OF FACTS

Defendant Michael Joseph Pepe is charged in the third superseding indictment ("TSI") with two counts of traveling in foreign commerce—from the United States to

---

[1] Defendant has indicated his objection to Dr. Craft's proposed testimony, and requested additional time to file a motion to exclude.  The parties agreed that the government would affirmatively move to admit the testimony, which would give Defendant sufficient time to prepare his opposition papers on the motions <u>in limine</u> schedule previously agreed to and ordered by the Court.

1

Cambodia—with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), as well as two counts of knowingly crossing a state line with the intent to engage in a sexual act with a child under 12 years of age, in violation of 18 U.S.C. § 2241(c).

### A.    Discovery of Defendant's Identifying Skin Markings

In the course of this investigation beginning in 2006, several of the victims told investigators, and later testified at trial, that Defendant had a distinctive pink or red "mole," "mark," or "growth" on his upper thigh.  (See CR 61 at p. 3.)  Following Defendant's arrest in Cambodia, U.S. federal agents met with Defendant at the Cambodian prison.  (See CR 77 at p. 1.)  Prior to questioning Defendant about the charges, the agents asked Defendant to provide some biographical and background information.  (Id.)  Defendant agreed.  (Id.)  During the initial questioning, agents asked Defendant whether he had any scars, marks, or tattoos.  (Id.)  In response, Defendant lifted the leg of his shorts to display his upper left thigh, where agents saw a "pea size mark" on Defendant's inner thigh.  (Id. at pp. 1-2.)  Defendant did not make any verbal statements in response to the question.  (Id. at p. 2.)

During a search of Defendant's computer media, seized from his residence in Cambodia in 2006, the government located hundreds of explicit photographs, including child pornography and full-frontal naked photographs of Defendant with a naked child victim.  (See CR 84 at p. 2.)  Some of the pornography depicts the bodies of adult men.  (Id.)  In particular, a number of photographs depict a minor girl being sexually abused in Defendant's bedroom by a man whose face is not shown, but who physically resembles Defendant.  (Id.)  The manner in which the minor girl is being sexually abused in these photographs is consistent with what the other victims described to law enforcement (e.g., bound, gagged, blindfolded, forced to perform fellatio).  (See CR 216 at p. 1.)  The government intends to offer certain of these images into evidence either as direct evidence of Defendant's crimes against the named victims or pursuant to Rule 404(b) as evidence of Defendant's modus operandi, motive, intent, preparation, plan, and absence

2

of mistake.  (See Government's Motion in Limine re: Inextricably Intertwined Evidence and Rule 404(b), filed concurrently.)

**B.    2008 "Mole Litigation" and Testimony**

On December 11, 2007, Defendant moved to suppress the act of lifting his shorts and displaying his upper thigh area.  (CR 61.)  On December 14, 2007, while in custody at the Metropolitan Detention Center in Los Angeles ("MDC"), Defendant agreed to allow government agents to photograph his body.  (CR 84 at p. 2.)  The "pea size mark" was no longer visible on Defendant's thigh.  (Id.)  It appeared to investigators that Defendant had removed the mole/growth in an attempt to destroy identifying evidence. (Id.)  On January 7, 2008, the Court denied Defendant's motion to suppress in part, allowing agents to testify that they observed a mark on Defendant's thigh; and granted the motion in part, excluding evidence that Defendant lifted his shorts in response to agents' question about scars, marks, or tattoos.  (CR 93.)[2]

Following the December 14, 2007 examination by government agents, the government consulted with Dr. Noah Craft, then an Assistant Professor of Medicine of Harbor-UCLA Medical Center, Department of Medicine, and the Staff Dermatologist for Harbor-UCLA Dermatology.  (See CR 84 at p. 2.)  The government provided Dr. Craft with certain of the child pornography images in question, and images of Defendant taken by agents at MDC on December 14, 2007, and Dr. Craft concluded that the child pornography images were of sufficient quality to reliably identify skin markings on the man's body and that the markings that were visible in the child pornography images were unlikely to change over time.  (See Ex. A (March 13, 2008 Craft Report) at 1.) However, Dr. Craft stated that, at that time, he could not positively identify Defendant as the man in the child pornography without examining him in person.  (Id.)

