NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (Cal. Bar No. 132610)
STEPHANIE S. CHRISTENSEN (Cal. Bar No. 236653)
DAMARIS DIAZ (Cal. Bar No. 277524)
Assistant United States Attorneys
    1200/1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-0640/3756/0302
    Facsimile:   (213) 894-0141
    E-mail:    patricia.donahue@usdoj.gov
            stephanie.christensen.@usdoj.gov
            damaris.diaz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL JOSEPH PEPE,<br><br>        Defendant. | No. CR 07-168(C)-DSF<br><br>GOVERNMENT'S TRIAL<br>MEMORANDUM; EXHIBIT(S) |

    Plaintiff United States of America, by and through its counsel of record, hereby files its hereby files its trial memorandum.

    //

1

This trial memorandum is based upon the attached memorandum of points and authorities and attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 10, 2020

Respectfully submitted,
NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

STEPHANIE S. CHRISTENSEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................. 1

**I.    FACTUAL SUMMARY** ............................................................................ 1

**II.   STATEMENT OF CHARGES** ................................................................ 1

    A.   Counts One and Two– Traveling In Foreign Commerce With Intent To Engage In Illicit Sexual Conduct ................................................ 1

    B.   Counts Three and Four—Aggravated Sexual Abuse of a Child ................ 2

**III.  GOVERNMENT'S CASE-IN-CHIEF** ................................................ 3

    A.   Time Estimate .......................................................................... 3

    B.   Witnesses ................................................................................. 3

        1.   Live Witnesses ................................................................. 3

        2.   Deposition Testimony ...................................................... 5

    C.   Pre-Trial Motions ..................................................................... 6

**IV.   EVIDENTIARY ISSUES** ...................................................................... 7

    A.   Expert Testimony ..................................................................... 7

        1.   Examination Of The Victims And Statements Of Medical Diagnosis ................................................................ 7

        2.   Grooming .......................................................................... 8

        3.   Seized-Drug Analysis ..................................................... 9

        4.   Effects Of Drugs On Children ...................................... 9

        5.   Forensic-Computer Analysis ......................................... 9

        6.   Age Of Victims .............................................................. 11

        7.   Mole-Pattern Evidence ................................................. 11

    B.   Bribery-Scheme Evidence ...................................................... 11

        1.   Parties' Dispute Regarding Redactions In Defendant's Letters ....... 12

        2.   Co-conspirator Statements ............................................ 12

    C.   Prior Consistent statements ................................................... 23

D.   Certified Public Records ................................................................24

E.   Defendant's Statements ...............................................................24

F.   Authentication, Identification, and Chain of Custody of Physical
     Evidence .......................................................................................24

G.   Business Records..........................................................................25

H.   Photographs ..................................................................................25

I.   Electronic Records .......................................................................26

J.   Summary Charts ...........................................................................26

K.   Use of Exhibits During Opening Statement................................27

L.   Cross-Examination of Defendant ................................................27

M.   Character and Impeachment Evidence ........................................27

# TABLE OF AUTHORITIES

**<u>FEDERAL CASES</u>**                                                  **<u>PAGE(S)</u>**

<u>Bourjaily v. United States</u>,

    483 U.S. 171 (1987)................................................................13

<u>Crawford v. Washington</u>,

    541 U.S. 36 (2004)................................................................13

<u>Michelson v. United States</u>,

    335 U.S. 469 (1948)...............................................................27

<u>Ohio v. Roberts</u>,

    448 U.S. 56 (1980)................................................................13

<u>People of Territory of Guam v. Ojeda</u>,

    758 F.2d 403 (9th Cir. 1985) ...................................................25

<u>Reyes v. United States</u>,

    383 F.2d 734 (9th Cir. 1967) ...................................................24

<u>United States v. Anekwu</u>,

    695 F.3d 967 (9th Cir. 2012) ...................................................26

<u>United States v. Arambula-Ruiz</u>,

    987 F.2d 599 (9th Cir. 1993) ...................................................20

<u>United States v. Black</u>,

    767 F.2d 1334 (9th Cir. 1985) .............................................23, 24

<u>United States v. Blackwood</u>,

    878 F.2d 1200 (9th Cir. 1989) .................................................23

<u>United States v. Boulware</u>,

    470 F.3d 931 (9th Cir. 2006) ...................................................26

# <u>TABLE OF AUTHORITIES CONTINUED</u>

<u>**FEDERAL CASES**</u>                                                                 <u>**PAGE(S)**</u>

United States v. Bridgeforth,
    441 F.3d 864 (9th Cir. 2006) .......................................................... 13

United States v. Castaneda,
    16 F.3d 1504 (9th Cir. 1994) .......................................................... 13

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991) .......................................................... 23

United States v. Crespo De Llano,
    838 F.2d 1006 (9th Cir. 1987) .................................................. 15, 26

United States v. Dixon,
    562 F.2d 1138 (9th Cir. 1977) ........................................................ 15

United States v. Ellis,
    147 F.3d 1131 (9th Cir. 1998) ........................................................ 14

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) .......................................................... 23

United States v. Fleishman,
    684 F.2d 1329 (9th Cir. 1982) ........................................................ 15

United States v. Hagege,
    437 F.3d 943 (9th Cir. 2006) .......................................................... 13

United States v. Harrington,
    923 F.2d 1371 (9th Cir. 1991) ........................................................ 24

United States v. Herrera-Gonzalez,
    263 F.3d 1092 (9th Cir. 2001) ........................................................ 15

United States v. Larson,
    460 F.3d 1200 (9th Cir. 2006) ........................................................ 13

