TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
STEPHANIE S. CHRISTENSEN (Cal. Bar No. 236653)
DAMARIS DIAZ (Cal. Bar No. 277524)
LYNDA LAO (Cal. Bar. No. 260872)
Assistant United States Attorneys
      1200/1300/1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:   (213) 894-3756/0302/7167
      Facsimile:   (213) 894-3713
      E-mail:      stephanie.christensen.@usdoj.gov
                   damaris.diaz@usdoj.gov
                   lynda.lao@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>MICHAEL JOSEPH PEPE,<br><br>              Defendant. | No. CR 07-168(C)-DSF<br><br>GOVERNMENT'S TRIAL<br>MEMORANDUM; EXHIBIT |

        Plaintiff United States of America, by and through its counsel of record, hereby

files its hereby files its trial memorandum.

        //

1

This trial memorandum is based upon the attached memorandum of points and authorities and exhibit, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 27, 2021

Respectfully submitted,
TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____
STEPHANIE S. CHRISTENSEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION              PAGE

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................................ 1

**I. FACTUAL SUMMARY** ........................................................................................ 1

**II. STATEMENT OF CHARGES** .............................................................................. 2

  A. Counts One and Two– Traveling In Foreign Commerce With Intent To Engage In Illicit Sexual Conduct ................................................................ 2

  B. Counts Three and Four—Aggravated Sexual Abuse of a Child .................. 2

**III. GOVERNMENT'S CASE-IN-CHIEF** ............................................................... 3

  A. Time Estimate ................................................................................................ 3

  B. Witnesses ....................................................................................................... 4

    1. Live Witnesses ................................................................................... 4

    2. Video Testimony ................................................................................ 5

    3. Deposition Testimony ........................................................................ 6

  C. Pre-Trial Motions .......................................................................................... 7

**IV. EVIDENTIARY ISSUES** ...................................................................................... 9

  A. Stipulations .................................................................................................... 9

  B. Unavailable Witnesses .................................................................................. 9

  C. Expert Testimony ........................................................................................ 11

    1. Examination Of The Victims And Statements Of Medical Diagnosis .......................................................................................... 11

    2. Grooming .......................................................................................... 12

    3. Effects Of Drugs On Children ......................................................... 13

    4. Forensic-Computer Analysis ........................................................... 14

    5. Age Of Victims ................................................................................ 15

    6. Evidence Related To Defendant's Removal Of His Fleshy Growth And His Mole Pattern ....................................................... 15

  D. Parties' Agreement Related to Bribery-Scheme Evidence ......................... 15

E.  Prior Consistent Statements ................................................................ 16

    1.  Prior Consistent Identifications Under FRE 801(d)(1)(C) .............. 16

    2.  Prior Consistent Statements Under FRE 801(d)(1)(B) .................... 17

F.  Defendant's Statements—Emails, Documents, Letters and Verbal .......... 19

    1.  Response to Defendant's Anticipated Objection to Email Admission ................................................................................. 19

G.  Co-Conspirator Statements .............................................................. 20

H.  Photographs ................................................................................... 21

I.  Electronic Records ........................................................................... 21

J.  Summary Charts ............................................................................. 22

K.  Use of Exhibits During Opening Statement ........................................ 22

L.  Cross-Examination of Defendant ...................................................... 23

M.  Character and Impeachment Evidence .............................................. 23

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>                                                   <u>PAGE(S)</u>

<u>Michelson v. United States</u>,

  335 U.S. 469 (1948) ...............................................................................23, 24

<u>People of Territory of Guam v. Ojeda</u>,

  758 F.2d 403 (9th Cir. 1985) .........................................................................21

<u>United States v. Anekwu</u>,

  695 F.3d 967 (9th Cir. 2012) .........................................................................22

<u>United States v. Castaneda</u>,

  16 F.3d 1504 (9th Cir. 1994) .........................................................................20

<u>United States v. Crespo De Llano</u>,

  838 F.2d 1006 (9th Cir. 1987) .......................................................................22

<u>United States v. Fernandez</u>,

  839 F.2d 639 (9th Cir. 1988) .........................................................................19

<u>United States v. Lindemann</u>,

  85 F.3d 1232 (7th Cir. 1996) .........................................................................20

<u>United States v. Lukashov</u>,

  694 F.3d 1107 (9th Cir. 2012) .......................................................................12

<u>United States v. Manning</u>,

  56 F.3d, 1188 (9th Cir. 1995) ........................................................................20

<u>United States v. McCollom</u>,

  664 F.2d 56 (5th Cir. 1981) ...........................................................................24

<u>United States v. Miranda-Uriarte</u>,

  649 F.2d 1345 (9th Cir. 1981) .......................................................................23

<u>United States v. Nick</u>,

  604 F.2d 1199 (9th Cir. 1979) .......................................................................12

United States v. Safavian,

   435 F. Supp. 2d 36 (D.D.C. 2006)..................................................................21

United States v. Salcido,

   506 F.3d 729 (9th Cir. 2007) .......................................................................21

United States v. Siddiqui,

   235 F.3d 1318 (11th Cir. 2000) ...................................................................21

United States v. Smith,

   918 F.2d 1501 (11th Cir. 1990) ...................................................................21

United States v. Weingarten,

   632 F.3d 60 (2d Cir. 2011) ............................................................................2

United States v. Winters,

   530 F. App'x 390 (5th Cir. 2013) ................................................................21

United States v. Wood,

   943 F.2d 1048 (9th Cir. 1991) .....................................................................22

**FEDERAL STATUTES**

18 U.S.C. § 2423(b) (2003 ed.)............................................................................2

**FEDERAL RULES**

Fed. R. Evid. 1002 ............................................................................................21

Fed. R. Evid. 1006 ............................................................................................22

Fed. R. Evid. 405(a) .........................................................................................24

Fed. R. Evid. 801(d)(2)(A) ...............................................................................19

Fed. R. Evid. 801(d)(2)(E) ...............................................................................20

Fed. R. Evid. 901(b)(4) .....................................................................................21

Fed. R. Evid.  611(a) .........................................................................................22

Fed. R. Evid. 404(B) ...........................................................................................8

**<u>OTHER AUTHORITIES</u>**

32 McCormick On Evid. § 215 ........................................................................ 25

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL SUMMARY

Trial is set to begin on August 3, 2021.  This is the re-trial of Michael Joseph Pepe upon remand by the Ninth Circuit.  The original trial occurred in May 2008.  After remand, the government sought superseding indictments from the grand jury.

