

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE DALE S. FISCHER, U.S. DISTRICT JUDGE


UNITED STATES OF AMERICA,

                    Plaintiff,

      vs.                              Case No. CR 07-168-DSF

MICHAEL JOSEPH PEPE,

                    Defendants.
_____/



                    REPORTER'S TRANSCRIPT OF
                     TRIAL TRANSCRIPT DAY 1
                         VOLUME I
                  TUESDAY, AUGUST 3, 2021
                         2:00 P.M.
                  LOS ANGELES, CALIFORNIA












_____

              TERRI A. HOURIGAN, CSR NO. 3838, CCRR
              FEDERAL OFFICIAL COURT REPORTER
                350 WEST FIRST STREET, ROOM 4311
                LOS ANGELES, CALIFORNIA  90012
                       (213) 894-2849


UNITED STATES DISTRICT COURT

```
1              APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:

4        UNITED STATES ATTORNEY'S OFFICE
         BY:  STEPHANIE S. CHRISTENSEN
5             DAMARIS M. DIAZ
              LYNDA LAO
6        Attorneys at Law
         312 North Spring Street, 13th Floor
7        Los Angeles, California  90012

8

9    FOR THE DEFENDANT:

10       LAW OFFICE OF CHARLES C. BROWN
         BY:  CHARLES C. BROWN
11       Attorney at Law
         1 South Fair Oaks Avenue, Suite 401
12       Pasadena, California  91105

13       OFFICE OF FEDERAL PUBLIC DEFENDERS OFFICE
         BY:  HOWARD SHNEIDER
14            ISABEL BUSSARAKUM
         Attorneys at Law
15       321 East 2nd Street
         Los Angeles, California  90012

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**



**WITNESS INDEX**

**\* \* \***

**WITNESS:**                                                    **PAGE**

(NO WITNESSES)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**



1

**EXHIBIT INDEX**

2

**\* \* \***

3

**EXHIBIT NO.**                              **PAGE**

4

5                        (No exhibits entered.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **LOS ANGELES, CALIFORNIA; TUESDAY, AUGUST 3, 2021**

2                          **2:00 P.M.**

3                          --oOo--

4

5          THE COURT:  All right.  It's 2:10, is there anything

6     we need to discuss?

7          MR. BROWN:  I'm sorry, I don't think we have

8     anything to discuss at this point.

9          THE COURT:  All right.  So we're going to call all

10    of the people that are still in the room back.

11              I will excuse the ones that I ordered to be

12    excused.  We have 12 jurors.

13              We're going to put Juror 12 in.

14              So Renee, why don't you see how close we are

15    to having our group back.

16          MS. CHRISTENSEN:  Your Honor, if we may raise

17    something with the Court?

18          THE COURT:  Okay.

19          MS. CHRISTENSEN:  Juror Number 49, Ms. Bobbette

20    Findley, is an employee of United States Attorney's Office.

21          THE COURT:  Yes.

22          MS. CHRISTENSEN:  That's all, Your Honor.  We just

23    are sorry for not recognizing this earlier.  That name matches

24    the description and the job title and we're pulling up her

25    questionnaire right now just to confirm that.

1           THE COURT:  It says "paralegal."

2           MS. CHRISTENSEN:  Correct, I believe she works for

3    our civil division.

4           THE COURT:  Does the defense want to agree to excuse

5    that juror?

6           MR. BROWN:  Yes, Your Honor.

7           THE COURT:  Tell Juror Number 49, then.

8           THE COURTROOM DEPUTY:  All rise.

9       (Prospective jurors enter the courtroom at 2:20 p.m.)

10          THE COURT:  Everybody sit where they were sitting

11   for now.  We will move people around in a minute.

12              You may be seated.

13              All right.  I'm going to call the numbers of

14   the jurors who are going to be excused, and that means you will

15   be ordered to go back to the jury room so they know to give you

16   credit for your jury service.

17              Juror Number 37, you are excused.

18              Juror Number 11, you are excused.

19              Juror Number 12, you are excused.

20              Juror Number 18, Juror Number 15, Juror

21   Number 20, Juror Number 21, Juror No. 2, Juror Number 31, Juror

22   Number 27, Juror Number 24, Juror Number 39 are all excused.

23              Now, I'm going to ask everyone except Juror

24   Number 41 to stand and raise your right hand.

25              THE COURTROOM DEPUTY:  Ladies and gentlemen of the

1    jury, do you solemnly swear or affirm that you will well and

2    truly try the cause now before this Court and a true verdict

3    therein render, according to the Court's instructions, so help

4    you God?

5            THE JURORS:  I do.

6            THE COURT:  Now, we're going to move you around a

7    bit, so Renee and DJ will organize your seats for you.

8            THE COURTROOM DEPUTY:  You are going to go to Seat 2

9    in the jury box, and you are going to go to Seat 3 that is on

10   the top shelf.

11           (Jurors were assigned seats.)

12           THE COURT:  All right.  We're now going to be

13   calling up some more of your fellow jurors who were waiting

14   down in the jury assembly room.  We hope they are ready, so we

15   can select our alternates.

16               When you are telling people who ask you about

17   jury service, which will be after you are excused from this

18   trial because you can't talk about it while you are our jurors,

19   you will tell them that this was a very unusual circumstance

20   because we don't obviously all -- usually, we don't use this

21   room, but with all of this social distancing, we generally do

22   it in my courtroom, which is smaller, which you will see in

23   just a little while if we get to it today or otherwise tomorrow

24   morning.

25               But, we're doing all of these things, as I

1    said to begin with, to keep everyone safe and follow the rules.

2                    Renee, are you going to figure out how to tell

3    these people where to sit and what their numbers are?

4                    I'm asking what we're doing.

5              THE COURTROOM DEPUTY:  Seat number -- I have another

6    list for you, Judge, and I wrote it down.

7              THE COURT:  Okay.  So what numbers am I using?  Seat

8    numbers?

9              THE COURTROOM DEPUTY:  Seat numbers are on there,

10   it's starting with Juror Number 42.

11             THE COURT:  42?

12             THE COURTROOM DEPUTY:  Yes, 42.

13             THE COURT:  Okay.  When Juror 42 comes up, am I

14   talking Juror 42 or 14?

15             THE COURTROOM DEPUTY:  Juror 42.

16             THE COURT:  That's the number they have?

17             THE COURTROOM DEPUTY:  There is no change in the

18   numbers.  We're calling them by the same numbers, I'm moving

19   them closer.

20             THE COURT:  Okay.  Counsel, you may be seated.

21                    All right.  Welcome to all of you.

22                    I think you saw that we have our jury now and

23   we're going to select alternate jurors.  And I'm just going to

24   go over those questions that I asked previously, but you

25   weren't here to raise your hands.

1          So has anyone heard anything about this case

2    or have information or knowledge about the case other than

3    having filled out the questionnaires?

4          I don't see any hands.

5          Are any of you familiar with or know the

6    people whose names I introduced -- the Judge, staff, counsel

7    and the witnesses that I described?  Anybody recognize any of

8    those names?

9          All right.  And if you are having trouble

10   hearing me, please let us know right away because you need to

11   hear everything that happens.

12          Did anything come up since you came in and

13   filled out your questionnaires so that you are no longer able

14   to serve on our jury through August 23?

15          All right.  Over here, please, give us your

16   number, and tell us what the issue is.

17          PROSPECTIVE JUROR:  Number 46, Your Honor.

18          THE COURT:  What is your problem?

19          PROSPECTIVE JUROR:  I just got a job promotion

20   moving out of state.  The position starts August 16th, and I

21   have to move prior to then, but that is also dependent my

22   status of moving forward with jury duty.

23          THE COURT:  I didn't quite understand.

24          Why don't you come to the microphone because I

25   didn't quite understand.  You have a promotion, it's out of

```
 1    state?
 2               PROSPECTIVE JUROR:  It's out of state, Your Honor,
 3    and the position starts the 16th in Dallas, Texas.  They are
 4    expecting for me to move prior, but that is all dependent on my
 5    status moving forward here.
 6               THE COURT:  So what is dependent on it?  Do you
 7    start later or do you not get the promotion?
 8               PROSPECTIVE JUROR:  I got the promotion, Your Honor,
 9    but I didn't find out until just recently, so I haven't found a
10    place to move officially yet, because I wanted to fulfill my
11    role being here today.
12               THE COURT:  We appreciate that.
13                    All right.  Thank you.
14                    I'm sorry, there was somebody else who raised
15    a hand.
16                    Why don't you come up so I can hear what you
17    have to say and your number?
18               PROSPECTIVE JUROR:  My number is 57.  And I just got
19    hired on a job, I have training on August 10th.
20               THE COURT:  Is the training required for you to get
21    the job?
22               PROSPECTIVE JUROR:  I had already done my training
23    because of college.
24               THE COURT:  Okay.  Well, congratulations on getting
25    the job and congratulations to you on your promotion.
```

```
 1                    Thank you, anybody else?

 2                    All right.  I asked a question about COVID,

 3    and I told you about the precautions that we're taking,

 4    including wearing our masks, and again, if you are going to

 5    lower them -- we certainly have face masks for you, if that

 6    makes you more comfortable.

 7                    Is there anyone so concerned about that

 8    situation that makes you think you would be too distracted to

 9    pay attention to our case here?

10                    All right.  Counsel approach.

11                    (Counsel conferring off the record.)

12          THE COURT:  All right.  Counsel have agreed that

13    Juror 46 and 57 may be excused, and I wish you the best with

14    your promotion and your new job, and with your training and

15    your new job.

16                    All right.  And again, I'm going to just go

17    over some of the questions you heard me ask before.

18                    Would the fact that a party, an attorney, or

19    witness may come from a particular national, racial, or

20    religious group or have a lifestyle different from yours or may

21    require an interpreter affect your judgment or the weight or

22    credibility you would give to that testimony?

