TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
STEPHANIE S. CHRISTENSEN (Cal. Bar No. 236653)
DAMARIS DIAZ (Cal. Bar No. 277524)
LYNDA LAO (Cal. Bar. No. 260872)
Assistant United States Attorneys
    1200/1300/1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3756/0302/7167
    Facsimile: (213) 894-3713
    E-mail: stephanie.christensen@usdoj.gov
            damaris.diaz@usdoj.gov
            lynda.lao@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL JOSEPH PEPE,<br><br>    Defendant. | No. CR 07-168(C)-DSF<br><br>**GOVERNMENT'S OBJECTIONS TO PSR AND INITIAL SENTENCING POSITION; EXHIBITS**<br><br>Hearing Date: February 14, 2022<br>Hearing Time: 8:30 a.m.<br>Location: Courtroom of the Hon. Dale S. Fischer |
|---|---|

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Stephanie S. Christensen, Damaris Diaz, and Lynda Lao, hereby files its Objections to the PSR and Initial Sentencing Position, and exhibits thereto.

///

///

///

1  This Sentencing Position is based upon the attached memorandum of points and
2  authorities and exhibits thereto, including the Victim Impact Statement of N.T.D.
3  attached as Exhibit C,[1] the Presentence Report, the files and records in this case, and
4  such further evidence and argument as the Court may permit.

Dated: January 24, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

        /s/
STEPHANIE S. CHRISTENSEN
DAMARIS DIAZ
LYNDA LAO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[1] The Court already has in its possession the Victim Impact Statements previously filed on September 19, 2008. (Dkt. 329.)

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For the second time, a jury has found defendant Michael Joseph Pepe guilty of drugging, binding, beating, and raping children in Cambodia. The probation office has issued a PSR and has recommended a Guidelines sentence of life in prison, $400 in special assessments, and restitution in the amount of $247,213.

As set forth below, the government has minor factual objections to the PSR and an objection to the proposed grouping, none of which impact the Guidelines calculation. The government concurs in the special assessment and restitution calculations, the latter of which is unchanged from the first sentencing.

The government recommends that the Court impose 210 years' imprisonment. This is the same aggregate sentence imposed by the Court at defendant's first sentencing and will ensure that defendant does not leave prison in his lifetime.

## II. FACTUAL OBJECTIONS TO THE PSR

The government refers to the PSR for a recitation of the facts, with the following corrections:

- Paragraph 16 should be amended to remove "with L.K., S.R., and S.S."
  o An early report of an interview with K.S. stated that K.S. was at defendant's house with L.K., S.R., and S.S. (Ex. A (September 27, 2006 Report) at 2.) However, a later interview report corrected that those three victims were not at defendant's house at the same time as K.S. (Ex. B (January 26, 2008 Report) at 3.) Her trial testimony also makes clear that she did not know the other victims at defendant's house aside from her relative N.P. (RT[1] 508:18–25.)

- Paragraph 37 should be amended to reflect L.K.'s trial testimony that defendant raped her during an eight-month period not a "three-month period" as stated in the PSR. Also, "approximately 20 times" should be replaced with "repeatedly." (RT 442, 471.)

---

[1] "RT" refers to unredacted versions of the Reporter's Transcripts for trial days, which are consecutively paginated.

- Paragraph 64 should be amended to change "N.C." to "N.P." The government believes this is merely a typographical error.
- Paragraph 66(c): "minor girl five" has been identified as N.P.

### III. GUIDELINES COMPUTATION

The government agrees with the PSR's Total Offense Level of 54, which will be treated as level 43. However, the government disagrees with the grouping of Counts 1 and 3. (PSR ¶ 74.) Like Counts 2 and 4, which are not grouped, Counts 1 and 3 should not be grouped because they do not pertain exclusively to the same victim, though they are tied to the same foreign travel in May 2005.

