TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
STEPHANIE S. CHRISTENSEN (Cal. Bar No. 236653)
DAMARIS DIAZ (Cal. Bar No. 277524)
LYNDA LAO (Cal. Bar. No. 260872)
Assistant United States Attorneys
1200/1300/1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3756/0302/7167
Facsimile: (213) 894-3713
E-mail: stephanie.christensen@usdoj.gov
damaris.diaz@usdoj.gov
lynda.lao@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOSEPH PEPE,<br><br>Defendant. | No. CR 07-168(C)-DSF<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION; EXHIBIT<br><br>Hearing Date: February 14, 2022<br>Hearing Time: 8:30 a.m.<br>Location: Courtroom of the Hon. Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States

///

///

///

Attorneys Stephanie S. Christensen, Damaris Diaz, and Lynda Lao, hereby files its Response to Defendant's Sentencing Position, and exhibit thereto. This Response is based on the extensive files and records in this case and the below Memorandum.

Dated: January 31, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/
STEPHANIE S. CHRISTENSEN
DAMARIS DIAZ
LYNDA LAO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant asks this Court to reduce his prior sentence by 185 years based largely on arguments the Court has previously rejected. His main argument seems to be that a "fair and just" sentence requires a chance that he be released from prison during his lifetime. The opposite is true.

As the Court stated when it previously sentenced defendant: "there can be no legitimate argument in this case for a sentence below the guidelines range of life in prison." The government continues to recommend the same aggregate sentence imposed by the Court at defendant's first sentencing: 210 years' imprisonment.

In addition to rejecting his proposed sentence, the Court should also overrule defendant's objections to the Guidelines calculations and find that his factual objections are immaterial to the sentencing calculation. Finally, the Court should reject defendant's restitution argument and impose restitution in the amount set forth in the original Judgment and Commitment Order while making clear that the basis for doing so is 18 U.S.C. § 3663A.

## II. DEFENDANT'S GUIDELINES OBJECTIONS SHOULD BE OVERRULED AND HIS FACTUAL OBJECTIONS SHOULD BE REJECTED OR QUALIFIED

### A. The PSR Correctly Applied The § 4B1.5(b) Enhancement For Pattern Of Activity And The § 2A3.1 Enhancement For Victims Under 12

Defendant raises two objections to the PSR's Guidelines calculation. Both should be overruled.

First, defendant objects to the application of the under-12 enhancement in U.S.S.G. § 2A3.1 claiming that the government's evidence of the victims' ages was insufficient to support the jury's findings that four of his victims were under 12. (Def. Pos. at 4.) This objection relies on arguments made in defendant's Rule 29 motions and should be rejected for the reasons set forth in the government's opposition to those motions.

Second, defendant objects to the imposition of the five-level enhancement under U.S.S.G. § 4B1.5(b) for his pattern of abuse. (Def. Pos. at 1–4.) In a dizzying display of mental gymnastics, defendant first claims that the terms in the Guidelines section itself are ambiguous, next, that the commentary defining those terms is unreasonable, and finally that the Court should look to, of all things, RICO law to interpret the section. (*Id.*) The Court need not follow defendant down this circuitous path. Both the Guidelines section and the caselaw interpreting it are clear. The enhancement applies because defendant sexually abused minors on multiple occasions, regardless of the number of trips he took.

The section states:

> (b) In any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1) The offense level shall be 5 plus . . . .

U.S.S.G. § 4B1.5(b) (Nov. 2005 ed.).

Defendant's statutes of conviction, §§ 2241(c) and 2423(b), are "covered sex crimes." As defined in the commentary, "covered sex crime" includes:

- "(A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code,"—which chapter includes 18 U.S.C. § 2241(c), and
- "(iii) chapter 117 of such title"—which includes 18 U.S.C. § 2423(b).

U.S.S.G. § 4B1.5, Cmt. 2 (Nov. 2005 ed.).

Defendant also engaged in a "pattern of activity involving prohibited sexual conduct." "Prohibited sexual conduct" includes "(i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)" as well as "(ii) the production of child pornography." U.S.S.G. § 4B1.5, Cmt. 4 (Nov. 2005 ed.). The relevant part of Section 2426, in turn, includes a host of offenses including:

- Those "(A) under this chapter"—which is chapter 117 and includes, 18 U.S.C. § 2423(b),
- "chapter 109A"—which, as stated above, includes 18 U.S.C. § 2241(c), and
- "chapter 110"—which includes, among others, sexual exploitation of children (Section 2251) and selling or buying of children (Section 2251A).

Notably, the commentary makes clear that:

> An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

*Id.*, Cmt. 4(b)(ii) (Nov. 2005 ed.).