///

---

[2] The government will seek to admit evidence that agents asked Defendant whether he had any identifying scars, marks, or tattoos, without admitting Defendant's actions in response, to explain Defendant's motive for later removing the identifying mark.

On December 30, 2007, the government followed up on a prior request to the defense to allow Dr. Craft to examine and photograph Defendant's naked body, and gave Defendant written notice pursuant to Rule 16(a)(1)(G) of its intent to call Dr. Craft as an expert witness.  (See CR 84 at p. 3.)  Defendant did not agree to the request, and on January 4, 2008, the government filed an ex parte application for an order authorizing the medical examination of Defendant's body.  (CR 84.)  Defendant opposed.  (CR 88.)  On January 11, 2008, the Court granted the government's application, and ordered Defendant to submit to a physical examination by the government's expert.  (CR 97.)

On January 31, 2008, Dr. Craft personally conducted a physical examination of Defendant in custody, and took photographs of Defendant's naked body in various positions.  (See CR 216 at p. 5.)  Dr. Craft identified specific patterns of nevi[3] that were present both on the unidentified man in the child pornography images seized from Defendant's media and on Defendant's body during the January 2008 examination.  (Id. at pp. 5-6.)  Dr. Craft wrote a report dated March 13, 2008, setting forth his expert opinion that the man sexually abusing the minor girl in the photographs seized from Defendant's media was in fact Defendant.  (Ex. A at 2.)

On April 10, 2008, Defendant filed a motion in limine to exclude Dr. Craft's proposed testimony identifying Defendant as the man in the child pornography using patterns of nevi as a hard biometric.  (CR 167.)  Defendant took no issue with Dr. Craft's ability to identify nevi and discuss their development and changes over time.  (Id. at p. 10.)  However, Defendant challenged the admissibility of Dr. Craft's identification and methodology, arguing that it failed to satisfy any of the five factors set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Specifically, Defendant argued that Dr. Craft's "mole identification technique" (1) was not sufficiently tested, (2) was not peer-reviewed, (3) lacked information regarding error rates, (4) lacked scientific

---

[3] "Nevus" (plural: "nevi") is a congenital or acquired usually highly pigmented area on the skin that is either flat or raised.  Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/nevus. Accessed 29 Jan. 2020.

standards controlling its use, and (5) was not generally accepted in the scientific community.  (CR 167 at pp. 6-9.)  Defendant submitted the declaration of Dr. Richard Gary Bennett, M.D., in support of his motion, which stated that Dr. Craft's technique did not satisfy the <u>Daubert</u> factors, and also questioned Dr. Craft's ability to accurately diagnose skin lesions via digital photographs and the lack of statistics regarding the distribution of moles on the average man in his 50s.  (CR 160.)

On April 29, 2008, the government filed its opposition to Defendant's motion, and submitted a supplemental report by Dr. Craft, dated April 27, 2008.  (CR 216; Ex. B (April 27, 2008 Craft Report).)  In response to the challenges raised by Defendant, Dr. Craft and his colleagues developed a novel methodology incorporating a detailed statistical analysis for determining the accuracy with which Dr. Craft could identify Defendant as the man in the child pornography images based on his skin markings, which Dr. Craft discussed in his supplemental expert report and accompanying "Nevus Matching" methodology report.  (<u>See</u> Ex. C.)

Defendant filed his reply on May 1, 2008, arguing that the newly provided statistical analysis (1) failed to meet the <u>Daubert</u> standards, and (2) was untimely noticed one week before trial.  (CR 196.)