# <u>TABLE OF AUTHORITIES CONTINUED</u>

<u>**FEDERAL CASES**</u>                                                    <u>**PAGE(S)**</u>

<u>United States v. Layton,</u>

    855 F.2d 1388 (9th Cir. 1988) ................................................................. 13

<u>United States v. Layton,</u>

    720 F.2d 548 (9th Cir. 1983) ........................................................21, 22, 23

<u>United States v. Lindemann,</u>

    85 F.3d 1232 (7th Cir. 1996) ................................................................. 13

<u>United States v. Lukashov,</u>

    694 F.3d 1107 (9th Cir. 2012) ........................................................8, 11, 12

<u>United States v. Manning,</u>

    56 F.3d, 1188 (9th Cir. 1995) ................................................................. 13

<u>United States v. McCollom,</u>

    664 F.2d 56 (5th Cir. 1981) ................................................................... 27

<u>United States v. Miranda-Uriarte,</u>

    649 F.2d 1345 (9th Cir. 1981) ............................................................... 27

<u>United States v. Nick,</u>

    604 F.2d 1199 (9th Cir. 1979) ................................................................. 8

<u>United States v. Nixon,</u>

    418 U.S. 683 (1974) ............................................................................. 14

<u>United States v. Safavian,</u>

    435 F. Supp. 2d 36 (D.D.C. 2006) ....................................................... 25

<u>United States v. Salcido,</u>

    506 F.3d 729 (9th Cir. 2007) ................................................................. 25

<u>United States v. Schmit,</u>

    881 F.2d 608 (9th Cir. 1989) ................................................................. 20

United States v. Siddiqui,

    235 F.3d 1318 (11th Cir. 2000) ................................................................ 25

United States v. Smith,

    893 F.2d 1573 (9th Cir. 1990) ................................................................ 13

United States v. Smith,

    918 F.2d 1501 (11th Cir. 1990) ................................................................ 25

United States v. Spawr Optical Research, Inc.,

    685 F.2d 1076 (9th Cir. 1982) ................................................................ 14

United States v. Weingarten,

    632 F.3d 60 (2d Cir. 2011) ................................................................ 2

United States v. Williams,

    989 F.2d 1061 (9th Cir. 1993) ................................................................ 14, 20

United States v. Winters,

    530 F. App'x 390 (5th Cir. 2013) ................................................................ 25

United States v. Wood,

    943 F.2d 1048 (9th Cir. 1991) ................................................................ 26

United States v. Yarbrough,

    852 F.2d 1522 (9th Cir. 1988) ................................................................ 20

United States v. Zavala-Serra,

    853 F.2d 1512 (9th Cir. 1988) ................................................................ 13, 14

**FEDERAL STATUTES**

18 U.S.C. § 2423(b) (2003 ed.) ................................................................ 2

**FEDERAL RULES**                                                                **PAGE(S)**

Fed. R. Evid. 405(a) ................................................................ 27

Fed. R. Evid. 801(d)(2)(A) ................................................................ 23

Fed. R. Evid. 801(d)(2)(E) ................................................................ 13

Fed. R. Evid. 803(4)(A)–(B) ............................................................... 8

Fed. R. Evid. 803(6)(D) ..................................................................... 24

Fed. R. Evid. 803(8) .......................................................................... 23

Fed. R. Evid. 901(b)(4) ...................................................................... 25

Fed. R. Evid. 902(1) .......................................................................... 23

Fed. R. Evid. 902(4) .......................................................................... 23

Fed. R. Evid. 902(11) ........................................................................ 24

Fed. R. Evid. 1002 ............................................................................. 25

Federal Rules of Evidence 611(a) ...................................................... 26

Federal Rules of Evidence 901(a) ...................................................... 23

Federal Rules of Evidence 404(B) ....................................................... 7

Federal Rules of Evidence 902(11) or (12) ......................................... 24

OTHER AUTHORITIES

32 McCormick On Evid. § 215 ........................................................... 25

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   FACTUAL SUMMARY

This is the re-trial of Michael Joseph Pepe upon remand by the Ninth Circuit.  The original trial occurred in May 2008.  After remand, the government sought superseding indictments from the grand jury.  Trial will proceed on the Third Superseding Indictment which alleges that defendant traveled to Cambodia in 2005 with the intent to engage in illicit sexual conduct with a minor, and that he crossed a state line between New Mexico and Cambodia with intent to engage in a sexual act with a person under 12 years old, and did engage in sexual acts with minors.  He is charged with two crimes in four counts as set forth in the next section.

Four victims are identified by initials in the indictment (victims K.S., I.T., S.R., and S.S.) and the Court ruled that the sexual abuse of four other known victims (victims N.P., L.K., N.T.D. and T.C.) is inextricably intertwined with those named in the indictment.  (CR 682.)

Six of the victims testified in the 2008 trial.  A seventh victim (S.S., the sister of S.R.) was identified in 2008 as defendant's victim but did not testify.  She is expected to testify at this trial.  In 2019, the government discerned the identity of, and was able to locate, an eighth victim, N.P.  She is also expected to testify.

## II.   STATEMENT OF CHARGES

### A.   Counts One and Two– Traveling In Foreign Commerce With Intent To Engage In Illicit Sexual Conduct

For Counts One and Two, the parties submitted the following elements in their jointly proposed jury instructions:

> The defendant is charged in Counts One and Two of the Indictment with traveling in foreign commerce with intent to engage in illicit sexual conduct, in violation of Section 2423(b) of Title 18 of the United States Code.

> In order for the defendant to be found guilty of these charges, the government must prove each of the following elements beyond a reasonable doubt:

> (1) the defendant is a United States citizen;

1

(2) the defendant traveled in foreign commerce from the United States to Cambodia; and

(3) the defendant traveled for the purpose of engaging in any "illicit sexual conduct" with another person.  "Purpose" is defined in Instruction No. ___.

Travel "in foreign commerce" includes travel between any part of the United States and a foreign country.

*See* 18 U.S.C. § 2423(b) (2003 ed.); *United States v. Weingarten*, 632 F.3d 60, 66 (2d Cir. 2011).

## B.  Counts Three and Four—Aggravated Sexual Abuse of a Child

The elements of Count Three and Four were the subject of pre-trial briefing as indicated above, and the parties have submitted disputed jury instructions.  On March 2 and 9, 2020, the Court orally indicated that it would give the Ninth Circuit Model Criminal Jury Instruction for Section 2241(c), and issued a written Order on March 10, 2020, granting the government's motion seeking that instruction.  In conformance with that order, the government submitted the below elements in the disputed jury instructions.  Except for the reference to the victims, the elements are the same in Counts Three and Four.

The defendant is charged in Count Four of the Indictment with aggravated sexual abuse of a child in violation of Section 2241(c) of Title 18 of the United States Code.  In order for the defendant to be found guilty of this charge the government must prove each of the following elements beyond a reasonable doubt:

(1)    the defendant knowingly engaged in a sexual act with one of the victims, I.T., S.R., or S.S.;

(2)    at the time, victim I.T., S.R., or S.S. was under the age of twelve years; and

(3)    the defendant crossed a state line with the intent to engage in a sexual act with a person who was under the age of twelve years.

The government need not prove that the defendant crossed a state line with the intent to engage in a sexual act with a specific person.

The government need not prove that the defendant knew that victim I.T., S.R., or S.S. was under the age of twelve years.

2

For purposes of Count Four, "sexual act" has the same meaning as set forth above in Jury Instruction No. ___.

*See* Ninth Circuit Model Criminal Jury Instructions, No. 8.168 (Approved 1/2019) [Aggravated Sexual Abuse of a Child].