The re-trial was set to begin on March 17, 2020.  The government filed a Trial Memorandum related to that trial (CR 699) which was ultimately continued due to the COVID-19 pandemic.  This trial memorandum supersedes that filed in March 2020.

Trial will proceed on the Third Superseding Indictment which alleges that defendant traveled twice to Cambodia in 2005 with the intent to engage in illicit sexual conduct with a minor, and that he crossed a state line between New Mexico and Cambodia with intent to engage in a sexual act with a person under 12 years old, and did engage in sexual acts with minors.  He is charged with two crimes in four counts as set forth in the next section.

Four victims are identified by initials in the indictment (victims K.S., I.T., S.R., and S.S.).  The Court ruled that evidence about sexual acts with unnamed victims including testimony and photographs is relevant to defendant's intent and would be admitted.  (CR 682.)

Six victims testified in the 2008 trial.  A seventh victim (S.S., the sister of S.R.) was identified in 2008 as defendant's victim but did not testify.  She is expected to testify at this trial.  In 2019, the government discerned the identity of, and was able to locate, an eighth victim, N.P.  It is unclear whether N.P. will make it to the United States to testify.  Although fully vaccinated and asymptomatic, N.P. tested positive for COVID-19 in mid-July during her pre-flight COVID test.  If she tests negative after completing her Cambodia-based quarantine, she may make it to the United States in time for trial. As explained further below, even in her absence, the government intends to admit several pieces of evidence related to N.P. including sexually explicit photographs taken with defendant's camera showing N.P. in defendant's bedroom and posed on his bed.

## II. STATEMENT OF CHARGES

### A. Counts One and Two—Traveling In Foreign Commerce With Intent To Engage In Illicit Sexual Conduct

For Counts One and Two, the government submitted the following elements in the disputed jury instructions:

The defendant is charged in Counts One and Two of the Indictment with traveling "in foreign commerce" with intent to engage in "illicit sexual conduct," in violation of Section 2423(b) of Title 18 of the United States Code.  In order for the defendant to be found guilty of these charges, the government must prove each of the following elements beyond a reasonable doubt:

(1) the defendant is a United States citizen;

(2) the defendant traveled in foreign commerce from the United States to Cambodia; and

(3) the defendant traveled for the "purpose" of engaging in any "illicit sexual conduct" with another person.

"Purpose" is defined in Instruction No. ____.

"Illicit sexual conduct" is defined in Instruction No. ____.

Travel "in foreign commerce" includes travel between any part of the United States and a foreign country.

*See* 18 U.S.C. § 2423(b) (2003 ed.); *United States v. Weingarten*, 632 F.3d 60, 66 (2d Cir. 2011).

Defendant's Alternate Proposed Instruction No. 3 sought to change "United States" to "Los Angeles" in element (2).   After further discussion following the July 26, 2021, status conference, the government agrees to this proposed change.

### B. Counts Three and Four—Aggravated Sexual Abuse of a Child

The elements of Counts Three and Four were the subject of pre-trial briefing, and the parties have submitted disputed jury instructions.  On March 2 and 9, 2020, the Court orally indicated that it would give the Ninth Circuit Model Criminal Jury Instruction for

2

Section 2241(c), and issued a written Order on March 10, 2020, granting the government's motion seeking that instruction.   (CR 696) ("Unless the Ninth Circuit issues a contrary ruling before the jury is instructed, the Court will give the government's requested instruction.").  This Court's ruling was consistent with the Ninth Circuit's subsequent ruling that "engaging in or attempting to engage in a sexual act with a child" is a required element.  *United States v. Johnson*, 823 F. App'x 485, 489 (9th Cir.), cert. denied, 141 S. Ct. 935, 208 L. Ed. 2d 474 (2020).   Accordingly, the government submitted the below elements in the disputed jury instructions.  Except for the reference to the victims, the elements are the same in Counts Three and Four.

The defendant is charged in Count Four of the Indictment with aggravated sexual abuse of a child in violation of Section 2241(c) of Title 18 of the United States Code. In order for the defendant to be found guilty of this charge the government must prove each of the following elements beyond a reasonable doubt:

(1)     the defendant knowingly engaged in a sexual act with I.T., S.R., or S.S.;

(2)     at the time, victim I.T., S.R., or S.S. was under the age of twelve years; and

(3)     the defendant crossed a state line with the intent to engage in a sexual act with a person who was under the age of twelve years.

The government need not prove that the defendant crossed a state line with the intent to engage in a sexual act with a specific person.

The government need not prove that the defendant knew that victim I.T., S.R., or S.S. was under the age of twelve years.

For purposes of Count Four, "sexual act" has the same meaning as set forth above in Jury Instruction No. __.

*See* Ninth Circuit Model Criminal Jury Instructions, No. 8.168 (Approved 1/2019) [Aggravated Sexual Abuse of a Child].