23                    Would anyone have any difficulty evaluating

24    the testimony of all witnesses in the same way regardless of

25    who they are?
```

1         Again, that means using your common sense,

2   what you would do in real life when you are outside the

3   courtroom, and again, I will be making some suggestions to you

4   about how to judge the credibility of witnesses.

5         Anyone have an issue with that?

6         All right.  Is there anyone here who will have

7   any difficulty following my instructions and applying the law

8   to the case, whether you approve or disapprove of the law, as I

9   stated to you in those instructions?

10        Is there anyone who would have difficulty

11  keeping an open mind until you have heard all of the evidence

12  and the arguments of counsel and until the Court has given you

13  all of the instructions?

14        Is there any reason you cannot or will not

15  follow the law and the instructions that I give to you,

16  including my instructions on the presumption of innocence and

17  the burden of proof?

18        Thank you.

19        Does anyone have any difficulty accepting the

20  principles that the defendant is presumed innocent until and

21  unless proven guilty beyond a reasonable doubt?

22        Is there anyone here whose answers on the

23  questionnaires have changed or maybe you remembered something

24  you hadn't written down?  Just jump up and shout out your

25  number and I will ask you about it later.

```
 1              PROSPECTIVE JUROR:  Number 50.

 2              THE COURT:  Thank you, sir.

 3                   All right.  Let's do the same thing we did

 4    before.  We're going to call you up by your number and the

 5    attorneys are going to have a chance to ask you some questions.

 6                   So Juror Number 42, step right up, sir.

 7                   And are you Charlie?

 8              PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  All right.  Anything from the

10    government?

11              MR. DIAZ:  Hello, good afternoon.  I noticed you

12    said you would not have a problem with prosecuting United

13    States citizens for conduct that happened outside of the

14    country; is that correct?

15              PROSPECTIVE JUROR:  Correct.

16              THE COURT:  I'm sure you have heard the discussions

17    all morning about this topic, correct?

18              PROSPECTIVE JUROR:  Yes.

19              MR. DIAZ:  Is there anything you want to add or you

20    find troubling that would affect your ability to be fair and

21    impartial?

22              PROSPECTIVE JUROR:  No.

23              MS. DIAZ:  Do you have any contacts with law

24    enforcement officers?

25              PROSPECTIVE JUROR:  No.
```

```
 1              MS. DIAZ:  Do you have any small children?

 2              PROSPECTIVE JUROR:  No.

 3              MR. DIAZ:  Is there anything in the discussions you

 4   have heard today anything that applies to you that we should

 5   discuss?

 6              PROSPECTIVE JUROR:  No.

 7              MR. DIAZ:  Okay.  No further questions.

 8              THE COURT:  Mr. Brown?

 9              MR. BROWN:  Good afternoon, sir.

10              PROSPECTIVE JUROR:  Good afternoon.

11              MR. BROWN:  Well, just looking at your

12   questionnaire, you indicated that -- well, can you tell us a

13   little bit more about yourself -- where do you work?

14              PROSPECTIVE JUROR:  I'm driver for FedEx.

15              MR. BROWN:  Do you have family that is in law

16   enforcement?

17              PROSPECTIVE JUROR:  No.

18              THE COURT:  Is there anything about the nature of

19   the allegations in this case that would make it difficult for

20   you to serve as a juror?

21              PROSPECTIVE JUROR:  No.

22              MR. BROWN:  Okay.  No further questions.

23              THE COURT:  All right.  Thank you.

24                   Juror Number 43.  Are you Julie?

25              PROSPECTIVE JUROR:  Yes.
```

1              THE COURT:  Anything from the government?

2              MR. DIAZ:  Good afternoon.

3              PROSPECTIVE JUROR:  Good afternoon.

4              MR. DIAZ:  I think you responded yes to a

5    potentially sensitive question, is it okay if I ask you

6    questions about that?

7              PROSPECTIVE JUROR:  Yes.

8              MR. DIAZ:  You were a victim of sexual assault?

9              PROSPECTIVE JUROR:  I was.

10             MR. DIAZ:  Is there anything about that experience

11   that would cause you to be unfair or impartial today?

12             PROSPECTIVE JUROR:  No.

13             MR. DIAZ:  Okay.  Would the allegations in this case

14   be so disturbing to you that you would not be able to be fair

15   to the defendant -- you would not be able to be fair in the

16   defendant in court?

17             PROSPECTIVE JUROR:  No.

18             MR. DIAZ:  You have a friend that is in law

19   enforcement officer; is that right?

20             PROSPECTIVE JUROR:  My husband's brother is a

21   homicide detective for LA County.

22             MR. DIAZ:  Does that relationship make you have

23   strong feelings either way about law enforcement?

24             PROSPECTIVE JUROR:  No.

25             MR. DIAZ:  Would you be able to judge the law

```
 1  enforcement witness the same as any other witness?

 2          PROSPECTIVE JUROR:  I would.

 3          MR. DIAZ:  I believe you have a family member that

 4  was accused of a crime?

 5          PROSPECTIVE JUROR:  Yes, my elder son.

 6          MS. DIAZ:  You indicated he was treated fairly; is

 7  that correct?

 8          PROSPECTIVE JUROR:  He was.

 9          MR. DIAZ:  Is there anything about that experience

10  that would affect your ability to be fair and impartial in this

11  case?

12          PROSPECTIVE JUROR:  No.

13          MR. DIAZ:  Do you have any problems with the justice

14  system?

15          PROSPECTIVE JUROR:  No.

16          MR. DIAZ:  I believe you are a nurse?

17          PROSPECTIVE JUROR:  I am.

18          MS. DIAZ:  Do you have any medical training that

19  would be relevant to this sexual assault?

20          PROSPECTIVE JUROR:  No.

21          MS. DIAZ:  What kind of nurse are you?

22          PROSPECTIVE JUROR:  Right now I'm vaccinating for

23  COVID, actually.

24          MR. DIAZ:  Okay, I have no further questions.  Thank

25  you.
```

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  Mr. Brown?
 2              MR. BROWN:  Thank you very much, Your Honor.
 3                   Good afternoon, ma'am.
 4              PROSPECTIVE JUROR:  Good afternoon.
 5              MR. BROWN:  I noticed you noted some things in your
 6    questionnaire that are very sensitive.  If you prefer, we could
 7    talk about it at sidebar.
 8                   I do have some questions, but I don't
 9    necessarily want to --
10              PROSPECTIVE JUROR:  You can ask openly, it's okay.
11              MR. BROWN:  Are you sure?
12              PROSPECTIVE JUROR:  Yes.
13              MR. BROWN:  You experienced a very traumatic event
14    when you were 14, right?
15              PROSPECTIVE JUROR:  Yes.
16              MR. BROWN:  You indicated you didn't think that
17    those experiences would shake your ability to serve as a juror
18    despite the allegations in this case; is that true?
19              PROSPECTIVE JUROR:  It is.  I feel like my training
20    as a nurse brought me to a good place in my life, and, you
21    know, when you are 14, you make some stupid decisions as well.
22    So I put myself in a bad situation, and not discounting what
23    that person did, but I did put myself in a bad situation.
24              MR. BROWN:  I mean, do you mind if I ask if you
25    received any counseling for those experiences?
```

1          PROSPECTIVE JUROR:  I did.

2          MR. BROWN:  And, you know, I think a lot of people

3    have experienced childhood traumas of different sorts, and

4    those things do tend to linger; is that fair to say?

5          PROSPECTIVE JUROR:  For me, it hasn't.  I have a

6    very happy life, a good husband, good children, so it hasn't

7    affected my life going forward.

8          MR. BROWN:  Okay.  The allegations in this case are

9    extremely graphic, and you we're going to -- there is going to

10   be witnesses who will testify that are going to allege some

11   very disturbing facts.  And there will probably be other types

12   of evidence introduced to support the government's allegations.

13              Our concern as defense attorneys is whether

14   your personal experiences will cloud your judgment and not be

15   able to judge Mr. Pepe fairly, based on the facts and not be

16   swayed by emotions.

17              Given your personal experiences, you feel that

18   despite the allegations in this case, you won't -- it won't

19   influence you in any way?

20         PROSPECTIVE JUROR:  I can.  Even when my oldest son

21   was accused of a crime, I tended to side with the law because

22   he did something wrong.

23              So, I think I'm a very fair person.

24         MR. BROWN:  So it was a family member --

25         PROSPECTIVE JUROR:  It was my brother's close

```
 1  friend, high school friend.
 2          MR. BROWN:  But you had an uncle who was accused of
 3  --
 4          PROSPECTIVE JUROR:  Yeah, but he didn't do anything
 5  to me.
 6          MR. BROWN:  Okay.  What happened with your uncle?
 7          PROSPECTIVE JUROR:  My uncle, many of my cousins
 8  accused of him doing inappropriate things to them.
 9              I never witnessed it firsthand, so I just know
10  from my cousins and other family members that accused him.
11              He never got in trouble or anything like that.
12          MR. BROWN:  Was there anything about that experience
13  that would affect your ability to judge the defendant?
14          PROSPECTIVE JUROR:  No, I stayed away from him.
15          MR. BROWN:  There was discussion about the
16  presumption of innocence.
17              Did you hear that discussion?
18          PROSPECTIVE JUROR:  Yes.
19          MR. BROWN:  How do you feel about the presumption of
20  innocence?
21          PROSPECTIVE JUROR:  Yes, I do feel like the
22  defendant is innocent until proven guilty, until you hear both
23  sides.
24          MR. BROWN:  Well, there is also -- we had extensive
25  discussions about allegations that occur in a foreign country
```

1   versus allegations that occur here.

2               Does that -- does just the location or the

3   country of the allegations affect your decision-making in any

4   way?

5          PROSPECTIVE JUROR:  Not in any way.

6          MR. BROWN:  Thank you very much.

7          PROSPECTIVE JUROR:  You are welcome.

8          THE COURT:  Thank you.  Number 44.  Beatrice?

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  From the government?

11         MR. DIAZ:  Hello.

12         PROSPECTIVE JUROR:  Hi.

13         MR. DIAZ:  Your questionnaire indicated some

14  sensitive information, is it okay if I ask you about those in

15  open court?  If you prefer we could go to the side.

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Why don't you have a seat, we will come

18  back to you after we speak to the other jurors.

19               Juror Number 45.  Are you Harry?

20         PROSPECTIVE JUROR:  Yes.

21         MR. DIAZ:  Good afternoon.  You also indicated some

22  sensitive information, is it okay if I ask that in open court?