The government agrees that Count 3 pertains to under-12 victim K.S. who is named in the third superseding indictment. However, Count 1 involves the additional minor victim N.P., whom defendant raped and took sexually explicit photographs of in June of 2005 approximately two weeks after the May 2005 travel. (RT 682 (testimony of computer forensic expert Bruce Pixley regarding the date of the sexually explicit photographs).) Thus, Counts 1 and 3 do not involve identical victims and should not be grouped under U.S.S.G. § 3D1.2(a).

Despite this ungrouping, the Total Offense Level remains the same.[2] Ungrouped, the Guidelines are:

- (**NEW**) Count 1 (victim N.P.) has the following Base Offense Level and applicable Specific Offense Characteristics:
    - Base Offense Level: ……………………………...……………..30
    - Conduct described in 18 U.S.C. § 2241(a) or (b)[3]:……..……………+4
    - Serious bodily injury: ……………………………………………..+2
    - Obstruction of Justice: …………………………………….....…..+2

---

[2] The ungrouping of Counts 1 and 3 results in a multiple count adjustment of 3.0, rather than 2.5 in the PSR. (PSR ¶ 113.) This results in the same +3 increase in offense level under U.S.S.G. § 3D1.4. (PSR ¶ 115.)

[3] N.P.'s sworn testimony appears at RT 638–43 and supports these characteristics.

2

- o **Adjusted Offense Level (Count 1):**………………….……….**38**
- (Unchanged) Count 2 (victim I.T.)
  - o **Adjusted Offense Level (Count 2):**……………………………**46**
- (Unchanged) Count 3 (victim K.S.)
  - o **Adjusted Offense Level (Count 3):**……………………………**44**
- (Unchanged) Count 4 (victim S.S.)
  - o **Adjusted Offense Level (Count 4):**……………………………**40**
- Multiple Count Adjustment:

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| **Count 1** | **38** | **0.5** |
| Count 2 | 46 | 1.0 |
| Count 3 | 44 | 1.0 |
| Count 4 | 40 | 0.5 |

  - o Total Number of Units: 3.0

## IV.   SENTENCING RECOMMENDATION

The Court is all too familiar with the heinous facts of this case having heard them directly from the victims' mouths at two trials. In the Court's own words at sentencing following the first trial, "to describe the defendant's conduct . . . as monstrous does not begin to capture the horror of the crime or its impact on those young victims." (Dkt. 512 at 27.) At sentencing following the first trial in this matter, the Court sentenced defendant to the maximum sentence of imprisonment under those statutes—30 years on each of the seven counts to run consecutively, totaling 210 years' imprisonment. (Dkt. 512 at 31.)

Since remand, this Court has learned more details related to defendant's crimes. For example, in the 2008 trial, six victims testified. All were children, and all testified through interpreters and gave relatively short accounts of defendant's abuse and torture. In the 2021 trial, two additional victims testified—victim S.S., who was too distraught and disturbed to testify in 2008, and victim N.P. whose identity and location were not

3

discovered until preparation for the second trial. Moreover, the six little girls from the 2008 trial had grown to be brave young women by the 2021 trial, telling their stories in greater detail, with some able to shed the interpreter and speak in English directly to the Court and jury. Further, in pretrial briefing before the 2021 trial, the Court was presented with robust facts of defendant's scheme to bribe witnesses and defendant's insistence on re-deposing Basang forced the government to question a witness who had been bribed by the defendant.[4] (Dkt. 639, 673.)

Despite these new facts now known to the Court, the government recommends that the Court impose the same total sentence of imprisonment: 210 years. The government further recommends that the Court sentence defendant to 30 years' imprisonment on each of Counts 1 and 2, and 210 years' imprisonment on each of Counts 3 and 4, with all counts to run concurrently. *See United States v. Horob,* 735 F.3d 866, 869 (9th Cir. 2013) (per curiam) (finding no presumed or actual vindictiveness by sentencing judge where court explained its reasons for the sentence and defendant received same total sentence on remand even though there were fewer counts and mandatory consecutive count had been overturned on appeal); *United States v. Boulware*, 470 F.3d 931, 937–38 (9th Cir. 2006), vacated and remanded on other grounds, 552 U.S. 421 (2008), (finding no vindictiveness in nine-month increase in prison term where retrial adduced additional evidence); *see also United States v. Zitlalpopoca-Hernandez*, 805 F. Appx. 494, 496 (9th Cir. 2020), cert. denied sub nom. *Zitalpopoca-Hernandez v. United States*, 141 S. Ct. 311 (2020) (unpublished) (finding presumption rebutted where trial court noted new facts—namely a Victim Impact Statement and an admission by defendant that his family operated an extensive