Defendant engaged in multiple types of prohibited sexual conduct under this enhancement. Thus, contrary to defendant's claim, the unit of measurement for U.S.S.G. 4B1.5(b) is not each trip defendant took, but each time he sexually abused a child. Moreover, the commentary makes clear that a pattern is established if the defendant committed the prohibited conduct "on at least two separate occasions." U.S.S.G. § 4B1.5, Cmt. 4(B)(i) (Nov. 2005 ed.). Even if defendant were correct that his trips were the prohibited conduct, his two trips would be sufficient to establish a pattern. *See United States v. Broxmeyer*, 699 F.3d 265, 285 (2d Cir. 2012) ("we accord Guidelines language its plain meaning: "two" means two, not three").

The Ninth Circuit recently analyzed this enhancement and affirmed its application where defendant sexually abused a victim abroad on two consecutive days and was convicted of, among other crimes, a violation of 18 U.S.C. §2423(b). *See United States v. Telles*, 18 F.4th 290, 303 (9th Cir. 2021) ("Although we have not yet set forth a definition of "separate occasions," the record here clearly reflects that Telles sexually abused T.B. on two separate occasions—the first night he arrived in the United Kingdom and the second night of his trip.").

Multiple other circuit courts have affirmed the application of this enhancement in convictions without regard to the number of trips taken by defendant, but rather relying upon the fact of two or more instances of sexual abuse. *See United States v. Norwood*, 982 F.3d 1032, 1059 (7th Cir. 2020) (on conviction for violating Section 2423(a), for transporting a minor with intent to engage in prostitution, enhancement applied because the government also had established that defendant had sex with the minor on at least two occasions even though that sexual abuse had no federal jurisdiction); *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247, 257 (5th Cir. 2016) (affirming application of the enhancement where defendant was convicted of 18 U.S.C. § 2423(a) and 18 U.S.C. § 2241(c) and where "the district court did not clearly err in finding by a preponderance of the evidence that JA-L had sexual relations with Doe on at least two separate occasions before she attained the age of 12 years" after transporting her from Texas to Mexico); *United States v. Brattain*, 539 F.3d 445, 448 (6th Cir. 2008) (reversing district court's denial of five-level enhancement on convictions of 18 U.S.C. §§ 2241(c) and 2244, where the defendant abused a single victim multiple times); *see also United States v. Quiroz-Martinez*, 822 F. App'x 30, 32 (2d Cir. 2020) (unpublished) (affirming enhancement application after Section 2422 conviction where the District Court found that the defendant had also engaged in two prior, separate, and uncharged incidents of prohibited sexual misconduct against two minors other than the minor involved in the offense of conviction).

### B. Defendant's Minor Factual Objections Are Immaterial To The Guidelines Or The Sentence

In addition to his Guidelines objections, defendant makes several factual objections to the PSR.[1] (Def. Pos. at 9–10.) The first batch of objections are made simply to preserve his claim of innocence and can be rejected outright. (Def. Pos. at 9)

[1] Defendant also makes a legal objection to the 30-year mandatory minimum referenced in paragraph 172 of the PSR. (Def. Pos. at 8.) The government agrees that the applicable version of the statute has no mandatory-minimum sentence.

(objecting to statements that sexual acts occurred, ages of the victims, and crossing state lines). The bulleted balance of factual objections relate to defendant's family and background, *e.g.*, defendant's father's job, defendant's prior employment. (Def. Pos. at 10.) The government has no information regarding these facts and suggests that they fall under the same self-reported and unverified caveat set forth in paragraph 130 of the PSR.[2]

**III. RESTITUTION IS PROPER UNDER THE MVRA, 18 U.S.C. § 3663A, (NOT SECTION 2248) AND IS PROPERLY CALCULATED**

As an initial matter, the Court must make clear in imposing restitution that it is proper under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, not § 2248 as stated in the PSR.[3] The government thoroughly briefed this point leading up to the first sentencing. (Dkts. 318, 490.) However, the government failed to correct the Court's misstatement in imposing the restitution, and the wrong statute appeared in the Judgment and Commitment Order. (Dkt. 512 at 29 (Sentencing Transcript); Dkt. 492 (J&C).) Accordingly, when the issue was raised on appeal, the government conceded that a limited remand was appropriate for the sole purpose of ordering the court to issue a corrected Judgment and Commitment Order that substituted § 3663A for § 2248. (C.A. No. 14-50095, Dkt. 35 at 94–106.)

The correct statute having been established, the government now turns to defendant's arguments. His first requires little attention. He argues that because restitution increases his punishment, it is subject to *Apprendi*, and a jury must find the amount. Recognizing that the Ninth Circuit has ruled to the contrary, he seeks only to

---

[2] The Court either has to resolve the factual objections or state that they are irrelevant to comply with Rule 32. *See United States v. Carter*, 219 F.3d 863, 867 (9th Cir. 2000) ("If the district court chooses not to rely upon a disputed factual statement in the PSR, it need not resolve the dispute, but it must clearly state that the disputed fact was not taken into account in finding the enhancement appropriate.")