The Court conducted a <u>Daubert</u> hearing and issued its Order granting in part and denying in part Defendant's motion on May 5, 2008.  (Ex. D (Transcript); CR 228.)  Specifically, the Court found that Dr. Craft's initial report sufficiently established his dermatological expertise and ability to identify relatively permanent skin markings, the initial report provided insufficient indicia of reliability of his methods for identifying a person by such markings.  (<u>Id.</u> at p. 3.)  Further, although the supplemental report contained a detailed statistical analysis supporting the identification methodology, the Court disregarded this analysis as untimely, stating:

> given the timing of the Government's [April 29, 2008] filing, Defendant cannot adequately and timely respond to this detailed analysis.  The Court disregards this statistical support and GRANTS Defendant's Motion with

///

regard to Dr. Craft's proposed testimony positively identifying Defendant as the person depicted in the photographs found on his computer media.

(Id. at p. 3.)

However, the Court denied Defendant's motion to preclude Dr. Craft from testifying altogether, finding that Dr. Craft was qualified to testify regarding the following topics: (1) identification of skin markings as relatively permanent or temporary; (2) the average number and distribution of moles in a person Defendant's age; (3) the likelihood of skin markings changing over time.  (Id.)

On May 20, 2008, Dr. Craft testified in the government's case in chief regarding his examination of the skin markings on the man in the child pornography photos and the skin markings he identified during his in person examination of Defendant.  (Ex. E.)  Dr. Craft did not testify about the identity of the man in the child pornography photos.  (Id.)

## C.    2020 Expert Disclosures

On November 18, 2019, the government gave Defendant notice pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) that in the re-trial it will seek to call Dr. Craft in its case in chief.  In re-noticing its prior experts, the government stated:

> The discovery from the first trial that we re-produced to you contains the expert witness disclosures for each of these witnesses, and you have their 2008 trial testimony.  We hereby re-notice each of them to testify regarding all of the topics contained in the prior disclosures and in their trial testimony.

(Ex. F.)  On January 15, 2020, the government produced an updated curriculum vitae for Dr. Craft.  (Exs. G, H.)  On January 27, 2020, the government produced Dr. Craft's updated expert report and draft PowerPoint slides.  (Exs. I, J, K.)[4]

///

---

[4] In its public filing of this motion, the government has included a copy of Exhibit J (Dr. Craft's January 2020 report), with two sexually explicit images fully redacted. The government has omitted Exhibit K (Dr. Craft's PowerPoint presentation) in its entirety from the public filing, as it contains multiple sexually explicit and sensitive photos.  The government will submit copies of these exhibits in camera for the Court's review.

In his January 2020 report, Dr. Craft reaffirmed his prior work and conclusions from his 2008 reports and included an updated methodology and statistical analysis report based on research and studies conducted in the intervening 12 years.  (Ex. J at Bates 3956.)  In 2008, Dr. Craft's method of biometric identification based on skin markings was rather novel.  Since 2008, Dr. Craft and his colleagues have scientifically tested the methodology, published their findings in multiple peer-reviewed medical journals, and obtained a U.S. patent.  (See Exs. L, M, N, O.)  In 2020, applying these tested and peer-reviewed methods and techniques, Dr. Craft again compared the skin markings[5] on the left thigh of the man in one child pornography image to Defendant's left thigh as depicted in eight images taken by Dr. Craft.  Dr. Craft concluded that there is a **one in 300 million chance that the man in the child pornography photograph is not Defendant**.  (Ex. J at Bates 3962.)

The government seeks to admit the testimony of Dr. Craft regarding the skin markings on Defendant's body and on the body of the man in certain child pornography images seized from Defendant's media, along the lines of the 2008 trial testimony.  In addition, the government now seeks to elicit Dr. Craft's expert opinion that the skin markings on Defendant match those of the man in the child pornography images to a statistically significant certainty.

## III.   ARGUMENT

### A.    Dr. Craft's Testimony is Admissible under FRE 702 and Daubert

Expert testimony is governed by Federal Rule of Evidence 702:

If scientific, technical, or other specialized knowledge will assist a trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the

///

_____

[5] Dr. Craft now employs the term "Relatively Permanent Pigmented or Vascular Skin Marks" or "RPPVSM" to refer to skin markings "that are easily identifiable, common, and relatively permanent," including "nevi…lentigos, seborrheic keratosis, and cherry hemangiomas."  (Id.)

product of reliable principles and methods, and (3) the witness had applied the principles and methods reliably to the facts of the case.