## III.   GOVERNMENT'S CASE-IN-CHIEF

### A.   Time Estimate

The government anticipates that its case-in-chief, including cross-examination, will take seven trial days.  The government proposed several stipulations to defendant which would serve to reduce that time, *e.g.*, chemist testimony.

### B.   Witnesses

#### 1.   Live Witnesses

The government anticipates calling the following witnesses during its case-in-chief:

| Number | Witness | Type of Testimony |
|---|---|---|
| 1. | Dr. Laura Watson | Medical doctor who examined several victims in 2006 and 2007 (discussed in expert section below) |
| 2. | Gary Phillips | Retired HSI SA, formerly stationed in Thailand and lead U.S. investigator of defendant in Cambodia |
| 3. | Jason Bordelon | DEA chemist who tested pharmaceuticals seized from defendant's Cambodian dwelling (discussed in expert section below) |
| 4. | SIN Samna*[1] | Landlord of defendant's Cambodian dwelling |
| 5. | Huu Phu NGUYEN* | Owner/operator of photo studio where defendant had costumed photos taken of himself, Basang, Basang's sister, and victims K.S. and N.P. |
| 6. | Thi Kim HUONG* | Owner/operator of photo studio where defendant had costumed photos taken of himself, Basang, Basang's sister, and victims K.S. and N.P. |

---

[1] * Indicates that the witness is likely to testify through either a Vietnamese or Khmer interpreter.

3

| 7. | KOL Channarith* | Vice President and administrator at Pannasastra University of Cambodia, a university where defendant taught |
|---|---|---|
| 8. | David Stubblefield | Husband of defendant's ex-wife; was present with defendant in New Mexico for the May 2005 graduation of defendant's son and the August 2005 wedding of defendant's daughter. |
| 9. | Maureen Pepe | Defendant's sister who can authenticate defendant's handwriting and will testify to the receipt of letters defendant wrote to their sister Elaine Pepe. |
| 10. | Victim L.K. | Sexually abused by defendant in 2005 and 2006 (mother lived at defendant's house for a period) |
| 11. | Victim S.S. | Sexually abused by defendant in 2005 and 2006 (sister of S.R.) |
| 12. | Victim T.C. | Sexually abused by defendant in 2006 |
| 13. | Victim N.T.D.* | Sexually abused by defendant in 2006 |
| 14. | Victim I.T.* | Sexually abused by defendant in 2006 |
| 15. | Victim K.S.* | Sexually abused by defendant in 2005 (related to Basang) |
| 16. | Victim N.P.* | Sexually abused by defendant in 2005 (niece of Basang) |
| 17. | Victim S.R. | Sexually abused by defendant in 2005 and 2006 (sister of S.S.) |
| 18. | Kerri Reifel | FBI SSA who will provide "grooming" testimony (discussed in expert section below) |
| 19. | Cynthia Morris-Kukoski | FBI chemist (discussed in expert section below) |
| 20. | David Nguyen-Galante | Retired HSI computer forensic examiner (discussed in expert section below) |
| 21. | Bruce Pixley | Computer forensic expert Bruce Pixley (discussed in expert section below) |
| 22. | Dr. Carol Berkowitz | Medical doctor to testify about the age of victims (discussed in expert section below) |
| 23. | Dr. Noah Craft | Dermatologist to testify regarding skin markings on defendant and those on pornographic phots recovered from defendant's computer (discussed in expert section below) |

4

| 24. | Chanry Bith* | Defendant's Cambodian "wife" |
|---|---|---|
| 25. | Borath Bith* | Sister of Chanry Bith and ex-wife of Sander De Montero |
| 26. | Cameron Rodger | Detective Leading Senior Constable with the Australian Federal Police who executed a search warrant on Sander De Montero's Australian residence in 2010 and recovered hand-written letters from defendant, digital devices and other items |
| 27. | Vanessa Stone | Leading Senior Constable of Police with the Australian Federal Police participated in execution of the search warrant at Sander De Montero's residence |
| 28. | Matthew Ballard | Superintendent of Police with the Australian Federal Police, forensically imaged digital devices seized from Sander De Montero and Michael Lines (discussed in expert section below) |
| 29. | Dennis Reneau | HSI Cybersecurity Specialist to testify regarding date extracted from Sander De Montero's digital devices, Michael Lines' digital devices, and Michael Lines' e-mail account (discussed in expert section below) |
| 30. | Eddy Wang | HSI Assistant Special Agent in Charge (one of the original case agents) to testify about defendant's bank account records showing transfers to Sander De Montero |

2. <u>Deposition Testimony</u>

In addition to the live witnesses, the government intends to play the 2020 deposition of Truong Thi Sang, aka Basang.  The Court ruled on the parties' objections to this deposition.  (CR 691.)  The Court also ruled that Basang's 2008 deposition is admissible.  (CR 682.)  In the interest of time, the government intends to admit only portions of the 2008 direct examination.  Those portions were submitted to the Court under seal (due to victim names) in support of CR 639.

Again, in the interests of time, rather than playing the video footage of those portions, the government intends to read aloud the selected portions with one person reading the questions and another providing the answers.

While defense counsel continues to object to the admission of the 2008 testimony, counsel does not object to the government's proposed portions or the read loud.  Defense counsel has represented that they do not intend to submit portions of the 2008 cross examination.

## C.    Pre-Trial Motions

The parties filed substantive motions on October 21, 2019, oppositions on November 22, 2020, and replies on December 2, 2020.  The Court ruled as follows:

| Motion | CR No. | Ruling |
|--------|--------|--------|
| Def. Motion To Suppress | 582 | Denied (CR 610) |
| Def. Motion To Dismiss Based On Unconstitutional Statues And Failure To State An Offense | 584 | Denied (CR 610) |
| Def. Motion For Order Dismissing All Counts Under The Rule Of Specialty And Dual Criminality | 585 | Denied (CR 630) |
| Gov't Motion For Ruling On Jury Instruction | 586 | Further briefing ordered (CR 610) |

The parties filed motions *in limine* on February 3, 2020, oppositions on February 18, 2020, and replies on February 24, 2020.  The Court ruled as follows:

| Motion | CR No. | Ruling in CR 682 |
|--------|--------|------------------|
| Def. Motion Re: Dr. Carol Berkowitz | 631 | Denied |
| Def. Motion To Preclude Use Of The Term "Rape Kit" | 632 | Granted, in part (Government must seek permission before use of the term) |
| Def. Motion To Preclude Reference To Psychological Or Emotional Impact Of The Alleged Sex Acts | 633 | Denied |
| Def. Motion Re: Third Superseding Indictment: (1) For Bill Of Particulars; (2) For Grand Jury | 635 | Denied |