## III.   GOVERNMENT'S CASE-IN-CHIEF

### A.   Time Estimate

The government anticipates that its case-in-chief, including cross-examination, will take five trial days. The defense has estimated a maximum of two days to present its

3

case.  As discussed below, the parties have reached several stipulations that will make the trial more efficient.

**B.    Witnesses**

    1.    Live Witnesses

The government anticipates calling the following witnesses during its case-in-chief:

| Number | Witness | Type of Testimony |
|---|---|---|
| 1. | Dr. Laura Watson | Medical doctor who examined several victims in 2006 and 2007 (discussed in expert section below) |
| 2. | Victim L.K. | Sexually abused by defendant in 2005 and 2006 (mother lived at defendant's house for a period) |
| 3. | Maureen Pepe | Defendant's sister who can authenticate defendant's handwriting and will testify to the receipt of letters defendant wrote to their sister Elaine Pepe. |
| 4. | Samna Sin*[1] | Landlord of defendant's Cambodian dwelling |
| 5. | Ron Dunne | Former Director of Investigations at International Justice Mission |
| 6. | Victim K.S.* | Sexually abused by defendant in 2005 (related to Basang) |
| 7. | Huu Phu Nguyen* | Owner/operator of photo studio where defendant had costumed photos taken of himself, Basang, Basang's sister, and victims K.S. and N.P. |
| 8. | Thi Kim Huong* | Owner/operator of photo studio where defendant had costumed photos taken of himself, Basang, Basang's sister, and victims K.S. and N.P. |
| 9. | Victim S.S. | Sexually abused by defendant in 2005 and 2006 (sister of S.R.) |
| 10. | Victim T.C. | Sexually abused by defendant in 2006 |
| 11. | Victim N.T.D.* | Sexually abused by defendant in 2006 |

[1] * Indicates that the witness is likely to testify through either a Vietnamese or Khmer interpreter.  Both have been retained for trial testimony.  There will be one interpreter per language.

| 12. | Victim I.T.* | Sexually abused by defendant in 2006 |
| 13. | Victim N.P.* | Sexually abused by defendant in 2005 (niece of Basang) |
| 14. | Victim S.R. | Sexually abused by defendant in 2005 and 2006 (sister of S.S.) |
| 15. | Daniel O'Donnell | FBI SSA who will provide "grooming" testimony (discussed in expert section below) |
| 16. | David Stubblefield | Husband of defendant's ex-wife; was present with defendant in New Mexico for the May 2005 graduation of defendant's son and the August 2005 wedding of defendant's daughter. |
| 17. | Channarith Kol* | Vice President and administrator at Pannasastra University of Cambodia, a university where defendant taught part-time |
| 18. | Bruce Pixley | Computer forensic expert Bruce Pixley (discussed in expert section below) |
| 19. | Dr. Carol Berkowitz | Medical doctor to testify about the age of victims (discussed in expert section below) |
| 20. | Dr. Noah Craft | Dermatologist to testify regarding skin markings on defendant and those on pornographic phots recovered from defendant's computer (discussed in expert section below) |
| 21. | Chanry Bith* | Defendant's Cambodian "wife" |

2. <u>Video Testimony</u>

The parties have stipulated to the testimony of Dr. Cynthia Morris-Kukoski by video. Dr. Morris-Kukoski is an FBI chemist discussed in the expert section below. The government would request that her testimony take place on Thursday, August 5, 2021, as early in the morning as the presentation of witnesses permits.[2]

---

[2] The stipulation also allows any defense witness to testify by video. To date, the defense has informed the government and the Court of one witness currently located in Australia who will testify by video.

3.   <u>Deposition Testimony</u>

In addition to the live and video witnesses, the government intends to play the depositions of two unavailable witnesses.

First, the 2020 deposition of Truong Thi Sang, aka Basang.  Basang is imprisoned in Cambodia and the parties agree that she is unavailable for trial within the meaning of Rule 804(a) of the Federal Rules of Evidence.  The Court has already ruled on the parties' objections to this deposition.  (CR 691.)   In addition to alternations necessary due to the Court's rulings, the parties have agreed upon several cuts to the video for efficiency, *e.g.*, portions refreshing recollection, and the interpreter translating documents.  The final deposition length is approximately three hours.  The government will seek to display several photographs composing redacted child pornography during this deposition, in addition to numerous other exhibits.  The government proposes to display these exhibits while the deposition in playing.

Second, the 2021 deposition testimony of retired HSI Assistant Attaché and Special Agent, Gary Phillips.  Mr. Phillips testified under oath at the deposition regarding his numerous health issues.  The parties agree that his medical issues render him unavailable for trial within the meaning of Rule 804(a)(4) (unavailability due to physical illness).

Mr. Phillips led the Cambodian portion of the investigation in 2006, interviewed numerous witnesses and victims, observed the search of defendant's house, and received evidence from the Cambodian National Police.  A large portion of the government's evidence will be admitted through this deposition.  The parties met and conferred prior to the deposition and agreed upon the admission of evidence (some with alterations) except for the evidentiary objections made by the defense in CR 726.  Those objections were overruled by the Court at the hearing on July 26, 2021.  The parties will work on edits for efficiency similar to Basang's deposition.  Before editing, the length is just under four hours.  This is similar in length to Mr. Phillips' testimony at the 2008 trial which was spread over two days.  In addition, there is a very short excerpt of the deposition

6

regarding pornography in defendant's rental house that the government proposes to play only after victim testimony establishing its relevancy.

Though significantly reduced compared to the 2008 trial, there are numerous pieces of physical evidence admitted through this witness.  The government proposes to have these exhibits at the counsel table and to hold them up for the jury while the deposition is playing.  As with Basang's deposition, the government proposes to display digital copies of exhibits alongside the deposition.