23         PROSPECTIVE JUROR:  Yes.

24         MR. DIAZ:  You indicated your spouse had been

25  sexually abused when she was a minor?

1    PROSPECTIVE JUROR:  She was 14, and her uncle, it

2    was an attempted sexual assault, but she was able to fight him

3    off.

4           It hasn't been an issue at all until maybe

5    12 years later after we were married.  There was a family

6    reunion and all of the female cousins talked about that he had

7    done the same to them, but they are all well past that.

8           MR. DIAZ:  For you, does that experience affect your

9    ability to serve as a juror in this case?

10          PROSPECTIVE JUROR:  No.

11          MR. DIAZ:  Was that perpetrator prosecuted or held

12   accountable in any way?

13          PROSPECTIVE JUROR:  He fled the country.

14          MR. DIAZ:  Does that fact affect your judgment in

15   this case or affect your feelings about this?

16          PROSPECTIVE JUROR:  I met him once, never really

17   thought about him after that until it came up again.

18          MR. DIAZ:  Do you mind stating what you do for a

19   living?

20          PROSPECTIVE JUROR:  I'm a warehouseman for Kroeger.

21          MR. DIAZ:  Do you have children?

22          PROSPECTIVE JUROR:  I have two, a 22-year-old

23   daughter and a 26-year-old son.

24          MR. DIAZ:  Does the fact you have a daughter affect

25   your ability to judge this case in any way?

```
 1              PROSPECTIVE JUROR:  No.
 2              MR. DIAZ:  Are you okay about judging a person for
 3    their conduct outside of this country?
 4              PROSPECTIVE JUROR:  I'm good it with, yes.
 5              MR. DIAZ:  Are you okay with victims testifying
 6    about something that happened many years ago?
 7                    Anything that, like, you outright have doubts
 8    about or would you be able to judge them based on their
 9    creditability in court?
10              PROSPECTIVE JUROR:  I have to go with the testimony
11    and just weigh everything that is put before me.
12              MR. DIAZ:  Okay.  How about your feelings about law
13    enforcement officers, anything good or bad?
14              PROSPECTIVE JUROR:  Not a problem at all.
15              MR. DIAZ:  Either way?
16              PROSPECTIVE JUROR:  Either way.
17              MS. DIAZ:  Would you be fair to both sides in this
18    case?
19              PROSPECTIVE JUROR:  Yes.
20              THE COURT:  Mr. Brown?
21              MR. BROWN:  Good afternoon.
22              PROSPECTIVE JUROR:  Good afternoon.
23              MR. BROWN:  Sir, based on your wife's experiences,
24    do you think you might be inclined to give child witnesses more
25    weight to their testimony than others?
```

1          PROSPECTIVE JUROR:  I have to hear the testimony,

2     against all of the information and data I'm going to get.  I

3     have to look at that and evaluate it that way.

4          MR. BROWN:  You previously served on a jury?

5          PROSPECTIVE JUROR:  Three juries, all with

6     convictions.

7          MR. BROWN:  Okay.  How did you find that experience?

8          PROSPECTIVE JUROR:  I learned a great deal about the

9     legal system.  It was really interesting, so when I get called

10    I'm one of those that doesn't mind.

11         MR. BROWN:  Great.  Thank you very much.

12         PROSPECTIVE JUROR:  Thank you.

13         THE COURT:  Thank you, sir, Juror Number 46.

14         THE COURTROOM DEPUTY:  He was excused.

15         THE COURT:  No 46.  All right.  Juror Number 47?  Is

16    it Douglas?

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  All right.  From the government?

19         MR. DIAZ:  Good afternoon, sir.  I think you

20    indicated in your questionnaire that you have heard some news

21    about this type of case or this type of conduct?

22         PROSPECTIVE JUROR:  Yeah, you know, the sex

23    trafficking as well, so some friends we have were involved in

24    that and in kind of a missions organization.

25         MR. DIAZ:  Got it.  You haven't heard anything

```
 1   specific about this case?
 2             PROSPECTIVE JUROR:  No.
 3             MR. DIAZ:  Do you talk to the friends about the work
 4   they do?
 5             PROSPECTIVE JUROR:  No.
 6             MR. DIAZ:  So is there anything about the fact that
 7   you have friends that work in this kind of field, would that
 8   affect your ability to be fair in this case?
 9             PROSPECTIVE JUROR:  No.
10             MR. DIAZ:  Would you be fair to the defense?
11             PROSPECTIVE JUROR:  Absolutely.
12             MR. DIAZ:  Even though you have friends that work in
13   that kind of work?
14             PROSPECTIVE JUROR:  Absolutely.
15             MR. DIAZ:  Do you know law enforcement officers?
16             PROSPECTIVE JUROR:  Yes.
17             MR. DIAZ:  Can you tell me about that?
18             PROSPECTIVE JUROR:  A few of my friends, close
19   friends at church are current and retired law enforcement, LAPD
20   and Sheriff.
21             MR. DIAZ:  Would the fact that you have those
22   relationships affect your ability to judge the law enforcement
23   officers that are here?
24             PROSPECTIVE JUROR:  No.
25             MR. DIAZ:  You would not give more weight to law
```

```
 1   enforcement officers on the stand because you have friends that
 2   are in law enforcement?
 3               PROSPECTIVE JUROR:  No.
 4               MR. DIAZ:  Any experience with victims of sexual
 5   assault?
 6               PROSPECTIVE JUROR:  Just friends growing up, yeah,
 7   there seemed to be something in Burbank.
 8               MR. DIAZ:  Got it.  Would the experience of your
 9   friends and your knowledge of their experiences, would that
10   affect your ability to be fair to the defendant?
11               PROSPECTIVE JUROR:  No.
12               MR. DIAZ:  Would it affect your ability to be fair
13   to the prosecution?
14               PROSPECTIVE JUROR:  No.
15               MR. DIAZ:  Would you be able to judge all witnesses
16   fairly in the courtroom, or do you have feelings about child
17   victims or the age of testimony?
18               PROSPECTIVE JUROR:  No, I have to hear the evidence.
19               MR. DIAZ:  Okay.  No further questions.  Thank you.
20               PROSPECTIVE JUROR:  Thanks.
21               THE COURT:  Mr. Brown?
22               MR. BROWN:  Good afternoon, sir.
23               PROSPECTIVE JUROR:  Hi.
24               MR. BROWN:  Do you mind me if I just ask you some
25   questions about some of your responses in the questionnaires?
```

 1                    PROSPECTIVE JUROR:  Sure.

 2                    MR. BROWN:  You indicated that you support law

 3     enforcement.

 4                    PROSPECTIVE JUROR:  Yeah.

 5                    MR. BROWN:  If the political news about the police

 6     is biased?

 7                    PROSPECTIVE JUROR:  The last couple of years there

 8     has been a heavy weight against -- to the defund the police.

 9     So, you know, knowing them personally, and the jobs that they

10     do, you know, being on the line every day, I have a high degree

11     of respect for that.

12                    MR. BROWN:  If you feel that criticism of law

13     enforcement is biased, do you -- if someone questions a law

14     enforcement witness, do you think you would give the law

15     enforcement witnesses more weight than other witnesses?

16                    PROSPECTIVE JUROR:  No.  I think, you know, as we

17     have talked today, we have got to weigh the evidence here.

18                         I'm a trust officer, we do what the trust says

19     even if we don't agree with it.  We hear the evidence and weigh

20     the evidence, and get the facts and make the determination.

21                    MR. BROWN:  You mentioned that your friends had some

22     traumatic experiences in grammar school?

23                    PROSPECTIVE JUROR:  Grammar school and middle

24     school, yes.

25                    MR. BROWN:  Is there anything about your friends'

```
 1  experiences that would shape your judgment of this case?
 2              PROSPECTIVE JUROR:  No.
 3              MR. BROWN:  Excuse me, one moment.
 4                  Two additional areas of questioning.
 5              PROSPECTIVE JUROR:  Okay.
 6              MR. BROWN:  First, you mentioned earlier that you
 7  have family members who are friends who were on missions?
 8              PROSPECTIVE JUROR:  Yeah.
 9              MR. BROWN:  What were those -- could you tell us a
10  little bit about that?
11              PROSPECTIVE JUROR:  We have members of the church
12  and we support missions all over the world.
13                  And some of them go down to South America,
14  some are in Asia, some are here in California, Arizona.
15              MR. BROWN:  Do any of those missions involve
16  Cambodia or Vietnam?
17              PROSPECTIVE JUROR:  No.
18              MR. BROWN:  What parts of Asia?
19              PROSPECTIVE JUROR:  Japan.
20              MR. BROWN:  Okay.
21              PROSPECTIVE JUROR:  And China.
22              MR. BROWN:  Okay.  You mentioned that in terms of
23  the traumatic experiences that your friends experienced, the
24  allegations were against a baseball coach?
25              PROSPECTIVE JUROR:  Okay.  That was one of them.  My
```

1  son's baseball coach most recently was in Burbank, and this was

2  what, 2013, I guess, had relations with two of the high school

3  girls, and so he went away.

4          MR. BROWN:  Okay.  Was there anything about that

5  experience that would affect your judgment in this case?

6          PROSPECTIVE JUROR:  No.

7          MR. BROWN:  Thank you.  Thank you, sir.

8          THE COURT:  Thank you, Juror Number 48.

9              And sir, is your name Aaron?

10          PROSPECTIVE JUROR:  Yes.  From the government?

11          MR. DIAZ:  Good afternoon, you indicated you have a

12  young son?

13          PROSPECTIVE JUROR:  Yes, I do.

14          MR. DIAZ:  Does the fact you have a young child,

15  knowing the allegations in this case, does that affect your

16  ability to sit as a fair juror in this case?

17          PROSPECTIVE JUROR:  No, it won't.

18          MR. DIAZ:  Would you be more biased for the

19  government or against the defendant because the case involves

20  children?

21          PROSPECTIVE JUROR:  No.

22          MR. DIAZ:  Would you tend to favor witnesses that

23  were children at the time of the events?

24          PROSPECTIVE JUROR:  No.

25          MR. DIAZ:  I see you have some computer training.

1     Are you trained in computer forensics, for example?

2                PROSPECTIVE JUROR:  No.

3                MR. DIAZ:  Can you tell me more about your computer

4     training?