---

[4] Although the bribery scheme was known to the Court at the time of the 2014 sentencing, the scope and extent were more robustly presented before the 2021 trial. The obstruction enhancement was seemingly not contemplated at the first sentencing, the Guidelines even without the enhancement already well exceeding the statutory maximum sentence. *See, e.g.,* Dkt 512 at 28 (recognizing that the Guidelines range "cap[ped] out five levels below Mr. Pepe's properly-calculated range").

4

prostitution ring in Mexico—were presented at the fourth sentencing hearing leading to increased sentence/fine); *United States v. Sanchez-Hernandez*, 280 Fed. Appx. 638, 2008 WL 2224860 (9th Cir. 2008) (unpublished) (no presumption of vindictiveness despite six-year sentence increase on remand where reasons explained on the record).

### A. The Organizations That Rescued the Victims Are Entitled to Restitution

The Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, applies in this case.[5] Under the MVRA, the victim is entitled to be made whole, which means that the defendant must be ordered to pay for medical and related professional services, physical and occupational therapy and rehabilitation, and any income lost as a result of the offense, as well as any childcare, transportation, or other expenses incurred during participation in the investigation or prosecution of the offense.[6] 18 U.S.C. §§ 3663(A)(b)(2), 3663(A)(b)(4).

Here, defendant's crimes against the eight child victims were the proximate cause of a variety of expenses because the girls were forced to live in NGO facilities until they turned 18. The costs incurred by Hagar International Mission ("Hagar") and Agape International Missions ("AIM") include costs related to education for the victims whose ability to learn was diminished by defendant's crimes, and costs incurred to ensure the victims' safety, including the cost of housing and daily care as well as for continued physical and psychological care. (See Dkt. 506, "September 2008 Restitution Hearing," at 15–17.)

In February 2014, the Court correctly ordered restitution in the amount of $247,213 at defendant's sentencing hearing. (Dkt. 492, "Judgement and Commitment

---

[5] The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). In addition, the statute provides that "[i]n the case of a victim who is under 18 years of age, . . . the legal guardian of the victim . . . may assume the victim's rights under this section . . . ." 18 U.S.C. § 3663A(a)(2).

[6] The MVRA applies here for the same reasons described in the government's original sentencing position. (Dkt. 318 at 5–8.)

5

Order," at 2.) As outlined in the government's February 2014 Supplemental Submission Regarding Restitution, Hagar incurred a total of $35,400 in expenses and AIM incurred a total of $211,813 in expenses for the care of the seven victims from the 2008 trial — I.T., N.T.D., T.C., L.K., K.S., S.S., and S.R. Hagar's restitution amount was calculated by adding together the rounded total actual cost of care for victims I.T. and N.T.D. from 2006 until 2014, which amounted to $21,832 and $13,568, respectively. (Dkt. 490, "Government's Supplemental Submission Re Restitution.") AIM's restitution amount was calculated based on the total AIM expenditures for its overall program from October 26, 2010 – February 25, 2014, which was multiplied by 0.139 to account for the 5 victims in this case (T.C., L.K., K.S., S.S., and S.R.) out of 36 total girls up until 2010, and included actual costs for each victim since 2010. (*Id.; see also* Dkt. 512, "February 2014 Sentencing Hearing," at 4.)

Government counsel reached out to victims' counsel to see if either non-governmental organization incurred any additional expenditures related to the original seven victims since 2014 or in connection with victim N.P., which require additional restitution. Victims' counsel confirmed that the 2014 restitution amount is still accurate. Thus, the Court should order the same restitution amount of $247,213.

## V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 210 years' imprisonment, a $400 special assessment, and $247,213 in restitution.