[3] The government maintains its position that restitution is also appropriate at the Court's discretion under the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663. (Dkt. 318 at 3–4.) As discussed herein, defendant has the ability to pay restitution.

"preserve this issue for potential en banc or Supreme Court review." (Def. Pos. at 10–11) (citing *United States v. George*, 949 F.3d 1181, 1188 (9th Cir 2020); *United States v. Alvarez*, 835 F.3d 1180, 1185 (9th Cir. 2015); *United States v. Green*, 722 F.3d 1146, 1148–51 (9th Cir. 2013).)

Next, defendant makes an argument previously rejected by this Court, namely, that restitution must go to his child victims and not the NGOs that rescued them. (Def. Pos. at 12–13.) This argument is largely premised on restrictions placed on § 2248 and thus fails because, as stated above, § 3663A (the MVRA) is the applicable restitution statute. Section 3663A requires restitution for "any offense that is a crime of violence, as defined in section 16 . . . and in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. §§ 3663A(c)(1)(A)(i), 3663A(c)(1)(B). The statute defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). In addition, the statute provides that "[i]n the case of a victim who is under 18 years of age, . . . the legal guardian of the victim . . . may assume the victim's rights under this section . . . ." 18 U.S.C. § 3663A(a)(2). Thus, restitution to the NGOs is permissible under the MVRA.

Defendant also claims that some types of expenses are not permissible even under § 3663A and that some expenses are not proximately caused by him. (Def. Pos. at 13–15.) As to causation, it is clear that the victims would not have been in the care of the NGOs had defendant not abused them. Once in the care of the NGOs, the expenses they incurred in caring for the children, when acting in loco parentis,—*e.g.*, daily food, soy milk, school fees, uniform, education materials, transportation to school, clothes, caregiver—are recoverable through restitution.[4]

[4] The government is discussing some of the expenses incurred with the NGOs and victims' counsel, and is at a substantial disadvantage it being more than a decade since

(footnote cont'd on next page)

The costs for the rehabilitation also include education for the victims, whose ability to learn was diminished by defendant's crimes, and any costs incurred to ensure their safety, including the cost of housing and daily care as well as for their continuing physical and psychological care. The statute explicitly provides for restitution to cover "nonmedical care . . . rendered in accordance with a method of healing recognized by the law of the place of treatment." *See* 18 U.S.C. § 3663A(b)(2)(A).

Trial courts have broad discretion in ordering restitution. *See United States v. Miguel*, 49 F.3d 505, 511 (9th Cir.1995). That is particularly true where, as here, defendant's crimes occurred abroad and the NGOs were abroad. *United States v. Doe*, 488 F.3d 1154 (9th Cir. 2007), is instructive. In *Doe*, the Ninth Circuit affirmed a restitution order for psychological and medical treatment, vocational training, and a management fee to the non-governmental organization caring for the victims, and start-up capital to aid the victims in opening a business, explaining:

> [The defendant] traveled outside the United States to molest children in his native country. As such, he not only gets the windfall of paying only reduced developing-world rates, but the government is also hindered in its ability to investigate his remote activity, to locate all of the victims of his criminal conduct, and to provide supervision of the children's recovery. In a situation such as this, where all the child victims are minors in a foreign country, the government necessarily must contract with reputable outside organizations to perform services that might be readily available by more familiar institutions in the United States.

*Id.* at 1162.

Even beyond the costs of materials and food required for the care for the children, the court in *Doe* determined that it was not an abuse of discretion to award a management fee for the organization that provided care, as it allowed "for a traditional counseling component between the victim and social worker, as well as meetings with the families of the victims" and that "[w]ithout that assistance, it is reasonable to assume

---

his offenses. The government requests leave to file a supplemental submission. *See* 18 U.S.C. 3664(d)(5) ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.").

that the victims would incur additional transportation, communication, and related administrative costs associated with executing that [restitution] plan." *Doe*, 488 F.3d at 1162.

In addition, the Ninth Circuit has approved restitution for future counseling for child sex abuse victims as part of the full amount required to compensate for the "losses suffered by the victim as a proximate result of the offense." *See United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) (future counseling expenses may be included in amount of restitution); *see also United States v. Rockett*, 752 F. App'x 448, 450 (9th Cir. 2018) (unpublished) (finding that the district court properly awarded restitution for family therapy, and future educational and occupational expenses against defendant who sexually abused minors abroad). As the *Doe* Court held, "mathematical precision is not required in the causal analysis." *Doe*, 488 F.3d at 1160.