Rule 702 does not extend carte blanche to litigants to present unorthodox or unproven theories to juries as established "science." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 590 (1993). Rather, the text of Rule 702 itself calls upon the trial judge to act as gatekeeper and screen purported scientific evidence for reliability. Id. at 589-90. Accordingly, the party offering purported scientific testimony must demonstrate that it represents "scientific knowledge" or the product of scientific reasoning or methods. Id. at 592-93.

1.    Dr. Craft's Specialized Knowledge Will Assist a Trier of Fact to Understand the Evidence and to Determine a Fact in Issue

In this case, determining whether Defendant is the man in the photographs described above is relevant to the Court's decision whether to admit the entire series of photographs at trial under Federal Rule of Evidence 404(b). As set forth above, several of the minor victims described how Defendant tied them up before he raped and/or sexually abused them. Several of the minor victims also described how Defendant required that they fellate him. Thus, any photographic evidence that Defendant engaged in this type of behavior with other minor victims is relevant to proving, among other things, Defendant's modus operandi. Defendant possessed digital photographs depicting a man sexually abusing a minor girl in the manner consistent with the victims' reports. The man's face is not visible in the photographs, but other biometric features are visible on his body, including RPPVSM. These skin markings can serve as a means of identification. The average juror is not trained in identification of these skin features, and will not be able to distinguish between these marks to determine whether they are a permanent feature (RPPVSM) or a temporary condition (e.g., a pimple, scratch, or bug bite). Thus, specialized knowledge will assist the jury to understand the evidence and determine whether Defendant is the man in the child pornography abusing a child in the manner described by the victims in this case.

8

Dr. Craft is qualified to testify on this subject.  He is a board-certified medical dermatologist, certified by the American Board of Dermatology in 2005 and 2015.  (Ex. H, p. 1; Ex. J, Bates 3956-57.)  Dr. Craft obtained his medical degree from the UCLA School of Medicine and a Ph.D. from UCLA Molecular Biology Institute in 2000, completed his Dermatology Residency at UCLA Division of Dermatology in 2005, and has completed additional training and education at UCLA and the London School of Hygiene and Tropical Medicine.  (Ex. H, p. 1.)  Dr. Craft has served as the associate residency program director of dermatology at Harbor-UCLA Medical Center, as course chair of General Dermatology, and Director of Teledermatology.  (Ex. H, p. 2.)  Dr. Craft was the Chief Medical Officer for Logical Images, Inc., Chief Scientific Officer for Direct Dermatology, and Co-Founder and Chief Executive Officer for Science 37, Inc. (Id.)  Currently, Dr. Craft is the Co-Founder and President of Good Dermatology, a private dermatological practice.  (Id.)  Through his education, training, and professional experience, Dr. Craft is particularly suited to identify skin markings in person and via digital images, and will assist the jury in identifying skin markings on the man in the child pornography images in question, as well as on Defendant.

2.     Dr. Craft's Testimony is Based on Sufficient Facts and Data.

In this case, Dr. Craft examined photographs recovered from Defendant's computer media and the photographs taken by the government of Defendant's lower torso.  Dr. Craft also personally participated in a physical examination of Defendant, at which time he photographed Defendant's body in various poses.  Using only those photographs of sufficiently high quality to reliably identify RPPVSM, Dr. Craft mapped the skin markings on the man in the child pornography images and on Dr. Craft's own images of Defendant's body.  Dr. Craft identified multiple RPPVSM to serve as comparison points, up to eight in one pair of images.  This data is sufficient to form the basis of Dr. Craft's testimony.