6

| | | |
|---|---|---|
| Transcript; And (3) To Dismiss Duplicitous Counts Or Strike Surplus Age | | |
| Gov't Motion To Admit Expert Testimony Re: Grooming | 634 | Conditionally granted; limited *Daubert* hearing to occur during trial |
| Gov't Motion To Preclude Impeachment Evidence (Regarding Agent And Interpreter) | 641 | Granted |
| Gov't Motion To Admit Expert Testimony Re: Dermatological Biometrics | 642 | Denied (Court's ruling from 2008 trial, CR 228, allowing specific categories of testimony by Dr. Craft stands) |
| Gov't Motion For Introduction Of Evidence Inextricably Intertwined And Under FRE 404(B) | 643 | Granted |
| Gov't Motion To Admit (1) Evidence Of Defendant's Bribery Scheme, And (2) Prior Inconsistent Statements Of Basang | 639 | Granted, in part. (Allowing admission of Basang's 2008 deposition testimony; allowing admission of bribery-scheme evidence unless otherwise excludable) |

## IV.   EVIDENTIARY ISSUES

### A.   Expert Testimony

1.   <u>Examination Of The Victims And Statements Of Medical Diagnosis</u>

Laura Watson, BM, DCH, MRCGP (UK), will testify about the medical examinations that she performed on seven of the victims in 2006 and 2007.  Dr. Watson testified during the 2008 trial (RT 5/9/20 at 41–81), and her testimony in the re-trial is expected to track that original testimony.  The government re-noticed Dr. Watson as an expert and provided the defense with her updated CV.  Dr. Watson was the Locum Chief Medical Officer at called AEA International SOS Clinic in Phnom Penh.  As she did in 2008, she will testify to the contents of her reports, including the medical facts about each victim, *e.g.*, absence of a hymen, vaginal bruising, and the specific histories given

7

to her by each of the victims. During her medical examinations of the victims, some made statements to her about what happened to them.  These statements were pertinent to their medical diagnosis/treatment.

A statement is admissible under Rule 803(4) of the Federal Rules of Evidence if it: "(A) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."  In the 2008 trial, this Court properly admitted Dr. Watson's testimony regarding a victim's statement about being drugged.  *See United States v. Lukashov*, 694 F.3d 1107, 1114–15 (9th Cir. 2012) (trial court properly admitted statements to social worker under Rule 803(4) "[b]ecause sexual abuse involves more than physical injury"); *United States v. Nick*, 604 F.2d 1199, 1102–03 (9th Cir. 1979) (treating physician was properly permitted to testify in prosecution for sexual assault of child to the portions of child's statements that were relevant to cause of injury).  One relevant exchange from the 2008 trial is below:

Q. What did she tell you she was asked to drink prior to having sex?

MR. BROWN: Again, Your Honor. This line of questioning is beyond the scope.

THE COURT: Is that relevant to your medical diagnosis?

THE WITNESS: It could potentially be relevant.

THE COURT: Overruled.

RT 05/09/08 at 73:24–75:6.

2.   Grooming

At the 2008 trial, the government introduced the testimony of a "grooming" expert.  For the re-trial, the government again noticed such an expert, this time FBI Supervisory Special Agent Kerri Reifel of the FBI's Behavioral Analysis Unit.

As indicated above, the government moved *in limine* to admit this testimony (CR 634) and defendant opposed (CR 656).  On March 6, 2020, the Court conditionally granted the government's motion stating that "SSA Reifel appears qualified to give such testimony" and that the testimony will likely be "relevant here to address any suggestion

8

that Defendant's intent in traveling to Cambodia was to help educate [the victims] rather than to molest them." (CR 682).  The Court granted defendant's request for a *Daubert* hearing, and the parties agreed that since the hearing is expected to be very short, the hearing could be done in the course of the trial after SSA Reifel arrives in Los Angeles.

### 3.   Seized-Drug Analysis

Absent stipulation, DEA Senior Forensic Chemist Jason Bordelon will testify about his analysis of several pharmaceutical drugs seized from defendant's house in Cambodia.  Mr. Bordelon testified during the 2008 trial (RT 5/9/20 at 130–45), and his testimony in the re-trial is expected to track that original testimony.  The government re-noticed Mr. Bordelon as an expert and provided the defense with his updated CV.  Given that there was no dispute at the first trial regarding the chemical composition of these manufactured pharmaceuticals, the government has proposed a stipulation in lieu of this testimony.

### 4.   Effects Of Drugs On Children

FBI Forensic Examiner Chemist Cynthia Morris-Kukoski, D. Pharm., also testified in the 2008 trial.  (RT 5/13/08 at 7–44.)  The government re-noticed Dr. Morris-Kukoski and provided her updated CV.  As she did in 2008, Dr. Morris-Kukoski will testify regarding the pharmacology, uses, and effects of some of the pharmaceuticals seized from defendant's house—morphine, codeine, flunitrazapam, diazepam, temazepam, alprazolam, and sildenafil.  She will also explain the consequences and effects of giving those drugs to children, and the proper dosage, if any, for children.

### 5.   Forensic-Computer Analysis

Absent stipulation, the government anticipates calling several computer examiners to testify regarding forensic images that they made of seized computer media.  Specifically, retired ICE forensic examiner David Nguyen-Galente will testify that he made copies of a computer hard drive and thumb drive seized (by others) from defendant's house.  He will not testify regarding any examination of those devices.  The

parties stipulated to facts in lieu of this testimony at the 2008 trial.  The government has proposed a similar stipulation for the re-trial.

Matthew Ballard, Superintendent of Police for the Australian Federal Police, would testify that he made a forensic copy of a computer seized in 2010 from the Australian home of Sander De Montero.  He would also testify regarding copies made of digital devices seized in 2010 from the Cambodian residence of Michael Lines.  He will not testify regarding any computer examinations.

The government also anticipates calling two experts to discuss data extracted from various digital devices.  First, certified forensic analyst Bruce Pixley was retained by the government to extract data from defendant's digital devices.  As he did in 2008 (RT 5/16/08 at 103; RT 5/20/08 at 11), Mr. Pixley is expected to testify: (1) about the configuration of defendant's computer, (2) about the types of files/data—including digital photographs, and emails—defendant had on this digital devices—including a computer, thumb drive, and several CDs, (3) about his assessment of how certain files were put on the thumb drive after defendant's arrest, (4) that digital photographs taken with the Minolta DiMAGE digital camera were taken approximately 185 days later than the date contained in the EXIF/metadata on the photographs, and (5) that certain digital photographs had been deleted from the digital devices, including child pornography images.  Mr. Pixley examined defendant's digital devices again in 2019 pursuant to a search warrant.  He provided an additional report which was produced to the defense along with an updated CV.  Among the new information about which he will testify are several Word documents recovered from defendant's computer, including the associated metadata.