### C.    Pre-Trial Motions

The parties filed substantive motions on October 21, 2019, oppositions on November 22, 2020, and replies on December 2, 2020.  The Court ruled as follows:

| Motion | CR No. | Ruling |
|---|---|---|
| Def. Motion To Suppress | 582 | Denied (CR 610) |
| Def. Motion To Dismiss Based On Unconstitutional Statues And Failure To State An Offense | 584 | Denied (CR 610) |
| Def. Motion For Order Dismissing All Counts Under The Rule Of Specialty And Dual Criminality | 585 | Denied (CR 630) |
| Gov't Motion For Ruling On Jury Instruction | 586 | Further briefing ordered (CR 610) |

The parties filed motions *in limine* on February 3, 2020, oppositions on February 18, 2020, and replies on February 24, 2020.  The Court ruled as follows:

| Motion | CR No. | Ruling in CR 682 |
|---|---|---|
| Def. Motion Re: Dr. Carol Berkowitz | 631 | Denied |
| Def. Motion To Preclude Use Of The Term "Rape Kit" | 632 | Granted, in part (Government must seek permission before use of the term) |
| Def. Motion To Preclude Reference To Psychological Or Emotional Impact Of The Alleged Sex Acts | 633 | Denied |
| Def. Motion Re: Third Superseding Indictment: (1) For Bill Of Particulars; (2) For Grand Jury | 635 | Denied |

7

| | | |
|---|---|---|
| Transcript; And (3) To Dismiss Duplicitous Counts Or Strike Surplusage | | |
| Gov't Motion To Admit Expert Testimony Re: Grooming | 634 | Conditionally granted; limited *Daubert* hearing to occur during trial |
| Gov't Motion To Preclude Impeachment Evidence (Regarding Agent And Interpreter) | 641 | Granted |
| Gov't Motion To Admit Expert Testimony Re: Dermatological Biometrics | 642 | Denied (Court's ruling from 2008 trial, CR 228, allowing specific categories of testimony by Dr. Craft stands) |
| Gov't Motion For Introduction Of Evidence Inextricably Intertwined And Under FRE 404(B) | 643 | Granted |
| Gov't Motion To Admit (1) Evidence Of Defendant's Bribery Scheme, And (2) Prior Inconsistent Statements Of Basang | 639 | Granted, in part. (Allowing admission of Basang's 2008 deposition testimony; allowing admission of bribery-scheme evidence unless otherwise excludable) |

The parties also filed a stipulation deeming certain previously filed motions *in limine* as re-filed.  (CR 640.)  Among these 2008 motions was one by the government to preclude \evidence, references, or arguments about defendant's mental conditions (CR 185).    The Court granted that 2008 motion (CR 186).  Accordingly, for the upcoming trial and in consultation with the government, defendant has redacted mental-health references and medications from several defense exhibits.

Ahead of the 2021 trial date, in accordance with the parties' stipulated briefing schedule, defendant filed an additional motion *in limine* on June 21, 2021.  The Court ruled as follows:

| Motion | CR No. | Ruling |
|--------|--------|--------|
| Def. Motion To Exclude Gov't's New Expert Re: Grooming | 724 | Denied orally on 7/26/21; limited *Daubert* hearing to occur during trial |

## IV.    EVIDENTIARY ISSUES

### A.    Stipulations

The parties have reached several stipulations to date which are listed below.  We anticipate other factual stipulations before the start of trial, but none that will impact the trial estimate.  The parties intend to mark and seek admission of the stipulations because at least one has an attachment that the jury needs to see.

- Exhibit 338: Stipulation Regarding Accuracy of Family Books
- Exhibit 339: Stipulation Regarding Defendant's Travel from the United States of America to Cambodia
- Exhibit 340: Stipulation Regarding Defendant's Citizenship
- Exhibit 341: Stipulation Regarding Defendant's Computer Media
- Exhibit 342: Stipulation Regarding Composition of Pharmaceutical Drugs
- Exhibit 343: Stipulation Regarding Cambodian Calendar (attachment)
- Exhibit 344: Stipulation Regarding Testimony By Video
- Exhibit 345: Stipulation Regarding Accuracy of Translations

### B.    Unavailable Witnesses

As discussed at the July 26, 2021 status conference, although fully vaccinated and asymptomatic, two of the government's witnesses tested positive for COVID-19 on their pre-flight COVID tests before leaving Cambodia.  The government has provided those positive results to the defense.

The witnesses are N.P. and Ms. Pham (co-owner of the photo studio).  Both were subject to a 14-day quarantine that may be extended if they test positive at the end of that period.  Ms. Pham's husband, Mr. Nguyen, who is also a witness, tested negative but was required to quarantine by the Cambodian government due to his household

exposure.  It is unclear whether these witnesses will be released from their quarantine by the Cambodia Ministry of Health in time to testify at trial.  The government has sought a stipulation from the defense to allow testimony by video for these witnesses should they be released in time to testify but not to travel to the United States to do so.  The defense is still considering this request.

Even in the absence of N.P.'s testimony, the government intends to admit evidence related to defendant's sexual abuse of N.P.  In sum, that evidence consist of:

- Testimony from N.P.'s cousin, victim K.S., who is expected to testify that:
  - The girls were in defendant's house together many times in the summer of 2005.
  - K.S. witnessed defendant sexually abusing N.P.
  - The girls (and their aunt Basang) massaged and fellated defendant together.
  - N.P. was under 18 when in defendant's house.
- Digital photographs of N.P. taken with defendant's camera at defendant's house.
  - N.P. is clothed in some of these photographs and often with Basang and Basang's sister (N.P.'s mother).
  - A sexually explicit photoshoot of N.P. made in defendant's bedroom including extreme close-ups of N.P.'s vagina and anus.
- Metadata from the sexually explicit photographs and accompanying forensic testimony showing that they were taken about a week after defendant's return from his May 2005 travel to Cambodia from the United States.
  - Forensic testimony shows that these photographs were transferred to defendant's computer and later deleted.