5                PROSPECTIVE JUROR:  Yes.  Maps, I'm a production

6     manager for a mapping company.  We use a lot of software that

7     deals with geography.

8                MR. DIAZ:  Got it.  You are trained in the software

9     you use for your work?

10               PROSPECTIVE JUROR:  Yes.

11               MR. DIAZ:  Got it.  Any experience with law

12    enforcement that leaves you feeling positive about them or

13    negative about them?

14               PROSPECTIVE JUROR:  Nothing.

15               MR. DIAZ:  Any feelings about federal agencies, such

16    as Homeland Security?

17               PROSPECTIVE JUROR:  No.

18               MR. DIAZ:  Any experience with sexual abuse that --

19               PROSPECTIVE JUROR:  No.

20               MR. DIAZ:  -- that raises feelings for you?

21               PROSPECTIVE JUROR:  No.

22               THE COURT:  Thank you.  Mr. Brown?

23               MR. BROWN:  Good afternoon, sir.  You live in

24    Lompoc?

25               PROSPECTIVE JUROR:  I do, yeah.

```
 1              MR. BROWN:  Do you think it's going to be a hardship
 2   to come to trial every day, given the distance from Lompoc?
 3              PROSPECTIVE JUROR:  It's fine.  My work was a little
 4   bit of an issue, but it's good now.
 5              MR. BROWN:  You have heard the discussions we have
 6   been having about foreign -- the nature of the allegations in
 7   this case that involve a foreign country, and you seem to have
 8   some strong responses in your questionnaire.
 9                   Would you care to elaborate on those views?
10              PROSPECTIVE JUROR:  Which, specifically?
11              MR. BROWN:  I think you indicated that it doesn't
12   matter where the allegations occur, that an American should be
13   held to a certain standard.
14              PROSPECTIVE JUROR:  Yes, I believe so.  I believe,
15   you know, it doesn't -- you commit a crime somewhere else, it
16   doesn't exempt you.  I believe everyone needs to behave.
17                   For example, when I travel for business, I'm
18   representing my company as well, so I have the same mentality,
19   that is the way I see it.
20              MR. BROWN:  If there is a question in the law that
21   you have to follow that would lead you to a not-guilty verdict,
22   despite the allegations in this case, is that something you
23   think you could do?
24              PROSPECTIVE JUROR:  Could you repeat that?
25              MR. BROWN:  If there is a question under the law --
```

```
 1              THE COURT:  Let me explain.
 2              MR. BROWN:  Thank you very much.
 3              THE COURT:  Again, I'm going to be telling you what
 4   the law is and you have to accept that.
 5                   You, as a juror, an alternate juror, would
 6   have to view the evidence and decide what the facts are, apply
 7   that to the law as I give it to you.
 8                   Do you have any concern about doing that?
 9              PROSPECTIVE JUROR:  No, I don't.
10              THE COURT:  Is there anything about the law -- the
11   little bit that you know about it right now, that suggests to
12   you that you would not be able to do that?
13              PROSPECTIVE JUROR:  No.
14              THE COURT:  And if the government fails to prove its
15   case beyond a reasonable doubt, would you vote not guilty?
16              PROSPECTIVE JUROR:  Yes.  Not guilty.
17              THE COURT:  Thank you.  Mr. Brown?
18              MR. BROWN:  Your Honor, thank you for articulating
19   so eloquently as you did for me.  Thank you.
20              THE COURT:  Thank you, sir.
21                   Juror Number 50.  Is it Alejandra?
22              PROSPECTIVE JUROR:  Yes.
23              THE COURT:  And from the government?
24              MR. DIAZ:  Good afternoon.  I think you said you are
25   from Port Hueneme?
```

```
 1              PROSPECTIVE JUROR:  Yes.
 2              THE COURT:  Do you happen to know anyone in the Pepe
 3   family?
 4              PROSPECTIVE JUROR:  No.
 5              MR. DIAZ:  I believe your answer about foreign
 6   conduct is that you think the laws of America should apply to
 7   American citizens' conduct abroad; is that right?
 8              PROSPECTIVE JUROR:  I'm indifferent.
 9              MR. DIAZ:  Okay.  So you don't have a problem with
10   the fact that the U.S. is prosecuting someone for something
11   they did that may have occurred in a foreign country?
12              PROSPECTIVE JUROR:  No.
13              MR. DIAZ:  No problem with that.
14                  Okay.  Any experience with sexual abuse that
15   would affect your ability to serve on this jury?
16              PROSPECTIVE JUROR:  No.
17              MR. DIAZ:  Any strong feelings for or against law
18   enforcement?
19              PROSPECTIVE JUROR:  No.
20              MR. DIAZ:  Any medical experience, training?
21              PROSPECTIVE JUROR:  No.
22              MR. DIAZ:  Thank you.  No further questions.
23              THE COURT:  Mr. Brown?
24              MR. BROWN:  Thank you.  Living in Port Hueneme, do
25   you know anyone by the name of Richard Williams Pepe?
```

```
 1              PROSPECTIVE JUROR:  No.
 2              THE COURT:  Is there anything about the allegations
 3    in this case that would make it difficult for you to sit on a
 4    jury?
 5              PROSPECTIVE JUROR:  No.
 6              MR. BROWN:  Thank you.  No further questions, Your
 7    Honor.
 8              THE COURT:  Thank you.  And Juror 51.  William?
 9              PROSPECTIVE JUROR:  That's me.  Let me get closer to
10    this microphone here.
11              THE COURT:  All right.  We will address that for
12    you.
13              PROSPECTIVE JUROR:  Thank you for the ADA
14    consideration.
15              THE COURT:  Any time.
16                  All right.  From the government?
17              MR. DIAZ:  Good afternoon, sir.
18              PROSPECTIVE JUROR:  Good afternoon.
19              MR. DIAZ:  I believe you indicated that you were
20    generally familiar with allegations of sex abuse in southeast
21    Asia; is that correct?
22              PROSPECTIVE JUROR:  Yes, I am pretty familiar with
23    it.
24              MR. DIAZ:  Can you tell me more about that?
25              PROSPECTIVE JUROR:  My church works with an
```

1  organization in the Philippines that adamantly opposes sex

2  trafficking, and so I contribute to that and help with the

3  missions, that type of thing.

4          MR. DIAZ:  Okay.  So, although your church is

5  opposed to sex trafficking, I believe everyone is opposed to

6  sex trafficking.

7          PROSPECTIVE JUROR:  Right.

8          MR. DIAZ:  Do you think that in this case you would

9  not be able to be fair to both sides because of your

10 experiences?

11         PROSPECTIVE JUROR:  No, I think I could be fair.

12         MR. DIAZ:  Okay.  Would you be able to hold the

13 government to its burden of proof?

14         PROSPECTIVE JUROR:  Yes.

15         MR. DIAZ:  If you found that the evidence did not

16 support a finding of guilty, you would vote not guilty, right?

17         PROSPECTIVE JUROR:  Yes, I want justice to be

18 served.

19         MR. DIAZ:  Awesome.  I think you said you had some

20 positive experiences about law enforcement?

21         PROSPECTIVE JUROR:  Yes.  I have had some positive

22 experiences.

23         MR. DIAZ:  I'm sorry, positive feelings.

24         PROSPECTIVE JUROR:  Yes, I do.

25         MR. DIAZ:  Do you think even though you have

```
 1  positive feelings for law enforcement, you would still be able
 2  to judge a law enforcement witness, generally?
 3            PROSPECTIVE JUROR:  Yes.
 4            MR. DIAZ:  Do you have a problem or any concerns
 5  about non-citizens testifying in this case?
 6            PROSPECTIVE JUROR:  No.  The only concern I have is
 7  about no integrity testifying.
 8            MR. DIAZ:  Excuse me?
 9            PROSPECTIVE JUROR:  I have no problem with that.  I
10  said if somebody has integrity then --
11            MR. DIAZ:  Got it.  You would evaluate their
12  integrity on the witness stand; am I understanding you?
13            PROSPECTIVE JUROR:  Yes, and character.
14            MR. DIAZ:  Okay.  I believe you checked the box you
15  may have a problem with people testifying through an
16  interpreter.  Am I correct?
17            PROSPECTIVE JUROR:  No, I don't have a problem with
18  people testifying through an interpreter.  I'm bilingual
19  myself.
20            MR. DIAZ:  What language do you speak?
21            PROSPECTIVE JUROR:  Spanish.
22            MR. DIAZ:  Excellent.  The fact that someone is
23  testifying through an interpreter, so long as you can
24  understand the interpreter, you don't have a problem with that?
25            PROSPECTIVE JUROR:  I have no problem.
```

```
 1              MR. DIAZ:  Thank you.  I have no further questions.
 2              THE COURT:  Mr. Brown?
 3              MR. BROWN:  Good afternoon, sir.
 4              PROSPECTIVE JUROR:  Good afternoon.
 5              MR. BROWN:  You mentioned that your church is
 6    involved in work in the Philippines?
 7              PROSPECTIVE JUROR:  Yes.
 8              MR. BROWN:  What type of work exactly, again?
 9              PROSPECTIVE JUROR:  Well, it's an organization they
10    are called The Samaritan House, and what they do is they
11    counsel and help victims of the sex trafficking arena and stop
12    potential victims from being caught up in that whole web.
13              MR. BROWN:  Are you actively involved in that church
14    organization as well?
15              PROSPECTIVE JUROR:  I'm not -- I haven't been to the
16    Philippines, my church has, but I just contribute to the degree
17    I can, and they use my creative abilities and things, I'm a
18    writer.
19              MR. BROWN:  Okay.  It seems like you have strong
20    opinions about that particular issue; is that fair to say?
21              PROSPECTIVE JUROR:  I think everyone does.  Yes, I
22    have strong opinions about children that are abused, yes.
23              MR. BROWN:  Understood.
24              PROSPECTIVE JUROR:  I don't like that.
25              MR. BROWN:  If someone is accused of something awful
```

 1   like that, do you feel that they should still receive a fair

 2   trial?

 3          PROSPECTIVE JUROR:  Yes, I do.  I think people

 4   should be treated the way I want to be treated, because there

 5   is all kinds of things that could have occurred that you don't

 6   even know about.