Defendant's reliance on *United States v. Swor*, 728 F.3d 971 (9th Cir. 2013), is misplaced. *Swor* is distinguishable from this case because it involved the question whether one defendant owed restitution to another defendant's victims when he had no involvement in the fraud scheme that caused the loss and had previously severed business ties with the other defendant. *Id.* at 974. Here, defendant was directly responsible for the fact that the victims lost their homes and needed care from the NGOs. Moreover, defendant incorrectly suggests that *Swor* is new caselaw when in fact it was decided before this Court's initial restitution order in 2014.

Finally, defendant challenges the PSR's recommendation regarding the amount he can/should pay per month in restitution, claiming that he can pay just $50. (Def. Pos. at 15–16.) In a 2014 sentencing filing, defendant predicted that he would have no ability to pay whatsoever. (Dkt. 486 ("The PSR indicates at paragraph 187 that Mr. Pepe receives at least $4,000 per month from the Department of Defense for his military retirement and Veteran's Administration Disability. Mr. Pepe is informed and believes that this monthly amount is now just $1200 and will likely be reduced to zero once he is

sentenced.”).) His claims of inability to pay are belied by the fact that the government has been seizing over $350 each month from defendant’s pension since 2014. *See* Exhibit D,[5] U.S. DOJ Consolidated Debt Collections System (showing record of restitution payments of just over $350 per month through the Treasury Offset Program).[6] Aside from the Treasury Offset Program, there are other programs under which the government might seek to take more than that amount especially where, as here, the government anticipates that defendant’s expenses for the rest of his life will be paid by the BOP. Because the government wishes to have all remedies available under the law to collect any court-imposed restitution, the government asks the Court to order that all criminal debt be due in full and immediately.

## IV. DEFENDANT’S ARGUMENTS FOR A 25-YEAR SENTENCE ARE UNPERSUASIVE

Defendant asks this Court to sentence him to a mere 25 years’ imprisonment, hundreds of years below the Guidelines range, and 185 years below the sentence originally imposed. His arguments are unpersuasive.

Defendant’s first argument is that prison will be difficult for him due to the nature of his crimes and his many health problems, including diabetes and hypertension. (Def. Pos. at 5.) He made many of the same arguments after his 2008 conviction, yet he has remained alive for the nearly 15 years he has been in U.S. custody. While it is appropriate for BOP to take defendant’s mental and physical healthcare needs into account in placing defendant at a correctional institution, there is no need for this Court to vary downward because of them. *See, e.g., United States v. McCarty*, 628 F.3d 284, 294–95 (6th Cir. 2010) (sentence reasonable where the sentencing court did not vary downward but considered defendant’s mental health in imposing the sentence and

[5] Exhibits A–C were attached to the Government’s Objections To PSR And Initial Sentencing Position (Dkt. 854).

[6] Exhibit D also shows a monthly fee of around $25 per month which is imposed pursuant to 31 U.S.C. § 3716.

requested that the BOP institutionalize defendant in a location where defendant could receive treatment).

Defendant next claims that as an "aging inmate" over 50, he is "far less likely to recidivate." (Def. Pos. at 8.) Given that defendant was already over 50 and suffering from nearly all of his listed mental and physical conditions in 2005 and 2006 when he was taking Viagra and drugging, beating, and raping children on a near daily basis in Cambodia, defendant's claim that his age and conditions make him less likely to be a danger to the community is unpersuasive. Further, despite defendant's citation to studies on the average elderly inmate (*id.*), there is no empirical basis to account for age in sex offenders when assessing future risk of reoffending. G. Harris and M. Rice, *Adjusting Actuarial Violence Risk Assessments Based on Aging or the Passage of Time*, 34 Crim. J. and Behav., 310–11, (2007). Defendant's age and medical/psychological conditions are no indication that he will not remain a risk to the community upon his release.

Lastly, defendant seemingly argues that the high cost of his incarceration warrants a shorter sentence. However, as the Ninth Circuit held in affirming a sentence imposed by this very Court, "the district court correctly concluded that the cost to society of imprisoning a defendant is not a factor to be considered in determining the appropriate length of a defendant's term of imprisonment under 18 U.S.C. §§ 3553(a) and 3582(a)." *United States v. Tapia-Romero*, 523 F.3d 1125, 1126 (9th Cir. 2008).

## V. CONCLUSION

For his crimes, defendant should not be permitted to live life outside of prison. The government's recommended sentence of 210 years' imprisonment is sufficient but not greater than necessary to comply with the purposes of Section 3553(a). The requested restitution should be imposed to compensate the NGOs who made defendant's victims whole after the horrible abuse he inflicted upon them. The government respectfully requests that this Court overrule defendant's objections related to the facts

and Guidelines calculation in the PSR, and sentence defendant to 210 years' imprisonment, a $400 special assessment, and $247,213 in restitution.