///

///

9

1

### 3.   Dr. Craft's Testimony Methodology is Reliable

2

To assist trial courts, the Supreme Court in <u>Daubert</u>, provided a list of factors for

3

the courts to consider in making this reliability determination: (1) whether the method

4

consists of a testable hypothesis; (2) whether the method has been subject to peer review

5

and publication; (3) the known or potential rate of error of the technique or theory when

6

applied; (4) the existence and maintenance of standards and controls; and (5) whether the

7

method is generally acceptable within the relevant scientific community.  509 U.S. at

8

592-96.

9

The Court, however, has emphasized that these factors do not comprise a

10

mandatory checklist of requirements.  <u>Id.</u> at 593-94 ("Many factors will bear on the

11

inquiry, and we do not presume to set out a definitive checklist or test. . . .[t]he inquiry

12

envisioned by Rule 702 is . . . a flexible one."); <u>see</u> <u>Kumho Tire Company v.</u>

13

<u>Carmichael</u>, 526 U.S. 137, 151 (1999)("[<u>Daubert</u>] made clear that its list of factors was

14

meant to be helpful, not definitive.  Indeed, those factors do not all necessarily apply

15

even in every instance in which the reliability of scientific testimony is challenged.");

16

<u>United States v. Alatorre</u>, 222 F.3d 1098, 1102 (9th Cir. 2000) ("[T]he preliminary

17

inquiry as to relevance and reliability is a flexible one, subject to no set list of factors.").

18

Moreover,

19

> [t]he factors identified in <u>Daubert</u> may or may not be pertinent in assessing
> reliability, depending on the nature of the issue, the expert's particular

20

> expertise, and the subject of his testimony.  The conclusion, in our view, is

21

> that we can neither rule out, nor rule in, for all cases and for all time, the
> applicability of the factors mentioned in <u>Daubert</u>, nor can we now do so for

22

> subsets of cases categorized by category of expert or by kind of evidence.

23

> Too much depends upon the particular circumstances of the particular case
> at issue.

24

25

<u>Kumho Tire Co.</u>, 526 U.S. at 150 (citation and quotation omitted).

26

As a result of the Supreme Court's "flexible, factor-based approach," "the broad

27

discretion and flexibility given to trial judges to determine how and to what degree these

28

factors should be used to evaluate the reliability of expert testimony dictate a case-by-

case review rather than a general pronouncement" about the reliability of the method as a whole." United States v. Prime, 431 F.3d 1147, 1152 (9th Cir. 2005).[6]  Even within categories of experts or evidence, "[t]oo much depends upon the particular circumstances of the particular case at issue" for Rule 702 rulings in certain cases to govern all similar cases.  Kumho Tire Co., 526 U.S. at 150.  Evaluation of Dr. Craft's methods for this particular case under the five Daubert factors establishes that the proposed testimony is reliable.

a.     Dr. Craft's Hypotheses are Testable

Patterns of RPPVSM are unique and individualistic (see Ex. J, Bates 3956, 3958; Ex. M), making them reliable biometrics for comparison.  See Prime, 431 F.3d at 1153.  Given Dr. Craft's personal examination and photography of Defendant's RPPVSM, he had sufficient data to test his hypothesis.  Prime, 431 F.3d at 1153 (handwriting expert was reliable under first Daubert factor where expert had "extensive" access to Defendant's known handwriting).  A dermatologist trained or experienced in reviewing digital images can identify RPPVSM in photographs, and compare photographs to attempt to identify (or exclude) a matching subject.  Indeed, Dr. Craft conducted such a test using four independent dermatologists, which he discussed in his January 2020 report, and in a peer-reviewed publication.  (Ex. J, Bates 3957-58; Ex. N.)  With respect to the statistical analysis, any person with sufficient statistical training or experience could apply Dr. Craft's formula to determine the statistical probability of an identification based on RPPVSM.  Dr. Craft's methods are easily reproducible and are, therefore, reliable under Daubert.

b.     Dr. Craft's Method Has Been Peer Reviewed and Tested

Dr. Craft's method has been tested, patented, and published in multiple peer-reviewed journals, not just by dermatologists, but also by others in the forensic science

---

[6] As the Ninth Circuit has held, trial courts are not compelled to conduct separate, pretrial Daubert hearings to discharge their gatekeeping duties outside the presence of the jury.  Alatorre, 222 F.3d at 1102-5.

community.  (See Exs. L, M, N. O.)  The method is reliable under the second Daubert factor.  See Prime, 431 F.3d at 1153 (published evaluation of handwriting expert's particular technique contributed to reliability finding under second Daubert factor).