Second, HSI Cybersecurity Specialist Dennis Reneau will testify regarding data extracted from two sets of digital devices: (1) those seized from the home of Sander De Montero, and (2) those seized from the home of Michael Lines, both Australian citizens.  These digital devices and forensic images thereof were provided to the United States by Australia pursuant to a Mutual Legal Assistance ("MLAT") request.  CS Reneau will

testify regarding his examination of the forensic copies of those devices.  The government produced a copy of a report detailing those findings as well as items seized from those devices.  CS Reneau will also testify regarding items seized from the e-mail account of Michael Lines, obtained pursuant to a Section 2703 warrant.

### 6.   Age Of Victims

As she did at the 2008 trial (RT 5/16/08 at 76), Carol Berkowitz, M.D., will testify regarding the age of certain victims whose sexually explicit images were found on defendant's computer.  The government re-noticed Dr. Berkowitz and provided an updated CV.  Defendant moved *in limine* to exclude this testimony.  (CR 631.)  In its March 6, 2020, order the Court denied the motion and request for a *Daubert* hearing, holding that she is qualified and "uses a clearly explained methodology" to determine the age of children, "that appears on its face to be reliable."  (CR 682.)

### 7.   Mole-Pattern Evidence

Noah Craft, M.D., testified in the 2008 trial (RT 5/20/08 at 75) regarding certain markings on defendant's skin, the average number and distribution of moles in a person defendant's age, the likelihood of skin markings changing over time, and a comparison of defendant' skin markings to those of the person in child pornography extracted from defendant's digital devices.  The government re-noticed Dr. Craft and provided an updated CV.  As indicated above, the government moved *in limine* to expand the scope of Dr. Craft's testimony to include statistical analysis underpinning his conclusions regarding the identity of the man in the child pornography, but the Court denied the motion.  Accordingly, Dr. Craft will largely testify in conformance with his 2008 testimony regarding the topics contained in his 2020 reports, without the statistical analysis.

### B.   Bribery-Scheme Evidence

As indicated above, the Court held that evidence of a scheme to bribe Basang is relevant to her potential bias.  (CR 682.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Parties' Dispute Regarding Redactions In Defendant's Letters

The Court also ruled that any statements made by defendant are admissible.  (*Id.*) To show Basang's bias, the government intends to introduce five such statements—all handwritten letters from defendant to Sander De Montero.  The government identified these letters for defense counsel and the parties agreed on certain redactions, *e.g.*, irrelevant topics, comments regarding DFPD Charles Brown.  Defendant proposed additional redactions to two of those letters with which the government disagrees. Attached as Exhibit A are copies of the five letters with the agreed-upon redactions in black and defendant's proposed redactions outlined in red.  Defendant has not provided any legal basis for the objections, but his objections revolve around the presence of the word "declaration" in these portions.  The government is neither seeking to introduce Basang's 2010 fraudulently obtained declaration nor defendant's hand-written draft of it. The government does not believe the presence of the word will lead to any confusion by the jurors, and any potential for slight confusion is outweighed by the probative value of the evidence which establishes defendant's goal of getting Basang "to the USA to testify" and that she should "mention[] all the stuff [defendant] said" which might "lead to a deposition which would lead to testimony at court."  Exhibit A.  The letters also establish that defendant and Basang communicated through Sander (via Michael Lines): "thanks for the letter from Sang."  (*Id.*)

### 2.   Co-conspirator Statements

In addition to defendant's letters, the government seeks to introduce two identical copies of the same e-mail string (one taken from De Montero's computer, and one taken from Lines' e-mail account)[2] to show Basang's bias.  They are attached as Exhibit B and C.  The string consists of two e-mails: (1) an e-mail from Lines to De Montero dated February 28, 2010, and (2) an e-mail from Lines to De Montero dated March 14, 2010.

---

[2] The purpose of the dual copies is to show that both parties sent/received the string.

12

The statement is important because it establishes that Basang actually received money sent to her by defendant (via De Montero and Lines). In this co-conspirator statements made by Lines to De Montero by e-mail, Lines stated: "I [Lines] visited Sang yesterday and gave her the money you sent, $100. As $70 cash, $20 medicine and $10 food."

In the Court's March 6, 2020, order, it did not reach the question of whether these two e-mails/statements from Lines and De Montero are co-conspirator statements under Rule 801(d)(2)(E). In fact they are and should be admitted as such.

### a.   The Legal Standard

Rule 801 of the Federal Rules of Evidence excludes from hearsay any "statement [that] is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The law "favor[s] admission in conspiracy situations." *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996).

The admission of coconspirator statements requires only that: "(1) there was a conspiracy, (2) the defendant and the declarant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy." *United States v. Bridgeforth*, 441 F.3d 864, 869 (9th Cir. 2006). The government must establish these facts by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 176 (1987). Whether the offering party has met its burden is to be determined by the trial judge, not the jury. *United States v. Zavala-Serra*, 853 F.2d 1512, 1514 (9th Cir. 1988).

"[T]o establish these facts, the government cannot rely solely on the coconspirator statements themselves. It must produce some independent evidence." *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994). "Independent evidence" is "evidence other than the statements sought to be admitted." *Bourjaily*, 483 U.S. at 176. Co-conspirator statements are non-testimonial, fall within a "firmly rooted hearsay exception," and do not violate the Confrontation Clause. *United States v. Larson*, 460

13

F.3d 1200, 1213 (9th Cir. 2006) (quotations omitted).  Coconspirator statements are admissible "notwithstanding the fact that the indictment does not contain a conspiracy count."  *United States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995) (quotations omitted).

In fact, the conspiracy that is the subject of the statements need not be a conspiracy to commit the same crime charged in the indictment nor must it be illegal.  *See United States v. Layton*, 855 F.2d 1388,1398–1400 (overruled on other grounds as recognized in *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998)).  Finally, statements of an unindicted coconspirator made in furtherance of the conspiracy may be used against a charged conspirator.  *See United States v. Nixon*, 418 U.S. 683, 701 (1974).