10

- Metadata from the clothed photographs and accompanying forensic testimony showing N.P.'s presence in defendant's house in the summer of 2005.

- A series of formal, posed photographs taken at a studio wherein victims K.S. and N.P., as well as defendant, Basang, and Basang's sister (N.P.'s mother) use various outfits, backgrounds and props throughout the shoot.

The sexually explicit photographs of N.P. were among the evidence to which defendant objected in opposing (CR 655) the government's motion regarding intent, inextricably intertwined, and 404(b) evidence (CR 643).   Recognizing the government's high burden in establishing defendant's intent in crossing state lines, and in traveling to Cambodia, this Court ruled that: "Testimony about the alleged sexual acts are relevant and admissible as evidence of Defendant's intent in traveling to Cambodia.  The Court also finds the photos at issue are relevant to Defendant's identity and his intent in traveling to Cambodia."  (CR 682.)

**C.    Expert Testimony**

1.    <u>Examination Of The Victims And Statements Of Medical Diagnosis</u>

Laura Watson, BM, DCH, MRCGP (UK), will testify about the medical examinations that she performed on seven of the victims in 2006 and 2007.  Dr. Watson testified during the 2008 trial (RT 5/9/20 at 41–81), and her testimony in the re-trial is expected to track that original testimony.  The government re-noticed Dr. Watson as an expert and provided the defense with her updated CV.

Dr. Watson is traveling for trial from the United Kingdom and the government has worked with the Department of State to receive authorization for her travel during this time of restricted travel due to the pandemic.  Should she become unable to travel, *e.g.*, due to a positive COVID test or further travel restrictions before her departure, the government would seek to submit her prior sworn testimony from the 2008 trial based on that unavailability.  *See* FRE 804 (a) & (b)(1); *See United States v. Mohawk*, 20 F.3d 1480, 1488 (9th Cir.1994) ("If important witnesses [from a first trial] have become, for

11

one reason or another, unavailable, their former testimony may be introduced at the second trial.").

Dr. Watson was the Locum Chief Medical Officer at AEA International SOS Clinic in Phnom Penh.  As she did in 2008, she will testify to the contents of her reports, including the medical facts about each victim, *e.g.*, absence of a hymen, vaginal bruising, and the specific histories given to her by each of the victims.  During her medical examinations of the victims, some made statements to her about what happened to them. These statements were pertinent to their medical diagnosis/treatment.

A statement is admissible under Rule 803(4) of the Federal Rules of Evidence if it: "(A) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."  In the 2008 trial, this Court properly admitted Dr. Watson's testimony regarding a victim's statement about being drugged.  *See United States v. Lukashov*, 694 F.3d 1107, 1114–15 (9th Cir. 2012) (trial court properly admitted statements to social worker under Rule 803(4) "[b]ecause sexual abuse involves more than physical injury"); *United States v. Nick*, 604 F.2d 1199, 1102–03 (9th Cir. 1979) (treating physician was properly permitted to testify in prosecution for sexual assault of child to the portions of child's statements that were relevant to cause of injury).  One relevant exchange from the 2008 trial is below:

Q. What did she tell you she was asked to drink prior to having sex?

MR. BROWN: Again, Your Honor. This line of questioning is beyond the scope.

THE COURT: Is that relevant to your medical diagnosis?

THE WITNESS: It could potentially be relevant.

THE COURT: Overruled.

RT 05/09/08 at 73:24–75:6.

2.   Grooming

At the 2008 trial, the government introduced the testimony of a "grooming" expert.  Leading up to the March 17, 2020 trial date, the government again noticed such

12

an expert, this time FBI Supervisory Special Agent Kerri Reifel of the FBI's Behavioral Analysis Unit.  As indicated above, the government moved *in limine* to admit this testimony (CR 634) and defendant opposed (CR 656).  On March 6, 2020, the Court conditionally granted the government's motion stating that "SSA Reifel appears qualified to give such testimony" and that the testimony will likely be "relevant here to address any suggestion that Defendant's intent in traveling to Cambodia was to help educate [the victims] rather than to molest them."  (CR 682).

As SSA Reifel was unavailable for the August 3, 2021 trial, the government noticed her BAU colleague FBI SSA Daniel O'Donnell.  The government also gave notice of new subcategories of expert testimony to the defense.  As indicated above, defendant moved to exclude this expert entirely and, in the alternative, challenged the new subcategories of grooming testimony.   (CR 724.)  At the status conference on July 26, 2021, the Court denied defendant's motion but indicated that it might hold a brief *Daubert* hearing outside the jury's presence.   The government has suggested that the hearing take place on Monday, August 9, 2021 after SSA O'Donnell arrives in Los Angeles.

### 3.   Effects Of Drugs On Children

FBI Forensic Examiner Chemist Cynthia Morris-Kukoski, D. Pharm., also testified in the 2008 trial.  (RT 5/13/08 at 7–44.)  The government re-noticed Dr. Morris-Kukoski and provided her updated CV.  As indicated above, Dr. Morris-Kukoski will testify by video pursuant to a stipulation of the parties and with the Court's concurrence.

As she did in 2008, Dr. Morris-Kukoski will testify regarding the pharmacology, uses, and effects of some of the pharmaceuticals seized from defendant's house— morphine, codeine, flunitrazepam, diazepam, temazepam, alprazolam, and sildenafil. She will also explain the consequences and effects of giving those drugs to children, and the proper dosage, if any, for children.