 7                  Just, for example, I was going to a Goodwill

 8   Store, it was just the day before yesterday, and there was a

 9   lady standing there who didn't want to help me with opening of

10   the door, and I got angry, but then I rolled away and I saw an

11   access van coming to pick her up.  She's obviously got some

12   kind of disability.

13                  I didn't know that -- all of the ramifications

14   with that that she couldn't do it, but because I didn't know

15   the whole story, I made the -- I had the wrong attitude.

16          MR. BROWN:  So, it's important to get the whole

17   story?

18          PROSPECTIVE JUROR:  Yes.

19          MR. BROWN:  How do you feel about the presumption of

20   innocence?

21          PROSPECTIVE JUROR:  I think that is absolutely

22   essential.

23          MR. BROWN:  Why is that?

24          PROSPECTIVE JUROR:  I think you should believe the

25   best of someone before you believe the worse.

1          MR. BROWN:  You talked about witnesses testifying

2     with integrity.

3          PROSPECTIVE JUROR:  Yes.

4          MR. BROWN:  What about the constitutional right not

5     to testify?

6          PROSPECTIVE JUROR:  What is that?

7          MR. BROWN:  About the right to remain silent.

8          PROSPECTIVE JUROR:  That is fine, it's a

9     constitutional right, so that should be granted to anyone who

10    decided to take advantage of that right.  If they think it's

11    going to behoove them, who am I to judge for that?

12         MR. BROWN:  If my client did not take the stand,

13    would you hold that against him?

14         PROSPECTIVE JUROR:  No.  It's obviously his

15    attorney's choice.  I believe they are following the

16    instructions of their attorneys for their well-being.

17              I'm not going to judge anyone for trying to

18    protect themselves.

19         MR. BROWN:  You talked about this concept of

20    justice.

21         PROSPECTIVE JUROR:  Yes.

22         MR. BROWN:  What does that mean to you?

23         PROSPECTIVE JUROR:  Justice means to me making sure

24    that everyone has to live up to the same standard, and they

25    have to either suffer the consequences for the things that were

1  unjust that they did or allow justice to free them because of

2  the just things they have done.

3         MR. BROWN:  Thank you, sir.

4         THE COURT:  All right.  Thank you.  And Juror

5  Number 52.  Are you Flavio, sir?

6         PROSPECTIVE JUROR:  Yes.

7         THE COURT:  For the government?

8         MR. DIAZ:  Good afternoon.

9         PROSPECTIVE JUROR:  Good afternoon.

10        MS. DIAZ:  I see you have served as a grand juror?

11        PROSPECTIVE JUROR:  Yes.

12        MR. DIAZ:  Was that in Federal Court or state court?

13        PROSPECTIVE JUROR:  No, district.

14        MR. DIAZ:  In District Court?

15        PROSPECTIVE JUROR:  Yes.

16        MR. DIAZ:  It was in Los Angeles?

17        PROSPECTIVE JUROR:  Yes.

18        MR. DIAZ:  Was if for the United States Attorney's

19 Office?

20        PROSPECTIVE JUROR:  Yes.

21        MR. DIAZ:  Do you understand the burden of proof in

22 grand jury is different from the burden of proof at trial?

23 Would you be able to follow all of the judge's instructions?

24        PROSPECTIVE JUROR:  Yes.

25        MR. DIAZ:  How long did you serve in the grand

```
 1    jury -- how long did you serve as a grand juror?
 2              PROSPECTIVE JUROR:  Three weeks, probably.
 3              MR. DIAZ:  Okay.  Do you have any experience or does
 4    your experience as a law enforcement -- I'm sorry, did your
 5    experience as a grand juror cause you to have feelings positive
 6    or negative for law enforcement?
 7              PROSPECTIVE JUROR:  Very positive.
 8              MR. DIAZ:  Positive.  Do you still feel you are able
 9    to fairly evaluate the testimony of a law enforcement officer?
10              PROSPECTIVE JUROR:  Yes.
11              MR. DIAZ:  Do you have any experience with child
12    sexual abuse with you or your family?
13              PROSPECTIVE JUROR:  No.
14              MR. DIAZ:  Do you have any problems with enforcing
15    the laws of the United States to conduct that potentially
16    occurred abroad?
17              PROSPECTIVE JUROR:  No.
18              MR. DIAZ:  Any problems with child victims
19    testifying or adult victims testifying about things that
20    happened to them a long time ago?
21              PROSPECTIVE JUROR:  No problem.
22              MR. DIAZ:  Any problems with the use of
23    interpreters?
24              PROSPECTIVE JUROR:  No problem.
25              MR. DIAZ:  Is there anything else you have heard me
```

1  ask other people you think I should know?

2          PROSPECTIVE JUROR:  No.

3          MR. DIAZ:  Nothing further.

4          THE COURT:  Mr. Brown?

5          MR. BROWN:  Hi, good afternoon, sir.

6          PROSPECTIVE JUROR:  Good afternoon.

7          MR. BROWN:  You have to forgive me, your

8  questionnaire, I wasn't able to glean a lot of information.

9          PROSPECTIVE JUROR:  No problem.

10         MR. BROWN:  Do you mind if I ask you some really

11 basic questions?

12              How do you feel about the fact that we have

13 these important constitutional rights here in the U.S.?

14         PROSPECTIVE JUROR:  I agree.

15         MR. BROWN:  Do you feel that perhaps we have too

16 many rights, especially people accused of crimes?

17         PROSPECTIVE JUROR:  No.

18         MR. BROWN:  What about the fact that our client is

19 accused of some pretty awful crimes.  Does that change your

20 opinion about the presumption of innocence?

21         PROSPECTIVE JUROR:  No.

22         MR. BROWN:  Why is that?

23         PROSPECTIVE JUROR:  Because everybody is innocent

24 until proven to the contrary.

25              MR. BROWN:  Do you have a family of your own?  Do

```
 1   you have children --
 2              PROSPECTIVE JUROR:  Yes, sure.
 3              MR. BROWN:  -- if you don't mind me asking.
 4              PROSPECTIVE JUROR:  My son is 51, my daughter is 49.
 5              MR. BROWN:  Is there anything about the graphic
 6   nature of these allegations that would affect your ability to
 7   be fair?
 8              PROSPECTIVE JUROR:  No.
 9              MR. BROWN:  Thank you, sir.
10              PROSPECTIVE JUROR:  My pleasure.
11              THE COURT:  All right.  Thank you very much.
12                   Juror Number 53.  And are you Ranon?
13              PROSPECTIVE JUROR:  Yes.
14              THE COURT:  From the government?
15              MR. DIAZ:  Good afternoon.
16              PROSPECTIVE JUROR:  Hi.
17              MS. DIAZ:  You said you had a friend that was
18   sexually abused in high school?
19              PROSPECTIVE JUROR:  Yes.  She was taken advantage of
20   under the influence of alcohol.
21              MR. DIAZ:  I'm sorry about that.  Is there anything
22   about that experience or your knowledge of her experience that
23   would make you unfair in this case?
24              PROSPECTIVE JUROR:  No.
25              MR. DIAZ:  Is there anything you heard us talking
```

**UNITED STATES DISTRICT COURT**

1    about today that you think would affect your ability to be fair

2    and impartial?

3             PROSPECTIVE JUROR:  No.

4             MR. DIAZ:  Any positive or negative strong feelings

5    about law enforcement?

6             PROSPECTIVE JUROR:  Other than recent political

7    stuff, no negative views.

8             MR. DIAZ:  Okay.  Any strong views about federal

9    agencies such as Homeland Security?

10            PROSPECTIVE JUROR:  No.

11            MR. DIAZ:  Any views about testifying about things

12   that happened a long time ago?

13            PROSPECTIVE JUROR:  No.

14            MR. DIAZ:  Would you be able to just evaluate the

15   person based on how they testify in court?

16            PROSPECTIVE JUROR:  Like, what do you mean?

17            MR. DIAZ:  Would you be able to just fairly evaluate

18   a witness that was testifying in court --

19            PROSPECTIVE JUROR:  Yes.

20            MR. DIAZ:  -- even though they were talking about

21   things that happened a long time ago?

22            PROSPECTIVE JUROR:  Yes.

23            MR. DIAZ:  Would you be fair to law enforcement

24   officers even though you have some feelings about kind of --

25            PROSPECTIVE JUROR:  Yes, I would give all witnesses

1    equal weight.

2              MR. DIAZ:  Thank you, nothing further.

3              THE COURT:  Mr. Brown?

4              MR. BROWN:  Good afternoon, sir.  How do you feel

5    about the foreign nature of these allegations?

6              PROSPECTIVE JUROR:  I believe that until you

7    renounce U.S. citizenship you should have to abide by the laws

8    of the U.S.

9              MR. BROWN:  All right.  Thank you, sir.  No further

10   questions.

11             THE COURT:  All right.  Let's have a sidebar, and we

12   will talk to Juror Number 44.

13                  Ladies and gentlemen, we will be a few

14   minutes, if you will please excuse us.

15             (Sidebar outside the presence of jurors.)

16             THE COURTROOM DEPUTY:  Juror Number 44?

17             THE COURT:  Have a seat.

18             MR. DIAZ:  You had asked a question that happened --

19             PROSPECTIVE JUROR:  Yeah, it was my daughter that

20   was sexually assaulted.

21             MS. DIAZ:  Okay.

22             PROSPECTIVE JUROR:  She is 13 now, and this happened

23   three years ago.  So I was notified when she was in fifth grade

24   just a couple of months that it was her and other girls.  And

25   it turned out that it was her and several other girls from the

1  school, so it was a teacher assistant that did it.

2              That's why it's hard.  I tried to come in as

3  open-minded as I can, but it's hard.  It's hard.  He was -- he

4  took her -- I wasn't too happy about that.

5              THE COURT:  Did your daughter have to testify about

6  it?

7              PROSPECTIVE JUROR:  No, he took the deal before

8  prelim started.  We were able to do -- what is it?

9              THE COURT:  Did you talk to the judge?

10             PROSPECTIVE JUROR:  There was no jury.

11             THE COURT:  Was she a victim?

12             PROSPECTIVE JUROR:  Yes.

13             MS. DIAZ:  Do you think that that experience makes

14 it impossible for you to be fair on this case?