### c.    Dr. Craft's Method Has a Known Error Rate

A scientific method "need not be flawless in order to be admissible.  As long as the process is generally reliable, any potential error can be brought to the attention of the jury through cross-examination and the testimony of other experts."  Prime, 431 F.3d at 1153 (methodology found reliable with an error rate of 6.5-13%).

As to the identification of RPPVSM via digital photographs, as Dr. Craft states in his report, a RPPVSM cannot be diagnosed with 100% certainty in the absence of a biopsy.  (Ex. J, Bates 3957.)  However, dermatologists are trained to identify RPPVSM in a clinical setting without resorting to biopsy.  (Id.)  With respect to the statistical probability of an identification based on comparison of RPPVSM in photos, the error rates associated with Dr. Craft's method of determining probability of an identification have been tested, peer-reviewed, and published, and are remarkably low.  (Exs. L, M, N.)  For purposes of this case, and for one particular image in question, Dr. Craft has determined that the probability that the man in the child pornography photo at issue is not Defendant is 1 in 300 million.  (Ex. J, Bates 3962.)  This method is reliable under the third Daubert factor.

### d.    Dr. Craft's Method is Subject to Standards and Controls

The use of RPPVSM as a hard biometric is supported by standards and controls established by biometric researchers.  As set forth in Dr. Craft's January 2020 report, the following three conditions are required to qualify as a hard biometric trait:

a) Universality: that each person should have the characteristic;

b) Uniqueness: how well the biometric separates individually from another; and

c) Permanence: how well a biometric resists aging.

(Ex. J, Bates 3960.)  RPPVSM meet these standards of hard biometrics, along with fingerprints, irises, palm prints, etc.  (Id. (citing references).)  Dr. Craft's method of

"point-matching" RPPVSM is based upon the accepted methods and processes, including the mathematical equation, associated with fingerprint comparisons. (Ex. 3960-61.) Using these standards and controls, Dr. Craft's method of identifying Defendant as the man in the child pornography images to mathematical probability is reliable under the fourth <u>Daubert</u> factor.

Even if the method were not completely standardized, "it is moving in the right direction," and the lack of complete standardization "is not in and of itself a bar to admissibility in court." <u>Prime</u>, 431 F.3d at 1154.

> e.     *Lack of General Acceptance Does Not Undermine Reliability*

Although the government would not characterize Dr. Craft's methods as generally accepted to the same extent as other forms of biometric identification, such as DNA and fingerprints, this fact alone is not dispositive. "[N]ot every factor will be applicable in every case." <u>United States v. Sherwood</u>, 98 F.3d 402, 408 (9th Cir. 1996).

As discussed in Dr. Craft's January 2020 report, "there is general acceptance in the dermatology community that trained expert dermatologists are capable of reliably identifying RPPVSM from digital photographs." (Ex. J, Bates 3959.) Regarding the statistical component of Dr. Craft's report, Dr. Craft and his colleagues innovated and developed the method of using RPPVSM as a hard biometric and obtained the patent to this method. Dr. Craft's method is admittedly in its adolescence, which is the very reason for a <u>Daubert</u> analysis. The underlying statistical formula is derived from the formula used for calculating probabilities in fingerprint comparisons, which is generally accepted in the scientific community. (<u>Id.</u>, Bates 3959, 3961.) Dr. Craft's method of forensic/biometric identification has not yet been used widely in criminal cases in the United States. However, as noted above, the method has been peer-reviewed and published in scientific journals, indicating acceptance by the scientific community, and Dr. Craft is not aware of any publication that questions or casts doubt on the method or his publications.