> ### b.     *The First Prong: Defendant And De Montero Formed A Conspiracy To Bribe Basang to Change Her Testimony To Favor Defendant*

The first prong of Rule 801(d)(2)(E) is satisfied—a conspiracy existed.  After defendant's conviction, defendant and De Montero formed a conspiracy to bribe Basang to change her testimony to favor defendant.  The bribery consisted of giving money and other items to Basang which she could use for her comfort in prison and of efforts to get her out of prison sooner.  A preponderance of the evidence establishes this conspiracy.

The government provided extensive evidence of the bribery scheme between defendant and De Montero in opposition to defendant's supplemental motion for a new trial.  (CR 472.)  Defendant's own letters and statements in prison calls to De Montero show the conspiracy.  Moreover, the letters in Exhibit A alone are sufficient to establish the conspiracy by a preponderance.  *See Zavala-Serra*, 853 F.2d at 1515 (holding that the statements together with independent evidence, may constitute sufficient proof of the existence of the conspiracy and the involvement of the defendant and declarant in it); *United States v. Spawr Optical Research, Inc.*, 685 F.2d 1076, 1083 (9th Cir. 1982) ("[C]ircumstantial evidence is often sufficient to establish the existence of a conspiracy.").  Through letters and phone calls, defendant directed De Montero—who

served as defendant's agent—to bribe Basang to provide testimony favorable to defendant.

          *c.*     *Second Prong: Lines Joined Their Conspiracy*

Once the existence of the conspiracy is established, only "slight evidence" is needed to connect the declarant to it.  *United States v. Crespo De Llano*, 838 F.2d 1006, 1017 (9th Cir. 1987).  Here, Lines' e-mails, when combined with other evidence, serve to show Lines' membership in the conspiracy at the time of e-mails (in February and March 2010).

They also show that the declarant, Lines, and his cohorts (Chris Pedralbes, and Sebastian Blockley) were working to help get Basang out of prison sooner and that they wanted to get money and other items to Basang for her comfort in prison.  In the fall of 2009, De Montero contacted Lines and Pedralbes to join forces and after talking it over by e-mail with Pedralbes, Lines joined into the conspiracy to get Basang to change her statement.  The fact that Lines wanted Basang out of prison for his own reasons does not dissolve the conspiracy.  *Cf.* Ninth Circuit Model Criminal Jury Instructions, No. 8.20 (Approved 1/2019) (emphasis added) (elements of conspiracy: "there was an agreement between two or more persons to commit at least one crime . . . [and] the defendant become a member knowing of *at least* one of its objects and intending to help accomplish it"); *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001) ("The term 'slight connection' means that a defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details. A connection to the conspiracy may be inferred from circumstantial evidence.").

Defendant's own statements, which the Court has found to be admissible acknowledge Lines, Pedralbes, and Blockely's participation.  In a letter dated September 27, 2009, from defendant to De Montero, defendant wrote:

That was interesting news about Song.
I should not have said anything about her,
since we need her help. I will be happy
when she gets out.

Fill me in. Did I miss something, I think
you said you know 2 of the 3 guys? I
hope that is good. Do I know any of them?
So what is the story of what they are doing
to help Song? What can we do to influence
the situation to help her and help us? Can
we get the cooperation of her lawyer? If
she does not have a good one, can we get
one for her.

16

1

2      In a March 18, 2010, letter from defendant to De Montero, defendant wrote:

3

4      *That was all interesting information concerning*

5      *Seng. Are those the correct names of the*

6      *people who are helping Sang?*
       *[Chris and Sebastian Blockley]*

7

8      Further, below is a summary of communications already submitted to the Court

9      that show their membership.  The Bates numbers are provided for ease of reference.

10

| From | To | Date and Bates No. | Summary |
|------|-----|-------------------|---------|
| Michael Lines | Chris Pedralbes | 09/28/2009<br><br>2019_002663 | Discussing why SDM is trying to contact CP:<br>"Montero called"  "I spoke with him.  He wants your email address" "Wanted to contact you sorta 'urgently'" "Could be Pepe is starting to think that if he wants to appeal, it would help if Sang was no longer in jail, or at least had a greatly reduced sentence?" |
| Sander De Montero | Chris Pedralbes | 10/04/2009<br><br>2019_002976 | "Did you get anything done with Sang's case?  Did you hear anything from her or her family?  Did anyone get a lawyer for her?  I think that 27 years jail is too excessive for the crime that is not really there." |
| Michael Lines | Chris Pedralbes | 12/07/2009 @ 10:03pm<br><br>2019_002681 | SDM "and Michael Pepe, want Sang to retract her statement and say it was all under duress.  If Sang is willing to retract her statement, then Sander will use his connections to influence the case positively, if you know what I mean.  If Sang will change her statement, Sander, using Pepe's |

17

| | | | |
|---|---|---|---|
| | | | money, thinks he can get her release.  Using his government and court connections."  "[Dun] Vibol [Sang's lawyer] is acting on your behalf.  You paid him.  What think you of this idea." |
| Michael Lines | Chris Pedralbes | 12/07/2009 @ 10:53pm  2019_002680 | SDM "wants [Dun] Vibol to go to jail and interview Sang again, where she will retract her confession."  "Whatever, if Sang is free has to be good for Pepe.  Grounds for appeal at least." |
| Michael Lines | Chris Pedralbes | 12/08/2009 @ 2:53 am  2019_002675 | "I'm in PP with Sander.  Seems to know a lot of useful powerful people.  Wants Sang to change her statement.  Sounds very positive." |
| Michael Lines | Chris Pedralbes | 12/08/2009 @ 4:08am  2019_002680 | "Personally I am no fan of this Pepe character.  But if he can help Sang, then why not.  I thin[k] we could use his assistance to help Sang, while being indifferent to his fate.  Not a lot we can do about it anyway.  Serendipitously, you might say, Pepe has to help Sang to help himself, and we shouldn't reject the offer." |
| Michael Lines | Chris Pedralbes | 12/09/2009 @ 9:42am  2019_002683 | E-Mail: Discussion re: prior attempts to bribe Cambodian Judge. Then: "There is also the chance that Sander can influence the process to Sang's advantage.  Given that he's willing to try, I am tempted to let him.  I think Pepe's lettuce, and Sander's assistance, are both contingent upon Sang changing her story." |