4. <u>Forensic-Computer Analysis</u>

As discussed above, the parties have reached a stipulation regarding computer media seized from defendant's house.   Specifically, the parties have agreed that forensic images were made of the media seized from defendant's house.

At trial, the government will call certified forensic analyst Bruce Pixley to testify regarding the contents of those forensic copies.  Mr. Pixley was retained by the government to extract data from defendant's digital devices.  As he did in 2008 (RT 5/16/08 at 103; RT 5/20/08 at 11), Mr. Pixley is expected to testify:

(1) about the configuration of defendant's computer;

(2) about the types and number of files/data—including, digital photographs, and emails—defendant had on this digital devices;

(3) about his assessment of how certain files were put on the thumb drive after defendant's arrest;

(4) about metadata associated with defendant's digital photographs, including the fact that certain digital photographs taken with the Minolta DiMAGE digital camera were taken approximately 185 days later than the date contained in the EXIF/metadata on the photographs; and

(5) that certain digital photographs had been deleted from the digital devices, including child pornography images.

Mr. Pixley examined defendant's digital devices again in 2019 pursuant to a search warrant.  He provided an additional report which was produced to the defense along with an updated CV.  Related to the new information, Mr. Pixley is expected to testify:

(6) about several Word documents recovered from defendant's computer, and associated metadata; and

(7) about the presence or absence of photoshopping in certain photographs.

Mr. Pixley has prepared several charts and timelines that summarize the data he analyzed.  The government has provided copies of these exhibits to the defense and the parties have met and conferred regarding these exhibits.

        5.    Age Of Victims

As she did at the 2008 trial (RT 5/16/08 at 76), Carol Berkowitz, M.D., will testify regarding the approximate age and sexual maturity of certain victims whose sexually explicit images were found on defendant's computer.  The government re-noticed Dr. Berkowitz and provided an updated CV.  Defendant moved *in limine* to exclude this testimony.  (CR 631.)  In its March 6, 2020, order the Court denied the motion and request for a *Daubert* hearing, holding that she is qualified and "uses a clearly explained methodology" to determine the age of children, "that appears on its face to be reliable." (CR 682.)

        6.    Evidence Related To Defendant's Removal Of His Fleshy Growth And His Mole Pattern

Noah Craft, M.D., testified in the 2008 trial (RT 5/20/08 at 75) regarding certain markings on defendant's skin, the average number and distribution of moles in a person defendant's age, the likelihood of skin markings changing over time, and a comparison of defendant' skin markings to those of the person in child pornography extracted from defendant's digital devices.  The government re-noticed Dr. Craft and provided an updated CV.  As indicated above, the government moved *in limine* to expand the scope of Dr. Craft's testimony to include statistical analysis underpinning his conclusions regarding the identity of the man in the child pornography, but the Court denied the motion.  Accordingly, Dr. Craft will largely testify in conformance with his 2008 testimony regarding the topics contained in his 2020 report without the statistical analysis.

**D.**    **Parties' Agreement Related to Bribery-Scheme Evidence**

As indicated above, the Court granted the government's motion *in limine* to admit evidence related to defendant's scheme to bribe witnesses including Basang.  (CR 639.)

In the interests of efficiency and in light of the pandemic, the parties have reached an agreement regarding this evidence.  Specifically, the government has agreed not to present evidence related to the bribery scheme assuming that: 1) trial proceeds as scheduled on August 3, 2021, 2) defendant agrees to the removal of the portion of Basang's 2020 deposition in which she recants her statements, and 3) defendant does not otherwise open the door to the evidence, *e.g.*, by testifying, presenting the prior depositions of Ly Kim Eng or Koeung Lang (mothers of three testifying victims), presenting the testimony of any witnesses subject to the bribery.  Basang's deposition video has been edited in conformance with this agreement.

### E.    Prior Consistent Statements

Several victims gave prior statements including in the first trial.  These statements are not hearsay and should be admitted.

#### 1.    Prior Consistent Identifications Under FRE 801(d)(1)(C)

Each of the victims has repeatedly identified defendant as their abuser.  All eight victims identified defendant during the investigation, and all six victims who testified in 2008 identified defendant as their abuser in court.    *See* RT 05/13/2008 at 23:20–24 (T.C. in-court identification of defendant); RT 05/14/2008 at 35:13–22 (L.K in-court identification of defendant); RT 05/14/2008 at 115:22–116:6 (N.T.D. in-court identification of defendant); RT 05/15/2008 a 25:18–26:2 (I.T. in-court identification of defendant);  RT 05/15/2008 at 52:1–53:16 (S.K. in court identification of defendant); RT 05/15/2008 at 85:18-86:4 (S.R. in-court identification of defendant).

Prior identifications may be admitted as non-hearsay if: (1) the declarant made a prior statement of identification of a person after perceiving that person; and (2) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement. *See United States v. Owens*, 484 U.S. 554, 561 (1988).  Identifications do not need to occur immediately after the declarant viewed the person or a photograph of the person.  *See id.* at 556 (admitting an out-of-court identification of the defendant made by the victim nearly a month after the alleged attack).  And prior identifications made in-

court, such as during a previous trial or hearing, are also admissible under this rule. *See United States v. Distler*, 671 F.2d 954, 958 (6th Cir. 1981) (holding that eyewitnesses' prior grand jury testimony in which they identified the defendant was admissible as evidence during trial under Rule 801(d)(1)(C)). In addition, a witness other than the declarant, such as an investigating agent, may testify to a prior identification made by the declarant, as long as both parties are present and can be cross-examined. *See United States v. Shryock*, 342 F.3d 948, 982 (9th Cir. 2003) (holding that a police officer's testimony that the victim had twice identified the defendant during the investigation was admissible); *United States v. Elemy*, 656 F.2d 507, 508 (9th Cir. 1981) (concluding that testimony from an agent, who was available for cross-examination, regarding identification statements he collected from a witness was admissible). This rule applies even if the prior identifications were obtained in an allegedly suggestive manner, *see Perry v. New Hampshire*, 565 U.S. 228, 233 (2012) (absent "improper law enforcement activity," it is the jury's prerogative to weight the credibility of the identifications), and are admissible absent a showing that there was a "substantial likelihood of misidentification," *Neil v. Biggers*, 409 U.S. 188, 201 (1972).