15             PROSPECTIVE JUROR:  As much as I heard throughout

16 the morning, you have to come in and do your job, but it's hard

17 for me.

18             THE COURT:  You need to tell us the truth if you

19 can't.  Any questions?

20             MR. BROWN:  No, Your Honor.

21             THE COURT:  Thank you very much.

22             PROSPECTIVE JUROR:  I just want to say I have been

23 with the other ladies at work that said I was weird because I

24 have been looking to do jury duty for years.  I'm not lying to

25 you.  Everyone at work, they come in and say, guess what I got?

 1   Jury duty.

 2                   I wondered when am I going to get called, and

 3   then all of a sudden I get called for federal jury duty, and

 4   then when I came on the 19th, they said the type of case, and I

 5   was, like, no, but hopefully I will be called again.

 6               THE COURT:  You will probably be excused for the

 7   same court for a year or two, but you don't have to be asked to

 8   be excused if they call you, you can feel free to serve.

 9               PROSPECTIVE JUROR:  Thank you.

10               THE COURT:  So I'm going to excuse Juror Number 44.

11   Any objection?

12               MR. DIAZ:  No objection.

13               MR. BROWN:  No.

14               THE COURT:  Just for the record, I stated as before

15   we agreed to excuse those two other jurors, one that had a

16   promotion and one that was training.

17               MR. DIAZ:  Yes, Your Honor.

18               THE COURT:  We now have Juror 41, 42, 43, 45, 47,

19   48, 50, 51, 52 and 53.  Any other challenges?

20               MR. DIAZ:  No challenges.

21               MR. BROWN:  I think Juror 43, she indicated she was

22   raped by her brother's friends when she was 14.  She indicated

23   that that had no effect on her, but quite frankly, Your Honor,

24   given the testimony that we are expecting here, the allegations

25   against Mr. Pepe, I don't know how she could feel that way.

```
 1              THE COURT:  I thought she did an excellent job of

 2   explaining and answering those questions truthfully.

 3              MR. BROWN:  Understood, that is my problem.

 4              THE COURT:  Okay.  Anything from the government?

 5              MR. DIAZ:  I'm trying to make out what that annoying

 6   buzzing sound is.

 7              THE COURT:  You don't have to whisper, I don't care

 8   what you are saying.

 9              MR. DIAZ:  I'm very visual, I need to see them.

10              THE COURT:  We can go off the record.

11                   (Discussion off the record.)

12              THE COURT:  We're back on the record, outside the

13   presence of the jury.  Government's first peremptory?

14              MR. DIAZ:  The government wishes to thank and

15   excuse -- (inaudible.)

16              THE COURT:  That would be the alternate, 41, 42, 43,

17   45?

18              MR. DIAZ:  Yes.

19              THE COURT:  Then Mr. Brown?

20              MR. BROWN:  We would ask to thank and excuse Juror

21   Number 43.

22              THE COURT:  Okay.

23              MR. DIAZ:  The government accepts the jury as

24   constituted.

25              THE COURT:  So 41, 42, 45, and 47.
```

1          MR. BROWN:  We could ask the Court to excuse Juror

2    Number 47.

3          THE COURT:  42, 45, 58.  And for the government?

4          MR. DIAZ:  The government rests.

5          THE COURT:  The alternates will be 41, 42, 47, and

6    48.  Those are your alternates.

7          MR. DIAZ:  Thank you.

8          THE COURT:  We will take a break, and by the time we

9    get back up and assembled, it will be four clock.

10          Do you want to go before five?  Let's get

11    those done, and we will get ready for that.

12          MR. BROWN:  Very well, Your Honor.

13          Thank you.

14          (Sidebar ends.)

15          THE COURT:  Juror Number 41, 42, 45, and 48, please

16    stand.

17          THE COURTROOM DEPUTY:  Raise your right hands and

18    Ms. Fisher, would you swear them in as our alternates?

19          THE COURTROOM DEPUTY:  Do you each, alternate

20    jurors, will well and truly try the cause now before this Court

21    and a true verdict therein render, according to the evidence

22    and instructions of the Court, so help you God?

23          ALTERNATE JURORS:  Yes.

24          THE COURT:  Thank you.  We now have our 12 jurors

25    and we have four alternate jurors.  All of the rest of you who

1    have joined us, thank you so much, and those in the jury

2    assembly room, thank you so much.

3                    I think you can see how many we will really --

4    how many jurors we will need.  We all unfortunately have jurors

5    that are not selected.  We apologize if you were really dying

6    to be a juror on this case, but we're going to excuse you all.

7    You have done your jury service.

8                    You are ordered to return to the jury room.

9                    All right.  You can have a seat, counsel.

10   Jurors and alternate jurors, we're going to have you go

11   upstairs now and Ms. Fisher will take you to Courtroom 7C, that

12   is not coincidental, but you will be on the 7th Floor, 7C,

13   that's where you will be having your breaks.

14                   The courtroom in which the trial will be held

15   is 7D and you won't come into 7D until Ms. Fisher or

16   Ms. Jackson instructs you to do that.

17                   So we're going to be getting some information

18   from you.  Ms. Fisher will give you information and the rest of

19   us will be getting ready up in my courtroom which is where the

20   rest of the proceedings will occur.  So that will take about a

21   half an hour, so you can do that.

22                   Feel free to use the restroom, et cetera, as

23   soon as Ms. Fisher tells you we're on the way up, if you need

24   to, and we will be back at four o'clock in my courtroom.

25                   I will make some introductory remarks to give

```
 1  you and then we will let you go for the day, and we will start
 2  with our opening statements tomorrow.
 3              So, again, don't talk about the case or form
 4  or express any opinions about the case until it's finally
 5  submitted to you.
 6              And Ms. Jackson and Ms. Fisher will now be in
 7  charge and tell you where to go and what to do until we see you
 8  again.
 9              THE COURTROOM DEPUTY:  All rise.
10              (Jury exits the courtroom at 3:32 p.m.)
11              MS. CHRISTENSEN:  Is it okay that we don't bring the
12  exhibits until tomorrow?
13              THE COURT:  Yes.
14                      (Recess.)
15              THE COURT:  Is there anything we need to discuss
16  before the jurors come in?
17              MS. CHRISTENSEN:  Nothing from the government, Your
18  Honor.
19              MR. BROWN:  Nothing from the defense.
20              THE COURT:  I will give them their introductory
21  instructions and send them on the way.
22              THE COURTROOM DEPUTY:  Ready?
23              THE COURT:  I'm ready.
24              THE COURTROOM DEPUTY:  All rise.
25              (Jury enters courtroom at 3:56 p.m.)
```

1          THE COURT:  All right.  You may be seated.

2                    Everyone is here and we are back on the

3     record.

4                    Ladies and gentlemen, you are now the jurors

5     and alternate jurors in this case, and I'm going to take a few

6     minutes to tell you about your duties as jurors and to give you

7     some preliminary instructions.

8                    At the end of the trial, I will give you more

9     detailed written instructions that will control your

10    deliberations.  All of the Court's instructions, whether given

11    before, during, or after the taking of testimony, including the

12    instructions I gave you before you were chosen, are important.

13                    When you deliberate, it will be your duty to

14    weigh and to evaluate all of the evidence in the case and in

15    that process, to decide the facts.

16                    You must apply the law as I state it to you to

17    the facts as you determine them, and in this way arrive at your

18    verdict.

19                    You must decide the case solely on the

20    evidence received in the trial and not from any other source,

21    and on the law as I have given it to you, whether you agree

22    with the law or not.

23                    Perform these duties fairly and impartially.

24    You should not be influenced by any person's race, color,

25    religious beliefs, national ancestry, sexual orientation,

1    gender identity, gender or economic circumstances, and also do

2    not allow yourself to be influenced by personal likes or

3    dislikes, sympathy, prejudice, fear, public opinion, or biases,

4    including unconscious biases.

5                      Unconscious bias are stereotypes, attitudes,

6    or preferences that people may consciously reject, but may be

7    expressed without conscious awareness, control, or attention.

8                      Like conscious bias, unconscious bias can

9    affect how we evaluate information and make decisions.

10                     Do not read anything into these instructions

11   and do not take anything I may say or do during the trial as

12   indicating what I think of the evidence or what your verdict

13   should be.  That is a matter entirely up to you.

14                     Before we do anything else, there are some

15   very important rules I need to tell you about that apply to

16   your conduct outside of the courtroom and the courthouse.

17                     They describe some of these in the jury

18   assembly room, but they are so important I need to repeat them.

19                     And I don't want to sound mean or threatening,

20   but what I'm going to tell you is not what I'm asking you to

21   do, it is what I am ordering you to do.

22                     My orders have the same effect as laws.  If

23   you violate those orders, it's the same as violating the law.

24                     For some reason jurors seem to have difficulty

25   with these, so please listen closely.

1                  Keep an open mind throughout the trial and do

2     not decide what the verdict should be until you and your fellow

3     jurors have completed your deliberations at the end of the

4     case.

5                  Because you must decide this case based only

6     on the evidence received in the case and on my instructions as

7     to the law that applies, you must not be exposed to any other

8     information about the case or the issues that it involves

9     during the course of your jury service.

10                  Therefore, until the end of the case or until

11     I tell you otherwise, do not communicate with anyone outside

12     the jury about this case or about anyone who has anything to do

13     with it until the trial has ended, and you have been discharged

14     as a juror or alternate.

15                  Anyone, includes your spouse, your partner,

16     your family, anyone at home, your employer, and anyone at work,

17     your friends and neighbors, the media or the press, anyone at

18     all.  You may tell them that you are a juror on a case and how

19     long the trial may last, but say nothing else about it until

20     you are discharged by the Court.

21                  This case includes anything you see or hear in

22     the courtroom, such as the testimony of witnesses, the physical

23     evidence, and anything said by the lawyers, the Court, court

24     staff and anyone else in the courtroom, such as spectators.

25                  This means you are ordered not to communicate

1  in any way with the attorneys, the parties, or any witness

2  called in this proceeding.

3                    When you see any of these people in the hall

4  or anywhere else, you are not to greet them, don't ask for

5  directions to anywhere, don't ask how much longer the trial

6  will last.  There should be no communication of any kind.