4.    Dr. Craft Applied the Principles and Methods Reliably to the Facts of the Case

As set forth in his reports, Dr. Craft applied the principles and methods of identifying RPPVSM and biometric analysis to the facts of this case.  He personally examined Defendant and photographed Defendant's body in various poses.  He compared the findings from the physical examination to the child pornography images recovered from Defendant's computer media and used his training as a board-certified dermatologist to match RPPVSM on Defendant's body to RPPVSM on the body of the man in the child pornography images.  Using his patented formula and methodology for calculating the probability that the matching RPPVSM belong to different people, Dr. Craft determined to a high statistical probability that Defendant is the man abusing a child in the subject child pornography images.

Dr. Craft's proposed testimony will be helpful to the jury, and application of the Daubert factors to Dr. Craft's methods, particularly given the "flexible" nature of the application, demonstrates that Dr. Craft's methods are reliable under Daubert.  The proposed testimony is therefore admissible under Rule 702, and the government should be allowed to elicit testimony as to the application of Dr. Craft's methods to the evidence in this case and express his opinion that Defendant is the man in the subject child pornography images.  United States v. Torres-Gonzalez, 625 F. App'x 331, 334 (9th Cir. 2015) ("A forensic document examiner may state her ultimate conclusion as to whether the defendant's handwriting appears on questioned documents.").

**B.    Federal Rule of Evidence 403 Does Not Preclude the Introduction of Dr. Craft's Expert Testimony**

Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  The Ninth Circuit has held that in applying Rule 403, "[d]istrict courts enjoy 'wide latitude.'"  Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1184 (9th Cir. 2002) (quoting Fireman's Fund Ins. Co. v. Alaskan Pride P'ship, 106 F.3d 1465, 1468 (9th Cir.1997)).  Evidence is unduly prejudicial to the extent that it "provokes an

14

emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."  United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982); see also United States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir. 1991) (evidence is unfairly prejudicial "if it has an undue tendency to suggest a decision on an improper basis such as emotional character rather than evidence presented on the crime charged").

Dr. Craft's proposed testimony will aid the jury in understanding and evaluating the evidence at trial, will not suggest a decision based on emotion or other improper basis, and will not confuse the issues or mislead the jury.  The Court previously held, "[a]s…a comparison of the markings on the bodies of Defendant and the person depicted in the photographs found on Defendant's computer media would be more probative than prejudicial, Dr. Craft's testimony will be helpful to the jury to assess the weight to be given to such a comparison."  (CR 228 at p. 3.)

## C. The Government's Renewed Expert Notice is Timely

As discussed above, on November 18, 2019, the government gave notice of its intent to call Dr. Craft at the re-trial in this matter "to testify regarding all of the topics contained in the prior disclosures and in their trial testimony."  (Ex. F.)  On January 15, 2020, the government produced Dr. Craft's updated CV, containing all of his publications and patent related to the topics in his 2008 disclosures.  (Exs. G, H.)  On January 27, 2020, the government produced Dr. Craft's updated expert report and draft presentation.  (Exs. J, K.)  This motion is set to be heard on March 2, 2020, and trial is set to commence on March 17, 2020.  (See CR 622.)

In 2008, the Court excluded the statistical analysis portion of Dr. Craft's proposed testimony based on untimely notice: the supplemental report was produced on April 29, 2008, a mere eight days before the May 7, 2008 trial.  Contrast to the present: defense has been on notice since, at the latest, four months before re-trial that the government would seek to admit Dr. Craft's testimony regarding all topics contained in his prior reports, including his statistical analysis for supporting his method of identification

15

based on skin markings, which Defendant has had for almost 12 years.  Dr. Craft's updated report, produced on January 27, 2020, incorporates the same statistical analysis as the April 2008 report and includes a "2020 Update" paragraph describing the application of the statistical analysis to a single photo from Defendant's child pornography collection.

Defendant has had ample time to prepare any defense it chooses with respect to Dr. Craft's methodology and anticipated image comparison testimony.  Defendant will suffer no unfair prejudice based on the timing of the government's disclosures.

## IV.    CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court order Dr. Craft's complete expert testimony admissible at trial.