18

| | | | |
|---|---|---|---|
| | | | "There's always the chance that Sander's various contacts will be so powerful and effective once the statements have changed then the rest might be a formality.  If we get lucky then we would just kick back and let Pepe's lettuce and Sander's connections making it all happen." |
| Michael Lines | Chris Pedralbes | 12/20/2009<br><br>2019_002688 | E-Mail: "Last thing from Sander was the mother was screwing him around.  Not committed to seeing Vibol.  Unsurprisingly, she wants money to perjure herself.  I'm not surprised but Sander is.  Maybe he can swing it.<br><br>"If Sander and Pepe can organize a retraction I think it very positive."<br><br>"If Pepe is in the slammer and has cash let him spend it and not us was the feeling there.  He has the most to gain or lose by this.  I want Sander to hit Pepe up for money and not you and me." |
| Michael Lines | Dun Vibol Chris Pedralbes (Fwd to Sander De Montero) | 12/28/2009<br><br>2019_003076-77 | E-Mail: "Yesterday, 28/Dec/2009, I visited Sang." |
| Michael Lines | Sander De Montero | 01/15/2009<br><br>2019_002695 | "Here is a scan of Sang's letter to Mr. Pepe."<br><br>[attachment: Sang handwritten letter to DEFENDANT.] |
| Sander De Montero | Michael Lines | 01/19/2010<br><br>2019_002700 | E-Mail: "Thank you for the letter. I will send it on to Pepe." |

19

| Michael Lines | Sander De Montero Chris Pedralbes | 02/05/2010 2019_002702 | E-Mail: "Short story Sander, I think Mr. Pepe should be prepared to come up with some money now, if he wants Sang to help him." Discuss how to get money to Lines. |
|---|---|---|---|
| Sander De Montero | Michael Lines | 2/07/2010 | E-Mail: "I will send you the money, $100, today." |
| Michael Lines | Sander De Montero Chris Pedralbes | 2/09/2010 2019_002703 | E-Mail: "As to providing additional lettuce…I get the feeling I may be the one required to perform the exchange.  I'm a little reluctant to hand over big time lettuce to some court official.  Easier if it's not my lettuce, of course, but then we would need to confirm the identity of the guy, and be confident they would deliver.  Best would be to exchange Sang for the lettuce, habeas corpus like, if you take my meaning." |

In sum, there is more than sufficient evidence to show that by the time of the first e-mail that the government seeks to admit dated February 28, 2010, Lines had joined the conspiracy.  The only remaining question is whether the two e-mails are in furtherance of the conspiracy.

> d.    *Third Prong: The Statements Are In Furtherance Of The Conspiracy*

To be admissible as a statement made by a co-conspirator in furtherance of the conspiracy, a statement must "further the common objectives of the conspiracy" or "set in motion transactions that [are] an integral part of the [conspiracy]."  *United States v. Arambula-Ruiz*, 987 F.2d 599, 607-08 (9th Cir. 1993).  Such statements are admissible whether or not they actually result in any benefit to the conspiracy.  *United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993).

In the February 28, 2010, e-mail, Lines solicited De Montero to have defendant send money to aid Basang in prison.

——Original Message——
From:
To: sdemontero@hotmail.com
Cc: ch
Sent: Sun, Feb 28, 2010 11:38 am
Subject: Sang ill with malaria

Dear Sander,

Has Mr. Pepe given any thought to financially assisting Sang?

She is sick again, malaria I think.  I visited her in jail, about $75
for medication and doctors.

If Pepe could give her just $50 a month from his obviously ample
financial resources this would help a lot.  Chris seems to have a few
problems of his own now, so no hope of any assistance from him, and
anyway he's put in over $3,000 already.

If you or Pepe are unwilling to send the money to me, and I understand
your suspicion, then I'm sure there's an NGO dedicated to helping
people in jail that could visit Sang and pass thru the money.

MJL

This statement is in furtherance of the conspiracy because Lines is inducing continued participation.  *See United States v. Layton*, 720 F.2d 548, 557 (9th Cir. 1983) (statements "to induce continued participation in [the] conspiracy" are properly admitted).

21

In the March 14, 2010, e-mail, Lines reported to De Montero that he visited Basang in prison and gave her defendant's money. He also encouraged defendant (via De Montero) to "deploy more resources" so that Basang can get out of prison.

Date : 3/14/2010 1:20:03 AM
From : █████████
To : sdemontero@hotmail.com
Cc : ch██████████   ch██████████
Subject : Fwd: Sang ill with malaria


Dear Sander,

I visited Sang yesterday and gave her the money you sent, $100. As $70 cash, $20 medicine and $10 food.

Dun Vibol apparently visited her that morning also,

Sang's court date is the 25th, or 12 days time.

Now would be a good time for you to deploy your resources in Cambodia.

Vibol says the maximum sentence is 10 years. This means Mr. Chat Sineang could pardon her the same day, even if Sang got 10 years.

Now is also a good time for Mr Pepe to contribute too I think. Chris has spent $3,000 on this, and Seb (Sebastian Blockley) has also spent this amount helping Sang and her family. They have both been very generous, especially when you consider neither Chris nor Seb were involved in anything that caused Sang a problem. If Mr. Pepe could do the same, I'm sure everything could be resolved promptly and successfully.

I suggest you call Mr. Chat Sineang, or maybe have Mr. Sahavuthy do it?
 I suggested Sang try to discuss the pardon with Mr. Chat Sineang as well.

Again, this statement is "in furtherance" of the conspiracy because Lines updated his co-conspirators about his actions on behalf of the conspiracy—"I gave [Sang] the money you sent." *See Layton*, 720 F.2d at 557 ("[S]tatements made to keep a conspirator abreast of a co-conspirator's activities" are in furtherance). Lines also induced continued participation—"Now is a good time for Mr. Pepe to contribute too I think."

C.    **Prior Consistent Statements**

Several victims gave prior statements including in the first trial.  In the event of an express or implied charge of recent fabrication or improper, the government will seek to introduce prior consistent statements under Rule 801(d)(1)(B)(i) of the Federal Rules of Evidence.

Under this provision, a declarant's prior consistent statement is admissible as non-hearsay if: (1) the declarant testifies at trial and is subject to cross-examination; (2) there is an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent offers a prior statement that is consistent with the challenged in-court testimony; and (4) the prior consistent statement was made prior to the time that the supposed motive to falsify arose. *United States v. Chang Da Liu*, 538 F.3d 1078, 1086 (9th Cir. 2008).  "The district court has broad discretion in determining the admissibility of a prior consistent statement under Fed. R. Evid. 801(d)(1)(B)."  *United States v. Belfast*, 611 F.3d 783, 816 (11th Cir. 2010) (internal quotations omitted).