### 2. Prior Consistent Statements Under FRE 801(d)(1)(B)

In addition to the identifications of defendant, should the defendant attack the credibility of a testifying witness, the government may seek to introduce other prior consistent statements under Rule 801(d)(1)(B) of the Federal Rules of Evidence. "The district court has broad discretion in determining the admissibility of a prior consistent statement under Fed. R. Evid. 801(d)(1)(B)." *United States v. Belfast*, 611 F.3d 783, 816 (11th Cir. 2010) (internal quotations omitted).

If the defense makes an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony—*e.g.*, testimony in exchange for immigration benefits, or a new life in the United States—the witness' prior consistent statements are admissible under Rule 801(d)(1)(B)(i) as long as they pre-date the supposed motive to fabricate the statements. *See United States v. Chang Da Liu*, 538

F.3d 1078, 1086 (9th Cir. 2008).  Here, if a motive to fabricate exists at all, it arose after the 2008 trial testimony.  *See id.* at 1086 (rejecting defendant's claim that victims fabricated their testimony in order to receive financial assistance because victims' in-court statements were largely consistent with statements made before the FBI began providing them with financial assistance); *Arizona v. Johnson*, 351 F.3d 988, 999 (9th Cir. 2003) (admitting victim's prior statement in a prosecution for sexual assault and kidnapping where defendant claimed that victim, a citizen of El Salvador who entered the United States illegally, fabricated her story because she wanted to stay in the United States for the duration of the investigation and trial).

Alternatively, should the defense attack a victim's credibility on "another ground," such as "inconsistency or faulty memory" the prior consistent statements would be admissible under Rule 801(d)(1)(B)(ii).  Fed. R. Evid. 801(d)(1)(B)(ii) & advisory committee's note to 2014 amendment.  For example, in the 2008 trial, the defense attacked the victims' credibility by arguing, among other things, that victims were happy living with defendant because they smiled in some photos; they did not disclose the sexual abuse to their parents; they did not (in some cases) attempt to leave the defendant's home; and, in some instances, the victims made seemingly inconsistent statements about the specifics of their sexual abuse.  *See, e.g.,* defendant's opening statement RT 05/09/2008 32–34.  If the defense does so again that victim's prior consistent statements will be admissible under subsection (ii) not only to rehabilitate the victim's credibility, but also as substantive evidence against defendant.  *See* Fed. R. Evid. 801, advisory committee's note to 2014 amendment; *see also, e.g., United States v. Purcell*, 967 F.3d 159, 197 (2d Cir. 2020) (under amendment, victim's prior statements admitted through investigating officer were not hearsay where her credibility was attacked); *United States v. Flores*, 945 F.3d 687, 705 (2d Cir. 2019) (prior statements admissible based on defendant's attack in opening statement); *United States v. J.A.S., Jr.*, 862 F.3d 543, 545 (6th Cir. 2017) (victim's video interview was properly admitted where defendant impeached the victim on collateral grounds); *cf. United States v.*

18

*Portillo*, 969 F.3d 144, 174 (5th Cir. 2020) (distinguishing between "claim that [witnesses] fabricated their stories" and claims based on any other ground); *United States v. Magnan*, 756 F. App'x 807, 818 (10th Cir. 2018) (same).

### F.   Defendant's Statements—Emails, Documents, Letters and Verbal

Defendants may not seek to introduce their own recorded statements at trial. Defendant's statements are admissible only if offered against him—otherwise, they fall within the scope of the rule against hearsay.  Fed. R. Evid. 801(d)(2)(A); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

Among defendant's admissible statements are: (1) verbal statements to the victims and Basang, (2) notes/documents (both handwritten and typed on the computer), (3) letters to his family, and (4) emails sent to "Mack."  All have been provided to the defense and some were admitted with the agreement of the parties during the deposition of Gary Phillips.

#### 1.   Response to Defendant's Anticipated Objection to Email Admission

Despite their admission at the first trial, the defense has expressed a tentative objection to an unspecified number of the "Mack" emails.  The basis is unclear.  The email exhibits are attached as Exhibit A.

To the extent that defendant objects to authentication, it should be overruled.  *See* Fed. R. Evid. 901(b)(4).  Mr. Pixley will testify that the emails were sent from the computer seized from defendant's rental house; the operating system on that computer had the profile name  "Michael;"  and the email address used to send the emails was the same one used throughout the computer, including to register software.  *See Lorraine v. Market Am. Ins. Co.*, 241 F.R.D. 534, 546–48 (D. Md. 2007) (authentication through computer metadata and other circumstantial evidence).  Further, the emails are either signed by, or addressed to, "Michael."  *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000) (authentication based on author's known email address and also based on reference to facts only the defendant was familiar with).  In addition, that same email

address was found on printed documents in defendant's rental house which were admitted at the deposition of Gary Phillips.