7                    Of course, you probably won't know who the

8  witnesses are, so it's best not to talk to anyone who isn't

9  wearing a juror's badge and keep your badge on where people can

10  see it, so no one accidentally talks to you.

11                   If you are in the hall or restroom and you

12  hear someone talking about the case, ask them not to talk about

13  it in your presence or simply leave.

14                   Don't get into an elevator with anyone you

15  recognize other than another juror.

16                   Parties and the attorneys will not be offended

17  if you ignore them, and please don't be offended if they ignore

18  you.  They are also under orders not to speak to you.

19                   Don't be concerned, however, if you see

20  witnesses talking to each other or to the attorneys, that is

21  permissible, just stay far enough away from them that you won't

22  overhear any of their conversation.

23                   Do not let anyone communicate with you about

24  the case or about anyone who has anything to do with it, and if

25  someone does try to communicate with you about it, tell them

1  you will not speak to them, and immediately inform our bailiff

2  when we have one or Ms. Fisher of that conduct.

3             This restriction includes discussing the case

4  in person, in writing, by phone, tablet or computer or any

5  other means, via e-mail, via text messaging, or any Internet

6  chat room, blog, website, or application, including, but not

7  limited to, Facebook, YouTube, Twitter, Instagram, LinkedIn,

8  SnapChat, Tik Tok or any other form of social media.

9             And this restriction also applies to

10  communicating with your fellow jurors about the case until I

11  give you the case for deliberation, unless I instruct

12  otherwise.

13             You must not independently investigate the

14  facts or the law or consider or discuss facts as to which there

15  is no evidence.  This means, for example, that you may not

16  visit or view any place you hear described in the case.

17             Do not search for information on any of the

18  parties, witnesses, attorneys or law firms, or me, at least

19  until the case is over.

20             If you look for these people you may

21  accidentally find information about the case.

22             Do not conduct experiments.  Do not read,

23  listen to, or watch any news or media accounts or commentary

24  about the case or about anyone who has anything to do with it,

25  although, I have no information that there will be any news

1    reports about the case.

2                    These rules protect each parties' right to

3    have the case decided only on evidence that is presented here

4    in court.

5                    Witnesses here in court take an oath to tell

6    the truth, and the accuracy of their testimony is tested

7    through the trial process.

8                    If you do any research or investigation

9    outside the courtroom or gain any information through improper

10   communications, then your verdict may be influenced by

11   inaccurate, incomplete or misleading information that has not

12   been tested by the trial process.

13                   You can't ask anyone for information relating

14   to the case, even if you don't say that it has anything to do

15   with the case or that you are on a jury.

16                   You cannot even look up a word in the

17   dictionary that you don't know or don't agree on the meaning of

18   the word.  If you have any questions at all, send them in

19   writing to me, and I will try to help you answer them.

20                   Each of the parties is entitled to a fair

21   trial by an impartial jury, and if you decide the case based on

22   information not presented in court, you will have denied the

23   parties a fair trial.

24                   And remember, you have taken an oath to follow

25   the rules, and it is very important that you do follow those

1   rules.

2              These and my other orders are not just my

3   orders, preferences, or requests, they are serious, they are

4   important, and they are the law.

5              The law requires these instructions to ensure

6   that the parties have a fair trial with a fair and unbiased

7   jury, and that's a jury that will base its decision only on the

8   evidence presented in the courtroom.

9              It is common for the media, whether

10   television, radio, newspaper, or an online source to report

11   about lawsuits, parties to lawsuits, witnesses in lawsuits, and

12   their lawyers.

13              This media coverage may be accurate or it may

14   be inaccurate, and the coverage may be complete and thorough or

15   it may be incomplete and not thorough, and the coverage may

16   portray both sides of the story fairly or it may be one-sided.

17              If you do your own research, look on the

18   Internet or view media coverage relating to the case, you will

19   have no way of knowing whether what you are reading is

20   accurate, complete, or fair.

21              In addition, the parties and the Court will

22   have no way of knowing what you have seen or read, and they

23   will be deprived of the opportunity to confront and explain

24   whatever is said in those accounts, and you will have more

25   information, possibly inaccurate information, than your fellow

1    jurors.

2                    And that's why your information about the case

3    must be limited to what is presented in this courtroom.

4                    That way all of the jurors will see and hear

5    the same evidence, and the parties will have an opportunity to

6    address that evidence, engage in what we call

7    cross-examination, and talk to you about the evidence in their

8    opening statements and closing arguments.

9                    And you can't fix the problem by sharing with

10   your fellow jurors information that you shouldn't have in the

11   first place.

12                   A juror who violates these restrictions,

13   jeopardizes the fairness of these proceedings and a mistrial

14   could result.

15                   A mistrial means that no matter how far we are

16   into the case, we have to start over.  It means that the

17   jurors, the court staff, the attorneys, and the parties will

18   have wasted their time, and you will also have wasted the tax

19   dollars -- your tax dollars that it takes to provide the trial.

20                   If you hear any other juror talking about

21   having done research, seeing news coverage, or learned

22   information about the case outside of the courtroom, or if you

23   accidentally do so yourself, you must inform Ms. Fisher

24   immediately so that we can all address the situation.

25                   I really can't emphasize these rules enough.

1          Judges in every court across the country

2    advise jurors of these same rules, and yet sometimes we hear

3    that jurors are ignoring them.

4          Sometimes it's just curiosity.  Sometimes it's

5    because jurors believe they need to know more about the case

6    than the lawyers have told them in order to do their jobs as

7    jurors, but there is absolutely no excuse or justification for

8    violating these rules, so don't even try to think of one.

9          If you have any question at all about whether

10   something you are about to do is okay, just don't do it.

11         As I told you, Mr. Pepe has pleaded not guilty

12   to the charges and is presumed innocent unless and until the

13   government proves him guilty beyond a reasonable doubt.

14         In addition, he has the right to remain silent

15   and never has to prove innocence or present any evidence.

16         As I said before, if you have ever served on a

17   civil jury, you must understand that there are substantial

18   differences in the rules that apply to the trial of a criminal

19   case from those that apply to civil trials.  This is

20   particularly true with regard to the burden of proof.

21         In a civil case, the burden of proof is

22   usually a preponderance of the evidence.  In a criminal case,

23   as I have said many times and I will be saying again, the

24   defendant is presumed to be innocent, and before he may be

25   found guilty, the government must prove guilt beyond a

1    reasonable doubt.

2              Now, I will tell you about some of the general

3    principles that will apply in our trial.

4              Evidence is the sworn testimony of witnesses,

5    the exhibits that are received into evidence and any facts to

6    which the parties agree.

7              If the parties agree to a fact, we will tell

8    you exactly what they have agreed to.

9              In deciding the facts in this case, you may

10   have to decide which testimony to believe and which testimony

11   not to believe.

12             You may believe everything a witnesses says or

13   part of it or none of it.

14             In evaluating the testimony of witnesses,

15   consider the following questions:  How well can the witness see

16   or hear or otherwise sense the things about which the witness

17   testified.

18             How well was the witness able to remember and

19   describe what happened.

20             What was the witness's behavior while

21   testifying?

22             Did the witness understand the questions and

23   answer them directly?

24             Did the witness have a reason to lie, such as

25   bias or prejudice or personal interest in how the case is

```
 1   decided?
 2                   What was the witness's attitude about the case
 3   or about testifying?
 4                   How reasonable is the testimony when you
 5   consider all of the other evidence in the case.
 6                   Did other evidence in the case prove or
 7   disprove about any fact about which the witness testified?
 8                   Consider any other factors that bear on
 9   credibility and use your common sense and good judgment to
10   evaluate the testimony, based on all of the circumstances.
11                   Sometimes a witness may say something that is
12   not consistent with something else he or she said.
13                   Sometimes different witnesses will give
14   different versions of what happened.
15                   People often forget things or make mistakes in
16   what they remember.  Also, two people may see the same event
17   but remember it differently.
18                   You may consider these differences but do not
19   decide the testimony is untrue, just because it differs from
20   other testimony.
21                   However, if you decide that a witness has
22   deliberately testified untruthfully about something important,
23   you may choose not to believe anything that witness said.
24                   On the other hand, if you think the witness
25   testified untruthfully about some things, but told the truth
```

```
 1   about others, you may accept the part you think is true and
 2   ignore the rest.
 3                   You must avoid bias, conscious or unconscious,
 4   based on the witness's race, color, religious beliefs, national
 5   ancestry, sexual orientation, gender, gender identity, economic
 6   circumstances in your determination of credibility.
 7                   The weight of the evidence as to a fact does
 8   not necessarily depend on the number of witnesses who testify
 9   about it.
10                   What is important is how believable the
11   witnesses are and how much weight you think their testimony
12   deserves.
13                   There are two kinds of evidence:  Direct and
14   circumstantial.
15                   Direct evidence is direct proof of a fact such
16   as testimony by a witness about what that witness personally
17   saw or heard or did.
18                   Circumstantial evidence is indirect evidence.
19   That is, it is proof of one or more facts from which you could
20   conclude that other facts exist.
21                   Before you decide that a fact has been proven
22   by circumstantial evidence, you must consider all of the
23   evidence in the light of reason, experience, and common sense.
24                   You are to consider direct and circumstantial
25   evidence; either can be used to prove any fact.
```

1     The law makes no distinction between the

2  weight to be given to either direct or circumstantial evidence.

3  It is for you to decide how much weight to give to any

4  evidence.

5     The following things are not evidence and you

6  must not consider them as evidence in deciding the facts of

7  this case.

8     Statements or arguments by attorneys are not

9  evidence.

10     Questions and objections are not evidence.

11     You cannot consider as evidence anything you

12  may see or hear when the Court is not in session, even if what

13  you see or hear, is done or said by one of the parties or by

14  one of the witnesses.

15     Do not assume to be true any insinuation

16  suggested by a question asked a witness.

17     A question may be considered only if it helps

18  you to understand the answer.

19     There are rules that control what evidence can

20  be presented in a case.  When an attorney asks questions or

21  offers an exhibit in evidence, and the attorney on the other

22  side thinks it is not permitted by the rules, that attorney may

23  object.