Here, if a motive to fabricate exists at all, it arose after the 2008 trial testimony. *See Chang Da Liu*, 538 F.3d at 1086 (rejecting defendant's claim that victims fabricated their testimony in order to receive financial assistance because victims' in-court statements were largely consistent with statements made before the FBI began providing them with financial assistance); *Arizona v. Johnson*, 351 F.3d 988, 999 (9th Cir. 2003) (admitting victim's prior statement in a prosecution for sexual assault and kidnapping where defendant claimed that victim, a citizen of El Salvador who entered the United States illegally, fabricated her story because she wanted to stay in the United States for the duration of the investigation and trial; court found that although the government arranged for victim to stay with family in Texas as long as she was needed to assist in the prosecution of defendant and had arranged a permit for her to work as a housekeeper or house cleaner during that time, her motive to falsify arose, if ever, after her statements to law enforcement because there is no evidence that she had been offered any special

23

treatment or had been told that she could stay in the United States).

### D.    Certified Public Records

Absent a stipulation, the government will seek to admit several certified public documents including defendant's birth certificate.  Certain public records in the form of domestic public documents under seal, or certified copies of public records, which do not require extrinsic evidence of authenticity as a condition precedent to admissibility, are admissible.  Fed. R. Evid. 902(1), (4).  Such records are self-authenticating, Fed. R. Evid. 902(4), and are not hearsay, Fed. R. Evid. 803(8).

### E.    Defendant's Statements

Defendants may not seek to introduce their own recorded statements at trial. Defendant's statements are admissible only if offered against him—otherwise, they fall within the scope of the rule against hearsay.  Fed. R. Evid. 801(d)(2)(A); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

### F.    Authentication, Identification, and Chain of Custody of Physical Evidence

Certain items of evidence that the government will seek to admit were initially seized by foreign law enforcement and transferred to U.S. law enforcement.  Rule 901(a) of the Federal Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." *United States v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir. 1991).  Once the government meets this burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the jury." *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985).  To be admitted, real evidence (*i.e.*, a physical exhibit) must be in substantially the same condition as when the crime was committed.  The court may admit the evidence if there is "a reasonable probability the article has not been changed

24

in important respects." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). The government is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence. *Reyes v. United States*, 383 F.2d 734, 734 (9th Cir. 1967).

## G.   Business Records

At trial, the government anticipates offering several sets of business records into evidence, including domestic bank records (defendant's), foreign bank records (De Montero's), and records from Lines' e-mail account provided by his e-mail provider. Such records of "regularly conducted activity" fall within an exceptions to the rule against hearsay and are admissible either through "the testimony of the custodian or another qualified witness" or "by a certification that complies with Rule 902(11) or (12)." Fed. R. Evid. 803(6)(D). In this case, the government has chosen the latter option with respect to certain records and provided copies of those records in discovery to defense counsel along with certifications by appropriately qualified custodians of records, thereby affording opposing counsel "a fair opportunity to challenge them." Fed. R. Evid. 902(11). The defense has indicated that they are unlikely to object to such admission.

## H.   Photographs

Photographs may be admitted as relevant evidence under Federal Rule of Evidence 401 if they illustrate a witness's testimony. In such circumstances, the photograph is authenticated if the witness testifies that it is an accurate representation of facts of which the witness has personal knowledge, and "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture." 32 McCormick On Evid. § 215 (7th ed.); *see also* Fed. R. Evid. 1002 Advisory Committee Note (2011). Thus, for example, it is suitable for a witness to identify a photograph by the individuals depicted in it regardless of his knowledge of the particular circumstances under which the photograph was taken. "Under the Federal Rules, the witness

25

identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question." *People of Territory of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985). Indeed, "[a] photograph can be authenticated by someone other than the photographer if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." *See United States v. Winters*, 530 F. App'x 390, 395 (5th Cir. 2013) (citations and quotations omitted).

## I.     Electronic Records

Like other evidence, electronic data, including data seized from digital devices, can be authenticated in a variety of ways, including by a case agent with knowledge of the investigation. *See United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (quoting Fed. R. Evid. 901(b)(4) (contents of email messages authenticated by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances"); *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990) ("The government may authenticate a document solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery"); *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000) (emails sufficiently authenticated by content and context by examining what was said in the messages as well as nicknames used within the messages).

## J.     Summary Charts

The government has prepared summary charts to aid the jury. The Ninth Circuit endorses the use of summary charts as a "testimonial aid" for the jury, *United States v. Wood*, 943 F.2d 1048, 1053-54 (9th Cir. 1991), and acknowledges that there is no "bright-line rule against admission of summary charts as evidence," *United States v. Anekwu*, 695 F.3d 967, 981-82 (9th Cir. 2012). Rather, it is within a "district court's discretion" under Rule 611(a) of the Federal Rules of Evidence to determine whether such exhibits can be admitted. *Anekwu*, 695 F.3d at 982. Here, the government will lay foundation for the summary charts which the government expects to use for several

categories of evidence including the seized-drug evidence, the bank transfers, and the metadata related to various photographs and documents.

### K.   Use of Exhibits During Opening Statement

Exhibits may be used by the government in the opening statement so long as the opening statement "avoids references to matters that cannot be proved or would be inadmissible, there can be no error, much less prejudicial error." *United States v. De Peri*, 778 F.2d 963, 979 (3d Cir. 1985); *see also United States v. Rubino*, 431 F.2d 284, 290 (6th Cir. 1970).

The government anticipates using one or more photographs during opening statement. The government intends to identify the photographs that it will use in its opening, to the defense.

### L.   Cross-Examination of Defendant

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during direct examination. "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence." *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The government is not required to provide notice of matters about which it may seek to cross-examine defense witnesses, including defendant, should they testify. However, the government notes that should defendant testify and claim that he does not have a sexual interest in children, the government will seek admission of the abundance child pornography on defendant's computer including so-called "commercial" child pornography that defendant downloaded from the internet via various news groups services. The government provided defendant with Bruce Pixley's analysis regarding that news group pornography.

### M.   Character and Impeachment Evidence

The Supreme Court recognizes that character evidence—particularly cumulative character evidence—has weak probative value and great potential to confuse the issues and prejudice the jury. *See Michelson v. United States*, 335 U.S. 469, 480, 486 (1948).

The Court has thus given trial courts wide discretion to limit the presentation of character evidence. *Id.*

In addition, the form of the proffered evidence must be proper. Rule 405(a) of the Federal Rules of Evidence sets forth the sole methods for which character evidence may be introduced. It specifically states that, where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion. Thus, a defendant may not introduce specific instances of his good conduct through the testimony of others. *See Michelson*, 335 U.S. at 477. On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. *See* Fed. R. Evid. 405(a). In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. *See Michelson*, 335 U.S. at 481. The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue. *See United States v. McCollom*, 664 F.2d 56, 58 (5th Cir. 1981).