To the extent that defendant objects to the inclusion of Mack's statements in some of the email strings they are admissible both to establish context and the effect on the listener.  *See* Fed. R. Evid. 801(c).  For example, in one email, defendant tells Mack "Thank you for the email with pictures.  It helps me to make up my mind to continue to stay here longer.  The sweet things I have with me here have the most perfect little bodies and attitudes."  Exhibit A (Gov't Exhibit No. 250.)

### G.    Co-Conspirator Statements

The government expects one or more victims to testify regarding statements made by Basang and/or the victim's family members regarding the financial arrangement between defendant and the victim's family members.  These statements are not hearsay. In some instances, such statements are admissible as non-hearsay for the effect on the listener.  *See* Fed. R. Evid. 801(c).  For example, a victim might testify that she did not leave defendant's house because she understood that defendant had paid to have her there.

In other instances, they are non-hearsay co-conspirator statements uttered in furtherance of the conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E) (excluding from hearsay any "statement [that] is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy").  The law "favor[s] admission in conspiracy situations."  *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996).  There is independent evidence of the conspiracy, including Basang's deposition statements, and victim testimony related to Basang's actions.  *See United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994) ("cannot rely solely on the coconspirator statements themselves").  Co-conspirator statements are admissible "notwithstanding the fact that the indictment does not contain a conspiracy count." *United States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995) (quotations omitted).

### H.     Photographs

The government intends to admit photographs found in defendant's display cabinet, office, and in digital form on his digital devices.  These will come in through a variety of witnesses, including those depicted in the photographs, and those who recognize the subjects and/or surroundings.

Photographs may be admitted as relevant evidence under Federal Rule of Evidence 401 if they illustrate a witness's testimony.  In such circumstances, the photograph is authenticated if the witness testifies that it is an accurate representation of facts of which the witness has personal knowledge, and "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture."  32 McCormick On Evid. § 215 (7th ed.); *see also* Fed. R. Evid. 1002 Advisory Committee Note (2011).  Thus, for example, it is suitable for a witness to identify a photograph by the individuals depicted in it regardless of his knowledge of the particular circumstances under which the photograph was taken.  "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question."  *People of Territory of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985).  Indeed, "[a] photograph can be authenticated by someone other than the photographer if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." *See United States v. Winters*, 530 F. App'x 390, 395 (5th Cir. 2013) (citations and quotations omitted).

### I.     Electronic Records

Like other evidence, electronic data, including data seized from digital devices, can be authenticated in a variety of ways, including by a case agent with knowledge of the investigation.  *See United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (quoting Fed. R. Evid. 901(b)(4) (contents of email messages authenticated by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances"); *United States v. Smith*, 918 F.2d 1501, 1510

21

(11th Cir. 1990) ("The government may authenticate a document solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery"); *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000) (emails sufficiently authenticated by content and context by examining what was said in the messages as well as nicknames used within the messages).

## J.      Summary Charts

The government has prepared summary charts to aid the jury.  The government has provided copies of the charts to the defense as well as the voluminous data summarized within the charts.  *See* Fed. R. Evid. 1006.  The Ninth Circuit endorses the use of summary charts as a "testimonial aid" for the jury, *United States v. Wood*, 943 F.2d 1048, 1053-54 (9th Cir. 1991), and acknowledges that there is no "bright-line rule against admission of summary charts as evidence," *United States v. Anekwu*, 695 F.3d 967, 981-82 (9th Cir. 2012).  Rather, it is within a "district court's discretion" under Rule 611(a) of the Federal Rules of Evidence to determine whether such exhibits can be admitted.  *Anekwu*, 695 F.3d at 982.

Here, the government will lay foundation for the summary charts which the government expects to use for several categories of evidence including the seized-drug evidence, and the metadata related to various photographs, emails, and documents.  The metadata charts will be admitted through forensic expert Bruce Pixley.  The defense intends to admit at least one similar chart summarizing metadata and has provided a copy to the government.

## K.      Use of Exhibits During Opening Statement

Exhibits may be used by the government in the opening statement so long as the opening statement "avoids references to matters that cannot be proved or would be inadmissible, there can be no error, much less prejudicial error."  *United States v. De Peri*, 778 F.2d 963, 979 (3d Cir. 1985); *see also United States v. Rubino*, 431 F.2d 284, 290 (6th Cir. 1970).

The government anticipates using one or more photographs during opening statement.  The government intends to identify the photographs that it will use in its opening to the defense.  The government is not seeking to show any child pornography during its opening statement.

## L.    Cross-Examination of Defendant

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during direct examination.  "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence."  *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  The government is not required to provide notice of matters about which it may seek to cross-examine defense witnesses, including defendant, should they testify.  However, the government notes that should defendant testify and claim that he does not have a sexual interest in children, the government will seek admission of the abundance of child pornography on defendant's computer including so-called "commercial" child pornography that defendant downloaded from the internet via various news groups services.  The government provided defendant with Bruce Pixley's analysis regarding that news group pornography.

In addition, as explained above, should defendant testify, the government would seek to admit evidence of defendant's bribery of witnesses.

## M.    Character and Impeachment Evidence

The Supreme Court recognizes that character evidence—particularly cumulative character evidence—has weak probative value and great potential to confuse the issues and prejudice the jury.  *See Michelson v. United States*, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  *Id.*

In addition, the form of the proffered evidence must be proper.  Rule 405(a) of the Federal Rules of Evidence sets forth the sole methods for which character evidence may be introduced.  It specifically states that, where evidence of a character trait is

admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Thus, a defendant may not introduce specific instances of his good conduct through the testimony of others.  *See Michelson*, 335 U.S. at 477.  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  *See* Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  *See Michelson*, 335 U.S. at 481.  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue.  *See United States v. McCollom*, 664 F.2d 56, 58 (5th Cir. 1981).