24     If a question is objected to and the objection

25  is sustained, which means the witness may not respond, you must

1    not guess about what the answer might have been or the reason

2    for the objection.

3                  If the objection is overruled, and the witness

4    is allowed to answer, you may consider that answer as you would

5    any other evidence in the case.

6                  Please remember that it's an attorney's duty

7    to object to questions that the attorney believes are not

8    proper, and you should not show prejudice toward the attorney

9    or the side the attorney represents because the attorney makes

10   an objection.

11                 Sometimes I may order that evidence be

12   stricken and that you disregard or ignore the evidence.  And

13   that means that when you are deciding the case, you must not

14   consider that evidence for any purpose.  Treat it as though you

15   had never heard it.

16                 Some evidence might be admitted only for a

17   limited purpose, so when I tell you that certain evidence has

18   been admitted for a limited purpose, you may consider it for

19   that purpose only and not for any other purpose.

20                 At times, I might find it necessary to direct

21   one or more of the attorneys to do or not to do certain things.

22                 I might even find it necessary to make some

23   criticism of an attorney's conduct.

24                 If I do so, you must not show prejudice toward

25   the attorney or the side the attorney represents simply because

1    I have found it necessary to say something to the attorney.

2                    You will be given notebooks and pens.  They

3    are under your seats there.  If you wish, you may take notes to

4    help you remember the evidence.

5                    If you do take notes, keep them to yourself

6    until you and your fellow jurors go to the jury room to decide

7    the case.

8                    You should not permit note-taking to distract

9    you or prevent you from listening carefully to other testimony.

10                    Remember, you are the judges of the

11   believability of the witnesses.

12                    Notes are only to assist your memory and

13   should not take the place of your memory.

14                    Jurors should not be overly influenced by what

15   that juror or any other juror writes down.

16                    Some testimony might have seemed unimportant

17   at the time it was presented, and therefore, it was not written

18   down, but it might turn out to be important later in the trial

19   after all of the evidence is submitted and you have heard the

20   arguments of counsel and the jury instructions.

21                    A juror who does not take notes should rely on

22   his or her recollection of the evidence and not be influenced

23   by the fact that other jurors do take notes.

24                    Leave your notes beneath your seats when you

25   leave for recesses.  You will be able to take them with you in

1    the jury room, wherever we have you sitting when you

2    deliberate.

3                   By the way, you may see me taking notes during

4    the trial, but I take notes for different reasons, so when you

5    see me writing something down, it doesn't mean you should write

6    it down.

7                   At the end of the trial, you will have to make

8    a decision based on what you recall of the evidence.  You will

9    not have a written transcript of the trial, so I urge you to

10   pay close attention to the testimony as it's given.

11                  Sometimes there is a tendency on the part of

12   jurors immediately to request the testimony of one or more

13   witnesses be read back.

14                  As you can see we have excellent court

15   reporters taking down everything we say while we are on the

16   record, but they don't take their notes or their computer home

17   every evening and translate what they are taking down during

18   the day into a transcript that can be provided to you.

19                  So if you ask for something to be read back,

20   they will have to go back through all of their notes, find what

21   you asked for, and then take out any objections or sidebar

22   conferences, and they only read back the testimony that was

23   heard in court.

24                  And we do have excellent court reporters, and

25   the use of computers does speed things up a bit, but it still

1    actually takes a great deal of time to get that prepared to be

2    read back to you.

3                        If there is any disagreement among you as to

4    specific testimony, I will, of course, consider that request,

5    but please don't ask for testimony that isn't necessary for

6    your decision.

7                        You will be permitted to separate at recesses.

8    You must return following the recesses at such times as I

9    instruct you.

10                       During the recesses, as I said, you must not

11   discuss with anyone any subject connected with this trial.  You

12   cannot even discuss it among yourselves.

13                       When you are together in the hall or in the

14   room where we have you taking your breaks or anywhere else, you

15   must speak only of matters entirely unrelated to the trial.

16                       During the course of the trial and before you

17   begin your deliberations, you must keep an open mind on the

18   case, and on all of the issues that you will be asked to

19   decide.

20                       In other words, as I said, you must not form

21   or express any opinion about the case until the matter is

22   finally submitted to you.

23                       Remember all of the other orders I gave you at

24   the start of the proceedings.  Don't talk to anyone or allow

25   anyone to talk to you, and don't attempt to do research of any

1    kind on the Internet or otherwise on any subject connected with

2    this trial.

3              If you need to communicate with me at any

4    time, again, just give a signed note to our bailiff when we

5    have one or to Ms. Fisher.

6              By the way, as you may know, all of our

7    courtrooms are public courtrooms, and people sometimes like to

8    come and watch trials and that's perfectly all right.

9              We're staying physically distanced here, so we

10   do have another room where members of the public can come and

11   watch portions of the trial.

12             So just be sure that none of your friends or

13   relatives are present here watching the trial without my

14   knowledge, and it's particularly important that you don't hear

15   from them what happened during those times the jury is not in

16   the courtroom and that you don't discuss with them what

17   happened when you were present.

18             Again, that is one of the reasons you need to

19   make sure you are wearing those jury badges and you don't talk

20   to anyone who isn't wearing a jury badge.

21             As for our alternate jurors, you are bound by

22   all of these admonitions.  You must not converse among

23   yourselves or with anyone else on any subject connected with

24   the trial.

25             You must not form or express any opinion on it

1    until the case is submitted to you, which means until such time

2    as you are substituted in for one of the 12 jurors and begin

3    deliberating on the case.

4              This means you must not decide how you would

5    vote if you were deliberating with the other jurors, and you

6    must not form or express an opinion about the case unless and

7    until you have been substituted in as a juror in the case.

8              When we return tomorrow morning, the next

9    phase of our trial will begin.

10             First, both sides may make an opening

11   statement if they choose to do so.  Neither side is required to

12   make an opening statement.

13             An opening statement is not evidence.  It's

14   also not an argument.

15             Counsel are not permitted to argue the case at

16   this point in the proceedings.

17             An opening statement is simply an outline by

18   counsel of what he or she expects the evidence will show in the

19   trial.

20             Its purpose is to assist you in understanding

21   the case as it's presented to you.

22             After that, the government will present

23   evidence and the defense may cross-examine the witnesses called

24   by the government.

25             Then the defendant may present evidence if he

1   chooses to do so, and the government may cross-examine those

2   witnesses.

3                 Witnesses don't necessarily testify about

4   things in the order in which they happened, and sometimes I

5   allow witnesses to testify out of what might seem like a

6   reasonable order for you in order to adjust or accommodate

7   their schedules.

8                 So again, be sure to keep an open mind until

9   you have heard all of the evidence.

10                After the evidence has been presented, that is

11  when I will instruct you on the law that applies to the case,

12  and when the attorneys will make their closing arguments, and

13  then you will go to the jury room to deliberate on your

14  verdict.

15                So as I said, we will be starting at 8 o'clock

16  tomorrow morning.  We will go until about 2:00.  If we need

17  five minutes or so to finish up with the witness, we will do

18  that and it will be a little bit flexible, but we do need you

19  to be here on time because that's the only way that I can

20  assure you, to the extent I can, that we will finish this trial

21  in the timeframe that we predicted and you cleared your

22  calendars for.

23                Remember, this is downtown Los Angeles.  There

24  is occasionally a lot of traffic and traffic jams even these

25  days.  Some days there are a lot more jurors coming in as you

1   might have seen this morning, probably long lines, that may

2   happen again on Thursday.  Tuesdays and Thursdays we're

3   generally calling in jurors for other trials, so just keep that

4   in mind, and leave enough time to get here despite all of those

5   things that may happen when you need to get on the road to LA.

6               And I think we have done enough for today, so

7   again, don't talk about the case or form or express any

8   opinions until it's finally submitted to you.

9               You are ordered to return by 8:00 a.m.

10  tomorrow, and you are ordered to have a good evening.

11          THE COURTROOM DEPUTY:  All rise.

12          (Jury exits the courtroom at 4:30 p.m.)

13          THE COURT:  All right.  You may be seated.  What's

14  the status of the government witnesses that are heading here

15  from overseas?

16          MS. CHRISTENSEN:  Your Honor, we have a report that

17  one is on a plane right now.  That would be victim N.P. so

18  we're hopeful that she's going to make it and clear quarantine

19  on this side and then be able to testify.

20          THE COURT:  Okay.  Anything else we need to address?

21          MS. BUSSARAKUM:  I have a logistical question about

22  opening tomorrow.

23              Would it be possible to turn the lectern

24  around so we could put our notes there to use and address the

25  jurors?

1          THE COURT:  Ms. Christensen, you were here and you

2     were playing with that, I think.

3          MS. CHRISTENSEN:  My recollection, Your Honor, is

4     that the court IT said that physically the lectern could not be

5     turned around because the wires are anchored into the ground.

6          THE COURT:  But the plexiglas could be.

7          MS. CHRISTENSEN:  The plexiglas -- two people can

8     lift it up and turn it around, so your notes would be where the

9     microphone would be, so we can test it if the Court would be

10    all right with that.

11         THE COURT:  Sure, be my guest.

12             If there is nothing else, I will leave you

13    until Ms. Fisher kicks you out, which will probably be

14    relatively quickly, but if you want to play with that, be my

15    guest.

16         THE COURTROOM DEPUTY:  This Court is adjourned.

17            (The proceedings concluded at 4:31 p.m.)

18                         * * *

19

20

21

22

23

24

25

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3     COUNTY OF LOS ANGELES    )
                               )
4     STATE OF CALIFORNIA      )

5

6              I, TERRI A. HOURIGAN, Federal Official Realtime

7     Court Reporter, in and for the United States District Court for

8     the Central District of California, do hereby certify that

9     pursuant to Section 753, Title 28, United States Code that the

10    foregoing is a true and correct transcript of the

11    stenographically reported proceedings held in the

12    above-entitled matter and that the transcript page format is in

13    conformance with the regulations of the judicial conference of

14    the United States.

15

16    Date:  August 17, 2021

17

18

19                          /s/ TERRI A. HOURIGAN
                      _____
20                    TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                           Federal Official Court Reporter
21

22

23

24

25

**UNITED STATES DISTRICT COURT**